IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EDGEWOOD HIGH SCHOOL
OF THE SACRED HEART, INC.,
    Plaintiff,

v.

CITY OF MADISON, WISCONSIN;
CITY OF MADISON ZONING BOARD
OF APPEALS; CITY OF MADISON
PLAN COMMISSION; CITY OF
MADISON COMMON COUNCIL; Zoning
Administrator MATTHEW TUCKER, in
his official capacity; Director of Madison's
Building Inspection Division GEORGE
HANK, in his official capacity; Alder TAG
EVERS, in his official capacity,
    Defendants.

Case No. 3:21-CV-118

## DEFENDANTS' BRIEF IN SUPPORT OF
## PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE

### INTRODUCTION

Plaintiff Edgewood High School of the Sacred Heart filed a 344-paragraph complaint (with over 20 attached exhibits), asserting four federal claims and three state-law claims against several City of Madison government individuals and entities after the Common Council denied Edgewood a permit for outdoor lighting on its athletic field. Most of Edgewood's asserted federal claims (Counts I, III, and IV, and all but a small portion of Count II) must be dismissed, because the allegations—voluminous as they are—fail to establish any right to relief. Furthermore, the Complaint contains many immaterial, confusing, and far-ranging allegations (some

stemming back over 100 years); consequently, it is unwieldy and violates the plain-statement rule. Striking immaterial allegations is absolutely necessary to focus the parties, promote efficient discovery, and prevent litigation costs from ballooning out of control. Failure to do so would run the risk that this case turns into a dissertation on the history of the Dominican Sisters of Sinsinawa.

Many of Edgewood's grievances against Defendants are moot by virtue of Edgewood's own actions or barred by 42 U.S.C. § 2000cc-3(e), the safe-harbor provision in the Religious Land Use and Institutionalized Persons Act (RLUIPA), which allows a government to avoid liability by changing its policy or practice or otherwise eliminating the alleged violation, as the Seventh Circuit held in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (2003). Edgewood's equal-term claim fails for lacking a suitable comparator: The schools with outdoor lights that Edgewood identifies were evaluated at earlier times under different rules. The Individual Defendants should also be dismissed because Edgewood has no relief to secure against them, and this Court should refuse Edgewood's invitation to ascribe an individual legislator's motives to the City as contrary to longstanding precedent.

## BACKGROUND

Edgewood's crusade for lights and other improvements to its athletic field first came to the City's attention in 2018, when Edgewood reached out to City officials to determine what local government approvals were necessary. (Compl., ¶ 90 (Doc. 1).) City officials told Edgewood there would have to be modifications to the existing rules laid out in Edgewood's Master Plan, which Edgewood had voluntarily submitted and the City had approved in 2014. (*Id.*, ¶¶ 80, 91.) One of the barriers from the City's

point of view was that Edgewood's own Master Plan—which Edgewood itself prepared and voluntarily submitted for approval—had provided that the athletic field was to be used for team practices and physical education classes only. (*Id.*, ¶ 92.)

Edgewood applied to modify its Master Plan in January 2019 but abandoned that request. (Compl., ¶ 139.) In April and May 2019, the City's Zoning Administrator issued Edgewood two notices ordering the school to stop hosting athletic contests on its field in violation of its Master Plan. (Compl., ¶¶ 108–110.) Edgewood appealed those notices to the Zoning Board of Appeals, which affirmed the Zoning Administrator's decision. (*Id.*, ¶¶ 116–118.) The next day, the City Attorney sent Edgewood's counsel a letter confirming that he would take no enforcement action and would provide Edgewood with notice before changing that position. (*Id.*, ¶ 148 & Ex. K (Doc. 1-11.) The City Attorney also invited Edgewood to withdraw its voluntary Master Plan, "which would place it on equal footing with other high schools" zoned in Campus-Institutional Districts and without master plans. (*Id.*, ¶¶ 65, 149 & Ex. K.)

