IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDGEWOOD HIGH SCHOOL<br>OF THE SACRED HEART, INC.,<br>        Plaintiff,<br><br>    v.<br><br>CITY OF MADISON, WISCONSIN;<br>CITY OF MADISON ZONING BOARD<br>OF APPEALS; CITY OF MADISON<br>PLAN COMMISSION; CITY OF<br>MADISON COMMON COUNCIL; Zoning<br>Administrator MATTHEW TUCKER, in<br>his official capacity; Director of Madison's<br>Building Inspection Division GEORGE<br>HANK, in his official capacity; Alder TAG<br>EVERS, in his official capacity,<br>        Defendants. | Case No. 3:21-CV-118 |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF
### PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE

#### INTRODUCTION

Most of Edgewood's asserted federal claims (specifically, all of Counts I, III, and IV, and all but a small portion of Count II) are moot because they stem from its Master Plan that the City repealed in 2020, <u>at Edgewood's request</u>. Edgewood's RLUIPA claims—including its claim for past damages—are also barred by RLUIPA's safe harbor, as the Seventh Circuit held in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (2003). Edgewood argues in opposition that all of its claims are alive because lights are still missing on its athletic field. Edgewood insists

it is entitled to a permit under zoning standards the City repealed in 2019, and damages for the administrative burdens Edgewood allegedly suffered in the process.

The Seventh Circuit has squarely held, however, that a party has no "vested right" to a permit under federal law—even where the permit denial was invalid or unconstitutional. *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d, 846, 849 (7th Cir. 2007). In its opposition brief, Edgewood fails to accept *Civil Rights for Urban Believers* as binding precedent, and it disregards the holding in *Vision Church v. Village of Long* Grove, 468 F.3d 975, 1003 (7th Cir. 2006), that comparators evaluated in different years under different standards are not similarly situated as a matter of law. Those decisions entirely foreclose Edgewood's arguments. Apart from its narrow claim that the City's denial of a conditional use permit constitutes a substantial burden on Edgewood's religious exercise in violation of RLUIPA, Edgewood's federal claims must be dismissed for failing to state a claim.

Edgewood does not adequately explain why any of the Individual Defendants are properly named as participants in this lawsuit. Edgewood attempts to rely on its request for mandamus relief under state law, but none of the named individuals have authority to issue a conditional use permit, and regardless, Edgewood may secure that relief (if it is entitled to it) from the City itself, or another government Defendant. And finally, this Court is well within its discretion to order Edgewood to submit an amended complaint that pays heed to the short-and-plain aspects of Rule 8. The plausibility standards in federal procedural law do not require otherwise.

# ARGUMENT

## I. Edgewood's Claims Based on the Defunct Master Plan Are Moot or Barred by RLUIPA's Safe-Harbor Provision.

As Defendants explained in their opening brief, Edgewood's federal claims for the most part stem from the City's historical interpretation and enforcement of Edgewood's Master Plan, which the City repealed—<u>at Edgewood's request</u>—in 2020. There is no live controversy surrounding Edgewood's Master Plan, and Edgewood's claim for resulting damages is not only implausible but is also barred under RLUIPA's safe-harbor provision, 42 U.S.C. § 2000cc-3(e). (*See* Defs.' Br. at 6–8.)

Edgewood does not dispute that its federal claims largely focus on the defunct Master Plan, but it argues that "[a]ffirmative relief related to the Master Plan is available to Edgewood notwithstanding its repeal." (Edgewood Br. at 8.) And, according to Edgewood, some of its claims "are factually premised on the repeal of the Master Plan, not mooted by it." (*Id.* at 10.) Edgewood demands an order compelling Defendants to issue a lighting permit <u>pursuant to legal standards that had been in place in 2019</u>, when Edgewood first sought permit approval from the City. (*Id.* at 8.) As Edgewood apparently sees things, its RLUIPA claims will never be moot so long as Edgewood's field remains in the dark, without lights. (*Id.* at 8.) But that view cannot be squared with settled Seventh Circuit precedent. Federal law does not bestow vested property rights, as the decision in *Petra* powerfully illustrates.

