IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC., <br>     Plaintiff, <br><br> v. <br><br> CITY OF MADISON, WISCONSIN; CITY OF MADISON ZONING BOARD OF APPEALS; CITY OF MADISON PLAN COMMISSION; CITY OF MADISON COMMON COUNCIL; Zoning Administrator MATTHEW TUCKER, in his official capacity; Director of Madison's Building Inspection Division GEORGE HANK, in his official capacity; Alder TAG EVERS, in his official capacity, <br>     Defendants. | Case No. 3:21-CV-118-wmc |

## MOTION TO EXTEND DISCOVERY STAY

All Defendants, through counsel, move this Court for an order pursuant to F.R.C.P. 16(b)(4) and the Court's inherent power under F.R.C.P. 26 to stay discovery until the Court rules on Defendant's Partial Motion to Dismiss and Motion to Strike (dkt. 12) for the reasons stated below. Undersigned counsel met and conferred with Plaintiff as to this motion, and Plaintiff has indicated that it opposes the motion.

### BACKGROUND

On February 19, 2021, Plaintiff filed its complaint in this matter. Plaintiff's complaint is sixty-six pages long and contains 344 paragraphs of allegations. (*See*

*generally* Compl.) Though this case purportedly concerns whether the City of Madison violated Edgewood's statutory and constitutional rights when it denied Edgewood High School's application for a conditional use permit to install certain lights at a football stadium, Plaintiffs raise allegations ranging from discussion of the Dominican Sisters of Sinsinawa that founded the school to alleged statements of various popes on the topic of the intersection of sports and Christianity going back over 100 years. (*See, e.g.*, Compl., ¶¶ 7, 21–22; *see also* Zylstra Dec., Ex. A, Requests No. 16-19.)

In response to the redundant, immaterial, and boundless allegations in Edgewood's complaint, Defendants brought a Partial Motion to Dismiss and Motion to Strike. (Dkt. 12.) Pursuant to its power under F.R.C.P. 26, the Court stayed discovery for the sooner of twelve weeks, or until it issued a decision on Defendants' motion to dismiss. The twelve-week stay has recently ended. On November 2, 2021, Plaintiff served discovery on Defendants. Plaintiff's double down on their boundless allegations, with discovery requests that span 168 requests for admission and 58 requests for documents, many of which contain no time limit and seek documents extending back years. (*See generally* Declaration of Sarah A. Zylstra, Exs. A, B, C.)

As a result, the need for the stay is as relevant as ever: most of the numerous factual issues raised in the complaint and in discovery relate to claims that Defendants assert are moot or otherwise fail to state a claim. (*See generally* Compl., Zylstra Dec., Exs. A, B, C; Dkt. 12, 13.) If the Court grants Defendants' motion, most of Edgewood's causes of action will be dismissed, and Edgewood will be

2

required to submit a new, narrower, and more streamlined complaint along with more tailored discovery requests. The focus will be on Edgewood's request for a conditional use permit, which Edgewood submitted on March 11, 2020, and the City's denial of that permit (*see* Compl., ¶172). To allow discovery to continue on Plaintiff's unmanageable number of claims and factual allegations on outdated matters would disserve the interests of judicial economy. Moreover, Defendants should not be forced to investigate or respond to immaterial allegations that span back 100 years. (*See* Compl., ¶¶6-7, 21-24; Request for Admission 1, 8.)

## DEFENDANTS' MOTION TO DISMISS

Edgewood asserted four federal claims and three state-law claims against several City of Madison government individuals and entities after the Common Council denied Edgewood a permit for outdoor lighting on its athletic field. Most of Plaintiff's claims are tied to the Edgewood Master Plan—or more specifically, to the City's interpretation and enforcement of it. For example, Edgewood alleges disparate treatment under its Master Plan as compared to other area schools, and argues that the City's interpretation violated the equal-terms and substantial-burden provisions of the Religious Land Use and Institutionalized Persons Act (RLUIPA) (Counts I and II). (Compl., ¶¶ 200–04, 212–19.) Edgewood's First Amendment claim (Count III) is also based on the City's interpretation of Edgewood's Master Plan to prohibit Edgewood from holding athletic contests on its field. (*Id.*, ¶¶ 247–56.) The same is true for Edgewood's void-for-vagueness claim

3

(Count IV), which asserts that the term "athletic contests" in Edgewood's Master Plan was unconstitutionally vague. (*Id.*, ¶¶ 260–65.)

