UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,                          Case No. 3:21-cv-00118

            Plaintiff,

   v.

CITY OF MADISON, WISCONSIN, *et al.*,

            Defendants.

---

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S
REQUESTS FOR ADMISSION TO ALL DEFENDANTS**

---

TO:   City of Madison, Wisconsin
       City of Madison Zoning Board of Appeals
       City of Madison Plan Commission
       City of Madison Common Council
       Zoning Administrator Matthew Tucker
       Director George Hank
       Alder Tag Evers
       c/o Attorney Sarah A. Zylstra
       Boardman & Clark LLP
       1 South Pinckney Street, Suite 410
       Madison, WI  53701

     Plaintiff Edgewood High School of the Sacred Heart, Inc. ("Edgewood"), by their

attorneys, Godfrey & Kahn, S.C., hereby requests that Defendants, in accordance with the

Definitions and Instructions set forth below, answer under oath each of the following Requests

for Admission, pursuant to Federal Rules of Civil Procedure 26 and 36.  Responses to these

Requests for Admission ("Requests") shall be served upon Plaintiff's counsel by email or at the

offices of Godfrey & Kahn, S.C., One East Main St., Suite 500 Madison, WI 53703,  no later

than thirty (30) days from service thereof.

**EXHIBIT
A**

## DEFINITIONS AND INSTRUCTIONS

1.     <u>Relating to, Relate to, Relates to</u>:  The terms "relating to," "relate to" and "relates to" are defined broadly as in any way concerning, comprising, containing, evidencing, mentioning, respecting, bearing on, referring to, being connected with, pertaining to, reflecting upon or resulting from, in whole or in part, directly or indirectly, the stated subject matter.

2.     <u>Plaintiff, Edgewood</u>:  The terms "Plaintiff" or "Edgewood" mean Edgewood High School of the Sacred Heart, Inc., in its individual capacity, its agents, employees, representatives, and/or all other persons and/or entitles acting for or on its behalf.

3.     <u>Defendants, You, Your</u>:  The terms "Defendants," "You," or "Your," mean City of Madison, City of Madison Zoning Board of Appeals, City of Madison Plan Commission, City of Madison Common Council, Zoning Administrator Matthew Tucker, in his official capacity, Director of Madison's Building Inspection Division George Hank, in his official capacity, and Alder Tag Evers, in his official capacity, their agents, employees, representatives, and/or all other persons and/or entities acting for or on their behalf.

4.     As used herein, the singular includes the plural, and the plural includes the singular.  Words of one gender include words of all gender, including the neuter.

5.     If you rely on a privilege as a basis for not providing a response to any Request in whole or in part, the basis for your claim of privilege must be described in sufficient detail in a privilege log to permit the court to adjudicate the validity of the claim.  The privilege log should identify the applicable Request and the basis for the claim of privilege.

6.     The following Requests are continuing in nature.  You must supplement any response if you obtain information or documents from which you know that your response was incorrect or incomplete when made, or that the response is no longer true; failure to amend the

response and/or produce subsequently discovered documents is in substance a knowing concealment.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Admit that Edgewood is a Catholic high school founded in 1881 by the Congregation of the Dominican Sisters of Sinsinawa.

**RESPONSE:**

**REQUEST NO. 2:** Admit that Edgewood is organized as a Wisconsin nonprofit corporation.

**RESPONSE:**

**REQUEST NO. 3:** Admit that Edgewood is a "religious institution" under RLUIPA, 42 U.S.C § 2000cc, *et seq.*

**RESPONSE:**

**REQUEST NO. 4:** Admit that Defendant City of Madison (the "City") is a municipality in Dane County, Wisconsin.

**RESPONSE:**

**REQUEST NO. 5:** Admit that the City is a "government" under RLUIPA, 42 U.S.C. § 2000cc-5(4)(A).

**RESPONSE:**

**REQUEST NO. 6:** Admit that the City is responsible for its ordinances as well as the acts, omissions, and interpretations of its zoning administrator, agents, boards, commissions, and councils.

**RESPONSE:**

**REQUEST NO. 7:** Admit that all claims raised by Edgewood are timely and in compliance with tolling agreements executed between the City and Edgewood.

**RESPONSE:**

**REQUEST NO. 8:**    Admit that for nearly a hundred years, Edgewood has lawfully and openly used its track and field to host athletic contests and other activities.

**RESPONSE:**

**REQUEST NO. 9:**    Admit that Edgewood hosted multiple football games and soccer games on the improved athletic field during the 2018-19 academic year.

**RESPONSE:**

**REQUEST NO. 10:**  Admit that lacrosse matches have been regular events on Edgewood's field since 2015.

**RESPONSE:**

**REQUEST NO. 11:**  Admit that since 1999, Edgewood has hosted numerous track meets (including parochial meets and meets for youth on the West Side of the City) on its field.

**RESPONSE:**

**REQUEST NO. 12:**  Admit that a 2015 renovation of Edgewood's field included installation of a new scoreboard

**RESPONSE:**

**REQUEST NO. 13:**  Admit that scoreboards are used for tracking scores and game-related information during athletic contests.

**RESPONSE:**

**REQUEST NO. 14:**  Admit that electrical permits were applied for and granted as part of the 2015 field renovation.

**RESPONSE:**

**REQUEST NO. 15:**  Admit that the Goodman Athletic Complex is Edgewood's only field.

**RESPONSE:**

**REQUEST NO. 16:**   Admit that Edgewood describes its mission as one educating "the whole student for a life of learning, service, personal responsibility through a rigorous academic curriculum that embraces the Sinsinawa Dominican values of Truth, Compassion, Justice, Partnership and Community."

**RESPONSE:**

**REQUEST NO. 17:**   Admit that Edgewood's educational mission is in furtherance of the sincerely held religious beliefs of the Dominican Sisters of Sinsinawa and of Edgewood.

**RESPONSE:**

**REQUEST NO. 18:**   Admit that athletics is a primary way in which Edgewood accomplishes its Catholic mission to educate the whole student, teach personal responsibility, and instill and promote the Sinsinawa Dominican values.

**RESPONSE:**

**REQUEST NO. 19:**   Admit that Edgewood's role for athletics at its school reflects and furthers the Catholic Church's views and teachings on the importance of athletics in modern society.

**RESPONSE:**

**REQUEST NO. 20:**   Admit that athletics is a primary way some Edgewood students connect with each other.

**RESPONSE:**

**REQUEST NO. 21:**   Admit that athletics is a primary way some Edgewood students experience the Dominican value of community.

**RESPONSE:**

**REQUEST NO. 22:**  Admit that athletics is a primary way some Edgewood students experience the Catholic values of honesty, respect, sacrifice, and humility.

**RESPONSE:**

**REQUEST NO. 23:**  Admit that enrollment is critical to Edgewood's religious mission.

**RESPONSE:**

**REQUEST NO. 24:**  Admit that modern culture places a priority on sports.

**RESPONSE:**

**REQUEST NO. 25:**  Admit that athletic offerings and opportunities are critical components of Edgewood's ability to attract new students.

**RESPONSE:**

**REQUEST NO. 26:**  Admit that the facilities Edgewood has to offer prospective students, including athletic facilities and its track and field, are a significant factor in its ability to attract and retain students in furtherance of its mission.

**RESPONSE:**

**REQUEST NO. 27:**  Admit that quality facilities are an important factor in prospective students' and parents' decision-making process in selecting a school.

**RESPONSE:**

**REQUEST NO. 28:**  Admit that Edgewood's athletics program is important for Edgewood's ability to reach and attract students from underserved communities.

**RESPONSE:**

**REQUEST NO. 29:**  Admit that the absence of an on-campus field with lighting hurts Edgewood in a competitive education market.

**RESPONSE:**

**REQUEST NO. 30:**  Admit that the absence of an on-campus field with lighting puts Edgewood at a competitive disadvantage relative to other schools.

**RESPONSE:**

**REQUEST NO. 31:**  Admit that the absence of an on-campus field with lighting burdens its religious mission to reach as many students as possible with its teachings and values.

**RESPONSE:**

**REQUEST NO. 32:**  Admit that Edgewood's field can also be used for community outreach, evangelism, fellowship, assembly, prayer and liturgical worship.

**RESPONSE:**

**REQUEST NO. 33:**  Admit that without lighting for its field Edgewood is effectively restricted from all activities after daylight hours.

**RESPONSE:**

**REQUEST NO. 34:**  Admit that the City adopted its current Zoning Code on October 26, 2011, with an effective date of January 2, 2013.

**RESPONSE:**

**REQUEST NO. 35:**  Admit that prior to 2013, the City zoned Edgewood as a residential district.

**RESPONSE:**

**REQUEST NO. 36:**  Admit that as of January 2, 2013, as part of the mapping of the new Zoning Code, the City zoned Edgewood as a Campus-Institutional District under Section 28.097, which remains its zoning classification today.

**RESPONSE:**

**REQUEST NO. 37:**  Admit that the City also rezoned all of the following institutions into Campus-Institutional Districts:  the University of Wisconsin-Madison, Madison Area

Technical College, the Madison Metropolitan School District (which includes James Madison Memorial High School, Madison East High School, Madison West High School, and Madison La Follette High School) and Mendota Mental Health Campus.

**RESPONSE:**

**REQUEST NO. 38:**  Admit that the list of permitted "secondary uses" for Campus-Institutional Districts included "indoor and outdoor sports and recreational facilities"; "places of worship"; "stadiums, auditoriums, and arenas, open or enclosed"; and "other uses related to the institution's primary mission."

**RESPONSE:**

**REQUEST NO. 39:**  Admit that the ordinances allowed schools in Campus-Institutional Districts to use their property, by right and without seeking a permit or other approval, as outdoor sports and recreational facilities, outdoor stadiums, outdoor arenas, and for other uses related to the institution's primary mission.

**RESPONSE:**

**REQUEST NO. 40:**  Admit that at all relevant times, Edgewood is and was entitled to use its athletic field for athletic contests as well as any other uses related to the school's primary mission as secondary uses and as a matter of law under Madison's Zoning Code.

**RESPONSE:**

**REQUEST NO. 41:**  Admit that master plans govern the development of buildings.

**RESPONSE:**

**REQUEST NO. 42:**  Admit that master plans do not govern an institution's existing or future uses of or activities on the property.

**RESPONSE:**

**REQUEST NO. 43:**  Admit that master plans do not govern or regulate placement of light poles on property.

**RESPONSE:**

**REQUEST NO. 44:**  Admit that of the City's Campus-Institutional Districts, only Edgewood and the University of Wisconsin-Madison adopted a master plan.

**RESPONSE:**

**REQUEST NO. 45:**  Admit that none of the City's four public high schools have submitted a master plan for approval.

**RESPONSE:**

**REQUEST NO. 46:**  Admit that in January 2014, Edgewood voluntarily submitted its Master Plan to the City.

**RESPONSE:**

**REQUEST NO. 47:**  Admit that listing all activities performed on Edgewood's athletic field was not a prerequisite for those activities to continue to be allowed during the term of the Master Plan.

**RESPONSE:**

**REQUEST NO. 48:**  Admit that Edgewood's approved Master Plan referenced the new, rebuilt track and athletic field.

**RESPONSE:**

**REQUEST NO. 49:**  Admit that Defendant Tucker advised Edgewood that he had become "aware of the extensive use of the [Edgewood] athletic field" after he attended an October 17, 2018 "neighborhood meeting."

**RESPONSE:**

**REQUEST NO. 50:**  Admit that the attached Exhibit A is a true and correct copy of an email from Zoning Administrator Tucker, dated Oct. 26, 2018.

**RESPONSE:**

**REQUEST NO. 51:**  Admit that Defendant Tucker notified Edgewood that he believed its use of its athletic field for "athletic contests" was "outside of the allowances" under Edgewood's Master Plan.

**RESPONSE:**

**REQUEST NO. 52:**  Admit that according to Defendant Tucker Edgewood could only use its field for "team practices and physical education classes."

**RESPONSE:**

**REQUEST NO. 53:**  Admit that neither Defendant Tucker nor the City has ever defined "athletic contests."

**RESPONSE:**

**REQUEST NO. 54:**  Admit the City has never taken the position that a Madison public high school is restricted in its ability to host an athletic contest on one of its fields.

**RESPONSE:**

**REQUEST NO. 55:**  Admit that according to Defendant Tucker's interpretation and application of the City's land use regulations, Edgewood was also prohibited from using its field for such uses as an outdoor Mass or prayer service, a graduation ceremony, and community outreach events (such as the long-running Monroe Street Farmer's Market).

**RESPONSE:**

**REQUEST NO. 56:**  Admit that the City's Zoning Code does not identify whether indoor or outdoor sports and recreation facilities, stadiums, auditoriums, or arenas may be used to host team practices, physical education classes, or athletic contests.

**RESPONSE:**

**REQUEST NO. 57:**  Admit that the City's Zoning Code has never distinguished between uses during day or night.

**RESPONSE:**

**REQUEST NO. 58:**  Admit that Defendant Tucker identified any "programming" outside of "team practices and physical education classes" to be prohibited on Edgewood's athletic field.

**RESPONSE:**

**REQUEST NO. 59:**  Admit that based on Defendant Tucker's interpretation of Edgewood's Master Plan, the City took enforcement action against Edgewood.

**RESPONSE:**

**REQUEST NO. 60:**  Admit that a City inspector was assigned to surveil Edgewood's girls' soccer games.

**RESPONSE:**

**REQUEST NO. 61:**  Admit that Exhibit B hereto is a true and correct copy of an "Official Notice" against Edgewood dated April 1, 2019

**RESPONSE:**

**REQUEST NO. 62:**  Admit that Exhibit C hereto is a true and correct copy of a second "Official Notice" against Edgewood dated May 15, 2019.

**RESPONSE:**

**REQUEST NO. 63:**  Admit that pursuant to M.G.O. § 28.207 (Penalties), Edgewood was subject to a fine of up to $1,000 for each violation in the Official Notices received.

**RESPONSE:**

**REQUEST NO. 64:**  Admit that none of the other schools zoned as a Campus-Institutional District, with or without a master plan, have received a zoning violation or were otherwise alleged to be in violation of the City's Zoning Code for hosting an athletic contest on their athletic fields.

**RESPONSE:**

**REQUEST NO. 65:**  Admit that Edgewood is the only Madison high school to have ever received a zoning code violation for playing a game on its property.

**RESPONSE:**

**REQUEST NO. 66:**  Admit that the University of Wisconsin ("UW") submitted a Master Plan under the Campus Institutional District Ordinances in 2017.

**RESPONSE:**

**REQUEST NO. 67:**  Admit that the City approved the University of Wisconsin's Master Plan in 2017.

**RESPONSE:**

**REQUEST NO. 68:**  Admit that the UW has numerous facilities and open spaces dedicated to recreation, athletics, and athletic contests.

**RESPONSE:**

**REQUEST NO. 69:**  Admit that the UW Master Plan does not state that Nielsen Stadium is to be used for tennis competitions, tennis practices, or tennis summer camps.

**RESPONSE:**

**REQUEST NO. 70:**  Admit that the UW has used the Nielsen Stadium for tennis competitions, tennis practices or tennis summer camps both before and after the effective date of the UW Master Plan.

**RESPONSE:**

**REQUEST NO. 71:**  Admit that the UW Master Plan does not state that the Natatorium is to be used for swimming, diving, or weight lifting competitions.

**RESPONSE:**

**REQUEST NO. 72:**  Admit that the Natatorium has been used for swimming, diving and weight lifting competitions both before and after the effective date of the UW Master Plan.

**RESPONSE:**

**REQUEST NO. 73:**  Admit that the UW Master Plan does not state that Goodman Softball Complex is to be used for softball games.

**RESPONSE:**

**REQUEST NO. 74:**  Admit that the Goodman Softball Complex, has been used for softball games both before and after the effective date of the UW Master Plan.

**RESPONSE:**

**REQUEST NO. 75:**  Admit that the Master Plan does not state that the McClimon Track Facility is to be used for track & field meets or team practices.

**RESPONSE:**

**REQUEST NO. 76:**  Admit that the McClimon Track Facility has been used for track and field meets and team practices both before and after the effective date of the UW Master Plan.

**RESPONSE:**

**REQUEST NO. 77:**  Admit that the UW Master Plan does not identify or describe the University Bay Fields.

**RESPONSE:**

**REQUEST NO. 78:**  Admit that the UW Master Plan does not identify or describe the Cole Recreation Area.

**RESPONSE:**

**REQUEST NO. 79:**  Admit that the University Bay Fields and the Cole Recreation Area both host athletic contests.

**RESPONSE:**

**REQUEST NO. 80:**  Admit that neither Defendant Tucker nor the City has never contacted the UW to inform it that the uses of any of its athletic fields or facilities are "outside of the allowances" of its Master Plan.

**RESPONSE:**

**REQUEST NO. 81:**  Admit that neither Defendant Tucker nor the City has ever interpreted and applied the City's land use regulations to limit UW facilities to be used exclusively for the uses specified in its Master Plan.

**RESPONSE:**

**REQUEST NO. 82:**  Admit that a City inspector has never been tasked with surveilling the activities at UW's facilities to assess whether they comply with the uses described in the UW's Master Plan.

**RESPONSE:**

**REQUEST NO. 83:**  Admit that the City has never issued any Official Notices or violations to the UW in relation to uses of its facilities not complying with the uses described in its Master Plan.