According to Edgewood, the City had used Edgewood's voluntary Master Plan "to burden Edgewood and as a pretext to deny Edgewood the right to host athletic contests and to erect lights," without bringing Edgewood any attendant benefits. (Compl., ¶ 154.) So, Edgewood sought to repeal its Master Plan as the City Attorney had suggested, and it filed an application with the City on July 29, 2019 to that effect. (*Id.*, ¶ 156.) Less than a month later, Edgewood filed suit in this Court alleging many of the same claims Edgewood reasserts here. (*Id.*, ¶ 170.) On October 1, 2019, before taking up Edgewood's request, the City amended the Zoning Code to require all

3

properties in Campus-Institutional District zoning without a Campus Master Plan to obtain conditional use approval before establishing, improving, or modifying any primary or secondary use occurring outside. (*Id.*, ¶ 168; M.G.O. § 28.097(2)(d).) That amendment applies to <u>everyone</u> in Campus-Institutional District zoning equally, including portions of UW-Madison and Madison public high schools. (*Id.*, ¶ 65.)

The Common Council approved Edgewood's request to repeal its Master Plan on January 7, 2020. (Compl., ¶ 169.) Edgewood voluntarily dismissed its federal lawsuit on February 10, 2020, and on March 11, 2020 it submitted a conditional use application to install outdoor lights on its field in accordance with the new ordinance. (*Id.*, ¶¶ 171, 172.) The Plan Commission voted to deny Edgewood's application on May 12, 2020. (*Id.*, ¶ 177.) Edgewood appealed that decision to the Common Council, which voted to uphold the permit denial on January 20, 2021. (*Id.*, ¶¶ 178, 180.)

Edgewood filed its Complaint 30 days later, naming the City, the Zoning Board of Appeals, the Plan Commission, the Zoning Administrator (Matthew Tucker), the Director of Building Inspection (George Hank), and one of the 20 Common Council Alders (Tag Evers) as Defendants. The Individual Defendants were named in their official capacities only. In addition to seeking judicial review of the Common Council's decision under Wisconsin law (Count VI), Edgewood asserts federal claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), alleging both an "unequal terms" violation (Count I) and a "substantial burden" violation (Count II); the Fourteenth Amendment (Count III); and the Due Process Clause to the United States Constitution (Count IV). Edgewood also asserts a vested rights claim under

Wisconsin law (Count V) and a claim under the Wisconsin Constitution (Count VII). Defendants stipulated to service, and this Court entered an order providing Defendants until April 19, 2021 to answer or respond. (Docs. 10, 11.)[1]

## LEGAL STANDARDS

A complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). A complaint that is unnecessarily lengthy resulting from incoherent or immaterial allegations may violate the plain-statement rule. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013). The court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f).

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when the facts as alleged do not "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a motion to dismiss, the court accepts all well-pleaded facts and draws all reasonable inferences for the plaintiff. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). But it need not accept unsupported legal conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

---

[1] Edgewood's Complaint also describes lighting applications that it submitted to the City. (*See* Compl., ¶¶ 139–47, 165–67.) Those facts appear to pertain only to Edgewood's state-law vested-rights claim, which is not at issue in this motion. The parties have agreed that Defendants may answer all claims within 14 days of this Court's ruling on these motions, including those not subject to dismissal here.

# ARGUMENT

Edgewood voluntarily withdrew its Master Plan and sought conditional use approval to install and use lighting on its athletic field. Any prospective relief relating to Edgewood's Master Plan is therefore moot, and Edgewood has no plausible claim for damages because the City exempted Edgewood from enforcement while the application was pending. Further, Defendants are shielded from liability under RLUIPA's safe-harbor provision for alleged unequal-terms and substantial-burden claims stemming from Edgewood's Master Plan, because the City corrected the asserted violations, exempted Edgewood from enforcement, and changed the law.[2]

Edgewood's equal-terms claim under RLUIPA independently fails because no suitable comparator has been identified, as is required to state such a claim. The Individual Defendants should be dismissed entirely because Edgewood can obtain no relief against them, and their individual motives cannot be attributed to the City for purposes of liability. And regardless of how this Court rules on the motion to dismiss, immaterial allegations in the Complaint should be stricken and Edgewood should be ordered to file an amended complaint that conforms to the plain-statement rule.