In *Petra*, the plaintiff argued that the Village of Northbrook violated RLUIPA by wrongfully denying it a permit to operate a church in an industrial zone. *Petra*, 489 F.3d at 847. Petra purchased a warehouse and began operating it as a church but

3

had not obtained permit approvals to do so beforehand. At that time, Northbrook's zoning laws permitted membership organizations (including fraternities and political clubs) in industrial areas, but prohibited churches. Northbrook amended its ordinance provisions a few years later to ban <u>all</u> membership organizations in industrial zones, but the ordinance grandfathered existing organizations that had already been operating lawfully. *Id.* at 847–48.

Petra argued that under RLUIPA, "it obtained an indefeasible right to use the warehouse for a church," regardless of whether Northbrook's amendment prohibiting all new membership organizations was lawful and constitutional. *Petra*, 489 F.3d at 849. The Seventh Circuit disagreed, stating there is no support "for the proposition that the federal Constitution forbids a state that has prevented a use of property by means of an invalid (even an unconstitutional) enactment to continue to prevent that use by means of a valid one." *Id.* It held that such a "strange rule of estoppel" was not compelled by due process and would invade the sovereign role of States to determine the scope of property rights. *Id.* As for Petra's reliance on the previous ordinance, the court ruled that the church "knew or should have known that Northbrook could redo its ordinance to comply with the 'less than equal terms' provision of RLUIPA in one of two ways: by permitting religious organizations in the industrial zone, or by forbidding all membership organizations in the zone." *Id.*

As the court's ruling in *Petra* makes clear, Edgewood does not have a vested right under either federal law generally or RLUIPA specifically to obtain outdoor lights on its athletic field based on the legal standards that were in place when

4

Edgewood first submitted an application. And nothing in federal law prevented the City from amending its ordinance to require Edgewood and all other properties in Campus-Institutional zones without a master plan to seek conditional use approval before installing new outdoor lighting, even though other schools had previously obtained approval for outdoor lights under a different standard.

Edgewood also argues that its demand for damages under RLUIPA keeps its claims surrounding the defunct Master Plan alive. According to Edgewood, even though the City Attorney exempted Edgewood from enforcement, it "still suffered damages arising from the resulting loss of use of the field, from contesting the citations and the appeals process, and more." (Edgewood Br. at 9.) Edgewood correctly notes that a <u>viable</u> claim for damages constitutes a live controversy for purposes of Article III, *see Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health and Human Res.*, 532 U.S. 598, 608–09 (2001); but Edgewood's claim for damages under RLUIPA is not viable, because it is barred by 42 U.S.C. § 2000cc-3(e).

Edgewood concedes that RLUIPA's safe harbor "permits a governmental entity to avoid RLUIPA's 'preemptive force' when it 'chang[es] the policy or practice that results in a substantial burden on religious exercise,'" but it argues that "no corrective action was taken" here, because Edgewood still does not have glowing lights on its athletic field. (Edgewood Br. at 10.) According to Edgewood, "[h]ad the Master Plan repeal proceeded as the City Attorney promised and as Edgewood expected, the impediment created by the City's misinterpretation of it would have been removed and the February 2019 permit would have been released." (*Id.*) Again, however, that

5

argument falsely assumes Edgewood has an indefeasible right to outdoor lighting on its athletic field, contrary to the Seventh Circuit's teachings in *Petra*.

The City repealed Edgewood's Master Plan, <u>at Edgewood's request</u>, and exempted Edgewood from further enforcement. (Compl., ¶¶ 148, 156, 169, & Ex. K.) Those concrete steps resolved any alleged violations stemming from the City's interpretation or enforcement of Edgewood's Master Plan, and Edgewood may now play and host athletic contests on its field. The City also amended its zoning ordinance to require all properties in Campus-Institutional districts without a master plan to apply for conditional use approval before installing new outdoor lights. The ordinance is facially neutral and does not violate RLUIPA simply because Edgewood wishes the City had evaluated its March 2020 application under the old rules.