As Defendants explain in their brief in support of their motion to dismiss, none of those claims present a live controversy: The City repealed Edgewood's Master Plan in 2020, <u>at Edgewood's request</u>. (Compl., ¶¶ 156, 169.) Even before repeal, the City permitted Edgewood to continue hosting athletic contests on its field in contravention of the plain terms of Edgewood's Master Plan, ensuring that Edgewood faced no actual or threatened injury while Edgewood's applications worked their way through the process. (*Id.*, ¶ 148 & Ex. K.) There is no controversy requiring this Court to construe the repealed Master Plan, and Edgewood's assertion that it suffered cognizable injuries from the City's interpretation is implausible, because the City Attorney exempted Edgewood from enforcement. (*See id.*) Claims based on the City's prior construction or enforcement of Edgewood's repealed Master Plan are therefore moot. *See, e.g.*, *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (noting that declaratory judgment claim was moot where "relief . . . would have no impact on the parties to th[e] suit"). For this reason, Defendants moved for dismissal of Counts I, III, and IV of Edgewood's complaint entirely, and Paragraphs 213(a)–(e), 214–17, 219–25, 228–32, 235, and 238–241 of Count II. (The remaining paragraphs arguably pertain to Edgewood's narrow claim challenging the conditional use denial as a substantial burden under RLUIPA.)

Moreover, even setting aside the constitutional doctrine of mootness, at minimum, Edgewood's RLUIPA claims based on its repealed Master Plan (all of Count I and all of the aforementioned Paragraphs of Count II) are barred by the Act's safe-harbor provision, 42 U.S.C. § 2000cc-3(e), which allows a government to avoid liability by changing its policy or practice or otherwise eliminating the alleged violation, as the Seventh Circuit held in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (2003). Understanding the basis for Defendants' partial motion to dismiss is important to explain why a further stay of discovery is warranted.

## REASONS SUPPORTING THE MOTION

The "court has discretion under Federal Rule of Civil Procedure 26(c) and (d) to limit the scope of discovery or to order that discovery be conducted in a particular sequence." *Holton v. Wisconsin*, No. 07-C-0402, 2008 WL 191258, at *1 (E.D. Wis. Jan. 22, 2008). "Limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005). Though, "[t]he mere filing of the motion does not automatically stay discovery . . . such stays are granted with substantial frequency." *Id*. "Indeed, some districts have a rule that prohibits discovery during the pendency of such a motion, and in some circuits, district courts have been advised to resolve a motion to dismiss before allowing discovery." *Id*.

Relevant factors for the Court to consider are whether "limit[ing] the scope of discovery [will] secure a just, speedy, and inexpensive determination" of the action.

5

*Oneida Nation v. Vill. of Hobart, Wisconsin*, No. 16-C-1217, 2017 WL 3025932, at *2 (E.D. Wis. Apr. 19, 2017) (quotation mark omitted).

Extending the discovery stay will facilitate the just, speedy, and inexpensive resolution of the present case. If the Court grants Defendants' Partial Motion to Dismiss and Motion to Strike after extending the stay, the parties will be able to avoid significant time and expense pursuing discovery on moot and failed claims as well as irrelevant and obscure factual issues. *See Dillinger, L.L.C. v. Elec. Arts, Inc.*, No. 1:09-CV-01236-SEB-JM, 2010 WL 1945739, at *1 (S.D. Ind. May 11, 2010) (granting discovery stay because "if the motion to dismiss succeeds, then all discovery costs would have been unnecessary" and noting that this was to the benefit of both parties). The majority of Plaintiff's discovery requests relate to either Edgewood's Master Plan, (*see e.g.* Zylstra Dec., Ex. A, Requests No. 41-48, 97-103, Ex. C, Requests No. 13, 16, 18, 19, 22-24, 26, 27, 30); Plaintiff's unequal treatment claims, (*see e.g. id.* at, Ex. A, Requests No. 37-39, 64-88, 93, 94, 145, 146); Plaintiff's claims against the individual defendants, (*see id.* at, Ex. A, Requests No. 49-55, 58, Ex. B. Interrogatory No. 1), or some combination thereof. All of these are subject to the Defendants' partial motion to dismiss.