**RESPONSE:**

**REQUEST NO. 84:**  Admit that the reference to the Nielsen Outdoor Tennis Court Expansion in the UW's Master Plan does not disclose the University's plan to construct outdoor lights.

**RESPONSE:**

**REQUEST NO. 85:**  Admit that as part of the Nielsen Outdoor Tennis Court Expansion, the UW constructed outdoor lights.

**RESPONSE:**

**REQUEST NO. 86:**  Admit that the UW's Master Plan did not disclose the location or height of any of the light poles for the Nielsen Outdoor Tennis Court Expansion.

**RESPONSE:**

**REQUEST NO. 87:**  Admit that the City approved the University of Wisconsin's site plan review application for the Nielsen Outdoor Tennis Court Expansion project without any requirement that the UW amend its Master Plan.

**RESPONSE:**

**REQUEST NO. 88:**  Admit that the Nielsen Outdoor Tennis Court facility since its completion has hosted athletic contests under outdoor lights.

**RESPONSE:**

**REQUEST NO. 89:**  Admit that on February 22, 2019, Edgewood submitted to the City an application for outdoor lighting only for its athletic field.

**RESPONSE:**

**REQUEST NO. 90:**  Admit that the City reviewed Edgewood's February 22, 2019 application for compliance with zoning and lighting ordinances.

**RESPONSE:**

**REQUEST NO. 91:**  Admit that Edgewood's February 22, 2019 lighting permit application met all objective criteria in the City's outdoor lighting ordinance under M.G.O. § 10.085 *et seq*.

**RESPONSE:**

**REQUEST NO. 92:**  Admit that Exhibit D hereto is a true and correct copy of the City Lighting Permit for Madison Memorial High School.

**RESPONSE:**

**REQUEST NO. 93:**  Admit that the lighting application filed by Edgewood in 2019 was in all respects similar to the 2018 lighting applications filed by Madison Memorial High School.

**RESPONSE:**

**REQUEST NO. 94:**  Admit the 2018 lighting application by Madison Memorial High School was approved by the City within 14 days of the application.

**RESPONSE:**

**REQUEST NO. 95:**  Admit that on February 27, 2019 and March 1, 2019, the City's Building Inspection Division reviewed and approved Edgewood's February 22, 2019 lighting application.

**RESPONSE:**

**REQUEST NO. 96:**  Admit that Exhibit E hereto is a true and correct copy of the City of Madison Site Plan Verification for Edgewood's lighting application.

**RESPONSE:**

**REQUEST NO. 97:**  Admit that after the Building Inspection Division's approval, the City withheld the lighting permits.

**RESPONSE:**

**REQUEST NO. 98:**  Admit that the City withheld the permits claiming that the lights could be used for hosting "athletic contests" on Edgewood's athletic field.

**RESPONSE:**

**REQUEST NO. 99:**  Admit that the City withheld the lighting permits claiming that allowing Edgewood to install the lights would violate Edgewood's Master Plan because the Master Plan did not specifically identify lighting for the field.

**RESPONSE:**

**REQUEST NO. 100:** Admit that the Master Plan ordinance provisions do not override the City's Outdoor Lighting Ordinance for building projects, whether included or not in a Master Plan.

**RESPONSE:**

**REQUEST NO. 101:** Admit that the Master Plan ordinance provisions do not preclude applications for outdoor lights to facilitate already-permitted uses.

**RESPONSE:**

**REQUEST NO. 102:** Admit that with respect to Edgewood's athletic field, light poles are ancillary structures to an already permitted use.

**RESPONSE:**

**REQUEST NO. 103:** Admit that the Defendant City of Madison Zoning Board of Appeals voted to uphold the City's citations to Edgewood for using its field to host girls' soccer and track competitions.

**RESPONSE:**

**REQUEST NO. 104:** Admit that Exhibit F hereto is a true and correct copy of a July 12, 2019 letter from then-City Attorney Michael May.

**RESPONSE:**

**REQUEST NO. 105:** Admit that City Attorney May stated: "We invite Edgewood to file to terminate its Master Plan and return to the standard CI zoning, which would place it on equal footing with other high schools."

**RESPONSE:**

**REQUEST NO. 106:** Admit Exhibit G hereto is a true and correct copy of an email from then-Assistant Attorney John Strange dated July 17, 2019.

**RESPONSE:**

**REQUEST NO. 107:** Admit that then-Assistant City Attorney John Strange outlined to Edgewood's counsel three options by which Edgewood could "legally play games and install lights at its field."

**RESPONSE:**

**REQUEST NO. 108:** Admit that at the time of then-Assistant City Attorney John Strange's communication "[a]s a consequence of repealing its Master Plan, Edgewood would revert to the standard regulations of the CI District in the zoning code, which would allow games and lights at the field."

**RESPONSE:**

**REQUEST NO. 109:** Admit that on July 29, 2019, Edgewood applied to repeal its Master Plan.

**RESPONSE:**

**REQUEST NO. 110:** Admit that Edgewood's application to repeal its Master Plan was fully compliant with the City's ordinances.

**RESPONSE:**

**REQUEST NO. 111:** Admit that Edgewood's application to repeal its Master Plan was eventually approved by the City of Madison Common Council without changes.

**RESPONSE:**

**REQUEST NO. 112:** Admit that on August 26, 2019, the Defendant City Plan Commission voted to delay a vote on approval of Edgewood's Master Plan repeal.

**RESPONSE:**

**REQUEST NO. 113:** Admit that the purpose of this delay was to permit Madison Alder Tag Evers to present the City of Madison Common Council with a proposed change to the ordinances that would govern Edgewood's lighting applications.

**RESPONSE:**

**REQUEST NO. 114:** Admit prior to the Evers proposal, outdoor lighting applications for Campus-Institutional Districts were reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 115:** Admit that Madison Memorial's 2018 outdoor lighting applications were reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 116:** Admit that the UW's outdoor lighting applications for its Nielsen Outdoor Tennis Courts were reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 117:** Admit that under the Evers proposal, Edgewood's outdoor lighting application would no longer be reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 118:** Admit that the Evers proposal upon adoption made it so that Edgewood, upon repeal of its Master Plan, would not "revert to the standard regulations of the CI

District in the zoning code, which would allow games and lights at the field," as previously represented by then-Assistant City Attorney John Strange.

**RESPONSE:**

**REQUEST NO. 119:** Admit that under the Evers proposal a modification of a primary or secondary use by a Campus-Institutional District, if outdoors, would require a conditional use permit.  M.G.O. § 28.097(2)(d) (Am. by ORD-19-00069, 10-10-19).

**RESPONSE:**

**REQUEST NO. 120:** Admit that lighting applications granted previously to public institutions zoned as Campus-Institutional that had been granted under the prior, less restrictive administrative process were "grandfathered in" and not subject to the Evers proposal.

**RESPONSE:**

**REQUEST NO. 121:** Admit that Evers sought to have approval of his amended ordinance occur before approval of the repeal of Edgewood's Master Plan.

**RESPONSE:**

**REQUEST NO. 122:** Admit that Evers sought to ensure that the new ordinance would be applied to Edgewood upon the repeal of its Master Plan.

**RESPONSE:**

**REQUEST NO. 123:** Admit that Evers sought to subject Edgewood's post-Master Plan repeal lighting applications to a more difficult standard than the standard used for prior Campus-Institutional District outdoor lighting applicants.

**RESPONSE:**

**REQUEST NO. 124:** Admit that at a public hearing on August 26, 2019 Evers stated: "Public institutions have a built in incentive to pay attention to the public because they are dependent on public support, private institutions must be careful not to be seen as being willing

to impose their will on their neighbors because to do so tears at the fabric of civil society and undermines our shared values of commitment to community and partnership."

**RESPONSE:**

**REQUEST NO. 125:** Admit that the City voted to consider Evers's ordinance ahead of the Master Plan repeal.

**RESPONSE:**

**REQUEST NO. 126:** Admit that the City shared Evers's goal to subject Edgewood's post-Master Plan repeal lighting applications to a more difficult standard than the standard used for prior Campus Institutional District outdoor lighting applicants.

**RESPONSE:**

**REQUEST NO. 127:** Admit that outdoor lighting applications for non-Campus-Institutional Districts are still reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 128:** Admit that but for Evers's ordinance, Edgewood's post-Master Plan repeal lighting applications would have been approved under the objective, administrative approval process under Chapter 10 for Outdoor Lighting.

**RESPONSE:**

**REQUEST NO. 129:** Admit that Ald. Shiva Bidar, 5th District, said the reason for the delay to Edgewood's Master Plan repeal vote was to allow another proposal to get through the City of Madison Plan Commission and City of Madison Common Council first.

**RESPONSE:**

**REQUEST NO. 130:** Admit that the proposal Ald. Bidar referenced was the Evers proposal to change the process by which Edgewood's lighting application was reviewed.

**RESPONSE:**

**REQUEST NO. 131:** Admit that Exhibit H hereto is a true and correct copy of a September 20, 2019 letter confirming an application for outdoor lights by Edgewood.

**RESPONSE:**

**REQUEST NO. 132:** Admit that on September 30, 2019 Edgewood submitted a new light application under the then-existing administrative approval process under Chapter 10 and prior to Evers's amended ordinance being approved.

**RESPONSE:**

**REQUEST NO. 133:** Admit that Defendant Tucker and the City took no action on Edgewood's September 30, 2019 light application.

**RESPONSE:**

**REQUEST NO. 134:** Admit that Defendant Tucker flagged Edgewood's September 30, 2019 lighting application as "reject / redraft" while noting the application's supposed non-compliance with Edgewood's Master Plan.

**RESPONSE:**

**REQUEST NO. 135:** Admit that Defendant Tucker and City provided no notice to Edgewood or opportunity to cure any defects in the September 30, 2019 lighting application.

**RESPONSE:**

**REQUEST NO. 136:** Admit that Evers's amended ordinance, ORD-19-00069, passed on October 1, 2019.

**RESPONSE:**

**REQUEST NO. 137:** Admit that Evers's ordinance enacted a new conditional use permit process for outdoor lighting by Campus-Institutional District applicants like Edgewood.

**RESPONSE:**

**REQUEST NO. 138:** Admit that Edgewood became the first and only conditional use applicant for outdoor lighting in the City's history.

**RESPONSE:**

**REQUEST NO. 139:** Admit that Exhibit I hereto is a true and correct copy of a Staff Recommendation dated May 11, 2020.

**RESPONSE:**

**REQUEST NO. 140:** Admit that Edgewood submitted a conditional use application for outdoor lighting under Evers amended ordinance on March 11, 2020.

**RESPONSE:**

**REQUEST NO. 141:** Admit that on May 11, 2020 the City of Madison's Planning Division staff issued a report finding that installation of Edgewood's lights would meet the requirements of M.G.O. § 28.183(6), with conditions.

**RESPONSE:**

**REQUEST NO. 142:** Admit that the City of Madison's Planning Division staff recommended to the Defendant City of Madison Plan Commission that Edgewood's conditional use application be granted, subject to those conditions.

**RESPONSE:**

**REQUEST NO. 143:** Admit that Edgewood agreed to comply with the conditions recommended in the May 11, 2020 Staff Recommendation.

**RESPONSE:**

**REQUEST NO. 144:** Admit that the staff's recommended conditions in their May 11, 2020 Staff Recommendation are more restrictive than what other Madison high schools, UW or Madison College are allowed to do on their fields.

**RESPONSE:**

**REQUEST NO. 145:** Admit that the UW and Madison College rent their fields for commercial gain.

**RESPONSE:**

**REQUEST NO. 146:** Admit that the City has approved outdoor lighting for City-owned recreational and athletic areas that it leases to the City's public high schools.

**RESPONSE:**

**REQUEST NO. 147:** Admit that the Plan Commission ignored the Staff Recommendation.

**RESPONSE:**

**REQUEST NO. 148:** Admit that the City of Madison Plan Commission denied Edgewood's conditional use permit for outdoor lighting.

**RESPONSE:**

**REQUEST NO. 149:** Admit that Exhibit J hereto is a true and correct copy of the minutes from the City of Madison Plan Commission meeting in which Edgewood's conditional use permit was denied.

**RESPONSE:**

**REQUEST NO. 150:** Admit that the City of Madison Plan Commission failed to identify any substantial evidence supporting its denial.

**RESPONSE:**

**REQUEST NO. 151:** Admit that requested lighting complied with City's objective standards for outdoor lighting.

**RESPONSE:**

**REQUEST NO. 152:** Admit that Edgewood's conditional use permit application involved no new uses being approved.

**RESPONSE:**

**REQUEST NO. 153:** Admit that all existing permitted uses for Edgewood's field complied with the City's noise ordinances.

**RESPONSE:**

**REQUEST NO. 154:** Admit that comparable facilities near or adjacent to neighborhoods have similar outdoor lighting (with amplified sound) with no discernible negative impact on neighboring residents.

**RESPONSE:**

**REQUEST NO. 155:** Admit that Olbrich Park, Warner Park and Duane F. Bowman Park are city parks adjacent to residentially zoned neighborhoods leased to high schools for athletic events without restriction on light or sound.

**RESPONSE:**

**REQUEST NO. 156:** Admit that Vilas Park, Westmoreland Park and Reynolds Park have similar outdoor lighting and amplified sound with no discernible negative impact on neighboring residents.

**RESPONSE:**

**REQUEST NO. 157:** Admit that on January 20, 2021, the City of Madison Common Council voted to uphold the City of Madison Plan Commission's denial of the conditional use permit.

**RESPONSE:**

**REQUEST NO. 158:** Admit that the City of Madison Common Council cited no "substantial evidence" in affirming and upholding the denial of Edgewood's conditional use permit.

**RESPONSE:**

**REQUEST NO. 159:** Admit that Edgewood submitted to the City an application for outdoor lighting only for its athletic field on or about February 22, 2019.

**RESPONSE:**

**REQUEST NO. 160:** Admit that at the time Edgewood submitted its lighting application in February 2019, Edgewood could use its field for team practices.

**RESPONSE:**

**REQUEST NO. 161:** Admit that at the time Edgewood submitted its lighting application in February 2019, Edgewood had a right to use its field for team practices after daylight hours.

**RESPONSE:**

**REQUEST NO. 162:** Admit that at the time Edgewood submitted its lighting application in February 2019, the City could have approved Edgewood's lighting application to allow Edgewood to use its field for team practices after daylight hours.

**RESPONSE:**

**REQUEST NO. 163:** Admit that Edgewood submitted to the City a new application for outdoor lighting only for its athletic field on or about September 20, 2019.

**RESPONSE:**

**REQUEST NO. 164:** Admit that at the time Edgewood submitted its lighting application in September 2019, Edgewood could use its field for team practices.

**RESPONSE:**

**REQUEST NO. 165:** Admit that at the time Edgewood submitted its lighting application in September 2019, Edgewood had a right to use its field for team practices after daylight hours.

**RESPONSE:**

**REQUEST NO. 166:** Admit that at the time Edgewood submitted its lighting application in September 2019, the City could have approved Edgewood's lighting application to allow Edgewood to use its field for team practices after daylight hours.

**RESPONSE:**

**REQUEST NO. 167:** Admit that other than Edgewood's February 22, 2019 lighting application, the City has never before or after denied an outdoor lighting application based on the use for which the lights were being sought.

**RESPONSE:**

**REQUEST NO. 168:** Admit that the City did not issue a written notice of denial for Edgewood's February 2019 lighting application or Edgewood's September 2019 lighting application.

**RESPONSE:**


Dated this 2nd day of November, 2021

Respectfully Submitted,

GODFREY & KAHN, S.C.

*s/Paul Covaleski*
Mike Wittenwyler (SBN 1025895)
Jonathan Ingrisano (SBN 1033977)
Paul Covaleski (SBN 1117236)
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701
Phone: 608-257-3911
Fax: 608-257-0609
mwittenw@gklaw.com
jingrisa@gklaw.com
pcovaleski@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State St., Suite 509
Rockford, IL 61101
(815) 986-8050 (telephone)
(313) 859-8888 (facsimile)
nsterett@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

25988201.4

# EXHIBIT A

**Edgewood Requests for Admission**

--------- Forwarded message ---------
From: **Tucker, Matthew** <MTucker@cityofmadison.com>
Date: Fri, Oct 26, 2018 at 11:32 AM
Subject: Edgewood Highschool Athletic Field Use and the Adopted Master Plan
To: Brian Munson <bmunson@vandewalle.com>, Elliott, Michael <michael.elliott@edgewoodhs.org>
Cc: Parks, Timothy <TParks@cityofmadison.com>, Stouder, Heather <HStouder@cityofmadison.com>,
Arntsen, Allen <district13@cityofmadison.com>


Brian, Mike-  The purpose of this message is to follow-up on our conversation earlier this week about the
current usage of the athletic field, as that use relates to the adopted master plan for the Edgewood campus.


After the neighborhood meeting of Wednesday October 17, I became aware of the extensive use of the athletic
field at the northwest corner of the site.  I also closely reviewed the adopted Master Plan, to determine how
language in the master plan relates to the athletic field usage.   Specifically, in the "Open Space Plan" (section
3.8) the approve master plan identifies the athletics field to be used for "team practices, physical education
practices."  The lack of any further language in this section, or any other language in sections of the adopted
Master Plan, leads me to the interpretation that current programing and usage of the field is operating outside of
the allowances of the adopted Master Plan.