## I. Many of Edgewood's Federal Claims Are Moot or Barred by RLUIPA's Safe-Harbor Provision.

The "case" or "controversy" requirement, derived from Article III of the United States Constitution, requires a live controversy at all times during federal litigation. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990) ("This case-or-

---

[2] Defendants disagree that there was in fact any RLUIPA violation based on the Master Plan that required correction, but they accept that assertion as true for purposes of the motion to dismiss.

controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."). Moreover, each claim asserted and each form of relief sought must be justiciable in its own right. *See Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2006); *Lewis v. Casey*, 518 U.S. 343, n.6 (1996) ("[S]tanding is not dispensed in gross."); *Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").[3]

Although Defendants strongly disagree with Edgewood on the merits and the law, Defendants do not dispute that Edgewood's Complaint suffices at the pleadings stage with respect to its state-law claims (Counts V through VII); Defendants also acknowledge that Edgewood has adequately alleged a <u>narrow</u> federal claim under RLUIPA, namely, that the City's denial of the conditional use permit substantially burdens Edgewood's religious exercise without a compelling government justification (*see* Compl., ¶ 218.) But Edgewood's remaining federal claims are moot.

Edgewood ties most of its claims to the Edgewood Master Plan—or more specifically, to the City's interpretation and enforcement of it. For example, Edgewood alleges disparate treatment under its Master Plan as compared to other area schools, and argues that the City's interpretation violated the equal-terms and substantial-burden provisions of RLUIPA (Counts I and II). (Compl., ¶¶ 200–04, 212–19.) Edgewood's First Amendment claim (Count III) is also based on the City's

---

[3] To be clear, these cases discuss standing, not mootness, but "[t]he doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing cases).

7

construction of Edgewood's Master Plan to prohibit Edgewood from holding athletic contests on its field. (*Id.*, ¶¶ 247–56.) The same is true for Edgewood's void-for-vagueness claim (Count IV), which asserts that the term "athletic contests" in Edgewood's Master Plan was unconstitutionally vague. (*Id.*, ¶¶ 260–65.)

None of those claims present a live controversy: The City repealed Edgewood's Master Plan in 2020, <u>at Edgewood's request</u>. (Compl., ¶¶ 156, 169.) Even before repeal, the City permitted Edgewood to continue hosting athletic contests on its field in contravention of the plain terms of Edgewood's Master Plan, ensuring that Edgewood had faced no actual or threatened injury while Edgewood's applications worked their way through the process. (*Id.*, ¶ 148 & Ex. K.) There is no controversy requiring this Court to construe the repealed Master Plan, and Edgewood's assertion that it suffered cognizable injuries from the City's interpretation is implausible, because the City Attorney exempted Edgewood from enforcement. (*See id.*) Claims based on the City's construction or enforcement of Edgewood's repealed Master Plan are therefore moot. *See, e.g.*, *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (noting that declaratory judgment claim was moot where "relief . . . would have no impact on the parties to th[e] suit"). For this reason, the Court should dismiss Counts I, III, and IV of Edgewood's complaint entirely, and Paragraphs 213(a)–(e), 214–17, 219–25, 228–32, 235, and 238–241 of Count II. (The remaining paragraphs arguably pertain to Edgewood's narrow claim challenging the conditional use denial as a substantial burden under RLUIPA.)

Even setting aside the constitutional doctrine of mootness, at minimum, Edgewood's RLUIPA claims based on its repealed Master Plan (all of Count I and all of the aforementioned Paragraphs of Count II) are barred by the Act's safe-harbor provision, 42 U.S.C. § 2000cc-3(e), which states:

> A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

That provision shields a government from liability under RLUIPA if it corrects the alleged violation, as the Seventh Circuit held in *Civil Liberties for Urban Believers*, 342 F.3d at 762. There, an association of Chicago-area churches asserted that the City of Chicago zoning ordinance violated the equal-terms and substantial-burden provisions of RLUIPA, and plaintiffs sought damages resulting from the purportedly unnecessary application process. *See id.* The court construed 42 U.S.C. § 2000cc-3(e) to "afford a government the discretion to take corrective action to eliminate a nondiscrimination provision violation, whether or not it was the result of a substantial burden on religious exercise." *Id.* In other words, the safe harbor applies to both equal-terms and substantial-burden claims.