Edgewood contends that the cases construing the safe harbor under RLUIPA that Defendants cited in their opening brief are "inapposite to the present situation," because the violations in those cases had been "fully remedied." (Edgewood Br. at 13.) If by "fully remedied" Edgewood means that the plaintiffs in those cases got the relief they had sought (much like Edgewood's crusade for lights here), then Edgewood is simply mistaken. The plaintiff in *Petra* did not get the permit it sought to continue church services in an industrial warehouse. *Petra*, 489 F.3d at 849. The plaintiffs in *Civil Liberties for Urban Believers* sought a permit and damages purportedly caused by the burdensome application process the City had imposed but were denied both, based on the court's application of RLUIPA's safe-harbor provision.

6

The Seventh Circuit in *Civil Liberties for Urban Believers* held that the City's amendments to the ordinance, which put churches on equal footing with all others, "rendered RLUIPA's nondiscrimination provision inapplicable to this case" by operation of 42 U.S.C. § 2000cc-3(e) (which the court referred to as "RLUIPA's governmental discretion provision"). *Civil Liberties for Urban Believers*, 342 F.3d at 762. The court also expressly affirmed the district court's dismissal of plaintiffs' claim for damages under the previous version of ordinance as moot, noting that plaintiffs' damages argument "ignores the fact that the primary effect of the … amendments was to impose similar restrictions on non-religious assembly uses, rather than to relax restrictions on churches." *Id.* at 762 n.6. *See also id.* ("[T]he district court correctly concluded that Appellant's [pre-amendment damages] claims are moot."). The situation is no different here. With respect to Edgewood's RLUIPA claims stemming from the defunct Master Plan, the City eliminated any alleged violations by repealing the Master Plan, exempting Edgewood from enforcement, and placing Edgewood on equal footing with everyone else in Campus-Institutional districts. RLUIPA's safe harbor therefore applies.

Edgewood's efforts to distinguish or downplay the court's holding in *Civil Liberties for Urban Believers* fall short. Rather than grapple with the decision itself, Edgewood decrees that the portions that Defendants cited in their opening brief are "general statements" that apparently do not qualify as binding precedent. (Edgewood Br. at 14.) Edgewood instead invites this Court to follow what Edgewood deems are "better reasoned cases" (*id.* at 15), including *Pratt v. Ott*, No. 20-CV-171, 2021 WL

7

1212587 (M.D. Pa. Mar. 31, 2021); *Family Life Church v. City of Elgin*, No. 07-CV-217, 2007 WL 2790763 (N.D. Ill. Sept. 24, 2007); and *Christian Assembly Rios de Agua Viva v. City of Burbank*, 237 F. Supp. 3d 781 (N.D. Ill. 2015). But this Court is bound by Seventh Circuit precedent; it is not similarly compelled to follow district courts in Pennsylvania and Illinois. And it is certainly not up to Edgewood (or even this Court) to decide which cases are the best reasoned and then only follow those. Edgewood's insistence that "the RLUIPA safe harbor does not bar Edgewood's claims for unremedied prior harms, including damages and attorneys' fees" (Edgewood Br. at 14) disregards part of the court's <u>holding</u> in *Civil Liberties for Urban Believers*.

According to Edgewood, the "Seventh Circuit itself has largely abandoned *Civil Liberties for Urban Believers*, to the extent it articulated a 'substantial burden' standard that has since been superseded by the 'much easier to satisfy' standard the Supreme Court articulated . . . . ." (*Id.* at 15 n.5 (citations omitted).) That is a red herring. Substantial-burden analysis may have evolved since the court's ruling, but construction of RLUIPA's safe harbor has not; and Defendants do not rely on the decision for the substantial-burden standard. *Civil Liberties for Urban Believers* is the only time the Seventh Circuit construed 42 U.S.C. § 2000cc-3(e), and the Supreme Court has not yet ruled on the issue. The court's holding that the statute bars liability and damages for resolved alleged violations remains good law and controls here.

Edgewood also accuses Defendants of ignoring its conclusory allegations that Defendants' unlawful behavior was cumulative, and Edgewood presumes that Defendants did so "likely because RLUIPA jurisprudence explicitly recognizes that

8

substantial burden claims can be based on the cumulative impact of various land use regulations and decisions." (Edgewood Br. at 12.) According to Edgewood, the jurisprudence surrounding cumulative substantial burdens "precludes dismissal and is inconsistent with Defendants' implicit (and unsupported) position that one discriminatory and burdensome action can displace prior discriminatory and burdensome actions for purposes of RLUIPA's safe harbor provision." (*Id.* at 13.) Edgewood misstates both Defendants' position and the jurisprudence.