The discovery on these matters is far ranging in scope and is aimed at the very claims the Defendants seek dismissal. For example, the first request for admission seeks admission of facts from 1881 and another seeks admission of occurrences "for nearly a hundred years." (*See e.g.* Zylstra Dec., Ex. A, Requests Nos. 1, 8). Plaintiff also seek Defendants' admission to a host of matters such as the

6

priority that modern culture places on sports, and what matters to parents. (*See e.g.* Zylstra Dec., Ex. A, Request Nos. 24; *see also* Request Nos. 17-28). Plaintiff's interrogatories fare no better. For example, they seek (again with no time limit) "identify all emails used by you, including personal emails, from which you sent or received emails related to or referencing Edgewood's use of its athletic field" and Edgewood contends that it has used its athletic field for nearly one hundred years (*See e.g.* Zylstra Dec., Ex. B, Interrog. No. 1; Ex. A, Request No. 8). Plaintiff also requests Defendants "[i]dentify all permitted uses of Edgewood's athletic field during the effective dates of Edgewood's Master Plan." (*See e.g.* Zylstra Dec., Ex. B, Interrog. No. 9).

As for the requests for documents, they include requests for "all documents relating to Edgewood's Campus Master Plan," and all records of communications between any City agents or officials "relating in any way to this case, Edgewood's 2014 Master Plan, and Edgewood's use of its athletic field to host athletic contests" (Zylstra Dec., Ex. C, Requests No. 22, 30). Plaintiffs also request "all documents relating to zoning violations related to a school's hosting an athletic contest on its property" (without any time limit) and "all documents that relate to the uses of, or activities which have occurred on or in, the athletic fields and facilities located on the campuses of the City's four public high schools, Breese Stevens, and the University of Wisconsin from 2013 to the present." (Zylstra Dec., Ex. C, Requests Nos. 43, 41). The examples given are non-exhaustive, and the cited requests would

7

be rendered moot if the Court rules for Defendants on their Partial Motion to Dismiss and Motion to Strike.

In turn, without a stay, Defendants would arguably need to spend significant time and money serving discovery on Plaintiff's wide-ranging allegations if only to protect their interests, which discovery would also be a burden on the Plaintiff. *See Dillinger, L.L.C.*, 2010 WL 1945739, at *1; *C.f. Eng. v. Cowell*, 117 F.R.D. 132, 136 (C.D. Ill. 1986) (stay of discovery warranted where "vast bulk of Plaintiff's discovery requests [were] either irrelevant, duplicative or attempts at discovering information previously denied in a prior motion to compel").

## THE NECESSITY OF A STAY

Should the Court decide not to grant this motion, Defendants will meet and confer with Plaintiff over its overly broad and unduly burdensome requests and if no compromise can be reached, Defendant will file a motion for a protective order. However, a protective order will not solve the underlying issue. Even if a protective order were entered limiting the time period of the requests, for example, it still would involve the City searching for and producing voluminous records and spending significant time and money to comply to requests related to claims that may be dismissed, as discussed above. The stay of discovery pending Defendant's Partial Motion to Dismiss and Motion to Strike would do far more to promote judicial efficiency, saving the parties and the Court the burden entailed by sifting through and litigating over Plaintiff's exhaustive list of requests one by one. Granting Defendants Partial Motion to Dismiss and Motion to Strike would narrow the issues for trial and allow the Plaintiffs to craft more narrowly tailored requests.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant its motion to extend the stay on discovery, until the Court issues its decision on Defendants' pending Partial Motion to Dismiss and Motion to Strike.

DATED: November 12, 2021.

    Respectfully submitted,

    BOARDMAN & CLARK LLP
    By:

    */s/ Sarah A. Zylstra*
    Sarah A. Zylstra, State Bar No. 1033159
    Evan B. Tenebruso, State Bar No. 1085063
    Tanner G. Jean-Louis, State Bar No. 1122401
    1 South Pinckney Street, Suite 410
    P. O. Box 927
    Madison, WI 53701-0927
    Telephone: (608) 257-9521
    Facsimile: (608) 283-1709
    szylstra@boardmanclark.com
    etenebruso@boardmanclark.com
    tjeanlouis@boardmanclark.com

    *Attorneys for Defendants the City of Madison, Wisconsin, the City of Madison Zoning Board of Appeals, City of Madison Plan Commission, City of Madison Common Council, Matthew Tucker, George Hank, and Tag Evers*