If you wish to continue the current level of programming on the field for 2019 and beyond, I believe that you
will need to pursue an amendment to the approved Master Plan.  I would be happy to talk with you, Alder
Arntsen, and the neighborhood liaison committee, should you choose to explore a Master Plan amendment to
expand the use of the athletic field.  If you decide to continue with the current idea for a stadium expansion at
the athletic field, you will also need to include language in this amendment that would incorporate allowing the
current level of usage of the field to be allowable and continue.

The master plan does include some language contemplating future needs for the institution and its users. In the "Future Needs of Campus Institutions" (section 3.1) subsection on Athletics, reference is made to the lack of athletics and fitness space and to the difficulty of obtaining sites for off-campus and on-campus recreation. This section includes the language that "Multiple solutions, both on-and off-campus, will be necessary to meet these needs." This language does not explore the broader neighborhood or community needs that Edgewood appears to be attempting to address with the usage of the athletic field, however, the absence of reference to the broader community would not prohibit the broader discussion on expanded use of the facility for other community users from taking place.

Let me know if you have any questions.

**Matt Tucker**

Zoning Administrator

Building Inspection Division



**215 Martin Luther King jr Blvd. STE 017**

Madison, Wisconsin 53701-2984

Telephone:  608 266 4569

Email: mtucker@cityofmadison.com

www.cityofmadison.com/bi

--
Michael Elliott
President
Edgewood High School of the Sacred Heart
2219 Monroe St. Madison, WI 53711
(608) 257-1023 x 103
edgewoodhs.org  | facebook.com/EdgewoodHS

The preceding email message may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

---

This e-mail and any attachments may contain privileged or confidential information. This e-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this e-mail, you are hereby notified that any copying, distribution, dissemination or action taken in relation to the contents of this e-mail and any of its attachments is strictly prohibited and may be unlawful. If you have received this e-mail in error, please notify the sender immediately and permanently delete the original e-mail and destroy any copies or printouts of this e-mail as well as any attachments. To the extent representations are made herein concerning matters of a client of the firm, be advised that such representations are not those of the client and do not purport to bind them.

# EXHIBIT B

**Edgewood Requests for Admission**

**From:** Building Inspection Division
215 Martin Luther King Jr. Blvd.
P.O. Box 2984
Madison, Wisconsin 53701-2984

# City of Madison
# OFFICIAL NOTICE

**Notice:** An inspection discloses that certain sections of the City Ordinances are being violated.

**Property Located At:**
2219 MONROE STREET

**OWNER:**
EDGEWOOD HIGH SCHOOL OF
THE SACRED HEART
2219 MONROE ST
MADISON WI 53711

| Item No. | Violating Section No. | CORRECTIONS REQUIRED |
|---|---|---|

## COMPLAINT

1.   28.097

Discontinue holding athletic contests on the athletic field at 2219 Monroe Street.

The Campus Master Plan states that the athletic field is used for team practices and physical education classes. The Master Plan can be amended pursuant to MGO 28.097(10). Edgewood could accomplish this by proceeding with the Campus Master Plan amendment application currently on file with the Planning Division.

Compliance with the above cited sections of the municipal code shall be on a continuous basis.

This notice does not start any legal action. However, if the violations are not corrected by the due date listed below, the Building Inspection Division may issue citation(s), and/or refer the situation to the City Attorney's Office.

The Building Inspection Division is willing to answer questions pertaining to this official notice in order to assist you in correcting the violations. If you have questions or problems, it is important to contact me before the due date at the number listed below.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THE MADISON GENERAL ORDINANCES REQUIRE THAT A FEE OF $75.00 BE CHARGED FOR REINSPECTIONS THAT DO NOT RESULT IN FULL COMPLIANCE, INCLUDING REINSPECTIONS RESULTING IN AN EXTENDED DUE DATE. ATTEMPTED REINSPECTIONS (NO ENTRY) ARE BILLED AT $35.00 EACH.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The inspector can be reached by phone at 608-266-4560 or by email at jmoskowitz@cityofmadison.com
Inspected by:      Jacob Moskowitz          On:    3-27-2019          Date Issued:   4-1-2019
The violations shall be corrected on or before:          April 2, 2019

Code Enforcement Officer:

Any person violating any provision of the City Ordinances enforced by the Building Inspection Division is subject to the penalties provided by the appropriate Ordinance violated. ALL APPLICATIONS FOR APPEAL OF CHAPTERS 17, 18, 19, 27, 28, 29, 30 and 31 SHALL BE SUBMITTED TO THE BUILDING INSPECTION DIRECTOR IN WRITING WITHIN FIFTEEN (15) DAYS OF POSTMARK ON OFFICIAL NOTICE ENVELOPE. Appeal information may be obtained by calling 266-4551.

# EXHIBIT C

**Edgewood Requests for Admission**

AJK            Page 1            CB2019-091-02749

From: Building Inspection Division       **City of Madison**       Notice: An inspection discloses that
        215 Martin Luther King Jr. Blvd.                                     certain sections of the City
        P.O. Box 2984                 **OFFICIAL NOTICE**                 Ordinances are being violated.
        Madison, Wisconsin 53701-2984

**Property Located At:**                               **OWNER:**
       2219 MONROE STREET                     EDGEWOOD HIGH SCHOOL OF
                                            THE SACRED HEART
                                            2219 MONROE ST
                                            MADISON WI 53711

| Item No. | Violating Section No. | CORRECTIONS REQUIRED |
|---|---|---|

**COMPLAINT**

1.   28.097      On 3/27/19, 3/29/19, 4/2/19, 4/16/19, 4/23/19, 4/30/19, and 5/7/19 our office observed athletic contests taking place on the athletic field at 2219 Monroe Street. Discontinue holding athletic contests on the athletic field at 2219 Monroe Street.

                     The Campus Master Plan states that the athletic field is used for team practices and physical education classes. The Master Plan can be amended pursuant to MGO 28.097(10). Edgewood could accomplish this by proceeding with the Campus Master Plan amendment application currently on file with the Planning Division.

                     Compliance with the above cited sections of the municipal code shall be on a continuous basis.

                     This notice does not start any legal action. However, if the violations are not corrected by the due date listed below, the Building Inspection Division may issue citation(s), and/or refer the situation to the City Attorney's Office.

                     The Building Inspection Division is willing to answer questions pertaining to this official notice in order to assist you in correcting the violations. <u>If you have questions or problems, it is important to contact me before the due date at the number listed below.</u>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
           **THE MADISON GENERAL ORDINANCES REQUIRE THAT A FEE OF $75.00 BE CHARGED FOR REINSPECTIONS THAT DO NOT RESULT IN FULL COMPLIANCE, INCLUDING REINSPECTIONS RESULTING IN AN EXTENDED DUE DATE, ATTEMPTED REINSPECTIONS (NO ENTRY) ARE BILLED AT $35.00 EACH.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**The inspector can be reached by phone at 608-266-4560 or by email at jmoskowitz@cityofmadison.com**
Inspected by:    Jacob Moskowitz       On:    5-7-2019       Date Issued:   5-15-2019
**The violations shall be corrected on or before:**          May 22, 2019

Code Enforcement Officer: _____

Any person violating any provision of the City Ordinances enforced by the Building Inspection Division is subject to the penalties provided by the appropriate Ordinance violated. ALL APPLICATIONS FOR APPEAL OF CHAPTERS 17, 18, 19, 27, 28, 29, 30 and 31 SHALL BE SUBMITTED TO THE BUILDING INSPECTION DIRECTOR IN WRITING WITHIN FIFTEEN (15) DAYS OF POSTMARK ON OFFICIAL NOTICE ENVELOPE. Appeal information may be obtained by calling 266-4551.

# EXHIBIT D

**Edgewood Requests for Admission**



## City of Madison

# ELECTRICAL
## Permit

**Building Inspection Division**
126 South Hamilton St
P.O. Box 2984
Madison WI 53701-2984
Phone (608)266-4551
Fax (608)266-6377

| Property located at: **201 S GAMMON RD** | Permit date: **08/13/2018** | Permit number: **BLDELE-2018-11184** |
|---|---|---|
| Owner name **MADISON METRO SCHOOL DIST** | Owner mailing address **545 W DAYTON ST** **MADISON, WI 53703** | |

| Contractor Name: **FORWARD ELECTRIC INC** | License holder number **252204** |
|---|---|
| Contractor Mailing address **6909 RAYWOOD RD** **MADISON, WI 53713** | Phone **(608) 221-1945** **jennifer@forwardelectric.com** |

This permit is issued for execution of the work indicated. It is hereby agreed that all work will be installed in accordance with all City of Madison Ordinances and department rules relating to such work.

TYPE OF BUILDING: **COMMERCIAL**
PROJECT DESC: **NEW LIGHTING FOR FOOTBALL AND BASEBALL FIELDS**
NATURE OF JOB: **REPAIR/ALTERATION**

---

EXISTING BUILDING

(Number of Openings Added) (Includes: Convenience Outlets, Switches, Fixture, Fixed Appliances, etc.)
Minimum fee $15.00
$2.00 per opening for the first 20 openings, plus
$1.50 per opening for the additional 21-40 openings, plus
$1.00 per opening for the additional 41-99 openings, plus
$0.50 per opening for all openings over 100.

**FEES:**

| Item Description | Units | Fee |
|---|---|---|
| Number of Openings Added or Moved | 15 | 30.00 |

TOTAL INSPECTION FEES: 30.00

**Inspector Assigned**

James Ruetten
608-266-4554
jruetten@cityofmadison.com





## City of Madison

**ELECTRICAL**

**Permit**

**Building Inspection Division**
126 South Hamilton St
P.O. Box 2984
Madison WI 53701-2984
Phone (608)266-4551
Fax (608)266-6377

| Property located at: | Permit date: | Permit number: |
|---|---|---|
| 201 S GAMMON RD | 08/13/2018 | BLDELE-2018-11184 |

| Owner name | Owner mailing address |
|---|---|
| MADISON METRO SCHOOL DIST | 545 W DAYTON ST<br>MADISON, WI 53703 |

| Contractor Name: | License holder number |
|---|---|
| FORWARD ELECTRIC INC | 252204 |
| Contractor Mailing address | Phone |
| 6909 RAYWOOD RD | (608) 221-1945 |

 **City of Madison Site Plan Verification**

**PROJECT: LNDSPR-2018-00101**   **Address:** 201 S Gammon RD   **Current Revision #: 0**

| | |
|---|---|
| Submitted by: | Forward Electric |
| Contact: | Jenn Luhman<br>(608) 221-1945<br>jennifer@forwardelectric.com |
| Project Type: | Permitted Use Site Plan Review |
| Description: | Updating lighting for Memorial High School's football and baseball fields |
| Status: | Approved |
| Revision History: | 0 |

| Review | Status | Reviewer | Reviewed |
|---|---|---|---|
| Lighting Review | Approved | Steve Rewey | Aug 2 2018 |
| Urban Design Commission Review | Approved | Janine Glaeser | Aug 6 2018 |
| Zoning Review | Approved | Christina Thiele | Jul 31 2018 |

**URBAN DESIGN COMMISSION**

**Note**                                        **Comment Date: 08/06/2018**

Building Plan review team to confirm no light trespass and full light cut-off fixtures.

**ZONING**

**Supplement Accepted**                          **Comment Date: 07/30/2018**

Submit $50 site plan review fee. Checks are made out to City of Madison.

**Supplement Accepted**                          **Comment Date: 07/30/2018**

Per Section 28.186(4)(b), the property owner or operator is required to bring the property into compliance with all elements of the approved site plans by the date established by the Zoning Administrator as part of the site and building plan approval. Work with Zoning staff to establish a final site compliance date.

**Applicant provided the date 9/1/18**



# Madison Memorial High School
Madison, WI

From Hometown to Professional





## Lighting System

### Pole / Fixture Summary

| Pole ID | Pole Height | Mtg Height | Fixture Qty | Luminaire Type | Load | Circuit |
|---|---|---|---|---|---|---|
| F1-F2 | 80' | 18' | 2 | TLC-BT-575 | 1.15 kW | A |
| | | 80' | 11 | TLC-LED-1150 | 12.65 kW | A |
| F3-F4 | 80' | 15' | 2 | TLC-BT-575 | 1.15 kW | A |
| | | 80' | 12 | TLC-LED-1150 | 13.80 kW | A |
| | | 50' | 1 | TLC-LED-400 | 0.40 kW | A |
| **4** | | | **56** | | **58.30 kW** | |

### Circuit Summary

| Circuit | Description | Load | Fixture Qty |
|---|---|---|---|
| A | Football | 58.3 kW | 56 |

### Fixture Type Summary

| Type | Source | Wattage | Lumens | L50 | L80 | L70 | Quantity |
|---|---|---|---|---|---|---|---|
| TLC-LED-1150 | LED 5700K - 75 CRI | 1150W | 121,000 | >63,500 | >63,500 | >63,500 | 46 |
| TLC-BT-575 | LED 5700K - 75 CRI | 575W | 52,000 | >63,500 | >63,500 | >63,500 | 8 |
| TLC-LED-400 | LED 5700K - 75 CRI | 400W | 38,600 | >63,500 | >63,500 | >63,500 | 2 |

## Light Level Summary

### Calculation Grid Summary

| Grid Name | Calculation Metric | Avg | Min | Max | Illuminator Max | Max/Min | Ave/Min | Circuits | Fixture Qty |
|---|---|---|---|---|---|---|---|---|---|
| Bleachers | Horizontal | 4.60 | 0 | | 14 | 62.20 | | A | 56 |
| Football | Horizontal Illuminance | 50.8 | 41 | | 62 | 1.50 | 1.24 | A | 56 |
| Soccer | Horizontal Illuminance | 51 | 41 | | 63 | 1.56 | 1.24 | A | 56 |
| Track | Horizontal Illuminance | 16.3 | 0 | | 44 | 205.30 | | A | 56 |

ENGINEERED DESIGN  By: Connor Ramstead • File #163423-p-FB • 23-May-18

**MUSCO Lighting**

**We Make It Happen.**

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

**PROJECT SUMMARY**



# Madison Memorial High School
Madison, WI

## GRID SUMMARY

| Name: | Football |
| Size: | 360' x 160' |
| Spacing: | 30.0' x 30.0' |
| Height: | 3.0' above grade |

## ILLUMINATION SUMMARY

MAINTAINED HORIZONTAL FOOTCANDLES

| | Entire Grid |
| Guaranteed Average: | 50 |
| Scan Average: | 50.77 |
| Maximum: | 62 |
| Minimum: | 41 |
| Avg / Min: | 1.23 |
| Guaranteed Max / Min: | 2 |
| Max / Min: | 1.50 |
| UG (adjacent pts): | 1.29 |
| CU: | 0.54 |
| No. of Points: | 72 |

LUMINAIRE INFORMATION

| Color / CRI | 5700K - 75 CRI |
| Luminaire Output: | 121,000 / 52,000 / 38,600 lumens |
| No. of Luminaires: | 56 |
| Total Load: | 58.3 kW |

| Luminaire Type | L90 hrs | L80 hrs | L70 hrs |
|---|---|---|---|
| TLC-LED-1150 | >63,500 | >63,500 | >63,500 |
| TLC-BT-575 | >63,500 | >63,500 | >63,500 |
| TLC-LED-400 | >63,500 | >63,500 | >63,500 |

Guaranteed Performance: The ILLUMINATION described above is guaranteed per your Musco Warranty document and includes a 0.95 dirt depreciation factor.

Field Measurements: Individual field measurements may vary from computer-calculated predictions and should be taken in accordance with IESNA RP-6-15.

Electrical System Requirements: Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

Installation Requirements: Results assume ± 3% nominal voltage at line side of the driver and structures located within 3 feet (1m) of design locations.



## MUSCO Lighting

We Make It Happen.

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

## ILLUMINATION SUMMARY

## EQUIPMENT LIST FOR AREAS SHOWN

| | Pole | | | Luminaires | | | | |
|---|---|---|---|---|---|---|---|---|
| QTY | LOCATION | SIZE | MOUNTING HEIGHT | GRADE ELEVATION | LUMINAIRE TYPE | QTY / POLE | THIS GRID | OTHER GRIDS |
| 2 | F1-F2 | 80' | 15' | - | TLC-BT-575 | 11 | 2 | 0 |
| | | | | | TLC-LED-1150 | 1 | 11 | 0 |
| 2 | F3-F4 | 80' | 15' | - | TLC-BT-575 | 1 | 1 | 0 |
| | | | 50' | | TLC-LED-400 | 1 | 2 | 0 |
| | | | 80' | | TLC-LED-1150 | 12 | 12 | 0 |
| 4 | | | | TOTALS | | 56 | 56 | 0 |

SCALE IN FEET 1 : 60

ENGINEERED DESIGN By: Connor Ramstead • File #16342.3-p-FB • 23-May-18

Pole location(s)   dimensions are relative to 0,0 reference point(s)



## Madison Memorial High School

Madison, WI

### GRID SUMMARY

**Name:** Soccer
**Size:** 330' x 200'
**Spacing:** 30.0' x 30.0'
**Height:** 3.0' above grade

### ILLUMINATION SUMMARY

**MAINTAINED HORIZONTAL FOOTCANDLES**

Entire Grid

| Guaranteed Average: | 50 |
| Scan Average: | 50.99 |
| Maximum: | 63 |
| Minimum: | 41 |
| Avg / Min: | 1.25 |
| Max / Min: | 1.56 |
| UG (adjacent pts): | 1.33 |
| CU: | 0.64 |
| No. of Points: | 84 |

**LUMINAIRE INFORMATION**

Color / CRI: 5700K - 75 CRI
Luminaire Output: 121,000 / 52,000 / 38,600 lumens
No. of Luminaires: 56
Total Load: 58.3 kW

| Luminaire Type | L90 hrs | L70 hrs |
|---|---|---|
| TLC-LED-1150 | >63,500 | >63,500 |
| TLC-BT-575 | >63,500 | >63,500 |
| TLC-LED-400 | >63,500 | >63,500 |

Reported per TM-21 / L70. See luminaire datasheet for details

**Guaranteed Performance:** The ILLUMINATION described above is guaranteed per your Musco Warranty document and includes a 0.95 dirt depreciation factor.