The court in *Civil Liberties for Urban Believers* held that amendments to the city's ordinance, which put churches on equal footing with all others, "render[ed] RLUIPA's nondiscrimination provision inapplicable to this case"; it therefore affirmed summary judgment for the city on plaintiffs' RLUIPA claims. 342 F.3d at

9

762. The majority specifically affirmed the district court's conclusion that plaintiffs' damages claims based on the previous ordinance version were moot. *Id.* at n.6.

Most district courts have followed the Seventh Circuit's lead and have construed 42 U.S.C. § 2000cc-3(e) to bar liability and damages for RLUIPA violations that are not ongoing. *See, e.g.*, *Petra Presbyterian Church v. Vill. of Northbrook*, 409 F. Supp. 2d 1001, 1007 (N.D. Ill. 2006), *aff'd*, 489 F.3d 846 (7th Cir. 2007) (granting summary judgment based on RLUIPA safe-harbor provision, holding that government "has avoided liability by eliminating its discriminatory zoning provision"); *Riverside Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1032 (D. Minn. 2016) (holding that amendments "eliminated any alleged substantial burden and any alleged discriminatory treatment imposed by" former ordinance and permit denials).[4]

Here, the safe-harbor provision in 42 U.S.C. § 2000cc-3(e) bars Edgewood's RLUIPA claims based on the Master Plan or the City's interpretation of it. The City exempted Edgewood from enforcement and repealed Edgewood's Master Plan at Edgewood's request. Under existing zoning criteria, all properties in the same zoning without a Campus Master Plan must apply for a conditional use permit in order to construct lights. Because the City removed any alleged violations stemming from Edgewood's Master Plan, Edgewood cannot pursue RLUIPA claims based on those purported violations, and all of Counts I and most of Count II except for Paragraphs pertaining to Edgewood's RLUIPA conditional use challenge must be dismissed.

---

[4] *But see Family Life Church v. City of Elgin*, No. 07 CV 217, 2007 WL 2790763, at *5 (N.D. Ill. Sept. 24, 2007) (reaching opposite conclusion on motion to dismiss).

10

## II. Edgewood Fails to Identify a Similarly Situated Comparator Necessary to Bring an Equal-Terms Claim under RLUIPA.

The equal-terms provision of RLUIPA states that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(2). In determining whether an equal-terms claim exists, courts in the Seventh Circuit must "look to the zoning criteria rather than the purpose behind the land use regulation." *Eagle Cove Camp & Conf. Ctr. v. Town of Woodboro*, 734 F.3d 673, 683 (7th Cir. 2013). *See also Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 677 n.8 (7th Cir. 2019). And if secular and religious land uses are treated the same based on accepted zoning criteria, "that is enough to rebut an equal-terms claim." *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 373 (7th Cir. 2010) (en banc).

The equal-terms provision "is violated whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses." *Digrugilliers v. Consolidated City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007). Thus, to bring an as-applied claim, a plaintiff must allege (and eventually prove) that a nonreligious entity in a similar situation received different treatment under the same rules.[5] As the Eleventh Circuit

---

[5] All of Edgewood's asserted equal-terms claims appear to be as-applied, rather than facial, challenges under RLUIPA, with perhaps one exception. At paragraph 205 of its Complaint, Edgewood alleges that enactment of the conditional use amendment "constitutes unlawful religious gerrymandering in violation of RLUIPA's equal terms provision." But that cannot be squared with the text of the ordinance itself; instead, Edgewood attempts to impute allegedly discriminatory motives of individual government actors to the City, which is contrary to settled law, as explained in greater detail in Section III, below. *See, e.g.*, *United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("[T]his Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.").