Defendants acknowledge that Edgewood has adequately alleged a narrow federal claim that the City's denial of the conditional use permit substantially burdens Edgewood's religious exercise without a compelling government justification. (*Id.* at 7.) But *Civil Liberties for Urban Believers* controls and requires dismissal of Edgewood's RLUIPA claims based on Edgewood's defunct Master Plan. (Defs.' Br. at 9–10.) The City undertook the same steps that were taken in *Civil Liberties for Urban Believers*—it amended the law so that all properties are on equal footing with respect to zoning criteria—and this Court must follow that decision. Because the safe harbor applies, the City "may avoid the preemptive force" of RLUIPA, meaning that Defendants can no longer be held liable under RLUIPA for those alleged violations that have been resolved. Edgewood cannot bootstrap other claims that are precluded under 42 U.S.C. § 2000cc-3(e) by arguing that they should be considered as part of some cumulative burden analysis. That argument cannot be squared with the statutory text, and the decisions Edgewood cites do not support it.

For example, in *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531 (7th Cir. 2009), the Seventh Circuit "assume[d] that determining whether a burden is substantial (and if so whether it is nevertheless justifiable) is ordinarily an issue of fact" and observed that "substantiality is a relative term—whether a given burden is substantial depends on its magnitude in relation to the needs and resources of the religious organization in question." *Id.* at 539 (emphasis added). The court did not even reference RLUIPA's safe harbor, 42 U.S.C. § 2000cc-3(e). In *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 95 (1st Cir. 2013), the court recognized that different burdens "may cumulate to become substantial." Again, there is no discussion or reference to RLUIPA's safe harbor, nor is there any reasoning that would support Edgewood's position here. And to the extent there is a conflict between the safe-harbor provision in RLUIPA and the developing judge-made law with respect to cumulative burdens, the statute wins that battle every time.

Edgewood argues that "RLUIPA's safe harbor provision cannot apply when the governmental entity does not actually remedy the violation, but instead merely adopts a new discriminatory mechanism." (Edgewood Br. at 12.) The "discriminatory mechanism" to which Edgewood apparently refers is the City's conditional use process, but Edgewood does not (and cannot) allege that the ordinance is facially invalid. Such a challenge would fail, because the ordinance by its terms puts all properties in Campus-Institutional districts on equal footing. Edgewood may have alleged facts sufficient to state a narrow as-applied federal claim that the permit denial substantially burdened its religious exercise (a claim the City denies on the

merits), but that does not allow Edgewood to pursue claims for alleged RLUIPA violations that have been resolved.[1]

## II. The Comparators Edgewood Identifies are Not Similarly Situated as a Matter of Law.

Edgewood concedes that, in order for its RLUIPA equal-terms claim to survive dismissal, it must "allege facts that plausibly show the existence of a similarly situated secular comparator" that Defendants treated more favorably than Edgewood. (Edgewood Br. at 17 (citation omitted).) Edgewood also accepts that two entities are "similarly situated" as a legal matter only if they are subject to the same accepted zoning criteria. (*Id.* at 16 (citing *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010).) Edgewood nevertheless contends that both Madison Memorial High School and the University of Wisconsin-Madison are 'plausible' comparators because they, like Edgewood, are currently zoned in Campus-Institutional districts. (*Id.* at 2, 19–20.) But Edgewood disregards that different standards were in place when the City approved lights at those schools as compared to the conditional use process that Edgewood faced in March 2020. Therefore, under *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006), Memorial and UW-Madison are invalid comparators as a matter of law.