**Field Measurements:** Individual field measurements may vary from computer-calculated predictions and should be taken in accordance with IESNA RP-6-15.

**Electrical System Requirements:** Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

**Installation Requirements:** Results assume ± 3% nominal voltage at line side of the driver and structures located within 3 feet (1m) of design locations.

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2016 Musco Sports Lighting, LLC.

**We Make It Happen.**™

## ILLUMINATION SUMMARY

### EQUIPMENT LIST FOR AREAS SHOWN

| QTY | Pole | | | | Luminaires | | | | | |
| | LOCATION | SIZE | GRADE ELEVATION | MOUNTING HEIGHT | LUMINAIRE TYPE | QTY POLE | THIS GRID | OTHER GRIDS | | |
|---|---|---|---|---|---|---|---|---|
| 2 | F3-F2 | 80' | - | 15' | TLC-BT-575 | 2 | 2 | 0 |
| | | | | 80' | TLC-LED-1150 | 11 | 11 | 0 |
| 2 | F3-F4 | 80' | - | 15' | TLC-BT-575 | 2 | 2 | 0 |
| | | | | 50' | TLC-LED-400 | 1 | 1 | 0 |
| | | | | 80' | TLC-LED-1150 | 11 | 12 | 0 |
| 4 | | | TOTALS | | | 56 | 56 | 0 |

Pole location(s) ⊕ dimensions are relative
to 0,0 reference point(s) ⊕

| 48 | | 59 | | 41 | | 51 | | 41 | | 41 | | 51 | | 60 | | 45 |
| 53 | 58 | 56 | 53 | 46 | 46 | 51 | 53 | 50 | 54 | 59 | 60 | 58 | 63 | 50 |
| 47 | 59 | 52 | 46 | 43 | 43 | 44 | 47 | 44 | 50 | 55 | 55 | 59 | 55 | 47 |
| 42 | 54 | 51 | 44 | 41 | 41 | 42 | 44 | 41 | 44 | 54 | 51 | 50 | 59 | 45 |
| 45 | 58 | 54 | 47 | 43 | 43 | 51 | 55 | 46 | 45 | 52 | 60 | 61 | 59 | 52 |
| 49 | 62 | 59 | 52 | 46 | 46 | 61 | 61 | 52 | 50 | 60 | 55 | 68 | 59 | 51 |
| 45 | 59 | 58 | 54 | 41 | 41 | 59 | 62 | 54 | 51 | 58 | 63 | 59 | 51 | |

F1   F2   F3   F4

SCALE IN FEET 1 : 60

0    60    120

ENGINEERED DESIGN  By: Connor Ramstead • File #163423-p-FB • 23-May-18



## Madison Memorial High School

Madison, WI

### GRID SUMMARY

| | |
|---|---|
| Name: | Track |
| Size: | Irregular |
| Spacing: | 30.0' x 30.0' |
| Height: | 3.0' above grade |

### ILLUMINATION SUMMARY

MAINTAINED HORIZONTAL FOOTCANDLES

Entire Grid

| | |
|---|---|
| Scan Average: | 16.34 |
| Maximum: | 44 |
| Minimum: | 0 |
| Avg / Min: | 76.92 |
| Max / Min: | 205.30 |
| UG (adjacent pts): | 0.00 |
| CU: | 0.12 |
| No. of Points: | 50 |

LUMINAIRE INFORMATION

| | |
|---|---|
| Color / CRI: | 5700K - 75 CRI |
| Luminaire Output: | 121,000 / 52,000 / 38,600 lumens |
| No. of Luminaires: | 56 |
| Total Load: | 58.3 kW |

| Luminaire Type | L90 hrs | L80 hrs | L70 hrs |
|---|---|---|---|
| TLC-LED-1150 | >63,500 | >63,500 | >63,500 |
| TLC-BT-575 | >63,500 | >63,500 | >63,500 |
| TLC-LED-400 | >63,500 | >63,500 | >63,500 |

Reported per TM-21-11. See luminaire datasheet for details.

**Guaranteed Performance:** The ILLUMINATION described above is guaranteed per your Musco Warranty document and includes a 0.95 dirt depreciation factor.

**Field Measurements:** Individual field measurements may vary from computer-calculated predictions and should be taken in accordance with IESNA RP-6-15.

**Electrical System Requirements:** Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

**Installation Requirements:** Results assume a 3% nominal voltage at line side of the driver and structures located within 3 feet (1m) of design locations.



**We Make It Happen.**

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

**ILLUMINATION SUMMARY**

### EQUIPMENT LIST FOR AREAS SHOWN

| | Pole | | Grade | Luminaires | | Mounting | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| QTY | LOCATION | SIZE | GRADE ELEVATION | LUMINAIRE TYPE | QTY/POLE | THIS GRID | OTHER GRIDS | MOUNTING HEIGHT | | |
| 2 | F1-F2 | 80' | | TLC-BT-575 | 2 | 2 | 0 | 15' | | |
| | | | | TLC-LED-1150 | 11 | 11 | 0 | 80' | | |
| 2 | F3-F4 | 80' | | TLC-BT-575 | 2 | 1 | 0 | 15' | | |
| | | | | TLC-LED-400 | 1 | 1 | 0 | 50' | | |
| | | | | TLC-LED-1150 | 12 | 12 | 0 | 80' | | |
| 4 | | | TOTALS | | 56 | 56 | 0 | | | |

SCALE IN FEET 1 : 100

0'    100'    200'

Pole location(s)

Pole location(s) to 0,0 reference point(s) - dimensions are relative

ENGINEERED DESIGN   By: Connor Ramstead • File #163423-p-FB • 23-May-18



# Madison Memorial High School
Madison, WI

## GRID SUMMARY

**Name:** Bleachers
**Size:** Irregular
**Spacing:** 10.0' x 10.0'
**Height:** 3.0' above grade

## ILLUMINATION SUMMARY

MAINTAINED HORIZONTAL FOOTCANDLES     Entire Grid

| Scan Average: | 4.00 |
| Maximum: | 14 |
| Minimum: | 0 |
| Avg / Min: | 21.04 |
| Max / Min: | 62.20 |
| UG (adjacent pts): | 3.10 |
| CU: | 0.01 |
| No. of Points: | 192 |

LUMINAIRE INFORMATION

| Color / CRI: | 5700K  75 CRI |
| Luminaire Output: | 121,000 / 52,000 / 38,600 lumens |
| No. of Luminaires: | 56 |
| Total Load: | 58.3 kW |

| Luminaire Type | 90 hrs | 180 hrs | L90 hrs |
|---|---|---|---|
| TLC-LED-1150 | >63,500 | >63,500 | >63,500 |
| TLC-BT-575 | >63,500 | >63,500 | >63,500 |
| TLC-LED-400 | >63,500 | >63,500 | >63,500 |

Reported per Tab 2.1-11. See luminaire datasheets for details

**Guaranteed Performance:** The ILLUMINATION described above is guaranteed per your Musco Warranty document and includes a 0.95 dirt depreciation factor.

**Field Measurements:** Individual field measurements may vary from computer-calculated predictions and should be taken in accordance with IESNA RP-6-15.

**Electrical System Requirements:** Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

**Installation Requirements:** Results assume ± 3% nominal voltage at line side of the driver and structures located within 3 feet (1m) of design locations.



## ILLUMINATION SUMMARY

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

## EQUIPMENT LIST FOR AREAS SHOWN

| QTY | Pole | | GRADE ELEVATION | MOUNTING HEIGHT | Luminaires | | QTY PER POLE | THIS GRID | OTHER GRID |
|---|---|---|---|---|---|---|---|---|---|
| | LOCATION | SIZE | | | LUMINAIRE TYPE | | | | |
| 2 | F1-F2 | 80' | - | 15' | TLC-BT-575 | 2 | 11 | 0 |
| | | | | 80' | TLC-LED-1150 | 11 | 11 | 0 |
| 2 | F3-F4 | 80' | - | 15' | TLC-BT-575 | 2 | 2 | 0 |
| | | | | 50' | TLC-LED-400 | 1 | 1 | 0 |
| | | | | 80' | TLC-LED-1150 | 12 | 12 | 0 |
| 4 | | | TOTALS | | | 56 | 56 | 0 |

Pole location(s)  ⊕ dimensions are relative to 0,0 reference point(s)  ⊗

F3

F2

SCALE IN FEET 1 : 60

0'    60    120

ENGINEERED DESIGN  By: Connor Ramstead • File #163423-p-FB • 23-May-18



## Madison Memorial High School
Madison, WI

### EQUIPMENT LAYOUT

**INCLUDES:**
- Football
- Soccer
- Track

**Electrical System Requirements:** Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

**Installation Requirements:** Results assume ± 3% nominal voltage at line side of the driver and structures located within 3 feet (1m) of design locations.

### EQUIPMENT LIST FOR AREAS SHOWN

| QTY | Pole LOCATION | SIZE | GRADE ELEVATION | Luminaires MOUNTING HEIGHT | LUMINAIRE TYPE | QTY/POLE |
|-----|------|------|-----------------|-----------------|---------|----------|
| 2 | F1-F2 | 80' | | 15' | TLC-BT-575 | 2 |
| | | | | 80' | TLC-LED-1150 | 13 |
| 2 | F3-F4 | 80' | | 15' | TLC-BT-575 | 2 |
| | | | | 50' | TLC-LED-400 | 1 |
| | | | | 80' | TLC-LED-1150 | 12 |
| 4 | | | TOTALS | | | 56 |

### SINGLE LUMINAIRE AMPERAGE DRAW CHART

**Ballast Specifications**
*(per each power label)*

**Line Amperage Per Luminaire**
*(per driver)*

| Single Phase Voltage | 208 (v) | 220 (v) | 240 (v) | 277 (v) | 347 (v) | 380 (v) | 480 (v) |
|----------------------|---------|---------|---------|---------|---------|---------|---------|
| TLC-LED-1150 | 6.8 | 6.5 | 5.9 | 5.1 | 4.1 | 3.7 | 3.0 |
| TLC-BT-575 | 3.2 | 3.0 | 2.8 | 2.4 | 1.9 | 1.7 | 1.4 |
| TLC-LED-400 | 2.5 | 2.3 | 2.1 | 1.9 | 1.5 | 1.4 | 1.1 |

MUSCO Lighting

**We Make It Happen.**

Not to be reproduced in whole or in part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

### EQUIPMENT LAYOUT

SCALE IN FEET 1 : 100
0      100'      200'

Pole location(s) ⊕ dimensions are relative to 0,0 reference point(s) ⊗

ENGINEERED DESIGN   By: Connor Ramstead • File #163423-p-FB • 23-May-18

Case: 3:21-cv-00118-wmc   Document #: 20-1   Filed: 11/12/21   Page 48 of 91





## MY PROJECT

Name: Madison Memorial High School
Location: Madison, WI

## Pole / Fixture Summary

| Pole ID | Pole Height | Fixture Qty | Lamp Type | Circuit |
|---------|-------------|-------------|-----------|---------|
| A1 | 80' | 6 | 1500W MZ | B |
| A2 | 80' | 6 | 1500W MZ | B |
| B1 | 80' | 10 | 1500W MZ | B |
| B2 | 80' | 10 | 1500W MZ | B |
| C1 | 80' | 4 | 1500W MZ | B |
| C2 | 80' | 4 | 1500W MZ | B |
| D1 | 80' | 3 | 1500W MZ | B |
| D2 | 80' | 3 | 1500W MZ | B |
| 8 | | 46 | | |

## Calculation Grid Summary

| Grid Name | Calculation Metric | Type | Light Level | | | Uniformity | | Circuits | Fixture Qty |
|-----------|-------------------|------|-------------|---|---|------------|---|----------|-------------|
| | | | Avg | Min | Max | Max/Min | Avg/Min | | |
| Baseball (Infield) | Horizontal Illuminance | Constant | 51 | 36 | 60 | 1.66 | 1.41 | B | 46 |
| Baseball (Outfield) | Horizontal Illuminance | Constant | 30.9 | 22 | 45 | 2.08 | 1.42 | B | 46 |

## Circuit Summary

| Circuit | Description | Load | Fixture Qty |
|---------|-------------|------|-------------|
| B | Baseball | 71.94 kW | 46 |

We Make It Happen®

ENGINEERED DESIGN
By:   Connor Ramstead
File # / Date:   165423-p-583
18-Jun-18

PROJECT SUMMARY

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.



**MUSCO**
Lighting

**MY PROJECT**

Name: Madison Memorial High School
Location: Madison, WI

**GRID SUMMARY**

Name: Baseball
Size: Irregular 324' / 379' / 326'
Spacing: 30.0' x 30.0'
Height: 3.0' above grade

**CONSTANT ILLUMINATION**

| SUMMARY | Infield | Outfield |
|---|---|---|
| | | HORIZONTAL FOOTCANDLES |
| Guaranteed Average: | 50 | 30 |
| Scan Average: | 50.96 | 30.85 |
| Maximum: | 60 | 45 |
| Minimum: | 36 | 22 |
| Avg / Min: | 1.41 | 1.42 |
| Guaranteed Max / Min: | 2 | 2.5 |
| Max / Min: | 1.66 | 2.08 |
| UG (adjacent pts): | 1.32 | 1.56 |
| No. of Points: | 25 | 100 |

LUMINAIRE INFORMATION
Luminaire Type: Green Generation
Design Usage Hours: 5,000 hours
Design Lumens: 134,000
Avg Lamp Tilt Factor: 1.000
No. of Luminaires: 46
Avg.KW: 71.94 (78.2 max)

Guaranteed Performance: The Guaranteed Average CONSTANT ILLUMINATION described above is guaranteed for the design usage hours of the system.

Field Measurements: Illumination measured in accordance with IESNA RP-6-15 and CIBSE LG4. Individual values may vary. See the Warranty document for details.

Electrical System Requirements: Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

Installation Requirements: Results assume +/- 3% nominal voltage at line side of the ballast and structures located within 3 feet (1m) of design locations.

**ENGINEERED DESIGN**

By: Connor Ramstead
File # / Date: 163423-p-SB3       18-Jun-18

**ILLUMINATION SUMMARY**

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

**EQUIPMENT LIST FOR AREAS SHOWN**

| QTY | Pole | | | Luminaires | | | |
|---|---|---|---|---|---|---|---|
| | LOCATION | SIZE | GRADE ELEVATION | MOUNTING HEIGHT | LAMP TYPE | QTY / POLE | THIS GRID | OTHER GRID |
| 2 | A1-A2 | 80' | - | 80' | 1500W MZ | 6 | 6 | 0 |
| 2 | B1-B3 | 80' | - | 80' | 1500W MZ | 10 | 10 | 0 |
| 2 | C1-C2 | 80' | - | 80' | 1500W MZ | 4 | 4 | 0 |
| 2 | D1-D2 | 80' | - | 80' | 1500W MZ | 3 | 3 | 0 |
| 8 | | | TOTALS | | | 46 | 46 | 0 |

Pole location(s) ⊕ dimensions are relative to 0,0 reference point(s) ⊗

**SCALE IN FEET 1 : 80**

Page 13 of 25



## musco Lighting

### MY PROJECT

**Name:** Madison Memorial High School
**Location:** Madison, WI

### EQUIPMENT LAYOUT

**INCLUDES:**
Baseball

**Electrical System Requirements:** Refer to Amperage Draw Chart and/or the "Musco Control System Summary" for electrical sizing.

**Installation Requirements:** Results assume +/- 3% nominal voltage at line side of the ballast and structures located within 3 feet (1m) of design locations.

### EQUIPMENT LIST FOR AREAS SHOWN

| QTY | LOCATION | Pole SIZE | GRADE ELEVATION | MOUNTING HEIGHT | Luminaires LAMP TYPE | QTY / POLE |
|-----|----------|-----------|-----------------|-----------------|----------------------|------------|
| 2 | A1-A2 | 80' | – | 80' | 1500W MZ | 6 |
| 2 | B1-B2 | 80' | – | 80' | 1500W MZ | 10 |
| 2 | C1-C2 | 80' | – | 80' | 1500W MZ | 4 |
| 2 | D1-D2 | 80' | – | 80' | 1500W MZ | 3 |
| 8 | | | | TOTALS | | 46 |

### SINGLE LUMINAIRE AMPERAGE DRAW CHART

| Ballast Specifications (30 ms power factor) | Line Amperage Per Luminaire (max draw) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Single Phase Voltage | 208 | 220 | 240 | 277 | 347 | 380 | 480 | |
| | (ea) | (ea) | (ea) | (ea) | (ea) | (ea) | (ea) | |
| 1500 watt MZ | 8.6 | 8.1 | 7.5 | 6.5 | 5.1 | 4.7 | 3.7 | |

### ENGINEERED DESIGN

**By:** Connor Ramstead
**File # / Date:** 16342-p-SB3                18-Jun-18

Not to be reproduced in whole or part without the written consent of Musco Sports Lighting, LLC. ©1981, 2018 Musco Sports Lighting, LLC.