11

explained in *Primera Inglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295 (11th Cir. 2006), "[i]f a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof." *Id.* at 1311. *See also Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, No. 19-12418 (11th Cir. Nov. 16, 2020) (citing *Primera Inglesia*, 450 F.3d at 1311); *Signs for Jesus v. Town of Pembroke*, 977 F.3d 93, 109 (1st Cir. 2020) ("Although several circuits have articulated different approaches, they all generally require that the comparators be similarly situated with respect to the purpose of the underlying regulation.")

Edgewood alleges that it has been subjected to unequal terms in violation of RLUIPA because the City "has allowed the nonreligious schools in the Campus-Institutional Zoning District, including MMSD high schools and the University of Wisconsin, to continue to use their athletic fields and to erect adequate lighting for athletic contests but has prohibited Edgewood from doing the same." (Compl., ¶ 196.) But Edgewood's own allegations demonstrate that those are invalid comparisons as a matter of law for purposes of RLUIPA equal-terms analysis.

Edgewood holds out the University of Wisconsin-Madison and James Madison Memorial High School as having received favorable treatment. (Compl., ¶¶ 119–138, 160.) But they were both evaluated under different regulatory schemes. The City first enacted the "Campus-Institutional District" zoning designation in 2013. (Compl., ¶ 72.) The University of Wisconsin-Madison operates under an approved Master Plan, but no one else in Campus-Institutional District zoning (including all Madison

public schools) has such a plan in place. (*Id.*, ¶¶ 79, 119.) Future development on the UW-Madison campus is largely governed by the terms of the Master Plan in place, which are unique to that institution (and contains no restriction on "athletic contests"). (*Id.*, ¶¶ 72–73, 197.) Moreover, much of the development that Edgewood describes in its Complaint had been approved before UW-Madison's Master Plan even became effective. Madison Memorial High School is an inapt comparison because, as Edgewood concedes, Memorial's outdoor lighting application was evaluated under a completely different standard that had been in place before the existing conditional use approval process was enacted. (*Id.*, ¶ 160.)

Indeed, Edgewood cannot point to any evidence of unequal treatment in how the City applies the conditional use process, because that process is brand new. As Edgewood admits, that amendment dramatically changed the analysis the City must perform: "Lighting applications granted previously to public institutions zoned as Campus-Institutional that had been granted under the prior, less restrictive administrative process were 'grandfathered in' and not subject to the more rigorous and burdensome process" associated with conditional use approval. (Compl., ¶ 161.)

The Seventh Circuit's decision in *Vision Church v. Village of Long Grove*, 468 F.3d 975 (7th Cir. 2006), makes clear that Edgewood may not put forward as comparators institutions that were evaluated at different times under different rules. In that case, a church plaintiff had asserted an equal-terms violation of RLUIPA and identified the government's treatment of elementary schools as comparators. The Seventh Circuit disagreed, holding that "a plaintiff need not demonstrate disparate

13

treatment between two institutions similarly situated in all relevant respects," but the fact that the supposedly comparable uses were "subject to different standards because of the year in which their special use applications were considered compels the conclusion that there was no unequal treatment." *Id.* at 1003. *See also Irshad Learning Ctr. v. Cnty. Of DuPage*, 937 F. Supp. 2d 910, (N.D. Ill. 2013) ("If a plaintiff does not offer a suitable comparator, however, there can be no cognizable evidence of less than equal treatment, and the plaintiff cannot meet its initial burden of proof."); *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F. Supp. 2d 267, 278 (S.D.N.Y. 2009) (dismissing RLUIPA equal-terms claim for failure to identify adequate comparator).

Amendment will not help Edgewood find a suitable comparator. As Edgewood must concede, no school or other institution has gone through the conditional use process after the City's recent amendments. Its as-applied equal-terms claim under RLUIPA must therefore be dismissed. And because allowing further amendment on this claim would be futile, dismissal of this claim should therefore be with prejudice. *See, e.g., Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (dismissing with prejudice is proper "if it is clear that any amendment would be futile").