---

[1] As Defendants noted in their opening brief, the only claim that could possibly be construed as a facial challenge is Edgewood's allegation that the enactment of the conditional use amendment "constitutes unlawful gerrymandering in violation of RLUIPA's equal terms provision." (Compl, ¶ 205.) But that assertion cannot be squared with the text of the ordinance itself. Edgewood's argument appears to be based on allegedly discriminatory motives of individual government actors, which cannot be imputed to the City. (Defs. Br. at 11 n.5 & 16–17.) Edgewood continues to advance its allegations of individual discriminatory motive but fails to address Defendants' legal points at all, thereby conceding them. *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (holding that failure to address argument constitutes concession). As summarized again in Section III, Edgewood cannot pursue claims against the City, including a religious gerrymandering claim, based only on allegations of alleged discriminatory motives of individual government actors.

Edgewood accuses Defendants of "ignoring the allegations" and relying on a "counterfactual scenario predicated on unsupported and extraneous statements." (Edgewood Br. at 2.) And Edgewood argues that "Defendants' historical efforts to manufacture arbitrary and ill-founded distinctions between Edgewood and other institutions is not a defense, but rather a principal basis for Edgewood's claims." (*Id.* at 18.) That is nonsense. Edgewood has admitted all of the essential facts in its Complaint and brief. This Court need not look any further than Edgewood's own allegations to see that Edgewood cannot prevail as a matter of law on its equal-terms claim. That claim must therefore be dismissed. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (holding that plaintiff pleads itself out of court by alleging facts demonstrating no entitlement to relief as a matter of law).

In March 2020, after repeal of Edgewood's Master Plan, Edgewood applied for outdoor lights under the conditional use ordinance enacted five months earlier. (Compl., ¶¶ 169; 171–72.) Edgewood admits that the conditional use standards are different than the rules in place when Memorial and UW-Madison sought lights. (Compl., ¶ 160; Edgewood Br. at 4–5.) As Edgewood itself explains, approval had been given "under the prior, less restrictive administrative process" and were therefore "'grandfathered in' and not subject to the more rigorous and burdensome process" that Edgewood's request faced. (Compl., ¶ 161; Edgewood Br. at 5 n.1.)[2]

---

[2] Edgewood peppers its Complaint and brief with accusations of improper motive against Defendant Evers, alleging in this instance that Alder Evers "designed" the conditional use process specifically for Edgewood. (*See also, e.g.*, Edgewood Br. at 4, 11, 22.) Alder Evers' personal motivations are irrelevant to Edgewood's claims against Defendants, as Defendants already explained and summarize again in Section III. Those allegations should be stricken and the arguments based on them should be rejected.

In August 2018, when the City approved Memorial's request for lights, Memorial had no voluntary master plan to govern development on its property. (Compl., ¶¶ 79, 142 & Ex. I.) Memorial's application was therefore restricted only by the general ordinance provisions applicable to Campus-Institutional zoning at the time. UW-Madison submitted its Master Plan for approval in 2017 to govern future development on campus; but the City actually had approved much of the development that Edgewood describes in its Complaint well before the Master Plan took effect. Most important, however, both Memorial's and UW-Madison's requests were approved before the City enacted its conditional use ordinance in October 2019, which guided the City's review of Edgewood's lighting application submitted in March 2020.

Those facts, which Edgewood admits in its Complaint, show that Memorial and UW-Madison are invalid comparators as a matter of law under *Vision Church*. In that case, the Seventh Circuit held that there was no unequal treatment because the entities that plaintiff had identified as comparators "were subject to different standards because of the year in which their [permit] applications were considered." *Vision Church*, 468 F.3d at 1003. The same is true here. The fact that the City applied different criteria to evaluate Edgewood's conditional use application than the standards it had used in previous years when evaluating requests from Memorial and UW-Madison is simply not unequal treatment under RLUIPA. *See also Signs for Jesus v. Town of Pembroke*, 230 F. Supp. 3d 49, (D.N.H. 2017) ("The Church is ineligible for grandfathering based on chronology, not religious identity.") (citing *Vision Church*, 468 F.3d at 1003), *aff'd*, 977 F.3d 93 (1st Cir. 2020).