### EQUIPMENT LAYOUT

A1
.25'  50'

A2
30'  .95'

B1
.190'  50'

B2
190'  .95'

C1
75'  .350'

C2
.75'  .350'

D1
.226'  .225'

D2
.325'  .290'

Baseball
Irregular

Pole location(s) ⊕ dimensions are relative to 0,0 reference point(s) ⊗

**SCALE IN FEET 1 : 80**
0'        80'        160'

Page 14 of 25



POLE(S): P1-P4

Musco 100FT Light-Structure System™ pole
Green Generation™ luminaires

POLE(S): A1, A2

Musco 80FT Light-Structure System™ pole
Green Generation™ luminaires

1. Cut off and grind smooth upper jacking brackets on section 2.
2. Apply cold galv. spray on exposed areas per instructions.
3. Cut 3'-6 3/4" off the top of the pole section 2.
4. Attach new fitter from one the following methods:
   A: Use lower jacking brackets.
   B: Reweld the jacking brackets 55" from the new cut top of section 2.

Madison Memorial High School
Madison, WI

Donated Pole Instructions



POLE(S): P1-P4

Musco 100FT Light-Structure System™ pole
Green Generation™ luminaires

POLE(S): B1, B2

Musco 80FT Light-Structure System™ pole
Green Generation™ luminaires

1. Cut off and grind smooth upper jacking brackets on section 2.
2. Apply cold galv. spray on exposed areas per instructions.
3. Cut 3'-6 3/4" off the top of the pole section 2.
4. Attach new fitter from one the following methods:
   A: Use lower jacking brackets.
   B: Reweld the jacking brackets 55" from the new cut top of section 2.

Madison Memorial High School
Madison, WI

Donated Pole Instructions





# Control System Summary

## Project Specific Notes:

## Project Information

| | |
|---|---|
| Project #: | 163423 |
| Project Name: | Madison Memorial High School SO SB FB |
| Date: | 05/24/18 |
| Project Engineer: | CRamstead |
| Sales Representative: | Greg Smidt |
| Control System Type: | Control and Monitoring |
| Communication Type: | Digital Cellular |
| Scan: | 163423-p-SB1,163423-p-FB |
| Document ID: | 163423P3V1-0524093230 |
| Distribution Panel Location or ID: | Service FB |
| Total # of Distribution Panel Locations for Project: | 2 |
| Design Voltage/Hertz/Phase: | 480/60/3 |
| Control Voltage: | 120 |

## Equipment Listing

| DESCRIPTION | | APPROXIMATE SIZE |
|---|---|---|
| 1.Control and Monitoring Cabinet | | 24 X 48 |
| | QTY | SIZE |
| Total Contactors | 4 | 30 AMP |
| Total Off/On/Auto Switches: | 1 | |

## Materials Checklist

### Contractor/Customer Supplied:

☐ A single control circuit must be supplied per distribution panel location.
— If the control voltage is NOT available, a control transformer is required.
☐ Electrical distribution panel to provide overcurrent protection for circuits
— Thermal/Magnetic circuit breaker sized per full load amps on Circuit Summary by Zone Chart
☐ Wiring:
— Dedicated control power circuit
— Power circuit to and from lighting contactors
— Harnesses for cabinets at remote locations
— Means of grounding, including lightning ground protection
☐ Electrical conduit wireway system
— Entrance hubs rated NEMA 4: must be die-cast zinc, PVC, or copper-free die-cast aluminum
☐ Mounting hardware for cabinets
☐ Control circuit lock-on device to prevent unauthorized power interruption to control power
☐ Anti-corrosion compound to apply to ends of wire, if necessary

*Call Control-Link Central ™ operations center at 877/347-3319 to schedule activation of the control system upon completion of the installation. Note: Activation may take up to 1 1/2 hours*

### IMPORTANT NOTES

1. Please confirm that the design voltage listed above is accurate for this facility. Design voltage/phase is defined as the voltage/phase being connected and utilized at each lighting pole's ballast enclosure disconnect. Inaccurate design voltage/phase can result in additional costs and delays. Contact your Musco sales representative to confirm this item.
2. In a 3 phase design, all 3 phases are to be run to each pole. When a 3 phase design is used Musco's single phase luminaires come pre-wired to utilize all 3 phases across the entire facility.
3. One contactor is required for each pole. When a pole has multiple circuits, one contactor is required for each circuit. All contactors are UL 100% rated for the published continuous load. All contactors are 3 pole.
4. If the lighting system will be fed from more than one distribution location, additional equipment may be required. Contact your Musco sales representative.
5. A single control circuit must be supplied per control system.
6. Size overcurrent devices using the full load amps column of the Circuit Summary By Zone chart- Minimum power factor is 0.9.

*NOTE: Refer to Installation Instructions for more details on equipment information and the installation requirements*

T:\163423P3V1-0524093230.pdf

©1999,2018 Musco Sports Lighting,LLC
Form: T-5030-1



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-FB
Service FB - Page 2 of 8

## Control·**Link**. Control and Monitoring System



Transformer (provided by customer for control voltage supply if not available)

Digital cellular antenna

Off–on–auto keyed switches

Electrical distribution panel (provided by customer for overcurrent protection)

Control and monitoring cabinet

Equipment ground    To lighting circuits

| Wire | Description | # of Wires | Typ. Wire Size (AWG) | Max. Wire Length (FT) | Wire from Musco | Notes |
|------|-------------|------------|---------------------|----------------------|----------------|-------|
| 1 | Line power to contactors, and equipment grounding conductor | Note A | Note B | 27 | No | A – E |
| 2 | Load power to lighting circuits | Note A | Note B | N/A | No | A – D |
| 3 | Control power (dedicated, 20A) | 3 | 12 | N/A | No | C, D |

R60-32-00_C

Notes:
A. Voltage and phasing per the notes on cover page.
B. Calculate per load and voltage drop.
C. All conduit diameters should be per code.
D. Refer to control and monitoring system installation instructions for more details on equipment information and the installation requirements.
E. Contact Musco if maximum wire length from circuit breaker to contactor exceeds value in chart.

**IMPORTANT:** Control (3) wires must be in separate conduit from line and load power wiring (1, 2).

T:163\163423P3V1-0524093230.pdf



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-FB
Service FB - Page 3 of 8

## SWITCHING SCHEDULE

| Field/Zone Description | Zones |
|---|---|
| Football | 1 |

| CONTROL POWER CONSUMPTION | |
|---|---|
| 120V Single Phase | |
| VA loading of Musco Supplied Equipment | INRUSH:  1568.0 |
| | SEALED:   194.8 |

## CIRCUIT SUMMARY BY ZONE

| POLE | CIRCUIT DESCRIPTION | # OF FIXTURES | # OF DRIVERS | *FULL LOAD AMPS | CONTACTOR SIZE (AMPS) | CONTACTOR ID | ZONE |
|---|---|---|---|---|---|---|---|
| F1 | Football | 13 | 13 | 21.7 | 30 | C1 | 1 |
| F2 | Football | 13 | 13 | 21.7 | 30 | C2 | 1 |
| F3 | Football | 15 | 15 | 22.9 | 30 | C3 | 1 |
| F4 | Football | 15 | 15 | 22.9 | 30 | C4 | 1 |

*Full Load Amps based on amps per driver.

T:\163\163423P3V1-163423.pdf



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-FB
Service FB - Page 4 of 8

## PANEL SUMMARY

| CABINET # | CONTROL MODULE LOCATION | CONTACTOR ID | CIRCUIT DESCRIPTION | FULL LOAD AMPS | DISTRIBUTION PANEL ID (BY OTHERS) | CIRCUIT BREAKER POSITION (BY OTHERS) |
|---|---|---|---|---|---|---|
| 1 | 1 | C1 | Pole F1 | 21.70 | | |
| 1 | 1 | C2 | Pole F2 | 21.70 | | |
| 1 | 1 | C3 | Pole F3 | 22.90 | | |
| 1 | 1 | C4 | Pole F4 | 22.90 | | |

## ZONE SCHEDULE

| ZONE | SELECTOR SWITCH | ZONE DESCRIPTION | CIRCUIT DESCRIPTION | |
|---|---|---|---|---|
| | | | POLE ID | CONTACTOR ID |
| Zone 1 | 1 | Football | F1 | C1 |
| | | | F2 | C2 |
| | | | F3 | C3 |
| | | | F4 | C4 |

T151EN163423P3V1-0EM093353.pdf



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-SB1
Service BB - Page 6 of 8

## Control·Link. Control and Monitoring System



Transformer (provided by customer for control voltage supply if not available)

Digital cellular antenna

Off–on–auto keyed switches

Electrical distribution panel (provided by customer for overcurrent protection)

Control and monitoring cabinet

Equipment ground

To lighting circuits

| Wire | Description | # of Wires | Typ. Wire Size (AWG) | Max. Wire Length (FT) | Wire from Musco | Notes |
|------|-------------|------------|----------------------|-----------------------|-----------------|-------|
| 1 | Line power to contactors, and equipment grounding conductor | Note A | Note B | 27 | No | A – E |
| 2 | Load power to lighting circuits | Note A | Note B | N/A | No | A – D |
| 3 | Control power (dedicated, 20A) | 3 | 12 | N/A | No | C, D |

R80-32-00_C

Notes:   A. Voltage and phasing per the notes on cover page.
B. Calculate per load and voltage drop.
C. All conduit diameters should be per code.
D. Refer to control and monitoring system installation instructions for more details on equipment information and the installation requirements.
E. Contact Musco if maximum wire length from circuit breaker to contactor exceeds value in chart.

**IMPORTANT:** Control (3) wires must be in separate conduit from line and load power wiring (1, 2).



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-SB1
Service BB - Page 7 of 8

## SWITCHING SCHEDULE

| Field/Zone Description | Zones |
|---|---|
| Baseball | 1 |

| CONTROL POWER CONSUMPTION | |
|---|---|
| 120V Single Phase | |
| VA loading of Musco Supplied Equipment | INRUSH: 2548.0 |
| | SEALED: 298.8 |

| BALLAST SPECIFICATIONS .90 Minimum Power Factor | VOLTAGE: 480v | THREE PHASE | | | | | |
|---|---|---|---|---|---|---|---|
| BALLAST OPERATING VOLTAGE | 208 | 220 | 240 | 277 | 347 | 380 | 480 |
| 1500 Watt Metal Halide Lamp Operating line amperage per fixture- maximum | 8.6 | 8.3 | 7.5 | 6.5 | 5.1 | 4.7 | 3.7 |
| 1000 Watt Metal Halide Lamp Operating line amperage per fixture- maximum | 6.5 | 6.4 | 5.8 | 4.9 | 4.0 | 3.6 | 2.9 |

## CIRCUIT SUMMARY BY ZONE

| POLE | CIRCUIT DESCRIPTION | # OF FIXTURES | FULL LOAD AMPS | CONTACTOR SIZE (AMPS) | CONTACTOR ID | ZONE |
|---|---|---|---|---|---|---|
| A1 | Baseball | 6 | 14.8 | 30 | C1 | 1 |
| A2 | Baseball | 6 | 14.8 | 30 | C2 | 1 |
| B1 | Baseball | 10 | 25.9 | 30 | C3 | 1 |
| B2 | Baseball | 10 | 25.9 | 30 | C4 | 1 |
| C1 | Baseball | 4 | 11.1 | 30 | C5 | 1 |
| C2 | Baseball | 4 | 11.1 | 30 | C6 | 1 |
| D1 | Baseball | 3 | 7.4 | 30 | C7 | 1 |
| D2 | Baseball | 3 | 7.4 | 30 | C8 | 1 |

T:\163\163423P3V1-0834269296.pdf



# Control System Summary

Madison Memorial High School SO SB FB / 163423 - 163423-p-SB1
Service BB - Page 8 of 8

## PANEL SUMMARY

| CABINET # | CONTROL MODULE LOCATION | CONTACTOR ID | CIRCUIT DESCRIPTION | FULL LOAD AMPS | DISTRIBUTION PANEL ID (BY OTHERS) | CIRCUIT BREAKER POSITION (BY OTHERS) |
|---|---|---|---|---|---|---|
| 2 | 2 | C1 | Pole A1 | 14.80 | | |
| 2 | 2 | C2 | Pole A2 | 14.80 | | |
| 2 | 2 | C3 | Pole B1 | 25.90 | | |
| 2 | 2 | C4 | Pole B2 | 25.90 | | |
| 2 | 2 | C5 | Pole C1 | 11.10 | | |
| 2 | 2 | C6 | Pole C2 | 11.10 | | |
| 2 | 2 | C7 | Pole D1 | 7.40 | | |
| 2 | 2 | C8 | Pole D2 | 7.40 | | |

## ZONE SCHEDULE

| ZONE | SELECTOR SWITCH | ZONE DESCRIPTION | CIRCUIT DESCRIPTION | |
|---|---|---|---|---|
| | | | POLE ID | CONTACTOR ID |
| Zone 1 | 1 | Baseball | A1 | C1 |
| | | | A2 | C2 |
| | | | B1 | C3 |
| | | | B2 | C4 |
| | | | C1 | C5 |
| | | | C2 | C6 |
| | | | D1 | C7 |
| | | | D2 | C8 |

T:\163423\163423P3V1-4824494238.pdf



# EXHIBIT E

**Edgewood Requests for Admission**



## City of Madison Site Plan Verification

**PROJECT: LNDSPR-2019-00020**       **Address:** 2219 Monroe ST                    **Current Revision #: 0**

| | |
|---|---|
| **Submitted by:** | Forward Electric |
| **Contact:** | Jennifer Luhman<br>(608) 221-1945<br>jennifer@forwardelectric.com |
| **Project Type:** | Permitted Use Site Plan Review |
| **Description:** | Lighting Edgewood activity field |
| **Status:** | Closed |
| **Revision History:** | 0 |

| Review | Status | Reviewer | Reviewed |
|---|---|---|---|
| Lighting Review | Approved | Steve Rewey | Feb 27 2019 |
| Zoning Review | Approved | Christina Thiele | Mar  1 2019 |

## ZONING

**Supplement Accepted**                                        **Comment Date:** 02/26/2019

Per Section 28.186(4)(b), the property owner or operator is required to bring the property into compliance with all elements of the approved site plans by the date established by the Zoning Administrator as part of the site and building plan approval. Work with Zoning staff to establish a final site compliance date.

*Applicant provided the date December 31st, 2019**

# EXHIBIT F

**Edgewood Requests for Admission**



## Office of the City Attorney

**Michael P. May, City Attorney**        **Patricia A. Lauten, Deputy City Attorney**

ASSISTANT CITY ATTORNEYS

Roger A. Allen
Steven C. Brist
Lana J. Mades
Lara M. Mainella
Amber R. McReynolds
Marci A. Paulsen
Adriana M. Peguero

Kevin B. Ramakrishna
Kate M. Smith
Jaime L. Staffaroni
John W. Strange
Doran E. Viste
Brittany A. Wilson
Jennifer A. Zilavy

Room 401, City-County Building

210 Martin Luther King, Jr. Blvd.
Madison, Wisconsin 53703-3345
(Phone) 608-266-4511
(Fax) 608-267-8715
attorney @cityofmadison.com

LITIGATION ASSISTANT
Patricia V. Gehler

July 12, 2019

BY EMAIL AND HAND DELIVERY

Attorney Matthew Lee
Foley & Lardner
150 East Gilman St.
Suite 5000
Madison, WI  53703

RE:  Edgewood High School

Dear Mr. Lee:

Last night, the Madison Zoning Board of Appeals (ZBA) denied the appeal by Edgewood High School (Edgewood) related to the Zoning Administrator's interpretation of the City's zoning code and the issuance of Notices of Violation to Edgewood.

Further enforcement of the zoning code, the ZBA decision, and the notices of violation now rests with the discretion of the City Attorney.  This is to inform you that I and my office will take no further enforcement steps unless and until we inform you of our decision to do so.  We will give you ample notice of any planned enforcement.

At this time, Edgewood does not face the threat of any prosecution or other enforcement actions by the City.  We invite Edgewood to file to terminate its Master Plan and return to the standard CI zoning, which would place it on equal footing with other high schools.

July 12, 2019
Page 2

Sincerely,

Michael P. May
City Attorney

CC:    Mayor Satya Rhodes-Conway
           Alderperson Tag Evers
           Matt Tucker
           ACA John Strange

# EXHIBIT G

**Edgewood Requests for Admission**

**Nathan J. Wautier**

| | |
|---|---|
| **From:** | Strange, John <JStrange@cityofmadison.com> |
| **Sent:** | Wednesday, July 17, 2019 4:24 PM |
| **To:** | Nathan J. Wautier |
| **Cc:** | May, Michael; Tucker, Matthew |
| **Subject:** | Edgewood High School |

Attorney Wautier,

Given the Zoning Board of Appeals ruling on July 11, you asked me to describe the legal avenues for permitting games and lights under the CI District Ordinance. Under the CI District Ordinance, Edgewood has three options to legally play games and install lights at its field. First, Edgewood can amend its Campus Master Plan to describe the open space as a stadium with lights. If approved, this would allow Edgewood to play games at its field and have lights. Second, Edgewood could ask the City to repeal the ordinance that adopted its Master plan. As a consequence of repealing its Master Plan, Edgewood would revert to the standard regulations of the CI District in the zoning code, which would allow games and lights at the field. However, repealing the Master Plan means, among other things, that Edgewood will lose the remaining development entitlements contained in the Campus Master Plan. Going forward, individual development proposals and changes that exceed four thousand (4,000) square feet in floor area, including the construction of bathrooms, concessions stands or locker rooms associated with the athletic field, would require conditional use approval, to which the City could attach conditions related to the use of the entire facility. Finally, a third option would be for Edgewood wait until the 10-year Master Plan expires, in which case Edgewood would have the same rights as described under the second option above (terminating the Master Plan).