### III. The Individual Defendants Should Be Dismissed.

In addition to naming the City, the Zoning Board of Appeals, the Plan Commission, and the Common Council as Defendants, Edgewood sued three government officials in their official capacities: Zoning Administrator Matthew Tucker, Director of Building Inspection Division George Hank, and Alder Tag Evers. (*See* Compl.) The individuals should be dismissed because Edgewood has stated no claim against them upon which relief can be granted. Official-capacity claims are no

different for all practical purposes than claims against the governmental entity itself. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). They are a peculiar artifact of Eleventh Amendment jurisprudence and have no role to play here.

The United States Supreme Court carved out an exception to state sovereign immunity in the seminal decision in *Ex Parte Young*, 209 U.S. 123 (1908), allowing suits against state officials for prospective relief to enjoin ongoing violations of federal law, even though suits against the State and state agencies are barred by the Eleventh Amendment. *Id.* at 159–60. *See also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (holding that Eleventh Amendment immunity extends to state agencies). Under controlling precedent, however, "[m]unicipalities do not enjoy any kind of immunity from suits for damages under § 1983." *Benedix v. Vill. of Hanover Park*, 677 F.3d 317, 318–19 (7th Cir. 2012) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)).[6] In this case, Edgewood has sued the City itself and several other government entities and can obtain all suitable relief from those Defendants. Edgewood therefore has no justification to employ the legal fiction that *Ex Parte Young* enables.

In order to state a claim that the City is liable for acts of its employees, Edgewood would need to allege facts showing that the acts alleged to be unlawful were carried out pursuant to an official custom or policy. *Grieveson*, 538 F.3d at 771

---

[6] Defendants respectfully submit that *Owen v. City of Independence* was incorrectly decided and will urge the Supreme Court to overrule that decision if presented with that opportunity. *See generally* John C. Jeffries, Jr., *The Liability Rule for Constitutional Torts*, 99 Va. L. Rev. 207 (2013) (urging for reconsideration of strict liability regime for municipalities created by *Owen* and *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)).

15

(citing *Monell*, 436 U.S. at 694). *See also Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'") (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). If the Individual Defendants acted consistent with and pursuant to official policy, then their conduct may be imputed to the City; if not, then their conduct would not be attributed to the City for purposes of municipal liability. *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability.") (citing *Monell*, 436 U.S. at 694). Edgewood did not sue the Individual Defendants in their personal or individual capacities and therefore cannot recover damages against them directly (and qualified immunity would likely preclude such a claim in any event). Regardless, there is no relief this Court may order that requires Individual Defendants to remain as participants in this lawsuit.

Edgewood appears to mistakenly believe that the motivations of these Individual Defendants are somehow relevant to its RLUIPA and constitutional claims. For example, Edgewood references public comments that Alder Evers made in connection with amending the ordinance to require conditional use approval that Edgewood contends "demonstrate his singling out of Edgewood and his overt hostility to religious, private institutions like Edgewood . . . ." (Compl., ¶ 163.) But the personal motivations of Alder Evers or other legislators are irrelevant when determining the <u>government's</u> purpose or intent, as both the Supreme Court and the Seventh Circuit

have repeatedly held. *See, e.g.*, *McCreary Cnty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005) ("The eyes that look to purpose belong to an 'objective observer,' one who take account of the traditional external signs that show up in the 'text, legislative history, and implementation of the statute' or comparable official act.") (quoting *Sante Fe Ind. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000)).[7]

As the Supreme Court observed in the context of a Fourteenth Amendment challenge, "there is an element of futility in a judicial attempt to invalidate a law because of the bad motives of its supporters. If the law is struck down for this reason, rather than because of its facial content or effect, it would presumably be valid as soon as the legislature or relevant governing body repassed it for different reasons." *Palmer v. Thompson*, 403 U.S. 217, 225 (1971). Clearly, then, Edgewood's allegations about improper motives of particular state officials do not provide Edgewood a basis to keep those officials as named parties in this lawsuit. Defendants Matthew Tucker, George Hank, and Tag Evers should be dismissed from the case entirely.