Edgewood notably fails to address *Vision Church* in its brief, except to observe that it was decided after summary judgment, not on a motion to dismiss. (Edgewood Br. at 20 & n.8.) But Defendants are not "asking this Court to discount well-pleaded facts and instead grant a summary judgment-style dismissal," as Edgewood contends. (Edgewood Br. at 20.) Instead, Defendants argue that Edgewood cannot stand on its conclusory assertion that "Edgewood is no different from the nonreligious high schools or the University of Wisconsin from the standpoint of the accepted zoning criteria of the Campus-Institutional District" (Compl., ¶ 194; Edgewood Br. at 20), when the admitted facts demonstrate otherwise. A court presumes on a motion to dismiss that all plausible facts and inferences are true as alleged, but that does not extend to legal conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). And Edgewood's legal assertion that Memorial and UW-Madison are similarly situated comparators is entirely foreclosed by the Seventh Circuit's holding in *Vision Church* based on the facts as Edgewood alleges them to be. Dismissal is therefore warranted.

Finally, to resolve some of Edgewood's apparent confusion, the City does not argue that Edgewood must provide a "detailed comparison that establishes unequal treatment in comparison to a nonreligious user," nor does it suggest that Edgewood must "point to any evidence" at this stage of the litigation. (Edgewood Br. at 19.) Indeed, Defendants acknowledged in their opening brief that "a plaintiff need not demonstrate disparate treatment between two institutions similarly situated in all relevant respects," as the Seventh Circuit observed in *Vision Church*, 468 F.3d at 1003. (Defs.' Br. at 14.) That said, Defendants do argue that the unequal-terms claim

14

should be dismissed with prejudice, because Edgewood cannot cure the defect through amendment. *See, e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 808 (7th Cir. 2010) (affirming dismissal with prejudice where plaintiff "has not suggested any way that she might amend her pleading to cure the deficiency"). As Edgewood must concede, no other institution in a Campus-Institutional district has gone through the conditional use process apart from Edgewood. Therefore, no similarly situated comparator exists, and it would be futile to allow further amendment on this claim.

### III.  The Individual Defendants Should Be Dismissed.

As Defendants explained in their opening brief, there is no relief this Court may order that requires Individual Defendants to remain as participants in this lawsuit. (Defs.' Br. at 16.) Edgewood counters only that Defendants failed "to consider the mandamus remedies requested to rectify Defendants' state law claims." (Edgewood Br. at 21.) According to Edgewood, Defendants Tucker, Hank, and Evers are all necessary parties "to preserve and effectuate the requested mandamus remedies for its state law claims." (*Id.*) Edgewood's argument misses the mark.

Edgewood argues that it properly named Defendant Evers as a party in his official capacity because of Edgewood's request "to issue the conditional use permit that Alder Evers first subjected Edgewood to through his legislative gerrymandering, then led the successful campaign to deny." (Edgewood Br. at 22.) That argument fails on several levels. First, Alder Evers is only one member of the 20-person City of Madison Common Council; he has no authority to issue Edgewood a permit by himself any more than another member of the Council. Second, individual motivations cannot

15

be imputed to the government, as Defendants explained in their opening brief (*see* Defs.' Br. at 15–17) and summarize again below. Third, even assuming that Edgewood were able to establish the right to some remedy, it could obtain that remedy from the City itself—or if not the City, then the Common Council, the Zoning Board of Appeals, or the Plan Commission (the other government entities that Edgewood sued). The case that Edgewood cites—*Hartland Sportsmen's Club, Inc. v. City of Delafield*, 2020 WI App 44, ¶ 20, 393 Wis. 2d 496, 947 N.W.2d 214—simply illustrates that point, since no individual defendants were named as defendants and yet plaintiffs obtained the mandamus relief they sought against the city itself.

The same holds true for Edgewood's claims against Defendants Tucker and Hank. Edgewood argues that it is entitled to lights under the 2019 standards in place and argue that Defendants Tucker and Hank "violated RLUIPA by refusing to issue Edgewood its light permit," notwithstanding allegedly satisfying the criteria. (Edgewood Br. at 22.) And Edgewood argues that Defendants Tucker and Hank "violated Edgewood's vested rights by failing to issue Edgewood a lighting permit after it had filed a fully compliant application in 2019." (*Id.*) The first argument is precluded by *Petra*, as discussed above in Section I. The second argument fails on the merits but even assuming otherwise, mandamus relief would be available against the City and the other government defendants that Edgewood named.