If Edgewood wishes to terminate its Master Plan, it must complete a land use application similar to the one it completed to have the Master Plan approved in 2014. Since the Master Plan applies to the high school, college, and day school, the person who signs the application on behalf of Edgewood must be authorized by all three entities to pursue the termination of the Master Plan. By way of reference, the following link includes the original land use application Edgewood filed to approve the Master Plan in 2014.
https://madison.legistar.com/View.ashx?M=F&ID=2947602&GUID=0E09F8F2-1CFA-42BA-AB3F-E820C7292CFB

Please let me know if you have any other questions.

Sincerely,

John Strange

John W. Strange
Assistant City Attorney
Madison, Wisconsin
608-266-4511

# EXHIBIT H

**Edgewood Requests for Admission**


Attorneys at Law

Reinhart Boerner Van Deuren s.c.
P.O. Box 2018
Madison, WI 53701-2018

22 East Mifflin Street
Suite 700
Madison, WI 53703

Telephone: 608.229.2200
Fax: 608.229.2100
reinhartlaw.com

September 30, 2019

Nathan J. Wautier
Direct Dial: 608-229-2249
nwautier@reinhartlaw.com

HAND DELIVERED

Permit Counter
Department of Planning and Community and
Economic Development
215 Martin Luther King Jr. Blvd.
Madison, WI 53703

To Whom It May Concern:

On behalf of Edgewood High School of the Sacred Heart, attached please find an application ("Alternative Application") for outdoor lighting in compliance with City of Madison Ordinance Section 10.085 "Outdoor Lighting." The Alternative Application makes three revisions to an approved application for the same address submitted on or about February 22, 2019 (the "Existing Approved Application"). The revisions lower the height of the four light poles from 80 feet to 68 feet, reduce the foot candle illumination intensity, and remove "punt" lighting.

The Alternative Application is being submitted because an electrical permit for installation of lights from the City pursuant to the Existing Approved Application has not been issued. As a reminder, the Existing Approved Application is identical to an application submitted and used to issue twelve 80 foot light poles with "punt" lighting at James Madison Memorial High School in 2018.

Regardless, if the City intends to continue to withhold an electrical permit under the Existing Approved Application, please use the attached Alternative Application to issue an electrical permit allowing Edgewood to install outdoor lighting in full compliance with City of Madison Ordinance Section 10.085 "Outdoor Lighting."

Best regards,

REINHART BOERNER VAN DEUREN s.c.

Nathan J. Wautier

# EXHIBIT I

## Edgewood Requests for Admission

## PLANNING DIVISION STAFF REPORT
**PREPARED FOR THE PLAN COMMISSION**

May 11, 2020



| | |
|---|---|
| **Project Address:** | **2219 Monroe Street** |
| **Application Type:** | Conditional Use |
| **Legistar File ID #** | 60001 |
| **Prepared By:** | Timothy M. Parks, Planning Division and Matt Tucker, Zoning Administrator<br>Report includes comments from other City agencies, as noted. |
| **Reviewed By:** | Heather Stouder, Planning Division |

## Summary

**Applicant & Property Owner:** Michael Elliott, Edgewood High School; 2219 Monroe Street; Madison.

**Requested Action:** Consideration of a conditional use on a Campus-Institutional (CI) District-zoned property without a campus master plan to allow for the establishment, improvement, or modification of a secondary use occurring outside of an enclosed building, to allow installation of lights for the stadium at Edgewood High School.

**Proposal Summary:** Edgewood High School is requesting approval to install four light poles to light the "Goodman Athletic Complex," which includes an artificial turf field surface designed primarily for use as a regulation competition soccer, football, and lacrosse field, and a paved running track encircling the field, and a 450-seat metal bleacher on the east side of the complex. The lighting is intended to allow for evening use of the complex by the high school, including for practices and athletic competitions.

**Applicable Regulations & Standards:** Section 28.097(3) of the Zoning Code identifies educational uses associated with colleges, universities, and secondary and primary schools as a *primary use* in the Campus-Institutional (CI) zoning district. Stadiums, auditoriums, and arenas, open or enclosed, are identified as *secondary uses* in the CI district. All secondary uses must be utilized predominantly in a manner that is directly related and complementary to the CI district's primary uses. Section 28.097(2)(d) requires that in a CI district without a Campus Master Plan, the establishment, improvement, or modification of any primary or secondary use occurring outside of an enclosed building shall require conditional use approval. Section 28.183 provides the process and standards for the approval of conditional use permits.

**Review Required By:** Plan Commission

**Summary Recommendation:** The Planning Division believes that the Plan Commission can find the standards for conditional use approval met to **approve** the installation of lights for the Goodman Athletic Complex at Edgewood High School at 2219 Monroe Street subject to the recommended conditions of approval beginning on page 8 of this report and input at the public hearing.

## Background Information

**Parcel Location:** The Edgewood campus, which consists of facilities for Edgewood College, Edgewood High School and Edgewood Campus School, is a 56.3-acre property bounded by Monroe Street on the north, Woodrow Street on the west, Edgewood Avenue on the east and Edgewood Drive and Lake Wingra on the south; Aldermanic District 13 (Evers); Madison Metropolitan School District. The three Edgewood entities own parcels that were

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 2

created by a condominium plat of the 56.3-acre campus in 2011; the condominium declaration provides the governance structure for the operation of the overall property.

**Surrounding Land Use and Zoning:**  The overall Edgewood Campus is surrounded by single-family residences in the Dudgeon-Monroe and Vilas neighborhoods located across Woodrow Street, Monroe Street, and Edgewood Avenue from the campus in the TR-C2 and TR-C3 (Traditional Residential–Consistent) zoning districts.

**Adopted Land Use Plans:** The 2018 Comprehensive Plan identifies the Edgewood Campus in the Special Institutional district. The residential neighborhoods that surround the campus are recommended for Low Residential uses, while Edgewood Drive and the Lake Wingra shoreline are recommended for Parks and Open Space uses.

**Zoning Summary:** The property is zoned CI (Campus-Institutional District).

| Other Critical Zoning Items | |
| --- | --- |
| Yes: | Landmarks (Indian mounds on campus), Utility Easements, Waterfront Development (along southern edge) |
| No: | Wellhead Protection, Barrier Free, Urban Design, Floodplain |
| | *Prepared by: Planning and Zoning staff* |

**Environmental Corridor Status:** The portion of the Edgewood campus located southeast of Edgewood Drive is located in a mapped environmental corridor, with areas of woodlands, wetlands and floodplain noted both within the corridor and immediately adjacent. The rest of the campus to the northwest, including the athletic field, is not located in a mapped environmental corridor.

**Public Utilities and Services:** The site is served by a full range of urban services, including seven-day Metro Transit service on Monroe Street.

## Previous Approvals and Requests

On April 8, 2014, the Common Council approved a request to approve a Campus-Institutional (CI) District Master Plan for Edgewood College, Edgewood High School and Edgewood Campus School as an integral part of the Zoning Code to govern the land use and provide basic bulk parameters for new construction on the campus.

On November 14, 2018, Edgewood High School submitted a request to amend the Campus-Institutional (CI) Zoning District Master Plan for the combined Edgewood College, Edgewood Campus School and Edgewood High School campus approved in 2014 to allow expanded use of the high school athletic field and to allow future construction of an enlarged and more substantial stadium for the athletic field. The request to amend the campus master plan was referred indefinitely at the request of Edgewood by the Common Council on February 26, 2019.

On October 1, 2019 the Common Council adopted the Third Substitute for Ordinance 19-00069 (ID 56981), amending various provisions in the CI zoning district to more clearly delineates the difference between indoor and outdoor uses and clarify that the construction of a new building or additions to existing buildings that exceed 4,000 square feet in floor area within any five-year period in a CI district without an adopted master plan require conditional use approval. The amendment also established that primary and secondary uses occurring outside of enclosed buildings on a CI-zoned parcel without an adopted master plan require conditional use approval, including outdoor sports and recreational facilities, surface parking, utilities and transportation facilities, and open

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 3

stadiums and arenas. Finally, the amendment clarified that in the CI-District *all* secondary uses must be utilized predominantly in a manner that is directly related and complementary to the institution's primary uses.

On January 7, 2020, the Common Council repealed the CI District Master Plan for Edgewood College, Edgewood High School and Edgewood Campus School based on a July 29, 2019 request by those institutions.

## Project Description

Edgewood High School is requesting approval of a conditional use to install lights for the Goodman Athletic Complex located in the northwestern corner of the overall Edgewood campus adjacent to the corner of Monroe and Woodrow Streets.

The current athletic facility includes an artificial turf field surface designed for use as a regulation competition soccer, football, and lacrosse field, and a paved running track that encircles the field. Woodrow Street abuts the field to the west, with road grade above the field starting at Monroe Street, and dropping below field elevation moving southward. A 450-seat metal bleacher is located on the east side of the field and track. The athletic complex is currently not lighted for competition, and there is no permanent/fixed public address (PA) system, although a portable PA system is occasionally used.

The conditional use request seeks to erect poles at the four corners of the complex to be outfitted with LED light fixtures. The pole locations are shown on the submitted plans as "F1," "F2," "F3," and "F4." The submittal proposes that the poles be either 68 feet or 80 feet in height (based on the grade of the field), and the application materials include photometric and glare studies for both height alternatives intended to demonstrate the impacts of lighting the field, track, bleachers, and environs of the athletic complex ("blanket grid"). The photometric studies include the maximum lighting levels proposed for football, soccer, and track uses, and specifically include proposed footcandle measurements at the Edgewood property lines adjacent to the Monroe Street and Woodrow Street rights of way. The anticipated glare impacts are measured in candelas on the heat maps included for each proposed pole height alternative. For clarity purposes, the first ten pages of the plan set regard the 68-foot tall pole alternative, with the remaining ten pages addressing the 80-foot alternative. The applicant indicates that the 80-foot tall poles will light the field more effectively, but that the 68-foot tall poles will be less visually intrusive. Lighting plans for the stadium have previously been reviewed and approved by Building Inspection Division Plan Review staff relative to MG0 Section 10.085, and it is expected that final plans will also meet this requirement.

No other improvements to the athletic complex or Edgewood Campus are proposed with this conditional use request. There is an extensive landscaped buffer consisting of both coniferous and deciduous trees located between the western edge of the athletic complex's track and the eastern curb line of the street, which continues around the corner at Monroe Street. No changes to the existing landscaping buffer are proposed at this time.

The letter of intent included with the conditional use request outlines the intended use of the proposed lights. The applicant indicates that the lights will shut-off automatically at 10:00 PM, Sunday–Thursday, and at 11:00 PM on Friday and Saturday, although the lights may be kept on beyond those times to "accommodate specially scheduled activities including, but not limited to, playoff games, games requiring overtime periods, weather delays, and health and safety delays." The letter also indicates that the lights facing Woodrow Street, F1 and F2, may be turned off sooner after an event is completed while the lights facing eastward into the campus, F3 and F4, may remain on while attendees and participants exit the athletic complex.

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 4

# Analysis

Section 28.097(3) of the Zoning Code identifies educational uses associated with colleges, universities, and secondary and primary schools as a ***primary use*** in the Campus-Institutional (CI) zoning district. Stadiums, auditoriums, and arenas, open or enclosed, are identified as ***secondary uses*** in the CI district. The Zoning Code specifies that all secondary uses must be utilized predominantly in a manner that is directly related and complementary to the CI district's primary uses. Section 28.097(2)(d) requires that in a CI district without a Campus Master Plan, the establishment, improvement, or modification of any primary or secondary use occurring outside of an enclosed building shall require conditional use approval. Staff has determined that the proposal to install lighting for the open-air stadium represents the improvement of an allowed secondary use occurring outside an enclosed building, which requires conditional use approval prior to issuance of any permits necessary to install the poles and fixtures.

However, while the installation of the poles and fixtures to light the Goodman Athletic Complex for evening activities requires conditional use approval, the use of the stadium is not otherwise before the Plan Commission for consideration. The unlighted (daytime) use of the athletic field for athletic competitions, school events, and practices is allowed by right as a secondary use complementary to the Edgewood High School primary use. Staff does not believe that the unlighted use of the stadium may otherwise be regulated by the Plan Commission through its consideration of the request to install lights.

Furthermore, the actual lights themselves are governed by the City's lighting ordinance in MGO Section 10.085, and no permits for the lights may be issued unless they comply with the requirements of that section. While the Plan Commission is asked whether lights should be allowed for the Goodman complex, staff does not advise that the Plan Commission apply conditions that may be contrary to Section 10.085. In addition to potentially contradicting MGO, enforcement of those conditions through zoning approvals may be difficult from a practical standpoint.

The Zoning Code states that the Plan Commission may not approve an application for a conditional use unless it can find that all of the standards found in Section 28.183(6)(a), Approval Standards for Conditional Uses, are met. That section states: "The City Plan Commission shall not approve a conditional use without due consideration of the recommendations in the City of Madison Comprehensive Plan and any applicable, neighborhood, neighborhood development, or special area plan, including design guidelines adopted as supplements to these plans. No application for a conditional use shall be granted by the Plan Commission unless it finds that all of the [standards for approval in Section 28.183(6) are met]."

The statement of purpose for the CI District states that the district "is established to recognize the City's major educational and medical institutions as important activity centers and traffic generators, accommodate the growth and development needs of these institutions, and coordinate the master plans of these institutions with the City's plans, policies and zoning standards." The district is also intended to "permit appropriate institutional growth within boundaries while minimizing the adverse impacts associated with development and geographic expansion;" "balance the ability of major institutions to change and the public benefits derived from change with the need to protect the livability and vitality of adjacent neighborhoods;" and "encourage the preparation of Campus Master Plans that enable adjacent neighborhoods and the broader community to understand the levels of development being proposed, their likely impacts, and appropriate mitigation measures."

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 5

As noted earlier in the 'Background' section of this report, the 56.3-acre Edgewood campus is surrounded on three sides by single-family residences, with Edgewood Drive and Lake Wingra forming the other edge of the campus. A significant number of public comments both in support and opposition of the Edgewood High School request has been submitted for the Plan Commission's consideration. The comments are attached to the legislative file under the "Public Comments" links. Among the comments submitted in opposition are those from residents whose homes are located on the neighboring streets on the west and north sides of the campus, including a number of individuals with residences across Woodrow Street from the athletic complex. Many of the comments in opposition include concerns regarding noise from current daytime use of the field (whistles, spectators, coaches, etc.), which the commenters are concerned will be exacerbated by the installation of lighting. In general, comments in support of the stadium lighting request parity between Edgewood and other high schools with lighted athletic fields.

Staff believes that the most relevant standards of approval for this request to meet are standards 1, 3, and 4, which most directly address the impact that a conditional use may have on surrounding properties:

1.  *The establishment, maintenance or operation of the conditional use will not be detrimental to or endanger the public health, safety, or general welfare.*

3.  *The uses, values and enjoyment of other property in the neighborhood for purposes already established will not be substantially impaired or diminished in any foreseeable manner.*

4.  *The establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district.*

Staff does not believe, nor has it received comments or proposed conditions from other agencies, that the other standards dealing with transportation impacts, the City's ability to provide services resulting from the establishment of the conditional use, or design of the project, are pertinent in this case, or that those standards cannot be met.

While standards 1, 3, and 4 are the ones most often directly or indirectly cited by individuals concerned with some or many aspects of a controversial conditional use application, they are almost the most difficult standards and impacts for the Plan Commission to quantify compared to more tangible impacts like utility capacity or traffic impacts. As many of the public comments received against the subject lighting request to date suggest, many of the neighbors in close proximity to the Goodman Athletic Complex believe that use of the stadium already creates impacts on the quality of life in the neighborhood, primarily due to the noise generated from the current use.

However, despite these concerns, staff believes that the Plan Commission may find standards 1, 3, and 4 met to allow the installation of the proposed lights subject to conditions that would limit the impacts of the expanded use of the stadium on nearby residents.

In order to allow extended use of the athletic complex into the evening, staff believes that the commission should focus on the number of events held at the facility and the hours during which those events may occur. Staff acknowledges that some number of neighbors experience some amount of stadium noise, particularly during athletic competitions. However, by limiting the number of events that occur in the complex during the evening, the commission may create a balance between the desire by Edgewood High School to use its athletic complex for evening sporting events and *minimizing* impacts on the residential neighborhoods that border the institution on three sides consistent with statement of purpose for the Campus-Institutional zoning district excerpted above *(emphasis added)*.