### IV. This Court Should Strike All Immaterial Allegations and Require Edgewood to Submit an Amended Complaint.

The purpose underlying both the plain-statement requirement in Federal Rule of Civil Procedure 8(a)(2) and the requirement in rule 8(d) that "each allegation must

---

[7] *See also, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 558 (1993) (Scalia., J., concurring in part and concurring in the judgment) ("The First Amendment does not refer to the purposes for which legislators enact laws, but to the effects of the laws enacted . . . . This does not put us into the business of invalidating laws by reason of the evil motives of their authors."); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 652 n.10 (7th Cir. 2013) ("When ruling a statute unconstitutional, 'the stakes are sufficiently high . . . to eschew the guesswork' inherent in judicial scrutiny of legislators' statements.") (quoting *O'Brien*, 391 U.S. at 384); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999) ("The actual motives of those who enacted the ordinance are irrelevant to [the court's] First Amendment analysis.").

be simple, concise, and direct," is the same: To provide fair notice to the parties and the court so that they may "understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). "Length may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Id.* (affirming dismissal of 400-paragraph, 155-page complaint). *See also Lindell v. Houser*, 442 F.3d 1033, 1034 n.1 (7th Cir. 2006) (noting that 55-page complaint was "probably dismissable" for not being "simple, concise, and direct," and stating that "[d]istrict courts should not have to read and decipher tomes disguised as pleadings").[8]

Edgewood's Complaint in this case does not faithfully comply with those rules. Instead of succinctly alleging that athletic activities have a long and important connection with the school, or something along those lines, Edgewood expounds over pages about the storied history of athletics at the school and the Dominican Sisters of Sinsinawa that founded it, with some paragraphs spanning most of a page. (*See, e.g.*, Compl., ¶¶ 7, 21–53.) Some of the allegations naturally raise the question of how they could possibly be verified. It is doubtful any of the founding Sisters are available,

---

[8] *See also In re Westinghouse Securities Litig.*, 90 F.3d 696, 702–03 (3d Cir. 1996) (dismissing 600-paragraph, 240-page complaint); *Kuehl v. FDIC*, 8 F.3d 905, 908–09 (1st Cir. 1993) (dismissing 358-paragraph, 43-page complaint); *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of 144-paragraph, 98-page complaint). *See also generally Lindell v. Litscher*, Case No. 18-CV-1021, 2020 WL 2085305 (W.D. Wis. Aug. 15, 2019) (requiring amendment of pleadings on Rule 8 grounds).

as is likely true for anyone who could verify whether Edgewood in fact first installed a football field in 1930, whether at that time Father Leo in fact blessed and consecrated the field to God, or whether the entire student body was in fact present for that ceremony. (*See id.*, ¶¶ 21–22.) Saint Pope John Paul II died in 2005; it is therefore impossible to verify the hearsay Edgewood offers or determine what he purportedly believed about the link between Christian values and sports, as Edgewood alleges; and it should go without saying that this Court is not the appropriate venue to parse out dogma asserted by various Popes. (*See id.*, ¶¶ 39–40.)

Regardless of how this Court rules on Defendants' motion to dismiss, it should strike these and all other immaterial allegations in the existing Complaint and order Edgewood to submit an amended pleading that contains only a <u>short</u> and <u>plain</u> statement of the factual allegations that, in <u>simple</u>, <u>concise</u>, and <u>direct</u> terms, state Edgewood's claims for relief. A streamlined complaint would clearly facilitate the discovery process and promote ultimate resolution of the issues Edgewood presents.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court dismiss all of Edgewood's asserted federal claims (Counts I–IV), except, with respect to Count II, the narrow claim that the City's final decision denying Edgewood a conditional use permit violates the substantial burden provision of RLUIPA. The Individual Defendants should also be dismissed entirely from the lawsuit. And regardless of how this Court rules on the motion to dismiss, it should strike immaterial allegations and order Edgewood to file an amended complaint.

DATE: April 19, 2021

Respectfully submitted,

*/s/ Barry J. Blonien*
Barry J. Blonien, State Bar No. 1078848
Sarah A. Zylstra, State Bar No. 1033159
BOARDMAN & CLARK LLP
1 South Pinckney Street, Suite 410
P. O. Box 927
Madison, WI 53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
bblonien@boardmanclark.com
szylstra@boardmanclark.com
*Attorneys for Defendants*