Official-capacity suits serve a legitimate function in our judicial system, as Defendants acknowledged in their opening brief. (*See* Defs.' Br. at 14–15.) But Edgewood's attempt to employ that legal fiction here is misplaced and has no legal

16

support. Edgewood did not sue Defendants Tucker, Hank, or Evers in their personal or individual capacities, and Edgewood cannot impute their individual motives to the City for purposes of assigning liability, as the Supreme Court and the Seventh Circuit have repeatedly held. (Defs.' Br. at 16–17.) Edgewood fails to address those arguments at all and disregards the cases on which those arguments are based. Therefore, Edgewood concedes the matter. Edgewood cannot pursue a claim against the City seeking to declare the entire conditional use process invalid based solely on allegations of improper motivations of one government official. *See, e.g., McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 515 U.S. 844, 862 (2005); *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 828 (7th Cir. 1999), and the other cases Defendants cited in their opening brief on this point.

## IV. This Court Should Strike All Immaterial Allegations and Require Edgewood to Submit an Amended Complaint.

Defendants argue that Edgewood's 344-paragraph, 66-page Complaint (not including the hundreds of pages of exhibits and attachments) did not faithfully comply with the federal pleading rules, and provided particular examples of allegations that Defendants maintain are immaterial and unnecessarily burdensome. Edgewood disagrees that any allegations are immaterial or excessive and demands that Defendants identify every allegation that should be stricken. Edgewood also argues that its fulsome Complaint is necessary to satisfy the plausibility standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that Defendants have failed to show prejudice. (Edgewood Br. at 23–28.) Edgewood's arguments are unavailing.

17

Defendants maintain that it is unnecessary to catalog and document all of the extraneous and unnecessary allegations in Edgewood's Complaint, and that doing so would undermine the point of brevity and efficiency that underlies Defendants' motion. The cases that Defendants identified show that excessive length can make a complaint unintelligible and therefore in violation of Rule 8, including complaints that were significantly shorter than Edgewood's Complaint in this case. Edgewood does not address those cases.

The United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Iqbal* undoubtedly changed the pleading landscape, in that a plaintiff must ensure that it has adequately alleged facts that demonstrate a plausible right to relief. But Edgewood has taken things to the other extreme by including extensive irrelevant details (such as consecration of the football field and the views of sports and religion by the former Saint Pope John Paul II) that respectfully do not comport with the plain-statement rule or state a claim in simple, concise, and direct terms, as the federal rules require.

The prejudice to Defendants and this Court that would follow by allowing this excessive complaint to move forward is self-evident. The federal rules recognize that proportionality and reason should guide discovery and litigation. *See generally* Fed. R. Civ. P. 26(b)(1). That is especially true when there is potential recovery of attorney's fees, where litigants must remain mindful of cost and efficiency concerns, and courts must step in when necessary to ensure that litigation is not misused. Under these circumstances, this Court is within its discretion to require Edgewood to

replead. *See Lindell v. Houser*, 442 F.3d 1033, 1034 n.1 (7th Cir. 2006); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court dismiss all of Edgewood's asserted federal claims (Counts I–IV), except, with respect to Count II, the narrow claim that the City's final decision denying Edgewood a conditional use permit violates the substantial burden provision of RLUIPA. The Individual Defendants should also be dismissed entirely from the lawsuit. And regardless of how this Court rules on the motion to dismiss, it should strike immaterial allegations and order Edgewood to file an amended complaint.

DATE:	May 20, 2021

        Respectfully submitted,

        */s/ Barry J. Blonien*
        Sarah A. Zylstra, State Bar No. 1033159
        Barry J. Blonien, State Bar No. 1078848
        BOARDMAN & CLARK LLP
        1 South Pinckney Street, Suite 410
        P. O. Box 927
        Madison, WI 53701-0927
        Telephone: (608) 257-9521
        Facsimile: (608) 283-1709
        szylstra@boardmanclark.com
        bblonien@boardmanclark.com
        *Attorneys for Defendants*