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 6

As outlined in the letter of intent and summarized in the preceding section, Edgewood proposes to use the lights for an unlimited number of events until 10:00 PM Sunday through Thursday, and until 11:00 PM on Friday and Saturday, with exceptions for weather, injuries, etc. However, staff feels that some of these proposed limits are initially too broad to minimize impacts on surrounding properties, and instead recommends a series of conditions on both the number of events and the hours that the lights may operate. In summary, staff recommends:

- *That the number of non-practice events be limited.* Staff believes that it would be appropriate for the Plan Commission to specify a number of scheduled athletic competitions and any events or uses of the field that would rely on usage of the proposed lights after 7:00 PM. While not specified in their current request, Edgewood proposed up to 40 lighted events as part of their November 2018 request to amend the now-repealed campus master plan, which was subsequently reduced in correspondence provided circa January 7, 2019 to 25 (8 Friday night football games and 17 other athletic competitions). A limitation on the number of lighted events would be reasonable with the current conditional use request, with the potential for the initial limit of such events to be relaxed in the future by either a minor (alder and Planning Director-approved) or major (Plan Commission) alteration. The Plan Commission should consider the input at the public hearing from the applicant and community and determine the number of lighted non-practice events (athletic competitions/games, school activities) that it feels would be reasonable.

- *That use of the lights be limited to the Edgewood Campus institutions: Edgewood High School, Edgewood Campus School, and Edgewood College.* Staff believes that it would be appropriate to limit use of the lights to Edgewood High School and the two other educational institutions that share the 56.3-acre campus. As noted in Section 28.097(3), all secondary uses in a CI district shall be utilized predominantly in a manner that is directly related and complementary to primary uses of the institution. As the lights are proposed as an improvement to a secondary use of the Edgewood CI-zoned property, staff feels that limiting use of the lights to events by the three institutions is appropriate, and that use by entities other than the three schools would not be directly related and complementary to Edgewood's primary educational use.

- *That the lights be turned off 30 minutes following the conclusion of a scheduled non-practice event (athletic competitions/games, school activities) and no later than 10:00 PM Sunday through Thursday and 11:00 PM on Friday and Saturday.* Staff generally agrees with the proposed hours of operation for the lights in the letter of intent. However, the lights should be turned off sooner than 10:00 or 11:00 PM whenever possible based on the earlier completion of a scheduled event, including the time needed for spectators to exit the complex and for the field to be closed.

  Further, "…specially scheduled activities including, but not limited to, playoff games, games requiring overtime periods, weather delays, and health and safety delays" is overly broad. While staff acknowledges that injuries occur during athletic competitions, which may cause delay in the completion of a game, and that weather can also cause delays, it feels that there is no need to formally incorporate those delays into any approval of the stadium lighting. If the proposed lights need to be kept on past 10:00 or 11:00 PM to allow a game delayed by weather or injury to be completed, staff recommends that documentation be kept by Edgewood so that any such need is substantiated in the event of a complaint against the approved conditional use. Otherwise, staff is unconcerned with the need to accommodate any other special activities, etc. noted in the letter of intent and does not wish to create any sort of "loopholes" that could make enforcing any conditions of approval difficult or impractical.

- *Event start times shall be scheduled to ensure that the 10:00 or 11:00 PM turn-off time for the lights can be met.* While injuries, weather delays, and other unexpected occurrences may occur from time to time during an athletic competition, other time-related impacts on a game, such as potential overtime or extra

time periods, etc., or the time needed for participants and spectators to leave the stadium, should be considered when the events are scheduled. To this end, staff recommends that no events be scheduled to start after 7:30 PM without exception.

- *Lights may be used until 7:00 PM for practices, seven days a week.* In its original request in November 2018 to amend the now-defunct campus master plan, Edgewood proposed an unlimited number of practices until 7:00 PM. While staff wishes to limit events such as games, it does not feel that trying to limit practices would be an effective use of its enforcement resources. Rather, staff proposes to allow practices to extend until 7:00 PM each night without exception, out of consideration for nearby residents. The effect of this condition essentially would allow the lights to be used after 7:00 PM only for the number of scheduled non-practice events (athletic competitions/games, school activities) determined by the Plan Commission as discussed above.

- *That no changes to landscaped buffer on north and west be allowed without approval.* Staff has not taken a position on the height of the poles proposed to light the athletic complex. However, it acknowledges the visual buffer that the existing landscaping along the west and northwest sides of the stadium provides from nearby residential properties, and recommends that no changes to that landscaping be allowed without approval of an alteration.

However, to reiterate, any lighting installed will be required to comply with Madison General Ordinances, and staff does not advise that the Plan Commission apply conditions that may be contrary to the sections of MGO that otherwise govern.

## Conclusion

Edgewood High School is requesting conditional use approval to light its Goodman Athletic Complex using four poles of either 68 or 80 feet in height to allow use of the athletic field to continue into the evening hours past sunset. No other approvals, including enlarging the stadium or installation of a permanent sound system, are proposed at this time. As with many recent land use requests involving Edgewood, the lighting request has proven to be controversial, as evidenced by the significant number of public comments received, which are attached to the legislative file. While many of the comments received to date suggest an existing impact on uses, values, and enjoyment, the normal and orderly development of surrounding properties, or a negative impact on the public's "general welfare" from the daytime (unlighted) use of the athletic complex primarily due to noise generated, staff believes that the Plan Commission may find the conditional use standards met to allow the installation and use of lighting for the stadium under specific and limited conditions intended to minimize any further impact on the area surrounding the complex, bearing in mind that the daytime use of the complex without lights is allowed by right.

While limited use of the athletic complex after dark may exacerbate the noise impacts suggested by many of those commenting on the request, staff believes that a well-regulated conditional use approval can balance the needs of Edgewood while minimizing further impact on surrounding properties consistent with the statement of purpose of the Campus-Institutional zoning district. The conditions proposed by staff are intended to uniformly limit the hours that the lights may be used, and to ensure that the 10:00 or 11:00 PM proposed end-times for scheduled events are met with rare exception due to injury or weather. Staff believes that the Plan Commission should establish a specific number of non-practice events per school year that use the proposed lights following input at the public hearing to inform what a reasonable number might be. In the event that use of the lighted field successfully balances the needs of the athletic program at Edgewood with minimizing the impacts on neighboring

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 8

properties, the number of events and other proposed conditions to limit this approval could be modified through the conditional use alteration process outlined in Section 28.183 of the Zoning Code.

Finally, as with any conditional use, the Plan Commission retains continuing jurisdiction for the purpose of resolving complaints as outlined in Section 28.183(9)(d) of the Zoning Code. Any resident, the Zoning Administrator, or other official may file a written complaint with the Plan Commission that one or more conditions of a conditional use have not been completed, or are being violated. If this were to occur, the Plan Commission would initially determine whether the complaint indicates a reasonable probability that the subject conditional use is in violation of a condition of approval, and if it does, may schedule a public hearing to bring the subject conditional use into compliance with the conditions previously imposed, modify the existing conditions, and impose additional reasonable conditions in consideration of the conditional use standards. If no reasonable modification can be made, the Plan Commission may revoke the conditional use.

## Recommendation

The Planning Division believes that the Plan Commission can find the standards for conditional use approval met to **approve** the installation of lights for the Goodman Athletic Complex at Edgewood High School at 2219 Monroe Street subject to the following conditions of approval and input at the public hearing.

Major/Non-Standard Conditions are Shaded

**Planning Division** (Contact Tim Parks, 261-9632) and **Zoning Administrator** (Contact Matt Tucker, 266-4569)

1. The final plans shall note that the photometric data represents compliance with MGO Section 10.085.

2. That the use of the lights for non-practice events (athletic competitions/games, school activities) be limited to Edgewood High School, Edgewood Campus School, and Edgewood College.

3. That stadium lighting used for practices be turned off at 7:00 PM nightly, without exception.

4. That, without exception, the number of scheduled non-practice events (athletic competitions/games, school activities) using the stadium lighting after 7:00 PM be limited to a number per school year (August 1 to July 31) to be determined by the Plan Commission following input at the public hearing.

5. That the lights be turned off 30 minutes following the conclusion of a scheduled non-practice event (athletic competitions/games, school activities) and no later than 10:00 PM Sunday through Thursday and 11:00 PM on Friday and Saturday.

6. No non-practice event (athletic competitions/games, school activities) using the lights shall be scheduled to start after 7:30 PM, without exception.

7. A landscaping plan shall be submitted for the athletic field, identifying existing species and size of trees and shrubs. This landscaping shall be maintained, dead trees replaced, and any new landscaping shall require approval of an alteration to the approved landscape plan.

**\*\*Conditions 2-7 above may be amended by approval of a minor alteration to the conditional use by the Director of the Planning Division following a recommendation by the district alder. If the minor alteration is not**

Legistar File ID # 60001
2219 Monroe Street
May 11, 2020
Page 9

approved, the applicant shall file the request for alteration of the approved conditional use with the Plan Commission for consideration pursuant to the process and standards in Section 28.183 of the Zoning Code.

The proposed conditional use request was circulated to City agencies for review and comment per standard practice. Following review, none of those agencies has recommended conditions of approval for this request. However, a general comment on the request from Capt. Jason Freedman, Midtown Precinct of the Madison Police Department is attached as "MPD Comments" for the Plan Commission's consideration.

# EXHIBIT J

**Edgewood Requests for Admission**



# City of Madison

City of Madison
Madison, WI  53703
www.cityofmadison.com

## Meeting Minutes - Approved
## PLAN COMMISSION

*This meeting may be viewed LIVE on Charter Spectrum Channel 994, AT&T U-Verse Channel 99 or at www.madisoncitychannel.tv.*

| | | |
|---|---|---|
| **Monday, May 11, 2020** | 5:30 PM | **\*\*Via Virtual Meeting\*\*** |

**Some or all of the members of the body, or members of the public, may participate in the meeting remotely by teleconference or videoconference.**

### CALL TO ORDER/ROLL CALL

The meeting was called to order at 5:30 p.m.

**Present:** 10 - Lindsay Lemmer; Patrick W. Heck; Marsha A. Rummel; Ledell Zellers; Kathleen L. Spencer; Jason S. Hagenow; Eric W. Sundquist; Nicole A. Solheim; Bradley A. Cantrell and Keetra S. Burnette

**Excused:** 1 - Andrew J. Statz

Zellers was chair for this meeting.

Staff present: Heather Stouder, Kevin Firchow and Tim Parks, Planning Division; Matt Tucker, Zoning Administrator; John Strange, Assistant City Attorney.

Alders present: Ald. Barbara Harrington-McKinney, Dist. 1; Ald. Donna Moreland, Dist. 7; Ald. Paul Skidmore, Dist.9; Ald. Zachary Henak, Dist. 10; Ald. Arvina Martin, Dist. 11; Ald. Tag Evers, Dist. 13; Ald. Keith Furman, Dist. 19.

### PUBLIC COMMENT

1.  **60306**      Plan Commission Public Comment Period

There were no registrants for Public Comment

### COMMUNICATIONS, DISCLOSURES AND RECUSALS

Ald. Lemmer disclosed that she is a graduate of Edgewood High School, but that she did not feel that would affect her ability to consider Item 16.

Solheim recused herself from consideration of Item 4, and disclosed that she is neighbors with the applicants for Item 15, but that she did not feel that would affect her ability to consider the item.

Sundquist and Ald. Heck disclosed that they were both employees of the University of Wisconsin-Madison, but that their association would not affect their ability to consider Items 2 and 3.

Spencer disclosed that she was employee at the Hill Farms State Office Building adjacent to the sites for Items 8 and 9, but that she did not feel that would affect her ability to consider those items.

### MINUTES OF THE APRIL 27, 2020 REGULAR MEETING

**A motion was made by Cantrell, seconded by Hagenow, to Approve the Minutes. The motion passed by voice vote/other.**

## SCHEDULE OF MEETINGS

Regular Meetings: May 18 and June 8, 29, 2020

Special Working Session: June 18, 2020 virtual meeting; 5:00-8:00 p.m.

## PUBLIC HEARING-5:45 p.m.

Note: Public Hearing items may be called at any time after the beginning of the public hearing. Those wishing to speak on an item must fill out a registration slip and give it to the Secretary. The Plan Commission uses a consent agenda, which means that the Commission can consider any item at 5:45 p.m. where there are no registrants wishing to speak in opposition regardless of its placement on the agenda.

### Zoning Map Amendments & Related Requests

2.   59133          Creating Section 28.022 -- 00419 of the Madison General Ordinances to change the zoning of property located at 935 West Johnson Street, 8th Aldermanic District, from TR-U2 Traditional Residential - Urban District 2) District to CI (Campus Institutional) District.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the zoning map amendment (ID 59133) and approved the demolition permit (ID 59810) subject to the comments and conditions in the Plan Commission materials. The motion to recommend approval passed on the following 7-1 vote: AYE: Ald. Heck, Ald. Lemmer, Bradley, Hagenow, Solheim, Spencer, Sundquist; NAY: Ald. Rummel; NON-VOTING: Zellers, Burnette; EXCUSED: Statz.

**A motion was made by Cantrell, seconded by Sundquist, to RECOMMEND TO COUNCIL TO ADOPT WITH CONDITIONS - RECESSED PUBLIC HEARING. The motion passed by voice vote/other.**

Ayes:   7 -   Lindsay Lemmer; Patrick W. Heck; Kathleen L. Spencer; Jason S. Hagenow; Eric W. Sundquist; Nicole A. Solheim and Bradley A. Cantrell

Noes:   1    Mar ha A Rummel

Excused:   1 -   Andrew J. Statz

Non Voting:   2 -   Ledell Zellers and Keetra S. Burnette

3.   59810          935 W Johnson Street, 8th Ald. Dist.: Consideration of a demolition permit to demolish a single-family residence to accommodate a future University of Wisconsin-Madison academic building.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the zoning map amendment (ID 59133) and approved the demolition permit (ID 59810) subject to the comments and conditions in the Plan Commission materials. The motion to approve passed on the following 7-1 vote: AYE: Ald. Heck, Ald. Lemmer, Bradley, Hagenow, Solheim, Spencer, Sundquist; NAY: Ald. Rummel; NON-VOTING: Zellers, Burnette; EXCUSED: Statz.

**A motion was made by Cantrell, seconded by Sundquist, to Approve. The motion passed by the following vote:**

Ayes:   7 -   Lindsay Lemmer; Patrick W. Heck; Kathleen L. Spencer; Jason S. Hagenow; Eric W. Sundquist; Nicole A. Solheim and Bradley A. Cantrell

Noes:   1 -   Marsha A. Rummel

**PLAN COMMISSION**                    **Meeting Minutes - Approved**                    **May 11, 2020**

              **Excused:**   1 -  Andrew J. Statz

          **Non Voting:**   2 -  Ledell Zellers and Keetra S. Burnette

The following were registered on Items 2 and 3, which were considered together:

Speaking in support of the requests was Gary Brown, University of Wisconsin-Madison Facilities Planning and Management, 30 N Mills Street, the applicant.

Registered in support but not wishing to speak was Aaron Williams, University of Wisconsin-Madison Facilities Planning and Management, 30 N Mills Street.

**4.**    **59856**    Creating Section 28.022 -- 00434 of the Madison General Ordinances to change the zoning of property located at 2524 Winnebago Street, 6th Aldermanic District, from PD (SIP) Planned Development (Specific Implementation Plan) District to Amended PD (SIP) Amended Planned Development (Specific Implementation Plan) District.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the Specific Implementation Plan subject to the comments and conditions in the Plan Commission materials. The motion to recommend approval passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to RECOMMEND TO COUNCIL TO ADOPT WITH CONDITIONS - PUBLIC HEARING. The motion passed by voice vote/other.**

Registered in support of the proposed development and available to answer questions were: Ted Matkom, Gorman & Company, 200 N Main Street, Oregon, the applicant; Justin Frahm, JSD Professional Services, Inc., 7402 Stone Ridge Drive, Weston, and Jason Korb, 648 N Plankinton Street, Suite 240, Milwaukee, both representing the applicant; and Chris McCahill, 18 Anzinger Court.

**5.**    **60084**    Creating Section 28.022 - 00435 of the Madison General Ordinances to amend a Planned Development District at properties located at 4000-4088 Felland Road, 17th Aldermanic District, to approve an Amended General Development Plan, and creating Section 28.022 - 00436 to amend a Planned Development District to approve a Specific Implementation Plan.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the Amended General Development Plan and Specific Implementation Plan subject to the comments and conditions in the Plan Commission materials.The motion to recommend approval passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to RECOMMEND TO COUNCIL TO ADOPT WITH CONDITIONS - PUBLIC HEARING. The motion passed by voice vote/other.**

Registered in support of the proposed development and available to answer questions were Jim Hess, 437 S Yellowstone Drive, Suite 201, and Jerry Bourquin, Dimension IV Architects, 6515 Grand Teton Plaza,   uite 120

Registered in support but not wishing to speak was Maddie Kachel, 2992 Rothmore Lane

Registered in opposition but not wishing to speak was Kelsey Ramirez, 4018 Felland Road

**6.**    **60089**    Creating Section 28.022 -- 00438 of the Madison General Ordinances to change the zoning of  properties located at 3040-3046 Commercial Avenue and 701 McCormick Avenue, 12th Aldermanic District, from SR-V1 (Suburban Re idential Varied 1) Di trict to SR V2 (Suburban Re idential   Varied 2) District.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the zoning map amendment (ID 60089) and approved the demolition permit

PLAN COMMISSION                    **Meeting Minutes - Approved**                    May 11, 2020

and conditional use (ID 59689) subject to the comments and conditions in the Plan Commission materials. The motion to recommend approval passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to RECOMMEND TO COUNCIL TO ADOPT WITH CONDITIONS - PUBLIC HEARING. The motion passed by voice vote/other.**

7.    **59689**    701 McCormick Avenue and 3040-3046 Commercial Avenue, 12th Ald. Dist.: Consideration of a demolition permit to demolish a single-family residence; consideration of a conditional use in the [Proposed] Suburban Residential-Varied 2 (SR-V2) District for a multi-family dwelling with four units; consideration of a conditional use in the SR-V2 District for a multi-family dwelling with between five (5) and eight (8) units; consideration of a conditional use in the SR-V2 District to construct accessory buildings exceeding ten percent (10%) of lot area,and consideration of a major alteration to a conditional use-residential building complex in the SR-V2 District, all to allow construct an additional four-unit apartment building and three eight-unit apartment buildings in an existing multi-family complex.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and recommended approval of the zoning map amendment (ID 60089) and approved the demolition permit and conditional use (ID 59689) subject to the comments and conditions in the Plan Commission materials. The motion to approve passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion passed by voice vote/other.**

Registered in support of Items 6 and 7, which were considered toge her, and available to answer questions was the applicant, Gregg Shimanski, Augusta Realty, 1609 Monroe Street.

Registered in support but not wishing to speak were: Paul Cuta, CaS4 Architecture, 4414 Regent Street, Suite 102; Lucas Roe, Reinhart, Boerner, Van Deuren, SC, 22 E Mifflin Street, Suite 700; and Peter Fortlage, Burse Surveying & Engineering, 2801 International Lane, Suite 101, all representing the applicant.

8.    **60242**    Creating Section 28.022 -- 00440 of the Madison General Ordinances to change the zoning at property located at 4728 Sheboygan Avenue, 11th Aldermanic Di trict, from PD (GDP) Planned Development (General Development Plan) District to PD (SIP) Planned Development (Specific Implementation Plan) District.

On a motion by Sundquist, seconded by Cantrell, the Plan Commission recommended referral of the Specific Implementation Plan to June 8, 2020 (June 16, 2020 Common Council) to allow the applicant work with staff to revise the Transportation Demand Management Plan (TDMP) to specify what the 30% non-motorized mode split means and understand what the enforcement mechanisms for the development will be if the trip reduction goals of the TDMP are not met. The motion recommended that the TDMP be referred to the Transportation Policy and Planning Board or Transportation Commission, whichever is meeting sooner, for their review and comment. The motion to refer also asked that the developer to incorporate sustainability measures into the project consistent with the Statement of Purpose for the Planned Development zoning district. The motion to recommend referral passed by voice vote/ other.

**A motion was made by Sundquist, seconded by Cantrell, to RECOMMEND TO COUNCIL TO RE-REFER - PUBLIC HEARING to the PLAN COMMISSION and should be returned by June 8, 2020. The motion passed by voice vote/other.**

Speaking in support of the proposed Specific Implementation Plan were Sean Roberts, Summit Smith Development, 241 N Broadway, Suite 400, Milwaukee, the applicant; Kevin Yeska, JSD Professional Services, Inc., 161 Horizon Drive, Suite 101, Verona, representing the applicant; Barry Orton, 4718 Lafayette Drive, and; Michael Lawton, 6 S Eau Claire Avenue, representing the University Hill Farms Neighborhood Association.

**PLAN COMMISSION**　　　　　　　　　**Meeting Minutes - Approved**　　　　　　　　　**May 11, 2020**

Speaking in opposition to the proposed Specific Implementation Plan was Gary Peterson, 210 Marinette Trail.

Registered in support and available to answer questions was Shawn Zimny, Gilbane Development Company, 225 W Wacker Drive, Suite 2160, Chicago, Illinois.

**9.**　　**60243**　　Creating Section 28.022 -- 00439 of the Madison General Ordinances to change the zoning at property located at 702 Gardener Road, 11th Aldermanic District, from PD (GDP) Planned Development (General Development Plan) District to PD (SIP) Planned Development (Specific Implementation Plan) District

On a motion by Sundquist, seconded by Cantrell, the Plan Commission recommended referral of the Specific Implementation Plan to June 8, 2020 (June 16, 2020 Common Council) to allow the applicant work with staff to revise the Transportation Demand Management Plan (TDMP) to specify what the 30% non-motorized mode split means and understand what the enforcement mechanisms for the development will be if the trip reduction goals of the TDMP are not met. The motion recommended that the TDMP be referred to the Transportation Policy and Planning Board or Transportation Commission, whichever is meeting sooner, for their review and comment. The motion to refer also asked that the developer to incorporate sustainability measures into the project consistent with the Statement of Purpose for the Planned Development zoning district, including the addition of bird-friendly glass for the lower floors of the proposed building. The motion to recommend referral passed by voice vote/ other.

**A motion was made by Sundquist, seconded by Cantrell, to RECOMMEND TO COUNCIL TO RE-REFER - PUBLIC HEARING to the PLAN COMMISSION and should be returned by June 8, 2020. The motion passed by voice vote/other.**

Speaking in support of the proposed Specific Implementation Plan were Sean Roberts, Summit Smith Development, 241 N Broadway, Suite 400, Milwaukee, the applicant; Craig Pryde, KTGY Group, Inc. Architects, 217 N. Jefferson Street, Suite 400, Chicago, Illinois, representing the applicant, and; Michael Lawton, 6 S Eau Claire Avenue, representing the University Hill Farms Neighborhood Association.

Registered in support and available to answer questions was Shawn Zimny, Gilbane Development Company, 225 W Wacker Drive, Suite 2160, Chicago, Illinois.

## Conditional Use & Demolition Permits

**10.**　　**59537**　　3817 Milwaukee Street, 15th Ald. Dist.: Consideration of a demolition permit to demolish an auto service station, convenience store, restaurant, and car wash; consideration of a conditional use in the Commercial Center (CC) District for an auto service station and convenience store; consideration of a conditional use in the CC District for a car wash; and consideration of a conditional use for development adjacent to a public park (Eastmorland Park), all to allow an existing auto service station/convenience store, restaurant, and car wash to be razed, and for a new auto service station/convenience store, and car wash to be built as part of a planned multi-use site.

On a motion by Cantrell, seconded by Ald Lemmer, the Plan Commission found the standards met and approved the demolition permit and conditional use subject to the comments and conditions in the Plan Commission materials The motion to approve passed by voice vote/ other

**A motion wa   made by Cantrell,   econded by Lemmer, to Approve  The motion pa   ed by voice vote/other**

Registered in support of the proposed development and available to answer questions were Andrew Stasiukevicius and Paul McIlheran, 16745 W Bluemound Road, Brookfield, and Phillip Weightman, 5972 Executive Drive, Suite 100, Madison, all representing Woodmans Food Markets, the applicant, and; Luke Haas, 221 S 2nd Street, Milwaukee.

11.  **59543**     1109-1123 S Park Street; 13th Ald. Dist.: Consideration of a demolition permit to demolish four commercial buildings; consideration of a conditional use to construct a building with over 24 dwelling units in the Traditional Shopping Street (TSS) District; consideration of a conditional use for a building exceeding 25,000 square feet of floor area for a mixed-use or multi-tenant building in the TSS District; consideration of a conditional use for a building in the TSS District exceeding 40 feet in height; consideration of a conditional use for a building in the TSS District with non-residential uses occupying less than 75-percent of the ground-floor frontage facing the primary street, including frontage at a street corner; and consideration of a conditional use for a building in the TSS District with non-residential uses constituting less than 75-percent of the building's ground-floor area, all to allow construction of a three-story mixed-use building with 2,600 square feet of commercial space and 44 apartments.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and approved the demolition permit and conditional use subject to the comments and conditions in the Plan Commission materials. The motion to approve passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion passed by voice vote/other.**

Registered in support of the proposed development and available to answer questions were: Randy Christianson and David Diamond, Walter Wayne Development, LLC and and Madison Regional Development Corporation, LLC, 702 N High Point Road, the applicants, and; Kevin Burow, Knothe Bruce Architects, 7601 University Avenue, Suite 201, Middleton, representing the applicants.

Registered in support but not wishing to speak was Jim Winkle, 813 Emerson Street.

12.  **59933**     5567 Odana Road, 19th Ald. Dist.: Consideration of a demolition permit to demolish a bank; consideration of a conditional use in the Commercial Corridor-Transitional (CC-T) zoning district for multi-family dwellings with eight (8) or more unit ; con ideration of a conditional u e to con truct a mixed-use building with greater than 24 dwelling units in the CC-T District; consideration of a conditional use for a multi-tenant building in the CC-T District exceeding 40,000 square feet floor area; consideration of a conditional u e in the CC T Di trict for a mi ed u e building with le    than 75% non-residential ground floor area, all to construct a five-story mixed-use building with 3,500 square feet of commercial space and 79 apartments.

On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and approved the demolition permit and conditional use subject to the comments and conditions in the Plan Commission materials. The motion to approve passed by voice vote/ other.

**A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion passed by voice vote/other.**

Registered in support of the proposed development and available to answer questions were: Lance McGrath and Michael Metzger, McGrath Property Group, 730 Williamson Street, the applicants; Sixto Villegas, 311 E Chicago Street, Suite 240, Milwaukee; Jennifer Camp, JLA Architects, 3001 Midnight Sun Drive, Sun Prairie, and; Spencer Christiansen and Matt Schreiner, Vierbicher Associates Inc, 999 Fourier Drive, Suite 201.

Registered in support but not wishing to speak was Taylor McGrath, McGrath Property Group, 730 Williamson Street

**PLAN COMMISSION**                **Meeting Minutes - Approved**                **May 11, 2020**

13.   59934        6104-6204 Driscoll Drive, 3rd Ald. Dist.: Consideration of a conditional
                   use-residential building complex in the Traditional Residential-Planned District
                   (TR-P) zoning to construct twelve (12) two-family twin home dwellings (24
                   total units).

                   On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and
                   approved the condiional use subject to the comments and conditions in the Plan Commission materials.
                   The motion to approve passed by voice vote/ other.

                   **A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion
                   passed by voice vote/other.**

                   Registered in support of the proposed development was Brian Munson, Vandewalle & Associates, 120
                   E Lakeside Street, representing the applicant, Veridian Homes.

                   Registered in support but not wishing to speak was Grace Dahlen, 2881 Maple Wood Court, Fitchburg.

14.   59935        601 Bay View, 13th Ald. Dist.: Consideration of a demolition permit to
                   demoliih a community center and five reiidential building  containing 102
                   dwelling units; consideration of a conditional use in the Traditional
                   Residential-Urban 1 (TR-U1) District for a multi-family dwelling with greater
                   than (8) units; consideration of a conditional use in the TR-U1 District for a
                   reiidential building comple , and; coniideration of a conditional uie in the
                   TR-U1 District for a recreational/ community/ neighborhood center, all to allow
                   construction of a residential building complex with 57 townhouse units in eight
                   buildings, two apartment buildings containing 73 total units, and a new
                   community center

                   On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and
                   approved the demolition permit and conditional use subject to the comments and conditions in the Plan
                   Commission materials. The motion to approve passed by voice vote/ other.

                   **A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion
                   passed by voice vote/other.**

                   Registered in support of the proposed development and available to answer questions were: Alexis
                   London, 1825 Melrose Street, representing the applicant, the Bayview Foundation; Scott Kwiecinski,
                   Horizon Development Group, Inc., 5201 East Terrace Drive, Suite 300; Stephanie Farrell, 4001 Chippewa
                   Drive; Kevin Burow, Knothe Bruce Architects, 7601 University Avenue, Suite 201, Middleton,
                   representing the Bayview Foundation; Chris Socha, 4465 N Cramer Street, Shorewood, and; Shane
                   Bernau, SmithGroup, 44 E Mifflin Street.

                   Registered in opposition to the proposed development but not wishing to speak was Torrey Jaeckle,
                   4001 Chippewa Drive.

15.   60002        1934 West Lawn Avenue; 13th Ald. Dist.: Consideration of a conditional use in
                   the Traditional Residential-Consistent 3 (TR-C3) District to construct
                   accessory building exceeding ten percent (10%) of lot area, and;
                   consideration of a conditional use in the TR-C3 District for an accessory
                   dwelling unit, all to allow construction of an accessory building containing a
                   garage and an accessory dwelling unit.

                   On a motion by Cantrell, seconded by Ald. Lemmer, the Plan Commission found the standards met and
                   approved the condiional use subject to the comments and conditions in the Plan Commission materials.
                   The motion to approve passed by voice vote/ other.

                   **A motion was made by Cantrell, seconded by Lemmer, to Approve. The motion
                   passed by voice vote/other.**

                   Registered in support of the request and available to answer questions was the applicant, Andrew
                   Foxwell, 1934 West Lawn Avenue.

PLAN COMMISSION                    **Meeting Minutes - Approved**                    May 11, 2020

16.   **60001**      2219 Monroe Street, 13th Ald. Dist.: Consideration of a conditional use in a Campus-Institutional (CI) District without a campus master plan for the establishment, improvement, or modification of a secondary use occurring outside of an enclosed building, to allow installation of lights for the stadium at Edgewood High School ("Goodman Athletic Complex").

On a motion by Cantrell, seconded by Hagenow, the Plan Commission found the standards were not met and placed the conditional use on file without prejudice. The Plan Commission could not find standard #3 met, finding that the lights would have a substantial negative impact on the uses, values, and enjoyment of surrounding properties, and that no evidence was submitted by the applicant that there would not be negative impacts on the lighted use of the field, and no mitigating measures proposed to limit those impacts (noise barriers, limit on events, etc.).

Members indicated that they would be open to considering the request again if some redress of the noise impacts was presented by the applicant, including improved engagement with the neighborhoods and a limit to the number of games with lights.

The motion to place on file without prejudice passed on the following 7-1 vote: AYE: Ald. Heck, Ald. Rummel, Cantrell, Hagenow, Solheim, Spencer, Sundquist; NAY: Ald. Lemmer; NON-VOTING: Zellers, Burnette; EXCUSED: Statz.

**A motion was made by Cantrell, seconded by Hagenow, to Place On File Without Prejudice. The motion passed by the following vote:**

Ayes:   7 -   Patrick W. Heck; Marsha A. Rummel; Kathleen L. Spencer; Jason S. Hagenow; Eric W. Sundquist; Nicole A. Solheim and Bradley A. Cantrell

Noes:   1 -   Lindsay Lemmer

Excused:   1 -   Andrew J. Statz

Non Voting:   2 -   Ledell Zellers and Keetra S. Burnette

There were approximately 940 registrants on Item 16. A final list of registrants on this item has been attached to the legislative file, ID 60001 as "Registrants (Final)_Item 16 (60001).pdf."

## BUSINESS BY MEMBERS

There was no business by members.

## SECRETARY'S REPORT

Heather Stouder summarized the upcoming matters for the Commission.

### - Upcoming Matters - May 18, 2020

- Comprehensive Plan Annual Report
- Revised MGO Chapter 37, Stormwater Management System and Erosion Control Ordinance
- 8110-8134 Mid Town Road 1833-1859 Waldorf Blvd. - PD to Amended PD(GDP-SIP) - Amend Midtown Center General Development Plan and approve Specific Implementation Plan to construct three multi-family buildings with up to 280 units
- 4015-4057 Kipp Street, et al - Certified Survey Map Referral - Create two outlots for future development following Ballast Drive vacation (ID 60374)
- 126 Langdon Street - Demolition Permit-Final Plan Approval and Conditional Use - Construct seven-story, 107-unit apartment building (Revised request)
- 4417 Hillcrest Drive - Demolition Permit - Demolish single-family residence to construct a new single-family residence
- 219 Cottage Grove Road - Conditional Use - Construct outdoor eating area for tavern
- 4200 Buckeye Road - Conditional Use - Establish private school in building with existing church and daycare center
- 5381 Maly Road - Extraterritorial Certified Survey Map to create two commercial lots in Town of Burke

- Adjacent to 3101 US Hwy 12 & 18 - Extraterritorial Certified Survey Map to create one commercial lot in Town of Cottage Grove to effect a lot line adjustment

### - Upcoming Matters - June 8, 2020

- 908 E Main Street - Conditional Use - Construct five-story, 92,000 sq. ft. office building in Urban Design Dist. 8
- 202 N Midvale Blvd., 4410 Regent Street and 215 Price Place - SE to NMX to rezone for future development
- 215 Price Place - Conditional Use to construct private parking facility
- 825 E Washington Avenue - Demolition Permit and Conditional Use - Demolish two commercial buildings to construct an eight-story, 151-room hotel with two restaurant-taverns and outdoor eating areas In Urban Design Dist. 8
- 402-414 E Washington Avenue, 8-12 N Franklin Street, and 9 N Hancock Street - Demolition Permit and Conditional Use - Demolish six residential buildings and a commercial building to construct a ten-story mixed-use building with 3,300 square feet of commercial space and 156 apartments in Urban Design Dist. 4
- 2122 Chadbourne Avenue - Conditional Use - Construct accessory building exceeding 576 square feet of area
- 1933 Keyes Avenue - Conditional Use - Construct accessory building containing accessory dwelling unit
- 5622 Eastpark Boulevard - Conditional Use - Construct mixed-use development containing 4,300 sq. ft. of commercial space and 306 apartments in five buildings with accessory pool and clubhouse

## ANNOUNCEMENTS

Zellers welcomed Solheim to the Plan Commission. Solheim then said a few words about her background.

## ADJOURNMENT

**A motion was made by Hagenow, seconded by Rummel, to Adjourn at 12:55 a.m., Tuesday, May 12, 2020. The motion passed by voice vote/other.**