**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

EDGEWOOD HIGH SCHOOL
OF THE SACRED HEART, INC.,

        Plaintiff,

    v.

CITY OF MADISON, WISCONSIN;
CITY OF MADISON ZONING BOARD OF
APPEALS; CITY OF MADISON PLAN
COMMISSION; and CITY OF MADISON
COMMON COUNCIL,

        Defendants.

Case No. 3:21-CV-118

**ANSWER AND ADDITIONAL
DEFENSES**

---

Defendants City of Madison, Wisconsin, City of Madison Zoning Board of Appeals, City

of Madison Plan Commission, and City of Madison Common Council , through their attorneys,

Boardman & Clark LLP, submit this Answer and Affirmative Defenses to the Complaint of

Plaintiff Edgewood High School of the Sacred Heart, Inc., and state as follows:

1.     *For more than three years, Edgewood High School has sought outdoor
lights – just like those commonly seen at other schools and throughout the
City of Madison – for the only field owned by a private, Catholic high
school. Yet at every turn the City has moved the goal posts, changing its
rules to prevent those lights and to limit the school from using its field. As a
result, Edgewood has been treated unequally and denied both its
recognized, vested property interests and its right to use its own property in
accord with its sincerely held religious beliefs and to further its religious
mission.*

    **ANSWER:**    Defendants admit that Edgewood has sought a permit for lights for its

athletic field, including submitting a lighting application on February 22, 2019, and that the City

has not provided Edgewood with an approved permit. Defendants deny the remaining allegations in this Paragraph.

2. *This action seeks to protect Edgewood's religious rights and property interests and to redress the City's past violations of both. At every step, Edgewood has complied with the City's zoning requirements in its efforts to obtain four light poles for its on-campus field. Yet while lighting of this nature is commonly seen throughout Madison, the City has repeatedly acted to deny Edgewood its lights. First, the City manipulated the interpretation of its own zoning requirements and Edgewood's Master Plan to reach its desired denial of the school's routine outdoor lighting application. That interpretation was then used to impose new obstacles and arbitrary and severe restrictions on Edgewood's use of its field, which did not exist before the application. Next, the City held and refused to issue a lighting permit properly approved by city staff. Third, and after Edgewood had a clear path to lighting approval endorsed by the City Attorney, Alder Evers and the City rushed to change the zoning requirements to target Edgewood and specifically and expressly hinder its lighting application. Fourth, and finally, under even this new set of more difficult standards, the City resorted to ignoring both its professional staff's recommendation to grant conditional approval of Edgewood's lights and Edgewood's substantial evidence satisfying the new conditional use analysis. Individually and collectively, these actions resulted in a different, harsher and ever-changing set of rules for Edgewood than for the public institutions that came before Edgewood who sought and received lights from the City.*

**ANSWER:** Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Subject to and without waiving that objection, Defendants deny.

3. *The City's actions have denied Edgewood all practical uses of its field during non-daylight hours. All its uses are otherwise permitted under the law and have been enjoyed by Edgewood for over 90 years during daylight hours.*

**ANSWER:** Defendants deny.

4. *The City of Madison and its officials have imposed land use regulations in an arbitrary, unequal and unlawful manner to deny Edgewood and its students the full use and enjoyment of its field. Similarly situated public institutions have not faced this treatment. Instead, the City has subjected*

*Edgewood, as a Catholic, private institution, to unequal treatment and has substantially burdened Edgewood's religious exercise in violation of federal and state law.*

**ANSWER:** Defendants deny.

5. *This civil action challenges the arbitrary, unequal, and unlawful manner in which the City is imposing its land use regulations to restrict Edgewood's use of its field and the City's refusal to issue Edgewood its lighting permit. Edgewood asserts federal claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq., the United States Constitution, and state law claims over which this Court may exercise supplemental jurisdiction.*

**ANSWER:** Defendants admit that in this action Edgewood asserts federal and state-law claims. Defendants deny the remaining allegations in this Paragraph.

6. *Edgewood is a Catholic high school founded in 1881 by the Congregation of the Dominican Sisters of Sinsinawa (the "Dominican Sisters of Sinsinawa").*

**ANSWER:** Defendants admit that Edgewood is a Catholic high school. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore deny the same.

7. *In 1893, the Dominican Sisters of Sinsinawa moved the school, then known as Sacred Heart Academy, to a property located on the shore of Lake Wingra in Madison, Wisconsin. The Sisters renamed their academy to Sacred Heart Academy at Edgewood in 1895 and then opened the doors to Edgewood High School of the Sacred Heart in 1927. Edgewood has operated continuously on its site located at 2219 Monroe Street in Madison since 1927.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

8. *Edgewood is organized as a Wisconsin nonprofit corporation.*

**ANSWER:** Defendants admit.

9. *Edgewood is a "religious institution" under RLUIPA, 42 U.S.0 § 2000cc et seq.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same. Defendants note that RLUIPA does not expressly define the term "religious institution."

10.   *Defendant City of Madison (the "City") is a municipality in Dane County, Wisconsin.*

**ANSWER:**   Defendants admit.

11.   *The City is a "government" under RLUIPA, 42 U.S.C. § 2000cc-5(4)(A), and is responsible for its ordinances as well as the acts, omissions, and interpretations of its zoning administrator, agents, boards, commissions, and councils.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that it is a "government" under the definition provided by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A), but they deny the remaining allegations of this Paragraph.

12.   *Defendant Matthew Tucker ("Tucker") is the City's Zoning Administrator and is sued in his official capacity. As Zoning Administrator, Tucker is overseen by the Building Inspection Division Director.*

**ANSWER:**   Defendants admit, except as to the allegation that Mr. Tucker is being sued in his official capacity as the Court has dismissed him as a party.[1]

13.   *Defendant George Hank ("Hank") is the Director of the City's Building Inspection Division and is sued in his official capacity. As Director of the Building Inspection Division, Hank oversees Zoning Administrator Tucker.*

**ANSWER:**   Defendants admit, except as to the allegation that Mr. Hank is being sued in his official capacity as the Court has dismissed him as a party.

---

[1] On May 3, 2022, the Court granted Defendants' request to dismiss Matthew Tucker, George Hank, and Alder Tag Evers from the lawsuit. (Dkt. 28). Mr. Tucker, Mr. Hank, and Ald. Evers are referred to as "Defendants" throughout the Complaint but such is no longer accurate. Defendants will not address that designation in each paragraph of its answer but denies any allegation that Mr. Tucker, Mr. Hank, or Ald. Evers are defendants in this action.

14.     *Defendant City of Madison Zoning Board of Appeals ("Zoning Board") is a municipal board established by Wis. Stat. § 62.23(7)(e) and Madison Gen. Ordinance (M.G.O.) § 28.205. The Zoning Board has jurisdiction and authority to, among other things, hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of Madison's zoning laws.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit.

15.     *Defendant City of Madison Plan Commission ("Commission") is a municipal board established by M.G.O § 16.01. The Commission has jurisdiction and authority, among other things, to issue final approval over conditional use permits under Madison's zoning laws.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that M.G.O. § 16.01 established the City Plan Commission, with the powers, duties and qualifications as set forth in Chapter 16 of the Madison General Ordinances and in Wis. Stat. § 62.23. Defendants deny any allegations that are inconsistent with the text of the statute.

16.     *Defendant City of Madison Common Council ("Common Council") is an elected group of representatives responsible to develop and adopt legislative and administrative programs for the City of Madison. Among other things, the Council is responsible for establishing zoning ordinances and hearing appeals from decisions from lower municipal bodies, including but not limited to the Commission.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the City of Madison Common Council is an elected group of representatives but deny that members have any legal responsibility as described in this Paragraph.

17.     *Defendant Tag Evers is a City of Madison Alder and is sued in his official capacity. Evers, an elected member of the Council representing District 13, is a vocal opponent of Edgewood and instigated one or more acts of the City's unequal and burdensome treatment of Edgewood.*

5

**ANSWER:**   Defendants admit that Tag Evers is a City of Madison Alder, that he represents District 13, and that he has publicly stated his opposition to Edgewood's proposed addition of lights. Defendants object to the terms "vocal opponent" and "instigated" as vague and therefore deny the allegations in those respects. Defendants also deny that any of the Defendants, including the City of Madison, treated Edgewood in an unequal or burdensome way. Finally, Defendants deny the allegation that Mr. Evers is being sued in his official capacity as the Court has dismissed him as a party.

18.   *This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)3, in that it is brought to redress deprivations under color of state law of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)4, in that it seeks to recover equitable relief under acts of Congress, specifically 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc, which provide causes of actions for the protection of civil and constitutional rights, injunctive remedies and damages, and under 28 U.S.C. § 2201(a), to secure declaratory injunctive relief under 28 U.S.C. § 2202; and under 42 U.S.C. § 1988, to secure reasonable attorney fees as part of the case. This Court may also exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.*

**ANSWER:**   Defendants admit that this Court has subject matter jurisdiction over Edgewood's federal-law claims and that this Court may exercise supplemental jurisdiction over Edgewood's state-law claims. Defendants deny that Edgewood has stated a claim.

19.   *Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Western District of Wisconsin and at least one defendant resides in this district.*

**ANSWER:**   Defendants admit that venue in this District is proper.

20.   *All claims herein are timely and brought in compliance with tolling agreements executed between the City and Edgewood extending any deadlines for filing.*

6

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that all of Edgewood's asserted claims are timely.

21.     *Since the 1920's, Edgewood has had an athletic field and track located on its campus at 2219 Monroe Street. A new football field was installed for the 1930-31 school year.*

**ANSWER:**   Defendants admit that Edgewood currently has an athletic field and track located on its campus at 2219 Monroe Street, but they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

22.     *On November 7, 1930, the new field was blessed and consecrated to God. A Catholic priest, Father Leo, officiated the ceremony, and the entire student body was present for the field's dedication.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

23.     *Below are photographs of the field and track taken over the years:*



*(Photo: 1929 Edgewood football game at Monroe Street field)*



*(Photo: 1930 Edgewood football game on field with school in the background)*



ys explains his success." The

of the Depression, Edgewood
ly, enrollment increased to a

**An Edgewood halfback breaks
loose for a long run during a
1931 football game played on
the new Edgewood High School
football field** 1927 EHS Yearbook

*(Photo: 1931 Edgewood football game at current Woodrow Street field location)*



*(Photo: 1932 Edgewood football game at current Woodrow Street field location)*



*(Photo: Edgewood High School's Track & Athletic Field 1937 on the right).*



*(Photo: Edgewood football field and track in 2015)*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations in this Paragraph and therefore deny the same.

24.    *For nearly a hundred years, Edgewood has lawfully and openly used its track and field to host athletic contests and other activities. Edgewood's high-school teams have continuously used its athletic field for events like football, soccer, track and field, baseball, and summer sports camps.*

**ANSWER:**    Defendants admit that Edgewood has in the past used its track and field to

host athletic contests but deny that such use was lawful pursuant to Edgewood's then-existing

Master Plan. Defendants lack knowledge or information sufficient to form a belief as to the truth

of the remaining allegations and therefore deny the same.

25.    *For example, Edgewood hosted multiple football games and soccer games on the improved athletic field during the 2018-19 academic year. Lacrosse matches have been regular events on the field since 2015. Since 1999, Edgewood has hosted numerous track meets (including parochial meets and meets for youth on the West Side of the City) on the field. Since at least that same year, the track and field have included bleachers for fans.*

**ANSWER:**    Defendants admit that soccer games appear to have been played on the

field on March 27, 2019; March 29, 2019; April 2, 2019; April 16, 2019; April 30, 2019; and

May 7, 2019. Defendants lack knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in this Paragraph and therefore deny the same.

10

26.     *Edgewood has repeatedly upgraded and modernized its field to comport with changing times. In or about April 1997, Edgewood submitted to the City an approved "Stormwater Management Plan" (dated April 7, 1997) which indicated that Edgewood would be replacing its old track and field.* **Exhibit A,** *Edgewood High School Master Plan (2014) (hereinafter "Edgewood Master Plan"), at A.3.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this Paragraph and therefore deny the same. Defendants admit the allegations in the second sentence of this Paragraph.

27.     *Edgewood began a renovation project in 2015 to "rebuild [ ] its athletic field and track," creating "cutting-edge running surfaces for track and field training as well as state-of-the-art artificial turf for outdoor sports, including football, baseball, softball, soccer, track, and lacrosse."* **Exhibit B,** *Edgewood High School, Our History (2019).*

**ANSWER:**     Defendants admit that in 2015, Edgewood replaced its existing track and field with a new track and field. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

28.     *This 2015 renovation also included installation of a new scoreboard:*



**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the allegations in this Paragraph, or the authenticity or veracity of the photo and therefore deny the same.

29. *Today, the track and field are named the Goodman Athletic Complex. The track and field do not presently have outdoor lighting that would enable Edgewood to use them in non-daylight hours. The Goodman Athletic Complex is Edgewood's only field.*

**ANSWER:** Defendants admit that the name Goodman Athletic Complex appears on the scoreboard. Defendants deny that the field area does not have any outdoor lighting or that the field cannot be used outside of daylight hours. Defendants deny that the Goodman Athletic Complex is Edgewood's only field.

30. *Beyond student athletic contests, Edgewood has also through the years allowed the community to access the field for social, recreational and community building purposes, including but not limited to the Monroe Street Farmers' Market.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

31. *Edgewood is a private, inclusive, Catholic school in the Sinsinawa Dominican educational tradition. Through sponsorship of Edgewood, the Dominican Sisters of Sinsinawa carry out their religious Mission: "As Sinsinawa Dominican women, we are called to proclaim the Gospel through the ministry of preaching and teaching in order to participate in the building of a holy and just Church and society."*

*See https://www.sinsinawa.org/about-us/about-us.html (last visited Feb. 15, 2021).*

**ANSWER:** Defendants admit that Edgewood is a Catholic school and that the quote appears on the Sisters of Sinsinawa website. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

32. *In furtherance of the sincerely held religious beliefs of the Dominican Sisters of Sinsinawa and of Edgewood, Edgewood's mission is to "educate* **the whole student** *for a life of learning, service, personal responsibility through a rigorous academic curriculum that embraces the Sinsinawa Dominican values of Truth, Compassion, Justice, Partnership and Community."* **Exhibit C,** *Edgewood Mission Statement. (Emphasis added).*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

33.   *For nearly a century, athletics has been a primary way in which Edgewood accomplishes its Catholic mission to educate the whole student, teach personal responsibility, and instill and promote the Sinsinawa Dominican values.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

34.   *Athletic events and the field provide the context and platform for these inherently religious activities to reach out and engage the community and to share with it the school's religious mission and values.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

35.   *These uses are also all allowable uses under M.G.O. § 28.097.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants object as vague as to time and as to the description of events as being so vague as to make it impossible to answer. Therefore, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

36.   *Edgewood's athletics teams are called the Edgewood Crusaders. The school offers students the ability to participate on twenty-five different boys or girls sports teams, and 75% of Edgewood's students participate in one or more of its offered sports.*

**ANSWER:**   Defendants admit the allegations in the first sentence of this Paragraph. With respect to the second sentence, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

37.   *The goals of Edgewood Athletics include:*

- *Promote the mission and goals of Edgewood High School*

13

- *Maintain Christian, sportsmanlike behavior at all times*
- *Improve motor skills*
- *See the need for better health and physical fitness*
- *Promote a desire to succeed and excel*
- *Foster the development of moral and ethical standards*
- *Learn the high ideals of fairness in all human relationships*
- *Learn to make proper decisions under pressure*
- *Enjoy competition and comradeship.*[2]

[2] *Edgewood Crusaders Athletics, Goals of Edgewood Athletics https://www.edgewoodcrusadersathletics..com/goalsofathletics (last visited Feb. 15, 2021)*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

38.   *Edgewood's role for athletics at its school reflects and furthers the Catholic Church's views and teachings on the importance of athletics in modern society. "Since the origins of Christianity, sport has emerged as an effective metaphor of the Christian life: the Apostle Saint Paul did not hesitate to include sport among human values, which served him as a point of support and reference for dialogue with the people of his time. There are possibilities of introducing sports, games and other playful activities in order to lead young persons toward a deeper understanding of the scriptures, Church teachings or sacraments.... Sport is also a way to introduce young people to the cardinal virtues of fortitude, temperance, prudence and justice and facilitate their growth in them. In the field of physical education, St. John Bosco, who was just a youth chaplain in Turin in 1847, was probably the first Catholic educator to have recognized the importance of movement, play and sport for the holistic development of the personality of young people. For Don Bosco, educating through sport means to cultivate the personal accompaniment of the young person as well as mutual respect, even in competition."*[3]

[3] *Holy See Press Office, Giving the best of yourself:  a Document on the Christian perspective on sport and the human person, from the Dicastery for Laity, Family and Life (Summary of Bulletin, Jan. 6, 2018), https://press.vatican.va/content/salastampa/en/bollettino/pubblico/2018/06/01/180601b.html.*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple,

concise, and direct." Subject to and without waiving that objection, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

.

39.     *Saint Pope John Paul II, himself a notable athlete in his day, recognized the link between Christian values and sports: "The correct practice of sport must be accompanied by practicing the virtues of temperance and sacrifice; frequently it also requires a good team spirit, respectful attitudes, the appreciation of the qualities of others, honesty in the game and humility to recognize one's own limitations. In short, sports, especially in less competitive forms, foster festive celebration and friendly coexistence. While playing sports, Christians also find help in developing the cardinal virtues –fortitude, temperance, prudence and justice."[4] "Playing sports has become very important today, since it can encourage young people to develop important values such as loyalty, perseverance, friendship, sharing and solidarity. Sports, in fact, can make an effective contribution to peaceful understanding between peoples and to establishing the new civilization of love. Sports contribute to the love of life, teaches sacrifice, respect and responsibility, leading to the full development of every human person."[5]*

*[4] Vatican Information Office, Press Release, June 25, 2004, St. Pope John Paul II message to the 25th World Day of Tourism "Sports and Culture: Two Vital Forces for Mutual Understanding, Culture and Development Among Countries" 27 September 2004, http://visnews-en.blogspot.com/2004/06/sports-tourism-understanding-culture.html*

*[5] St. Pope John Paul II, Homily, Jubilee of Sports People 29 October 2000, http://www.vatican.va/content/john-paul-ii/en/homilies/2000/documents/hf_jp-ii-hom_2001029_jubilee-sport.html*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Subject to and without waiving that objection, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

40.     *Pope Francis more recently noted the importance of sports for the Catholic institutions: "Sports in the community can be a great missionary tool, where the Church is close to every person to help them become better and to meet Jesus Christ."[6]*

        [6] *Kerry Lenartowick, Pope encourages athletes to play for the Church, Catholic News Agency June 7, 2014),* [http://www.catholicnewagency.com/news/pope-encourages-athletes-to-play-for-the-church/](http://www.catholicnewagency.com/news/pope-encourages-athletes-to-play-for-the-church/)

**ANSWER:**     Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

41.     *Consistent with this outlook, athletics is a primary way Edgewood students connect with each other and experience the Dominican value of community, as well as the Catholic values of honesty, respect, sacrifice, and humility.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

42.     *Edgewood students, athletes, and coaches are encouraged to pray before athletic contests on the field and in its other facilities.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

43.     *Edgewood athletics provides a unique opportunity to educate, congregate in community, recreate, and celebrate the school's values.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

44.     *Enrollment is critical to Edgewood's religious mission. It must have students to educate and with whom to share its religious teachings and*

*values. Edgewood continuously seeks to attract students and necessarily competes with other local high schools for students.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

45.   *In a modern culture that places a priority on sports, athletic offerings and opportunities are critical components of Edgewood's ability to attract new students.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

46.   *The facilities Edgewood has to offer prospective students, including athletic facilities and its track and field, are a significant factor in its ability to attract and retain students and thereby further its mission.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

47.   *Quality facilities are one of the most important factors in prospective students' (and their parents') decision-making process in selecting a school. Prospective students often rely on the opinions and impressions of friends and family, which are in turn often shaped by the institution's facilities.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

48.   *In a competitive school market, prospective students desire to attend a school with quality, updated athletic facilities. The presence of an on-campus field with lights is important to prospective students, who wish to compete on such a field as student-athletes and/or to attend school games there as part of their high school experience.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

49.   *Similarly, quality athletic facilities play a large role in attracting and retaining talented student-athletes, who in turn impact the success of the school's athletic programs. On-field success in athletics makes a school more attractive to prospective students. For example, in the similar context*

*of college admissions, studies show that college programs with successful on-field achievements show both an increase in applications and in the quality of the students applying to the school.[7] Moreover, and specifically, success by a school's football program correlates to the perception of its academic reputation, and thus further assists in driving enrollment.[8]*

*[7] Michael L. Anderson, The Benefits of College Athletic Success:  An Application of the Propensity Score Design, THE REVIEW OF ECONOMICS AND STATISTICS, March 2017, 99(1):  119-134; Devin G. Pope and Jaren C. Pope, The Impact of College Sports Success on the Quantity and Quality of Student Applications, SOUTHERN ECONOMIC JOURNAL, 75(3), 750-780 (2009).*

*[8] Laura W. Perna, Studying College Choice:  A Proposed Conceptual Model, in J.S. Smart (Ed.), Higher Education:  Handbook of Theory and Research, (Vol. 21, pp. 99-157 (2006).*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

50. *Enhanced athletic facilities, specifically an on-campus athletic field with outdoor lighting, would confer many benefits to Edgewood to make it more competitive and attractive to prospective students and their families, including:*

   a. *Alleviating scheduling, travel and cost concerns for student-athletes and their families currently practicing and playing at facilities across the greater Madison-metropolitan area;*

   b. *Allowing feeder schools to utilize Edgewood's facilities for their team sports and fitness activities, leading to prospective students' increased affinity for Edgewood at a younger age, resulting in increased enrollment;*

   c. *Increasing the frequency of alumni returns to campus, thereby increasing both their likelihood of choosing Edgewood for their own children and the likelihood of financial contributions to further Edgewood's mission;*

   d. *Allowing working parents and other community members to attend games they would otherwise be unable to attend during the day, thereby increasing the sense of community, engagement, and affinity for Edgewood;*

18

    e.  *Eliminating the need to spend substantial amounts of money on stadium rentals, thus freeing up resources for community outreach, academic scholarships, and investment in other non-athletic facilities (such as theatres, classrooms, and libraries) that attract prospective students with differing interests;*

    f.  *Guaranteeing prospective students that they will be able to attend and/or play games at all, rather than being at the mercy of the City and the public institutions that control the fields that Edgewood would otherwise rent and that have used that control to impose significant limitations and restrictions on Edgewood's use of the fields.*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

    51.  *In addition, and in furtherance of the Sinsinawa Dominican values of Compassion, Justice, Partnership and Community, part of Edgewood's religious mission is to provide an alternative option to the underserved communities in Madison and to increase the racial and ethnic diversity of the school. The strength and appeal of Edgewood's athletics program is a key way Edgewood is able to reach and attract students from these underserved communities. Schools' successful sports programs have been shown to increase applications from certain student populations, including African Americans.[9]*

    [9] *Devin G. Pope and Jaren C. Pope, Understanding College Application Decisions Why College Sports Success Matters, J. OF SPORTS ECONOMICS, 15(2), 107-131 (2014)*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

52.     *As a Catholic institution, Edgewood is called to evangelize and reach as many students as it can with Edgewood's religious teachings and values.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

53.     *The absence of an on-campus field with lighting hurts Edgewood in a competitive education market, puts Edgewood at a competitive disadvantage relative to other schools, and thereby burdens its religious mission to reach as many students as possible with its teachings and values.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

54.     *Edgewood is not seeking to use its track and field exclusively for athletic events—even though athletics are integral to the school's primary religious mission and are engaged in furtherance of the school's sincerely held religious beliefs. Edgewood has also hosted other activities on its athletic field in furtherance of its religious mission and values and is compelled by its sincerely held religious beliefs to use the field for other religious uses related to the school's primary religious mission, including various assemblies, Mass and student liturgies, convocations, and community events.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

55.     *The inherently religious activities Edgewood desires for its field include community outreach, evangelism, fellowship, assembly, prayer and liturgical worship on the field.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

56.     *Presently, Edgewood is effectively restricted from all such activities after daylight hours.*

**ANSWER:**     Defendants deny.

57.     *In light of the current and ongoing COVID-19 pandemic, and the limitations and dangers of congregating indoors, the practical inability to use its outdoor space during non-daylight hours restricts and hinders*

> *Edgewood's ability to assemble, worship and engage in outreach and fellowship opportunities.*

**ANSWER:**    Defendants deny.

58.    *Further, the ability and flexibility to hold such activities on a lighted field during non-daylight hours would allow Edgewood to be creative in the experience it offers its students, increasing students' sense of engagement and community, and making the school more attractive to prospective students. Those experiences are significantly lessened when held off campus.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore deny the same.

59.    *The relevant land use regulations at issue include those governing the "Campus-Institutional Zoning District" and that District's related "Master Plan" provisions, summarized below.*

**ANSWER:**    This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the rules for areas zoned "Campus-Institutional Zoning District" are at issue in this case. Defendants deny that the "Master Plan" provisions are material or pertinent to this action as Edgewood's Master Plan has been repealed, and deny that Edgewood's summary is accurate and complete.

60.    *The City adopted its current Zoning Code on October 26, 2011, with an effective date of January 2, 2013. See City of Madison ORD-12-00134.*

**ANSWER:**    Defendants admit that the City adopted the zoning code on October 26, 2012, with an effective date of January 2, 2013. Defendants deny the remaining allegations in this Paragraph.

61.    *As part of this new code, the City created a new zoning designation called the "Campus-Institutional District," which is designed for "the City's major educational and medical institutions."*

**ANSWER:**    Defendants admit.

62.    *Campus-Institutional Districts were created to "accommodate the growth and development needs of these institutions, and coordinate the master*

> *plans of these institutions with the City's plans, policies and zoning standards." M.G.O. § 28.097(1).*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that this Paragraph accurately quotes from M.G.O. § 28.097(1) but deny the remaining allegations in this Paragraph.

63. *Prior to 2013, the City zoned Edgewood as a residential district.*

**ANSWER:** Defendants admit.

64. *As of January 2, 2013, as part of the mapping of the new Zoning Code, the City zoned Edgewood as a Campus-Institutional District under Section 28.097, which remains its zoning classification today.*

**ANSWER:** Defendants admit.

65. *In addition to Edgewood, the City also rezoned the following institutions, among others, into Campus-Institutional Districts: the University of Wisconsin-Madison, Madison Area Technical College, the Madison Metropolitan School District (which includes James Madison Memorial High School, Madison East High School, Madison West High School, and Madison La Follette High School) and Mendota Mental Health Campus.*

**ANSWER:** Defendants admit that in addition to Edgewood, the high schools listed in this Paragraph are located in Campus-Institutional District zoning, as are portions of the University of Wisconsin-Madison campus and the Madison College Truax campus. Defendants deny the remaining allegations in this Paragraph.

66. *Prior to 2019, Campus-Institutional Districts were unique in Madison's Zoning Code because they did not operate under the permitted/conditional use framework applicable to other zoning districts. Rather, all "uses allowed within the Campus Institutional District are listed separately" as either primary or secondary uses under Section 28.097. The separate list divides permitted uses in the Campus-Institutional district into "primary or secondary" uses. M.G.O. § 28.097(3).[10]*

> [10] *As set forth below, the City changed certain aspects of the Campus-Institutional District in October, 2019 to impose a conditional use framework in response to and specifically to apply to Edgewood's field light request. M.G.O. § 28.097(2)(d) (Am. by ORD-19-00069, 10-10-19).*

22

*References to Section 28.097 shall be to the version pre-dating the October 10, 2019 amendment unless otherwise noted.*

**ANSWER:**   Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Subject to that objection, this Paragraph contains a legal conclusion for which no answer is required. To the extent answer is required, the Madison Code of Ordinances speaks for itself, and Defendants deny all allegations inconsistent with the code. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

67.   *The list of permitted "primary uses" included "educational uses associated with colleges, universities, and secondary and primary schools, including classroom buildings, libraries, and offices." M.G.O. § 28.097(3)(a)1 (capitalization altered).*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

68.   *The list of permitted "secondary uses" included "indoor and outdoor sports and recreational facilities"; "places of worship"; "stadiums, auditoriums, and arenas, open or enclosed," and "other uses related to the institution's primary mission." M.G.O. § 28.097(3)(b)5, 10, 15, 17 (capitalization altered).*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answer is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. Defendants deny that "places of worship" are a secondary use under the current Ordinance. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

23

69.     *The ordinances allowed schools in Campus-Institutional Districts to use their property, by right and without seeking a permit or other approval, as outdoor sports and recreational facilities, outdoor stadiums, outdoor arenas, and for other uses related to the institution's primary mission. M.G.O. §§ 28.097(3).*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance, and deny this is an accurate portrayal of the ordinance. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

70.     *At all relevant times, Edgewood is and was entitled to use its athletic field for athletic contests as well as any other uses related to the school's primary mission as secondary uses and as a matter of law under Madison's Zoning Code.*

**ANSWER:**   Defendants object as vague to "all relevant time" and therefore, deny.

71.     *Further, and apart from the Zoning Code, Edgewood has a legal right under Wisconsin law to use its athletic field to host games, given its established and consistent use for that purpose beginning nearly a century ago.*

**ANSWER:**   Defendants admit that Edgewood currently may use its athletic field to host games pursuant to the current Zoning Code but deny the remaining allegations.

72.     *Under the 2013 zoning code, only institutions zoned as a Campus-Institutional District after the effective date were mandated to submit a master plan; others were encouraged to voluntarily submit a "Campus Master Plan" to the City in order to facilitate and "accommodate the future growth of these institutions." M.G.O. § 28.097(1)–(2),*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

73.     *To that end, a master plan generally included a "description of existing conditions" and "the proposed conditions" on the campus, including "future needs/capital improvements," "phasing of proposed improvements," and "future land uses and buildings." M.G.O. § 28.097(5)(c)(1)–(2) (capitalization altered).*

**ANSWER:**     Defendants object on Rule of Completeness that this Paragraph does not encompass all the requirements to a master plan and therefore, is misleading. Subject to that objection, this Paragraph contains a legal conclusion for which no answer is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

74.     *If an institution submitted a master plan, and that plan was approved by the City, then that plan governs the development of new buildings within the Campus-Institutional District for the life of the plan, which is ten years. M.G.O. § 28.097(2)(b)–(d), (4), (7).*

**ANSWER:**     This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. Defendants affirmatively allege that master plans govern more than the development of buildings, but also governed uses of open space, and in any event, the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

75.     *For any "buildings properly identified on a Campus Master Plan," the institution needed only obtain approval from "an architectural review committee prior to construction," rather than obtain "conditional use approval" from the City. M.G.O. § 28.097(2)(c), (7)(a).*

**ANSWER:**     This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. As Edgewood admits, the referenced version of the Ordinance is no longer in effect and has no bearing on Edgewood's asserted claims.

76. *In other words, if the City approved a master plan, then the specific projects shown on the campus Master Plan would not be reviewed by the Plan Commission again if those projects adhere to the approved master plan.*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answer is required. To the extent answer is required, the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

77. *Master plans govern the development of buildings, not an institution's existing or future uses of or activities on the property. The master plan acts to streamline approval of the buildings identified on the master plan. Moreover, master plans do not govern the development of buildings under 4,000 square feet.*

**ANSWER:**   Defendants object that this Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, Defendants deny.  Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

78. *Master plans do not govern or regulate placement of light poles on property.*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answers is required. To the extent answer is required, Defendants deny. the ordinance speaks for itself, and Defendants deny all allegations inconsistent with the ordinance. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

79. *To date, none of the City's other Campus-Institutional Districts, including the four public high schools, have submitted a master plan for approval. Only Edgewood and the University of Wisconsin-Madison adopted a master plan.*

**ANSWER:**   Defendants object that this Paragraph is vague and confusing as high schools are not Districts. Subject to that objection, Defendants admit that the University of

Wisconsin-Madison and Edgewood were the only two institutions to adopt a master plan under the Campus-Institutional District Zoning Ordinance and deny any remaining allegations.

80.     *In January 2014, Edgewood voluntarily submitted its Master Plan to the City under Section 28.097. **Exhibit A,** Edgewood Master Plan.*

**ANSWER:**     Defendants admit. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

81.     *Edgewood's Master Plan included the required items outlined by Section 28.097, namely a description of "existing conditions" and a description of "proposed conditions" for future development on campus.*

**ANSWER:**     Defendants object to the extent that this Paragraph suggests that these were the only required items. Defendants admit that Edgewood submitted a Master Plan that included a section entitled "Existing Conditions" and "Proposed Conditions" but deny any remaining allegations. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

82.     *Edgewood designed its Master Plan to ensure "that all stakeholders are aware of potential future developments on campus" and to "provide a basis for implementing [Edgewood's] development decisions."*

**ANSWER:**     Defendants admit that the quoted language appears in the repealed master plan. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

83.     *The plan was "not intended to be a detailed blueprint for construction" on Edgewood's campus.*

**ANSWER:** Defendants admit that the quoted language appears in the repealed master plan. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

84. *The purpose of master plans, generally, and of Edgewood's Master Plan, specifically, was not to establish Edgewood's right to continue to use its field for its existing activities. Edgewood already had the legal right to continue those activities under both state law and Madison's Zoning Ordinances.*

**ANSWER:** Defendants object to this Paragraph as vague and confusing. Subject to that objection, this Paragraph contains legal conclusions to which no answer is required. To the extent answer is required, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

85. *Nor did Edgewood's Master Plan list all the then-existing activities which occur on Edgewood's field or the rest of Edgewood's campus, as these activities were already established before Edgewood's Master Plan was submitted.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

86. *Listing all activities performed on Edgewood's athletic field was not a prerequisite for those activities to continue to be allowed during the term of the Master Plan.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

87.   *The City approved Edgewood's Master Plan, subject to conditions not relevant here, on April 22, 2014.*

**ANSWER:**   Defendants admit that the City approved Edgewood's Master Plan, with conditions, on April 22, 2014, but the effective date of Edgewood's Master Plan was November 6, 2015. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Thus, Defendants submit that the Master Plan in its entirety is immaterial and irrelevant to Edgewood's asserted claims. To the extent that Plaintiff believes that the Master Plan is relevant to its claims, Defendants deny that the conditions of approval are irrelevant to this lawsuit.

88.   *Edgewood's approved Master Plan referenced the new, rebuilt track and athletic field.*

**ANSWER:**   Defendants object that this Paragraph is vague and confusing as to time, particularly the words "new" and "rebuilt." Subject to those objections, Defendants admit that the site containing the track and field is referenced in the approved master plan and deny all remaining allegations. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

89.   *In the Planning Division Staff Report, which recommended approval of the plan to the Planning Division, the City noted that no master plan had yet been approved for a Campus-Institutional District.* **Exhibit D,** *Planning Division Staff Report 6. Thus, Edgewood's Master Plan was the first master plan that the Plan Commission was ever asked to consider.* **Exhibit D,** *Planning Division Staff Report 6.*

**ANSWER:**   Defendants admit the first sentence in this Paragraph and deny the second sentence. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

90.   *In 2018, Edgewood developed plans and communicated to the City its desire to upgrade its athletic field to improve its ability to host events, including athletic contests. The proposed upgrades then included additional seating, a building for concessions and restrooms, lighting, and additional amenities.*

**ANSWER:**   Defendants admit.

91.   *In September 2018, the City instructed Edgewood to submit a proposed amendment of its Master Plan for consideration of these amenities.*

**ANSWER:**   Defendants admit that in September of 2018, the City suggested that Edgewood amend its master plan if it desired to add these amenities. Defendants deny any remaining allegations in this Paragraph.

92.   *Nevertheless, just a month later, in October 2018, the City, through its agent, Defendant Tucker, devised a new interpretation of Edgewood's Master Plan claiming that Edgewood had voluntarily restricted itself from holding "athletic contests" on its athletic field by adopting the terms of its Master Plan in 2014.*

**ANSWER:**   Defendants admit that in October 2018, Matthew Tucker informed Edgewood that the Master Plan that Edgewood drafted prevented Edgewood from hosting athletic contests as Edgewood had voluntarily restricted itself from holding athletic contests on its field. Defendants deny the remaining allegations in this Paragraph.  Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

93.   *Despite Edgewood's nearly 100 years of open use of its athletic field, Defendant Tucker advised Edgewood that he had become "aware of the extensive use of the [Edgewood] athletic field" after he attended an*

October 17, 2018 "neighborhood meeting." **Exhibit E,** Email from Zoning
Administrator Tucker, dated Oct. 26, 2018.

**ANSWER:**   Defendants object that this Paragraph is argumentative. Subject to that
objection, Defendants admit that the quoted language appears in an email written by Matthew
Tucker and deny any remaining allegations. Defendants affirmatively allege that the City
repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

94.   *Defendant Tucker notified Edgewood that he believed its use of its athletic
field for "athletic contests" was "outside of the allowances" under
Edgewood's Master Plan.*

**ANSWER:**   Defendants admit. Defendants affirmatively allege that the City repealed
Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

95.   *According to Defendant Tucker's new-found interpretation and application
of the City's land use regulations, Edgewood could only use its field for
"team practices and physical education classes"—any other use or activity
was prohibited.*

**ANSWER:**   Defendants object that this Paragraph is argumentative. Subject to that
objection, Defendants admit that Edgewood in its Master Plan restricted use of its athletic field
to "team practices and physical education classes." Defendants deny the remaining allegations.

96.   *Defendant Tucker's interpretation arbitrarily distinguished between team
practices and physical education classes on one hand and "athletic
contests" on the other even though neither he nor the City has defined
"athletic contests."*

**ANSWER:**   Defendants deny. Defendants affirmatively allege that the City repealed
Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

97.   *According to his interpretation and application of the City's land use
regulations, Edgewood was also prohibited from using its field for such
uses as an outdoor Mass or prayer service, a graduation ceremony, and
community outreach events (such as the long-running Monroe Street
Farmer's Market).*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

98. *The City's Zoning Code did not and does not identify whether indoor or outdoor sports and recreation facilities, stadiums, auditoriums, or arenas may be used to host team practices, physical education classes, or athletic contests, nor distinguish between use during day or night.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

99. *It was arbitrary and irrational to say that every other school can use its athletic field for "athletic contests," but another school with the same zoning classification could not use its athletic field for the same purpose.*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

100. *It was arbitrary and irrational to say that one school could use its athletic field for "team practices" but not for "athletic contests," but another school with the same zoning classification could use its athletic field for either or both activities.*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

101. *In an attempt to support his interpretation, Defendant Tucker miscited and misread Section 3.8 of Edgewood's Master Plan to claim the plan "identifies the athletics field to be used for `team practices, physical education classes' in the future.*

**ANSWER:** Defendants object that this Paragraph is argumentative. Subject to that objection, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

102. *Defendant Tucker ignored other passages of the Edgewood Master Plan where Edgewood described the use of its athletic field as being for an "athletic field" and "recreation space."*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

103. *Edgewood identified team practices and physical education classes as examples of activities which would occur, but did not intend, and never would have intended, these examples to be an exhaustive and restrictive list of activities for a ten-year period.*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

104. *Defendant Tucker arbitrarily decided to interpret these examples as an exhaustive and restrictive list to bar Edgewood and its students from engaging in any other activities on the field.*

**ANSWER:** Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

105. *Administrator Tucker dubbed any "programming" outside of "team practices and physical education classes" as prohibited on the athletic field.*

**ANSWER:** Defendants object that this Paragraph is argumentative. Subject to that objection, Defendants admit that Tucker determined that hosting athletic contests was inconsistent with Edgewood's self-imposed restriction of use of the field to team practices and physical education classes, and deny any remaining allegations. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

106. *Based on Defendant Tucker's interpretation of Edgewood's Master Plan, he and the City took enforcement action against Edgewood and its students and tasked a City inspector with surveilling Edgewood's girls' soccer games.*

**ANSWER:** Defendants object as vague as to "enforcement action" and therefore deny. Defendants did not issue any citations to Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore,

Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

107. *After surveilling Edgewood's students, the inspector reported four different dates on which the Edgewood girls' soccer team was playing soccer games on Edgewood's field.*

**ANSWER:**   Defendants object that this Paragraph is argumentative. Subject to that objection, Defendants admit that a City zoning inspector issued notices of violation, one of which referenced dates Edgewood hosted athletic games on its field. Defendants also admit that a zoning inspector visited the site in response to complaints received by the City. Defendants deny the remaining allegations in this Paragraph. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and therefore deny the same.

108. *As a result, Administrator Tucker issued an "Official Notice" against Edgewood on April 1, 2019. **Exhibit F,** Official Notice, dated April 1, 2019. The notice asserted that Edgewood violated Section 28.097 by holding "athletic contests" on its athletic field, on the grounds that "[t]he Campus Master Plan states that the athletic field is used for team practices and physical education classes" only.*

**ANSWER:**   Defendants object to "as a result" but Defendants admit the remaining allegations. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

109. *The notice then ordered Edgewood to "[d]iscontinue holding athletic contests on [its] athletic field."*

**ANSWER:** Defendants admit that language in the notice, but Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

110. *A second "Official Notice" from the Zoning Administrator followed on May 15, 2019.* **Exhibit G,** *Official Notice, dated May 15, 2019.*

**ANSWER:** Defendants admit.

111. *This notice again asserted that Edgewood violated Section 28.097, specifically with regard to "athletic contests taking place on the athletic field" in March, April, and May. These "violations" included the playing of high-school girls' soccer games, a boys' lacrosse game, and a track meet.*

**ANSWER:** Defendants admit that language in the notice, but Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

112. *The notices also stated that "[a]ny person violating any provision of the City Ordinances enforced by the Building Inspection Division is subject to the penalties provided by the appropriate Ordinance violated."* **Exhibit G.**

**ANSWER:** Defendants admit that language in the notice, but Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

113.   *Pursuant to M.G.O. § 28.207 (Penalties), Edgewood was subject to a fine of up to $1,000 for each violation, and each day or portion thereof the alleged violation was to be considered a separate offense.*

**ANSWER:**   Defendants admit the language of the ordinance but deny the allegations in this paragraph. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

114.   *None of the other schools located in the Campus-Institutional District, with or without a master plan, have received a zoning violation or were alleged to be in violation of the City's Zoning Code for hosting an athletic contest on their athletic fields.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same.

115.   *Upon information and belief, the City's interpretation and enforcement of its land use regulations was part of its effort to discourage and hinder Edgewood from further attempts to obtain lights for its field. Indeed, Edgewood would have less practical use for lights if it could not play games on the field to begin with.*

**ANSWER:**   Defendants deny.

116.   *Edgewood timely appealed the violation notices to the Defendant City of Madison Zoning Board of Appeals ("ZBA") on May 31, 2019.* **Exhibit H,** *Edgewood Notice of Appeal to ZBA.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no response is required, to the extent response is required, Defendants admit.

117.   *On July 11, 2019, the ZBA held a duly noticed public hearing on Edgewood's appeal.*

**ANSWER:**   Defendants admit.

118.   *Defendant ZBA voted to deny Edgewood's appeal, affirm Administrator Tucker's Notices of Violations, and thus prohibit "athletic contests" on Edgewood's 100 year old athletic field.*

36

**ANSWER:**   Defendants admit that the ZBA voted to deny Edgewood's appeal and uphold the Notices of Violation but affirmatively allege that the ZBA indicated that Edgewood needed to amend its Master Plan because Edgewood itself had prohibited the use of the field for athletic contests. Defendants deny any remaining allegations. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. Furthermore, Defendants affirmatively allege that even before the repeal, the City stipulated that it would not take any enforcement action against Edgewood for holding games.

119.   *The University of Wisconsin is also zoned as a Campus Institutional District. The University of Wisconsin submitted a Master Plan under the Campus Institutional District Ordinances in 2017. The City approved the University of Wisconsin's Master Plan in 2017.*

**ANSWER:**   Defendants admit that portions of the University of Wisconsin-Madison campus are located in Campus-Institutional District zoning. Defendants also admit that the University of Wisconsin submitted a master plan in 2017 but deny that the City approved it in 2018. The Common Council approved and adopted the University of Wisconsin's Master Plan in 2018, but it did not become effective until January 1, 2019. Defendants deny the remaining allegations in this Paragraph.

120.   *The University of Wisconsin has numerous facilities and open spaces dedicated to recreation, athletics, and athletic contests.*

**ANSWER:**   Defendants object that the allegations in this Paragraph are vague and confusing. Subject to that objection, Defendants admit that the University of Wisconsin has facilities and open spaces that are used for recreation and athletics, including athletic contests. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and therefore deny the same.

121.   *The University of Wisconsin Master Plan only identifies some and not all of the University's facilities and open spaces as being dedicated to recreation, athletics, and athletic contests.*

37

**ANSWER:**   Defendants object that the allegations in this Paragraph are vague and confusing. Subject to that objection, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same.

122.   *The University of Wisconsin's Master Plan only describes a very small subset of activities for any of the facilities and open spaces that it does identify.*

**ANSWER:**   Defendants object that the allegations in this Paragraph are vague and confusing. Subject to that objection, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

123.   *For example, the University of Wisconsin Master Plan identifies the facilities and open spaces listed immediately below. While these facilities are obviously dedicated to recreation, athletics, and athletic contests, the University of Wisconsin Master Plan does not expressly state or specify as such.*

　　a.   **The Nielsen Tennis Stadium.** *The Master Plan does not state that this facility or open space is used for tennis competitions, tennis practices, or tennis summer camps, among other obvious activities for which the university has used Nielsen Stadium both before and after the effective date of its Master Plan;*

　　b.   **The Natatorium.** *The Master Plan does not state that this facility is used for swimming, diving, or weight lifting competitions, among other obvious activities for which the university has used the Natatorium both before and after the effective date of its Master Plan;*

　　c.   **The Goodman Softball Complex.** *The Master Plan does not state that this open space is used for softball games, among other obvious activities for which the university has used the Goodman Softball Complex both before and after the effective date of its Master Plan;*

　　d.   **The McClimon Track Facility.** *The Master Plan does not state that this open space is used for track & field meets or team practices, among other obvious activities for which the university has used the McClimon Track Facility both before and after the effective date of its Master Plan;*

　　e.   **The Near West Fields.** *The Master Plan does not state that this open space is used for intramural athletic contests, club sport contests, or other athletic competitions or practices, among other obvious activities for which the university has used the Near West Fields both before and after the effective date of its Master Plan;*

      *f.* **The Near East Fields.** *The Master Plan does not state that this open space is used for intramural athletic contests, club sport contests, or other athletic competitions or practices, among other obvious activities for which the university has used Near East Fields both before and after the effective date of its Master Plan.*

**ANSWER:** Defendants object that this Paragraph violates Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; and Rule 8(d), which requires each allegation to be "simple, concise, and direct." Subject to that objection, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

      124. *Additionally, for example, the University of Wisconsin Master Plan identifies multiple other facilities and open spaces without stating their uses for obvious activities for which the university has used the spaces both before and after the effective date of the Master Plan: The Memorial Union and Memorial Union Terrace, The Memorial Library, and Residence Halls.*

**ANSWER:** Defendants object that the allegations in this Paragraph are vague and confusing. Subject to that objection, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

      125. *The University of Wisconsin Master Plan does not identify or describe the University Bay Fields or the Cole Recreation Area, both of which host athletic contests.*

**ANSWER:** Defendants deny these sites are not identified or described in the University of Wisconsin Master Plan. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

      126. *The University of Wisconsin Master Plan does not include an exhaustive list of activities for any identified facility or open space, including the facilities and open spaces described above.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same.

127.   *Upon information and belief, Defendant Tucker did not, and has never, contacted University of Wisconsin to inform it that the uses of the athletic fields alleged in Paragraphs 123125 are "outside of the allowances" of its Master Plan, despite not being specified.*

**ANSWER:**     Defendants object to the extent that this Paragraph references other Paragraphs in the complaint, which make this Paragraph confusing and vague. Defendants incorporate their answers to the referenced Paragraphs.  Subject to that objection, Defendants admit that unlike with Edgewood, Tucker has not received complaints about the University of Wisconsin violating its Master Plan and does not have information to suggest that the University is violating its Master Plan. Therefore, Tucker has not had contact with the University regarding the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

128.   *Upon information and belief, Defendant Tucker did not, and has never, interpreted and applied the City's land use regulations as allowing the University of Wisconsin facilities alleged in Paragraphs 123-125 to be used exclusively for the uses specified in its Master Plan. To the contrary, they continue to be used openly for all of the purposes alleged in Paragraphs 123-125.*

**ANSWER:**     Defendants object to the extent that this Paragraph references other Paragraphs in the complaint, which make this Paragraph confusing and vague. Defendants incorporate their answers to the referenced Paragraphs.  Subject to that objection, Defendants admit that unlike with Edgewood, Tucker has not received complaints about the University of Wisconsin violating its Master Plan and does not have information to suggest that the University is violating its Master Plan. Therefore, Tucker has not had contact with the University regarding the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020. To the extent there are any remaining allegations,

40

Defendants lack knowledge or information as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

129. *Upon information and belief, a City inspector has never been tasked with surveilling the activities alleged in Paragraphs 123-125 to assess whether they comply with the uses described in University of Wisconsin's Master Plan.*

**ANSWER:**   Defendants object to the extent that this Paragraph references other Paragraphs in the complaint, which make this Paragraph confusing and vague. Defendants incorporate their answers to the referenced Paragraphs.  Subject to that objection, Defendants admit that unlike with Edgewood, Tucker has not received complaints about the University of Wisconsin violating its Master Plan and does not have information to suggest that the University is violating its Master Plan. Therefore, no zoning inspector has visited those sites, which generally only occurs when a complaint is received. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

130. *Upon information and belief, the City has never issued any Official Notices to University of Wisconsin in connection with the activities alleged in Paragraphs 123-125.*

**ANSWER:**   Defendants object to the extent that this Paragraph references other Paragraphs in the complaint, which make this Paragraph confusing and vague. Subject to that objection, Defendants admit that the City has never received a complaint about any of the sites identified in Paragraphs 123-125 violating the University's Master Plan and for that reason, the uses of the sites have not been investigated and no notices of violation have been issued on the basis of the University's Master Plan. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

131. *Beyond these violations above, the City's approval of University of Wisconsin's building projects under its Master Plan has also been dramatically different than the treatment given Edgewood's.*

**ANSWER:**     Defendants deny.

132.     *After the City approved its Master Plan, the University of Wisconsin began its Nielsen Outdoor Tennis Court Expansion project, which added two additional outdoor tennis courts, outdoor fencing, outdoor seating, outdoor lighting, an outdoor sound system, and landscaping.*

**ANSWER:**     Defendants admit that after the Common Council voted to approve the University of Wisconsin's master plan, but before the University's master plan came into effect, the University began its Nielsen Outdoor Tennis Court expansion project. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

133.     *In its site plan review application submitted to the City, the University of Wisconsin described the use of the Nielsen Stadium as authorized by Section 28.097(3).*

**ANSWER:**     Defendants admit but affirmatively allege that such was before the University of Wisconsin's Master Plan took effect. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

134.     *This site plan review application neither described the use of the Nielsen Stadium nor disclosed the University of Wisconsin's intent to host competitive tennis matches or other outdoor athletic contests there.*

**ANSWER:**     Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

135.     *The Nielsen Outdoor Tennis Court Expansion is mentioned only briefly in the University of Wisconsin's Master Plan, which does not disclose many details of the project, including the university's plan to construct new outdoor courts, outdoor seating, outdoor lights, or an outdoor sound system, all of which it has since done.*

**ANSWER:**     Defendants admit that not all the details of the expansion are described in the master plan, but affirmatively allege that the expansion plan referenced in Paragraphs 133 and 134 was approved before the effective date of the master plan. Defendants affirmatively

42

allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

136.   *Additionally, as related to the outdoor lights, the University of Wisconsin's Master Plan did not disclose the location or height of any of the light poles.*

**ANSWER:**   Defendants object to the extent that this Paragraph as confusing and vague with respect to the phrase "as related to the outdoor lights." Subject to that objection, Defendants admit but affirmatively allege that the lights for the tennis court were approved before the effective date of the master plan. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

137.   *The City approved the University of Wisconsin's site plan review application for the Nielsen Outdoor Tennis Court Expansion project and did not require the University of Wisconsin to amend its Master Plan.*

**ANSWER:**   Defendants admit but affirmatively allege that such was before the University of Wisconsin's Master Plan took effect. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

138.   *The Nielsen Outdoor Tennis Court Expansion project is complete and the stadium is currently fully operational, including hosting athletic contests under outdoor lights.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

139.   *While the City was misconstruing Edgewood's Master Plan, and in light of the City's problematic interpretations and misuse of that Master Plan to burden Edgewood, Edgewood withdrew its efforts to amend the Master Plan to update its field.*

**ANSWER:**   Defendants deny that it misconstrued Edgewood's Master Plan. Defendants deny that the City had "problematic interpretations and misuse of that Master Plan

43

to burden Edgewood." Defendants admit that Edgewood withdrew its efforts to amend the Master Plan to update its field and deny any remaining allegations in this Paragraph.

140. *Instead, on February 22, 2019, Edgewood submitted to the City an application for outdoor lighting only for its athletic field. This application was in accordance with the City's outdoor lighting ordinance then-governing all applicants, including all schools zoned as a Campus-Institutional District like Edgewood.*

**ANSWER:** Defendants admit that Edgewood submitted to the City an application for Outdoor Lighting on February 22, 2019. Defendants deny the remaining allegations in this Paragraph.

141. *Edgewood's lighting permit application met all objective criteria in the City's outdoor lighting ordinance and should have been granted as a matter of routine administrative procedure. See M.G.O. § 10.085 et seq.*

**ANSWER:** Defendants deny.

142. *The lighting application filed by Edgewood in 2019 was in all respects similar to the 2018 lighting applications filed by Madison Memorial High School, which was quickly approved and granted by the City. **Exhibit I,** City Lighting Permit for Madison Memorial High School.*

**ANSWER:** Defendants deny.

143. *On February 27, 2019 and March 1, 2019, the City's Building Inspection Division reviewed and approved Edgewood's application. **Exhibit J,** City of Madison Site Plan Verification.*

**ANSWER:** Defendants deny.

144. *However, soon afterward, the City informed Edgewood that it would not release the approved permits.*

**ANSWER:** Defendants admit that in or around March 2019, a representative of the City informed Edgewood that it would not issue a permit for installation and use of a new lighting system. Defendants further admit that installation and use of a new lighting system would violate Edgewood's now-repealed Master Plan. Defendants deny the remaining allegations in this Paragraph.

145. *The City unlawfully withheld the lighting permits because it claimed the lights could be used for hosting "athletic contests" on Edgewood's athletic field, a use ostensibly not specified in the Master Plan.*

**ANSWER:**   Defendants deny.

146. *The City unlawfully withheld the permits because it claimed that allowing Edgewood to install the lights would violate Edgewood's Master Plan because the Master Plan did not specifically identify lighting for the field.*

**ANSWER:**   Defendants deny that the City unlawfully withheld the permits. Defendants admit that Edgewood sought permits for lights for night games and such would violate Edgewood's Master Plan. To the extent there are any remaining allegations, Defendants deny.

147. *The City fundamentally and intentionally misconstrued its zoning ordinances to manufacture a basis to deny Edgewood's permit. The Master Plan provisions, which Edgewood voluntarily opted into, provided for streamlined implementation of building projects identified in the Master Plan. The Master Plan ordinance provisions do not override the City's Outdoor Lighting Ordinance for building projects, whether included or not in a Master Plan, nor preclude applications for outdoor lights to facilitate already-permitted uses.*

**ANSWER:**   Defendants deny.

148. *On July 12, 2019, just after the Defendant City of Madison Zoning Board of Appeals voted to uphold the City's citations to Edgewood for using its field to host girls' soccer and track competitions, then-City of Madison Attorney Michael May wrote to counsel for Edgewood. **Exhibit K,** July 12 Letter from Michael May.*

**ANSWER:**   Defendants admit that on July 12, 2019, Michael May, who had been the City Attorney at the time, sent Edgewood's counsel the letter marked as Exhibit K.

149. *City Attorney May stated: "We invite Edgewood to file to terminate its Master Plan and return to the standard CI zoning, which would place it on equal footing with other high schools." (Emphasis added.)*

**ANSWER:**   Defendants admit that this Paragraph accurately quotes part of the letter marked as exhibit K.

150. *Several days later, Assistant City Attorney John Strange reiterated and clarified the City Attorney's invitation, outlining to Edgewood's counsel three options by which Edgewood could "legally play games and install lights at its field." **Exhibit L,** July 17 Strange email.*

**ANSWER:**   Defendants admit that former Assistant City Attorney John Strange sent the email marked as Exhibit L on July 17, 2021, and that the email contains the quoted text. Defendants deny the remaining allegations in this Paragraph.

151. *One identified option was to repeal the Master Plan: "Edgewood could ask the City to repeal the ordinance that adopted its Master plan. As a consequence of repealing its Master Plan, Edgewood would revert to the standard regulations of the CI District in the zoning code, which would allow games and lights at the field." (Emphasis added.)*

**ANSWER:**   Defendants admit that this Paragraph accurately quotes part of the email marked as Exhibit L.

152. *Contrary to Administrator Tucker's interpretation and the ZBA's decision, Edgewood had a legal right to continue to use its athletic field for athletic contests and other activities related to its religious mission.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny that Edgewood had a legal right to continue to use its field for athletic contests. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

153. *Contrary to Administrator Tucker's interpretation and refusal to issue Edgewood's lighting permit, Edgewood had a legal right to install lights at the field.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny. Defendants affirmatively allege that the City repealed Edgewood's Master Plan, at Edgewood's request, on January 7, 2020.

46

154. *While still disagreeing with the City's interpretation of its Master Plan, and without waiving its rights or its appeal of Administrator Tucker's actions or the ZBA's decision, Edgewood, in reliance on the City Attorney's invitation and representations, applied for the repeal of its Master Plan. The Master Plan did not confer any of the benefits the City had promised in 2014, but instead had been used by the City to burden Edgewood and as a pretext to deny Edgewood the right to host athletic contests and to erect lights.*

**ANSWER:**    Defendants admit that Edgewood applied for repeal of its Master Plan but deny all remaining allegations.

155. *The City Attorney made clear that if Edgewood's Master Plan was repealed, the City would no longer use it to deny Edgewood's use of its athletic field and lights. Instead, Edgewood's outdoor lighting application would be granted, as similar applications had been for Madison Memorial High School and others, under the objective, administrative approval provisions under Chapter 10 "Outdoor Lighting" of the Zoning Code.*

**ANSWER:**    Defendants deny all allegations except to admit that the City Attorney indicated that if Edgewood's Master Plan was repealed, that plan would not apply to Edgewood's request for lights.

156. *On July 29, 2019, Edgewood accepted the City's invitation to repeal its Master Plan. While delayed by the City, as set forth below, Edgewood's application was eventually approved by the Common Council without changes, thereby confirming that it was fully compliant when submitted.*

**ANSWER:**    Defendants admit that Edgewood voluntarily requested the repeal of its Master Plan and the Common Council approved Edgewood's request on January 7, 2020. Defendants deny the remaining allegations in this Paragraph.

157. *Contrary to the City Attorney's representations, after Edgewood filed to repeal its Master Plan, Defendant Tag Evers and other City officials immediately moved to change the process that would govern Edgewood's lighting application after repeal of its Master Plan and they did so to target Edgewood and to ensure that Edgewood would not be on equal footing with other, public Madison high schools as promised.*

47

**ANSWER:** Defendants deny except to admit that the Common Council amended the ordinance related to Campus Institutional Districts, which amendment took effect on October 10, 2019.

158. *To Edgewood's surprise and disappointment, on August 26, 2019, the Defendant City Plan Commission voted to delay a vote on approval of Edgewood's Master Plan repeal.*

**ANSWER:** Defendants admit that the City Plan Commission voted on August 26, 2016, to refer the matter to the Common Council. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore deny the same.

159. *The purpose of this delay was to permit Madison Alder Tag Evers, a vocal opponent of Edgewood and its efforts to add outdoor lights, to rush through the Common Council an ordinance he had specifically drafted to target Edgewood, its still-pending lighting application, and anticipated post-repeal Master Plan lighting applications.*

**ANSWER:** Defendants object that the terms "vocal opponent" and "rush through" are argumentative, vague and confusing. Subject to and without waiving that objection, Defendants deny except to admit that Tag Evers publicly stated his opposition to Edgewood's proposed addition of lights.

160. *Under his amended ordinance, Edgewood's light application would no longer be reviewed under the objective, administrative approval process under Chapter 10 for Outdoor Lighting like those recently enjoyed by fellow Campus-Institutional zoned applicants like Memorial. See M.G.O. § 28.097(2)(d) (Am. by ORD-19-00069, 10-10-19).*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny.

161. *Instead, and for the first time under the ordinance, a modification of a primary or secondary use by a Campus-Institutional District, if outdoors, would require a conditional use permit. M.G.O. § 28.097(2)(d) (Am. by ORD-19-00069, 10-10-19). Accordingly, Edgewood's application would be governed by a more subjective and restrictive conditional use permit*

48

*analysis. Lighting applications granted previously to public institutions zoned as Campus-Institutional that had been granted under the prior, less restrictive administrative process were "grandfathered in" and not subject to the more rigorous and burdensome process Evers designed for Edgewood.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that Edgewood and all those in Campus-Institutional District zoning need to seek conditional-use approval under the existing Ordinance for certain modifications. Defendants deny that this was the first time that school properties were subject to conditional-use approval and deny that the process was designed exclusively for Edgewood. To the extent there are any remaining allegations, Defendants deny.

162. *Evers and the City sought to have approval of his amended ordinance "leap frog" the approval of the repeal of Edgewood's Master Plan to ensure that the new ordinance would be ready and waiting and that Edgewood would be subject to the more burdensome process.*

**ANSWER:** Defendants deny.

163. *Public comments by Evers to justify his rushed amended ordinance demonstrate his singling out of Edgewood and his overt hostility to religious, private institutions like Edgewood: "Public institutions have a built in incentive to pay attention to the public because they are dependent on public support, private institutions must be careful not to be seen as being willing to impose their will on their neighbors because to do so tears at the fabric of civil society and undermines our shared values of commitment to community and partnership."[11]*

[11] *Plan Commission: Meeting of Aug. 26, 2019, https://media.cityofmadison.com/Mediasite/Showcase/madison-city-channel/Presentation/0ce00975e667466791dd493dc6d162d91d (at 3:28:10)*

**ANSWER:** Defendants deny all allegations except to admit only that Tag Evers made the public statement attributed to him in this Paragraph. Defendants specifically deny that the comments demonstrate hostility to religious institutions generally or to Edgewood specifically.

164. *The City voted to consider Evers' ordinance ahead of the Master Plan repeal to make sure the more burdensome zoning regime awaited*

> *Edgewood. As the local press reported, "[City of Madison] Ald. Shiva Bidar, 5th District, said the reason for the delay [to Edgewood's Master Plan repeal vote] was to allow another proposal to get through the Plan Commission and City Council first. That proposal would require Edgewood High School to apply with the city before making modifications, such as adding lights or a sound system, to its field if the master plan is repealed. City Council members who serve on the Plan Commission said they would like to know what the council decides on the field modification measure before voting on the master plan repeal."[12]*

> [12] *Emily Hamer, Madison Picks Judge Doyle Square Developer Offering Fewer Affordable Housing Units, Wis. State J. (Sept. 4, 2019), https://madison.com/wsj/news/local/govt-and-politics/madison-picks-judge-doyle-square-developer-offering-fewer-affordable-units/article_b043cbf1-8724-5953-8b39-ba8782aeb7c3.html#tracking-source=home-top-story-1*

**ANSWER:**   Defendants deny all allegations except to admit (1) the article linked in the footnote contains the quoted text, but affirmatively state that the article is <u>not</u> quoting Alder Bidar nor did Alder Bidar make any such statement during the Common Council meeting and (2) one of the members on the Plan Commission supporting re-referral of the ordinance to repeal Edgewood's Master Plan noted that the Plan Commission sought more information on a number of topics, one of which was how the repeal would be affected by the proposed change in the ordinance.

165.   *Out of an abundance of caution, on September 30, 2019 Edgewood submitted a new light application under the then-existing administrative approval process under Chapter 10 and prior to Evers' amended ordinance being approved. **Exhibit M,** September 30, 2019 letter confirming application.*

**ANSWER:**   Defendants admit that Edgewood submitted another lighting application on September 30, 2019, and that the City confirmed receiving that application. Defendants lack knowledge or information sufficient to form a belief as to Edgewood's intent or motive for doing so and therefore deny the same.

166.   *Upon receiving this application, Defendant Tucker and the City took no action on this new light application, merely flagging it as "reject / redraft"*

*and noting the application's supposed non-compliance with Edgewood's Master Plan, whose repeal was concurrently being delayed. Defendant Tucker and City provided no notice to Edgewood or opportunity to cure.*

**ANSWER:**   Defendants deny except to admit that the September 30 application was marked "reject / redraft" and noted the application's non-compliance with Edgewood's master plan.

167.   *Edgewood had a vested right in Defendant Tucker and the City approving and issuing those permits.*

**ANSWER:**   Defendants deny.

168.   *Evers' amended ordinance passed on October 1, 2019, enacting an entirely new conditional use permit process for outdoor lighting by Campus-Institutional District applicants like Edgewood.*

**ANSWER:**   Defendants object as argumentative to the characterization of the Campus Institution District amendment as "Evers' amended ordinance" as the ordinance had multiple sponsors and was passed unanimously by the Common Council. Defendants admit that a Campus-Institutional District Ordinance was passed on October 1, 2019. Defendants deny that the ordinance created "an entirely new conditional use permit process for outdoor lighting by Campus-Institutional District applicants" and affirmatively allege that the amendment was applicable to all properties zoned Campus-Institutional within the City. Defendants deny any remaining allegations in this Paragraph.

169.   *On January 7, 2020, the Madison Common Council voted to permit Edgewood to repeal its voluntary Master Plan, but only after the Plan Commission had denied the repeal and because Edgewood would now be subject to a more stringent review process than prior, public Campus-Institutional zoned institutions.*

**ANSWER:**   Defendants deny all allegations except to admit only that on January 7, 2020, the Madison Common Council voted to repeal the ordinance implementing Edgewood's voluntary Master Plan.

170. *On August 21, 2019, Edgewood had filed a complaint in federal court, in Case No. 3:19-cv-683-wmc, in order to preserve its rights and claims arising from the City's actions then to date.*

**ANSWER:** Defendants admit that on August 21, 2019, Edgewood filed a complaint in Case No. 3:19-cv-683-wmc. The remaining allegations in this Paragraph are legal conclusions to which no answer is required; to the extent further answer is required, Defendants deny.

171. *Based on assurances from City officials that Edgewood would be treated fairly and equitably under the new conditional use application process, Edgewood agreed to dismiss its litigation without prejudice on February 10, 2020. Edgewood soon learned again that it would not be treated fairly or equitably.*

**ANSWER:** Defendants admit only that on February 10, 2020, Edgewood agreed to dismiss its litigation without prejudice. All remaining allegations in this Paragraph are denied.

172. *On March 11, 2020, Edgewood, without waiving its rights or claims to lights based on its prior lighting applications, filed a conditional use application for outdoor lighting for its field under Defendant Evers' newly amended ordinance. **Exhibit N,** March 11, 2020 Application.*

**ANSWER:** Defendants admit that on March 11, 2020, Edgewood filed a conditional use application for outdoor lighting for its field and that the application was governed by the Campus-Institutional District ordinance as amended in October, 2019. All characterizations in this Paragraph are denied. To the extent there are any remaining allegations in this Paragraph, Defendants deny.

173. *In doing so, and as a result of the City's targeted and rushed ordinance change, Edgewood became the first and only conditional use applicant for outdoor lighting in the City's history. Previously, Campus-Institutional Districts, like all other lighting applicants, received approval through an administrative process under the Outdoor Lighting ordinance in Chapter 10.*

**ANSWER:** Defendants object that this Paragraph is vague and confusing. Subject to that objection, Defendants deny.

174.  *Despite the imposition of a conditional use permitting process, the objective metrics for what constitutes compliant lighting are still controlled by the outdoor lighting ordinance in Chapter 10.*

**ANSWER:**  This Paragraph consists of legal conclusions to which no answer is required. To the extent an answer is required, Defendants admit that the outdoor lighting ordinance in Chapter 10 is relevant to a conditional use permit application for outdoor lighting and deny all other allegations.

175.  *On May 11, 2020, after having reviewed Edgewood's application, the City's Planning Division staff issued their report, which found that installation of Edgewood's lights would meet the requirements of M.G.O. § 28.183(6), with conditions, and recommended to the Defendant Plan Commission that Edgewood's conditional use application be granted, subject to those conditions.* **Exhibit O,** *Staff Recommendation.*

**ANSWER:**  Defendants admit the existence of Exhibit O but Defendants deny that the City's Planning Division staff found that installation of Edgewood's lights "would meet" the requirements.

176.  *Edgewood agreed to comply with the conditions set forth in the Staff Recommendation.*

**ANSWER:**  Defendants deny.

177.  *On May 12, 2020, ignoring the Staff Recommendation and Edgewood's agreement to its proposed conditions, the Plan Commission completely and absolutely denied Edgewood's conditional use permit for outdoor lighting. The Plan Commission failed to identify any substantial evidence supporting its denial.* **Exhibit P,** *Minutes from Plan Commission.*

**ANSWER:**  Defendants admit that on May 12, 2020, the Plan Commission voted to place Edgewood's conditional use application on file without prejudice. All remaining allegations in this Paragraph are denied.

178.  *On May 21, 2020, Edgewood appealed the Plan Commission's denial.*

**ANSWER:**     Defendants admit that on May 21, 2020, Edgewood appealed the Plan Commission's decision to place Edgewood's conditional use application on file without prejudice.

179.   *Among other things, at both the Plan Commission and the Common Council hearings and in its submissions, Edgewood demonstrated that:*

    a.   *Requested lighting complied with City's objective standards for outdoor lighting.*

    b.   *Approval involved no new uses being approved. Instead, approval of Edgewood's conditional use permit only sought to enhance already existing permitted uses and extend them into non-daylight hours.*

    c.   *All existing permitted uses complied with the City's noise ordinances.*

    d.   *Existing conditions surrounding Edgewood minimized any impacts of extended use of Edgewood's field during non-daylight hours, including existing screening, existing traffic, existing lighting, public rights-of-way, parking lots and drive aisles, and proximity to Camp Randall Stadium.*

    e.   *Comparable facilities near or adjacent to neighborhoods have similar outdoor lighting (with amplified sound) with no discernible negative impact on neighboring residents, including:*

        i.   *City parks adjacent to residentially zoned neighborhoods leased to high schools for athletic events without restriction on light or sound including Olbrich Park, Warner Park, and Duane F. **Bowman** Park.*

        ii.   *Ice skating rinks located in City parks, including Vilas Park, Westmoreland Park, and Reynolds Park.*

**ANSWER:**     Defendants deny.

180.   *On January 20, 2021, the Common Council voted to uphold the Plan Commission's denial of the conditional use permit. The Common Council cited no "substantial evidence" in affirming and upholding the denial.*

**ANSWER:**     Defendants admit that on January 20, 2021, the Common Council voted to uphold the Plan Commission's decision to place Edgewood's conditional use application on file without prejudice. All other allegations in this Paragraph are denied.

181.   *On February 1, 2021 the Madison Common Council published the proceedings of its complete and absolute denial. **Exhibit Q.***

**ANSWER:**     Defendants deny except to admit the contents of Exhibit Q.

182. *In doing so, the City repeated and ratified the Plan Commission's violation of state law in ignoring the statutory standard and denying Edgewood's conditional use application for its outdoor lights. See Wis. Stat. § 60.62(4e)(b)(1).*

**ANSWER:** This Paragraph contains legal conclusions to which no answer is required.

To the extent an answer is required, Defendants deny.

183. *This conditional use process was unfairly foisted upon Edgewood, but Edgewood nevertheless still met the standard, proffering substantial evidence before the Plan Commission and Common Council that approval of Edgewood's lights would not, among other things, diminish the established uses, values and enjoyment of other property in the neighborhood.*

**ANSWER:** Defendants deny.

184. *In denying Edgewood's conditional use permit, the City, through its Plan Commission and Common Council, did not rely on substantial evidence as required by state law, but instead relied upon mere personal preferences or speculation cited by Alder Tag Evers and other opponents of Edgewood.*

**ANSWER:** Defendants deny.

## COUNT I [RLUIPA EQUAL TERMS]

185. *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:** Defendants incorporate by reference their answers contained in all preceding paragraphs.

186. *Congress defined "religious exercise" to broadly include:*

*"any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."*

*42 U.S.C. 2000cc-5(7).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself, and Defendants deny all allegations that are inconsistent with the statute.

187. *Congress further directed that RLUIPA should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself, and Defendants deny all allegations that are inconsistent with the statute.

188. *Under RLUIPA's Equal Terms provision, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself, and Defendants deny all allegations that are inconsistent with the statute.

189. *The plaintiff bears the initial burden of "produc[ing] prima facie evidence to support a[n equal terms] claim," and thereafter "the government . . . bear[s] the burden of persuasion on any element of the claim." 42 U.S.C. § 2000cc-2(b).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself, and Defendants deny all allegations that are inconsistent with the statute.

190. *A plaintiff must produce prima facie evidence that: (1) the claimant is a religious assembly or institution, (2) subject to a land use regulation that (3) treats the religious assembly or institution on less than equal terms, with (4) a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1)).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself, and Defendants deny all allegations that are inconsistent with the statute.

191. *Edgewood is a religious institution.*

**ANSWER:** Defendants object as vague.  Subject to that objection, Defendants admit.

192. *Edgewood's use of its field is, and has been subject to, the City's land use regulations, including but not limited to the City's Zoning Code, Administrator Tucker's interpretations and enforcement actions, the ZBA's decision of July 2019, Alder Evers' ordinance amendment, and the Plan Commission and City Council's January 20, 2021 CUP denial.*

**ANSWER:** Defendants admit that Edgewood's use of its field is and has been subject to the City's land use regulations and deny all characterizations.

193. *In violation of Edgewood's vested property rights (see Count V below) and RLUIPA, the City has treated Edgewood on less than equal terms with non-religious institutions located and operating within the City's Campus-Institutional District, including MMSD schools and the University of Wisconsin.*

**ANSWER:** Defendants deny.

194. *Edgewood is no different than the nonreligious high schools or the University of Wisconsin from the standpoint of the accepted zoning criteria of the Campus-Institutional District.*

**ANSWER:** Defendants object as vague as to time. Defendants admit that on the date of this answer, the same accepted zoning criteria under the Campus-Institutional District ordinance for entities without master plans are applicable to both Edgewood and the nonreligious high schools in Madison but deny as to the University of Wisconsin. Any remaining allegations in this Paragraph are denied.

195. *The City has allowed the nonreligious schools in the Campus-Institutional Zoning District, including MMSD high schools and the University of Wisconsin, to continue to use their athletic fields and facilities for athletic contests and other uses related to their primary missions and without restrictions, but prohibited Edgewood from doing the same.*

**ANSWER:**      Defendants deny.

196.    *The City has allowed the nonreligious schools in the Campus-Institutional Zoning District, including MMSD high schools and the University of Wisconsin, to continue to use their athletic fields and facilities and to erect adequate lighting for athletic contests but has prohibited Edgewood from doing the same.*

**ANSWER:**      Defendants deny.

197.    *The City allowed the University of Wisconsin to construct new outdoor athletic facilities pursuant to the University of Wisconsin's Master Plan and to use them for athletic contests, even though the University of Wisconsin did not identify "athletic contests" as an existing or future use of its fields.*

**ANSWER:**      Defendants deny.

198.    *For example, the City allowed the University of Wisconsin to construct a new tennis stadium with one thousand new seats and stadium lighting in its Campus-Institutional District and to use it for athletic contests, even though the University of Wisconsin did not identify "athletic contests" as an existing or future use of the stadium or mention the new stadium lighting in its master plan.*

**ANSWER:**      Defendants deny and affirmatively state that the University's Master Plan was not in effect at the time of the changes to the tennis courts.

199.    *The City, however, prohibited Edgewood from using its athletic field for athletic contests and has prohibited Edgewood from installing lights, even after Edgewood's lighting application was approved by the City.*

**ANSWER:**      Defendants admit that while Edgewood was subject to the terms of its master plan the City informed Edgewood that the master plan does not allow for athletic contests on the field. Defendants also admit that it has denied applications that Edgewood filed to install lights on its athletic fields. The remaining allegations in this Paragraph are denied.

200.    *The City's disparate treatment of Edgewood's religious land uses is an as-applied violation of the equal terms provision of RLUIPA.*

**ANSWER:**      Defendants deny.

201.   *The City's disparate treatment of Edgewood's use of its athletic field with approved lighting is an as-applied violation of the equal terms provision RLUIPA.*

**ANSWER:**   Defendants deny.

202.   *By issuing notices of violation only to Edgewood and not to the University of Wisconsin—even though both use their athletic fields for the same use, and neither explicitly or exhaustively listed that use in their Master Plans— Administrator Tucker violated RLUIPA's Equal Terms provision.*

**ANSWER:**   Defendants deny.

203.   *By overseeing Administrator Tucker and failing to use his authority to correct his Equal Terms violation, Director Hank violated RLUIPA's Equal Terms provision.*

**ANSWER:**   Defendants deny.

204.   *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board violated RLUIPA's Equal Terms provision.*

**ANSWER:**   Defendants deny.

205.   *The City's enactment of its new ordinance requiring Edgewood to obtain a CUP permit after it successfully withdrew its Master Plan specifically targeted Edgewood for the purpose of preventing it from using its field in accordance with its religious beliefs and constitutes unlawful religious gerrymandering in violation of RLUIPA's equal terms provision.*

**ANSWER:**   Defendants deny.

206.   *As a direct result of the City's violations of Edgewood's rights under 42 USC § 2000cc(b), as alleged above, Edgewood continues to suffer irreparable harm for which there is no adequate remedy at law.*

**ANSWER:**   Defendants deny.

207.   *Furthermore, as a direct result of the City's violations of Edgewood's rights under 42 USC § 2000cc(b), as alleged above, Edgewood has suffered damages and is entitled to recover equitable relief, costs, and attorneys' fees.*

**ANSWER:**   Defendants deny.

## COUNT II [RLUIPA SUBSTANTIAL BURDEN]

208.   *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**   Defendants incorporate by reference their answers to all preceding

paragraphs.

209.   *Under RLUIPA's "Substantial burdens" provision,*

*"No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—*

*(A) is in furtherance of a compelling government interest; and*
*(B) is the least restrictive means of furthering that compelling government interest."*

*42 U.S.C. § 2000cc(a)(1).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is

required. To the extent a response is required, Defendants admit that this Paragraph correctly

identifies the provision of RLUIPA that is commonly referred to as the "Substantial Burden"

provision. The text of 42 U.S.C. § 2000cc(1)(1) speaks for itself, and Defendants deny any

allegations inconsistent with the statutory text.

210.   *The "Substantial burdens" provision applies in any case in which "...the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability;" or "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(B)-(C).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is

required. To the extent a response is required, Defendants deny that the selected portions of the

text quoted in this Paragraph fairly summarize the law. The text of 42 U.S.C. § 2000cc(a)(2)(B) and (C) speaks for itself, and Defendants deny any allegations inconsistent with the statutory text.

211. *The City of Madison, the City's Zoning Board of Appeals, the City's Plan Commission, the City's Common Council, and the individual defendants in their official capacities are "government" entities or actors under RLUIPA, 42 U.S.C. § 2000cc et. seq.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit.

212. *The substantial burdens were imposed in the implementation of the City's land use regulations or system of land use regulations, under which Defendants made, or were permitted to make, individualized assessments of the School's uses of its field.*

**ANSWER:** Defendants object that this Paragraph is vague and confusing. It is unclear what substantial burdens or individualized assessments this Paragraph refers to. Subject to that objection, Defendants deny that they imposed substantial burdens upon Edgewood as that term is used in RLUIPA.

213. *All of the following involved individualized assessments under the City's land use regulations:*

a. *Zoning Administrator Tucker's February 27, 2019 refusal to issue Edgewood its otherwise approved lighting permit for lights based on Edgewood's intention "to use the lights and sound system to host night games," Paragraphs 139-147;*
b. *The Official Notice of Violation issued April 1, 2019 for hosting "athletic contests," **Exhibit F;***
c. *The Official Notice of Violation issued May 15, 2019 for hosting "athletic contests," **Exhibit G;***
d. *The July 11, 2019 Zoning Board of Appeals Decision affirming Zoning Administrator Tucker's decision to prohibit Edgewood from using its field for any activities other than "team practices" and "physical education classes" and the notices of violation, Paragraphs 117-118.*
e. *Alder Tag Evers' Conditional Use Permit Ordinance, Paragraphs 157-171, which was drafted and enacted by the City to ensure that Edgewood would be unable to obtain the lights to which it was entitled without going through another individualized permitting process, and which ultimately resulted in the unlawful denial of Edgewood's permit application; and*

61

>   *f.* *The Planning Commission and City Council's denials of Edgewood's March 11, 2020 conditional use permit application, Paragraphs 172-184.*

**ANSWER:**   This Paragraph consists of legal conclusions to which no answer is required. To the extent answer is required, Defendants deny that subparagraphs a.-f. describe individualized assessments and admit that the denial of Edgewood's March 11, 2020, conditional use permit application was based at least in part on an individualized assessment.

214.   *Zoning Administrator Tucker's refusals to issue Edgewood its otherwise approved and compliant lighting permit for lights based on Edgewood's intention "to use the lights and sound system to host night games" imposed a substantial burden on Edgewood's religious land use.*

**ANSWER:**   Defendants deny.

215.   *The Official Notices of Violation issued April 1, 2019 and May 15, 2019 for hosting "athletic contests" imposed a substantial burden on Edgewood's religious land use.*

**ANSWER:**   Defendants deny.

216.   *The July 11, 2019 Zoning Board of Appeals Decision affirming Zoning Administrator Tucker's decision to prohibit Edgewood from using its field for any activities other than "team practices" and "physical education classes" imposed a substantial burden on Edgewood's religious land use.*

**ANSWER:**   Defendants deny.

217.   *Alder Tag Evers' Conditional Use Permit Ordinance, which was drafted and enacted by the City to target Edgewood and to ensure that Edgewood would be unable to erect any lights without going through another individualized permitting process, imposed a substantial burden on Edgewood's religious land use.*

**ANSWER:**   Defendants deny.

218.   *The Planning Commission and City Council's denial of Edgewood's March 11, 2020 conditional use permit application imposed a substantial burden on Edgewood's religious land use.*

**ANSWER:**   Defendants deny.

219.   *All of the ways in which Defendants imposed the City's land use regulations to restrict and prohibit Edgewood's use of its field referenced*

*in Paragraphs 213-218 also accumulate to substantially burden Edgewood's religious land use.*

**ANSWER:**    Defendants deny.

220.    *All of the ways in which Defendants implemented or imposed the City's land use regulations referenced in Paragraphs 213-218 prevented Edgewood as a religious institution from building new structures or using its existing facilities to meet its religious needs and those of its students, faculty, and alumni.*

**ANSWER:**    Defendants deny.

221.    *Defendants imposed the City's land use regulations in a manner which deprived Edgewood of pre-existing and vested property rights as set forth in Count V below, rendering the burden on Edgewood all the more substantial.*

**ANSWER:**    Defendants deny.

222.    *By denying and restricting Edgewood's continued use of its field and ability to provide lighting for the same, Defendants substantially inhibited and continue to inhibit Edgewood's religious exercise by preventing the school, a religious institution, from using its existing facilities to meet its needs as a religious institution and the needs of its students.*

**ANSWER:**    Defendants deny.

223.    *Defendants imposed the City's land use regulations in a manner which placed substantial pressure on Edgewood and its students to modify their behavior and forego the use of the field.*

**ANSWER:**    Defendants deny.

224.    *Edgewood is unable to fully live out its mission of forming students for spiritual, academic, and personal excellence because its students and teachers do not have sufficient access to the athletic field to participate in athletic contests and other uses and activities related to the institution's primary religious mission. Edgewood students and teachers are unable, in this way, to uphold and further Edgewood's Mission Statement and several integral aspects of a Sinsinawa Dominican education.*

**ANSWER:**    Defendants deny.

225.    *Defendants' actions, individually and cumulatively, have created considerable delay, expense, and uncertainty for Edgewood in its efforts to*

*use its field in accordance with and in furtherance of its sincerely held religious beliefs.*

**ANSWER:**   Defendants deny.

226.   *Defendants have implemented and imposed the City's land use regulations in such a manner as to prevent Edgewood from using its field to sufficiently serve the religious objectives of the school.*

**ANSWER:**   Defendants deny.

227.   *Defendants' actions, individually and cumulatively, caused Edgewood to suffer significant financial loss, including, but not limited to, attorneys' fees, professional fees, and costs from the inability to host athletic contests and other activities on its field.*

**ANSWER:**   Defendants deny.

228.   *By refusing to issue Edgewood's light permit in February 2019 and September 2019 and issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Zoning Administrator Tucker acted arbitrarily and capriciously and contrary to his obligations under local, state and federal law.*

**ANSWER:**   Defendants deny.

229.   *By refusing to issue Edgewood's light permit in February 2019 and September 2019 and issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Zoning Administrator Tucker imposed a substantial burden on Edgewood's religious exercise with no compelling reason, thus violating RLUIPA's Substantial Burdens provision.*

**ANSWER:**   Defendants deny.

230.   *By refusing to issue Edgewood's light permit in February 2019 and September 2019 and issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Administrator Tucker failed to apply the City's land use regulations and Edgewood's Master Plan with a bias towards the free use of property as required by state law.*

**ANSWER:**   Defendants deny.

231.   *By overseeing Zoning Administrator Tucker and failing to use his authority to correct his Substantial Burdens violation, Director Hank violated RLUIPA's Substantial Burden provision.*

**ANSWER:**     Defendants deny.

232.    *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board violated RLUIPA's Substantial Burdens provision.*

**ANSWER:**     Defendants deny.

233.    *The Plan Commission and City Council's denial of Edgewood's conditional use application was complete and absolute even though the Planning Commission and City Council had authority to grant Edgewood's CUP application with conditions, including the self-limiting conditions Edgewood proposed to address the stated concerns of some of the neighbors and the City.*

**ANSWER:**     Defendants deny.

234.    *The Planning Commission and City Council's denial of Edgewood's conditional use application was contrary to the City's Zoning Staff's opinion and recommendations.*

**ANSWER:**     Defendants deny.

235.    *The City committed, permitted and endorsed irregularities in the government's decision-making, including but not limited to the rush to enact Alder Evers' ordinance before voting to allow Edgewood to repeal its Master Plan.*

**ANSWER:**     Defendants deny.

236.    *Edgewood has suffered and would suffer substantial adverse practical consequences for non-compliance with Defendants' land use regulations and decisions.*

**ANSWER:**     Defendants deny.

237.    *But in order to comply with Defendants' land use regulations and decisions, Edgewood has been forced to forgo activities on its field which are in accordance with and further Edgewood's sincerely held religious beliefs and which Edgewood sincerely believes are necessary to further the religious mission of the school and meet the needs of its students.*

**ANSWER:**     Defendants deny.

238.   *Pursuant to M.G.O. § 28.2017 (Penalties), Edgewood was and remains subject to a fine of up to $1,000 per violation if it does not comply with the City's land use regulations and decisions.*

**ANSWER:**   Defendants admit the language of the ordinance but deny the allegations

in this paragraph.

239.   *The City departed from normal zoning practices and state law in its treatment of Edgewood's Master Plan, lighting application, use of its property, and conditional use permit application.*

**ANSWER:**   Defendants deny.

240.   *By completely and absolutely denying Edgewood's CUP application, the Planning Commission and City Council has effectively denied Edgewood, including its students and faculty the use of Edgewood's field after dark for any activities related to the school's religious mission, including but not limited to:*

   *a.  Athletic contests*
   *b.  Practices*
   *c.  School assemblies*
   *d.  Donor and alumni events*
   *e.  Band activities*
   *f.  Outdoor school liturgies (including Mass) and school ceremonies.*

**ANSWER:**   Defendants deny.

241.   *Defendants will be unable to show that the various ways in which the City implemented and imposed its land use regulations to deny and restrict Edgewood's use of its track and field were supported by a compelling governmental interest or the least restrictive means of furthering any compelling governmental interest.*

**ANSWER:**   Defendants deny.

242.   *Accordingly, Defendants have substantially burdened Edgewood's religious exercise in violation of the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc(a)(1).*

**ANSWER:**   Defendants deny.

243.   *As a direct and proximate result of the City's violations of Edgewood's rights protected under 42 USC § 2000cc(a) of the Act, Edgewood is suffering irreparable harm for which there is no adequate remedy at law.*

**ANSWER:**     Defendants deny.

244.    *As a direct and proximate result of the City's violations of Edgewood's rights protected under 42 USC § 2000cc(a) of the Act, Edgewood has suffered actual damages, including but not limited to:*

      a.   *the costs associated with hosting school activities elsewhere,*
      b.   *the aggravation and inconvenience suffered by the school, its faculty, coaches, students, and parents; and*
      c.   *the loss in the field's value to the school.*

**ANSWER:**     Defendants deny.

245.    *Under 42 USC § 2000cc(a), Edgewood is also entitled to equitable relief and the recovery of its costs and attorneys' fees.*

**ANSWER:**     Defendants deny.

## COUNT III (First Amendment)

246.    *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference the answers contained in all preceding paragraphs.

247.    *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violated Edgewood's and its students' freedom of speech as it prohibited Edgewood and its students from engaging in any speech or speech related activity on the field.*

**ANSWER:**     Defendants deny.

248.    *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violated Edgewood's and its students' freedom of assembly as it prohibited Edgewood and its students from assembling on the field for any purpose other than team practices and physical education classes.*

**ANSWER:**     Defendants deny.

249.    *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes directly burdened Edgewood's religious practices and failed to satisfy the requirements of neutrality and general applicability.*

**ANSWER:** Defendants deny.

250. *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes impermissibly regulated Edgewood's assemblies and speech based on their content.*

**ANSWER:** Defendants deny.

251. *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violated Edgewood's hybrid rights of free exercise, freedom of assembly, freedom of association, and freedom of speech.*

**ANSWER:** Defendants deny.

252. *The City made a content-based regulation of Edgewood's expressive conduct and assemblies that is subject to strict scrutiny.*

**ANSWER:** Defendants deny.

253. *The City's prohibition was not justified by a compelling government interest nor narrowly tailored to advance any such interest.*

**ANSWER:** Defendants deny.

254. *By issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Administrator Tucker infringed Edgewood's First Amendment protected activities with no compelling reason, thus he violated the First Amendment, as incorporated.*

**ANSWER:** Defendants deny.

255. *By overseeing Administrator Tucker and failing to use his authority to correct his First Amendment violation, Director Hank also violated the First Amendment, as incorporated.*

**ANSWER:** Defendants deny.

256. *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board violated the First Amendment, as incorporated.*

**ANSWER:** Defendants deny.

257. *As a direct and proximate result of the City's violations of Edgewood's First Amendment Rights, Edgewood has suffered actual damages.*

**ANSWER:**     Defendants deny.

### COUNT IV (Due Process Void-for-Vagueness Challenge)

258.     *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference the answers contained in all preceding paragraphs.

259.     *The City declared that Edgewood was not permitted to hold "athletic contests" on its athletic field.*

**ANSWER:**     Defendants object that this Paragraph is vague as to time. Defendants admit that while Edgewood's master plan was in effect, it identified language in Edgewood's master plan that precluded the use of its field for athletic contests but deny any remaining allegations.

260.     *The City had not defined the term "athletic contests" and without a definition the prohibition of "athletic contests" was void for vagueness.*

**ANSWER:**     Defendants deny.

261.     *Persons of common intelligence must necessarily guess at the meaning of "athletic contests" and differ as to its application.*

**ANSWER:**     Defendants deny.

262.     *The City's prohibition of "athletic contests" vested virtually complete discretion in the hands of the Zoning Administrator and failed to provide the minimal guidelines required for due process.*

**ANSWER:**     Defendants deny.

263.     *By issuing notices of violation to Edgewood based on an impermissibly vague ordinance Zoning Administrator Tucker violated the Due Process Clause.*

**ANSWER:**     Defendants deny.

264.     *By overseeing Zoning Administrator Tucker and failing to use his authority to correct his due process violation, Director Hank also violated the Due Process Clause, as incorporated.*

**ANSWER:**     Defendants deny.

265.     *By denying Edgewood's appeal of Tucker's notices of violation, thus affirming the issuance of Zoning Administrator Tucker's notices of violation, the ZBA violated the Due Process Clause.*

**ANSWER:**     Defendants deny.

266.     *As a direct and proximate result of the City's violations of Edgewood's Due Process rights, Edgewood has suffered actual damages.*

**ANSWER:**     Defendants deny.

## COUNT V (State-Law Property Rights Claim)

267.     *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference the answers contained in all

preceding paragraphs.

268.     *This Court has supplemental jurisdiction of this claim pursuant to 28 U.S.C. 1367(a) as it "derive[s] from a common nucleus of operative fact" as the federal claims. Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).*

**ANSWER:**     This Paragraph alleges a legal conclusion for which no answer is

required. To the extent answer is required, Defendants admit that the Court has supplemental

jurisdiction over this claim but deny that Edgewood has stated a claim under state law.

269.     *Under Wisconsin law, a property owner seeking a building permit has a "vested right" to receive the permit as soon as it files a building permit application that is fully compliant with the zoning laws in effect at the time of application.*

**ANSWER:**     This Paragraph alleges legal conclusions for which no answer is required.

To the extent that an answer is required, Defendants deny that such is a complete statement of

the law and deny that such applies to Edgewood.

270.     *Pursuant to Wis. Stat. § 66.10015 (2013-14) and Golden Sands Dairy, LLC, et al. v. Town of Saratoga et al., 2018 WI 61, 318 Wis.2d 61, 318 N.W.2d 118, the vested rights doctrine applies to other permits related to development or land use projects, including Edgewood's lighting permit*

70

*applications and application to repeal its Master Plan that are at issue in this action.*

**ANSWER:**   Defendants object that this Paragraph is vague and confusing. This Paragraph also alleges legal conclusions to which no answer is required. To the extent answer is required, Defendants deny.

271.   *Edgewood submitted an application for an lighting permit for outdoor lighting for its Edgewood Campus on February 22, 2019.*

**ANSWER:**   Defendants admit.

272.   *The then-existing ordinances required Edgewood's lighting permit to be fully compliant with its zoning requirements and fully compliant with Chapter 10 of the City of Madison Ordinance for Outdoor Lighting. See **Exhibit R,** February 27, 2019 Correspondence from Administrator Tucker (stating that Edgewood's application "will be reviewed for compliance with MGO Section 10.085, and if the plans comply, lighting permits will be issued when requested" and that "[t]he City believes the permit can be issued without requiring amendment of the approved 2014 Master Plan").*

**ANSWER:**   Defendants admit that the then-existing ordinances required, among other things, that Edgewood's lighting permit to be fully compliant with its zoning requirements and fully compliant with Chapter 10 of the City of Madison Ordinance for Outdoor Lighting. Defendants also admit to the contents of Tucker's letter in Exhibit R but as the City later concluded, it does not issue permits when it knows that the property owner's stated and intended use would violate its ordinances.

273.   *The City assessed Edgewood's February 22, 2019 application for lighting permit under the then-existing zoning requirements and under Chapter 10 of the City of Madison ordinances for Outdoor Lighting, found it fully compliant, and approved it. See **Exhibit J;** see also **Exhibit O** (noting proposed lights are compliant with Chapter 10).*

**ANSWER:**   Defendants deny.

274.   *Thus, as of February 22, 2019 Edgewood had a vested right in having that permit approved and issued to it at that time.*

**ANSWER:**   Defendants deny.

275. *Despite approving the lighting permit, Administrator Tucker and the City refused to issue it claiming that the potential uses of Edgewood's outdoor lights could conflict with the "uses" identified in its Master Plan.*

**ANSWER:**   Defendants deny that the permit was approved and admit that the permit was never issued and admit that the intended uses of Edgewood's outdoor lights would conflict with the uses identified in its master plan.

276. *Prior to withholding Edgewood's permit, the City had never referred to a master plan in connection with an lighting permit application, much less required the speculative uses of the applied-for lighting to comply with particular uses identified in a master plan.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same.

277. *Master plans do not govern uses; they govern building development projects. M.G.O. § 28.097(2)(b)-(d), (4), (7).*

**ANSWER:**   Defendants deny that master plans do not govern uses and admit that master plans can govern building development projects.

278. *Moreover, as of February 22, 2019, City ordinances provided that projects under 4,000 square feet—such as erecting four light poles were not subject to conditional use but were subject to the Chapter 10 administrative process.*

**ANSWER:**   This Paragraph consists of legal conclusions to which no answer is required. To the extent answer is required, Defendants objects that this Paragraph is vague and confusing. Subject that objection, Defendants admit that on February 22, 2019, certain building projects on parcels zoned Campus-Institutional and that lacked a master plan did not require a conditional use permit when the total floor space was under 4,000 square feet. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

279. *Administrator Tucker and the City's interpretation of its ordinances as imposing this additional burden of conformity to its Master Plan on*

> *Edgewood was arbitrary and irrational; contrary to Chapter 10 of the City of Madison Ordinances for Outdoor Lighting, Campus Institutional zoning ordinances, and the purposes of M.G.O. § 28.097(2) governing master plans; capricious; and a pretext to withhold and/or deny Edgewood's permits.*

**ANSWER:**    Defendants deny.

280.    *However, and in the alternative, even if Edgewood was required to address outdoor lighting in its Master Plan in addition to being fully compliant with the then-existing zoning and permitting ordinances, Edgewood's Master Plan explicitly and intentionally addressed outdoor lighting and related height standards in Section 3.6 "Architectural Guidelines For Perimeter Buildings."*

**ANSWER:**    Defendants deny that the cited portion of the master plan applies to or allows stadium lights on the athletic field.

281.    *The Master Plan noted in Subsection 7 of Section 3.6 the following self-imposed additional requirements for outdoor lighting beyond compliance with the City's Outdoor Lighting Ordinance (emphasis added):*

   *7. Site and Building Lighting*
   *a. Utilize dark sky compliant light fixtures*
   *b. Provide lighting that is required for pedestrian safety and building code required exit lighting. Reduce glare and light spill towards the neighborhood, use lower height site lighting with non-glare and cut off shielding.*

**ANSWER:**    Defendants admit the cited language appears in the master plan but deny that this cited portion applies to or allows stadium lights on the athletic field.

282.    *Being presented with this information, Administrator Tucker and the City arbitrarily decided that Edgewood not only had to address outdoor lighting in its Master Plan, but also had to address the minute details of the specific outdoor lighting project, including the exact height and location of the light poles*

**ANSWER:**    Defendants deny.

283.    *The first and only time Administrator Tucker and/or the City has ever withheld an otherwise compliant lighting permit because the applicant allegedly failed to identify the specific height and location of the lights in a master plan, was in denying Edgewood's application.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation and therefore deny the same.

> 284. *For example, in 2018 the City administratively approved the University of Wisconsin's application to install and use 60 foot tall stadium lights at its new Nielsen Tennis Stadium even though University of Wisconsin's Master Plan did not identify the uses, height, or location of the light poles that were ultimately approved.*

**ANSWER:** Defendants object that this Paragraph is vague and confusing as to "administratively approved." Subject to and without waiving that objection, Defendants deny that the Nielsen Tennis Stadium project was subject to the University's master plan as that plan was not in effect at the time. Defendants admit that Nielsen's application was approved and that the height and location of the light poles was not identified on the master plan but deny that uses were not identified. Any remaining allegations in this Paragraph are denied.

> 285. *For example, in 2018 the City administratively approved the Madison Metropolitan School District's application to install the exact same lights and exact same light poles at Memorial High School as those in Edgewood's application, despite Memorial having adjacent residential neighborhoods (like Edgewood) and having the same zoning classification (Campus-Institutional) as Edgewood.*

**ANSWER:** Defendants object that this Paragraph is vague and confusing as to "administratively approved" and "Edgewood application." Subject to and without waiving that objection, Defendants deny that Memorial and Edgewood's applications were similarly situated as Memorial did not have a master plan and Memorial was replacing existing lights instead of new construction. Defendants admit that Memorial's 2018 application to replace its existing lights was approved and admit that both Memorial and Edgewood are located on property zoned Campus-Institutional. Defendants deny that Memorial and Edgewood are similarly situated as to surrounding neighborhoods. Defendants admit that there are some residential buildings adjacent to Memorial but affirmatively allege that Memorial is primarily surrounded by commercially

zoned properties unlike Edgewood, which was previously zoned residential. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny the same.

286. *Edgewood was entitled to its lighting permit after submitting its fully compliant application on February 22, 2019; the additional burdens placed on Edgewood by Administrator Tucker and the City are not supported by law, and are arbitrary, irrational, and capricious misinterpretations of City ordinances designed to provide a pretext to deny Edgewood its outdoor lights.*

**ANSWER:**   Defendants deny.

287. *However, and in the alternative, even if Edgewood was required to (1) comply with Chapter 10 of the City of Madison ordinances for Outdoor Lighting and Campus Institutional zoning requirements and (2) include information in its Master Plan on outdoor lighting, it did so.*

**ANSWER:**   Defendants deny.

288. *Accordingly, as of February 22, 2019 Edgewood had submitted an application for lighting permit fully compliant with Chapter 10 of the City of Madison ordinances for Outdoor Lighting, the Campus Institutional zoning requirements, and its Master Plan, and therefore had a vested right in having that permit approved and issued to it.*

**ANSWER:**   Defendants deny.

289. *On July 29, 2019, Edgewood completed its fully compliant application, in the mutually agreed form of a letter, to repeal its Master Plan so that it could, as represented by the City Attorney, "return to the standard [Campus-Institutional] zoning", and "place it on equal footing with other high schools."*

**ANSWER:**   This Paragraph contains a legal conclusion for which no answer is required. To the extent answer is required, Defendants deny except to admit that on July 29, 2019, Edgewood sent a letter requesting that the Mayor sponsor an ordinance to repeal its master plan.

290. *However, rather than vote on Edgewood's application for repeal as it came up, the Common Council gerrymandered the process to ensure that*

*Alder Evers' newly proposed ordinance amendment changing the Campus Institutional zoning requirements was enacted before the repeal occurred.*

**ANSWER:**     Defendants deny.

291.     *The Common Council scheduled the vote on Alder Evers' proposed ordinance for October 1, 2019.*

**ANSWER:**     Defendants object that this Paragraph is argumentative and vague as to "Alder Evers' proposed ordinance." Subject to that objection, Defendants admit that the vote on an amendment to the Campus-Institutional Districts ordinance was scheduled and held on October 1, 2019, but deny any remaining allegations. Defendants affirmatively allege that the amendment was sponsored by numerous Alders in addition to Alder Evers.

292.     *On September 30, 2019, Edgewood submitted a second application for a lighting permit for its outdoor lights. See **Exhibit M**.*

**ANSWER:**     Defendants admit.

293.     *This September 30, 2019 "alternative" application for lighting permit was filed without prejudice to Edgewood's February 22, 2019 application and was again fully compliant with Chapter 10 of the City of Madison Ordinances for Outdoor Lighting and the zoning laws then applicable to Edgewood, i.e. Campus-Institutional. **Exhibit M**.*

**ANSWER:**     Defendants deny.

294.     *Thus, as of September 30, 2019, Edgewood had submitted a second application for lighting permit fully compliant with Chapter 10 of the City of Madison Ordinances for Outdoor Lighting, and the Campus Institutional zoning requirements, and therefore had a vested right in having that permit approved and issued to it.*

**ANSWER:**     Defendants deny.

295.     *Edgewood's September 30, 2019 application was fully compliant when filed; however, and in the alternative, Edgewood had a vested right in having its only purported defect cured by repeal of the Master Plan before Alder Evers' ordinance amendment was enacted.*

        *a.   The only alleged defect the City found in Edgewood's September 30, 2019 lighting permit application was that it did not conform to Edgewood's Master Plan.*

b. *Edgewood had a vested right in having its fully compliant application for repeal heard before Alder Evers' ordinance was adopted and under the zoning laws existing at the time of application, i.e. Campus Institutional, without reference to future zoning laws or amendments.*

c. *The Common Council voted to approve Edgewood's application for repeal without changes to the July 2019 application.*

d. *Accordingly, the only alleged defect in Edgewood's September 30, 2019 application non-conformity with its Master Plan was cured by the repeal, which was grandfathered before Alder Evers' ordinance was enacted.*

e. *At that time, Edgewood's September 30, 2019 application immediately became fully compliant and Edgewood had a vested right in having it approved and issued under the then-existing zoning codes, which did not yet include Alder Evers' proposed ordinance amendment requiring a conditional use permit.*

**ANSWER:**    Defendants deny.

296.    *Preventing local governments from post-hoc changing the rules on property owners who have fully complied with existing zoning and permit ordinances in their development projects is the reason the vested-right doctrine exists.*

**ANSWER:**    This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny.

297.    *That reasoning applies with greater force here, when the local government in question has displayed a pattern of hostility, capriciousness, and duplicitousness to Edgewood, the property owner.*

**ANSWER:**    Defendants deny.

298.    *Before Alder Evers' ordinance was passed requiring Edgewood to apply for a conditional use permit for its outdoor lighting, Edgewood had repeatedly submitted fully compliant applications for lighting permits under Chapter 10 of the City of Madison ordinances for Outdoor Lighting and its then-applicable zoning codes.*

**ANSWER:**    Defendants deny.

299.    *Edgewood had a vested right in Administrator Tucker and the City approving and issuing those lighting permits.*

**ANSWER:**    Defendants deny.

300. *Accordingly, the Court should order the City to now issue Edgewood's lighting permit(s) with all immediate haste.*

**ANSWER:**   Defendants deny.

### COUNT VI (Seeking Judicial Review of Common Council Decision)

301. *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**   Defendants incorporate by reference the answers contained in all preceding paragraphs.

302. *This Court has supplemental jurisdiction of this claim pursuant to 28 U.S.C. 1367(a) as it "derive[s] from a common nucleus of operative fact" as the federal claims. Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also City of Chicago v. Intl Coll. of Surgeons, 522 U.S. 156, 168-69 (1997) (court may exercise supplemental jurisdiction over claims requiring deferential review of state administrative decisions).*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny that Plaintiff has stated a claim.

303. *On February 1, 2021, Common Council published its decision in the proceedings of the Common Council affirming the Plan Commission's denial of Edgewood's conditional use permit application for outdoor lights.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants admit.

304. *Edgewood has thirty (30) days "after the decision is published in the proceedings of the Common Council" to seek certiori [sic] review of the Common Council's decision. See M.G.O § 28.183(5)(b)(9); Wis. Stat. §§ 62.23(7)(de)(5), (e)(10) & 68.13.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the ordinance and statutes speak for themselves. Defendants deny all allegations inconsistent with the ordinance and statutes.

305. *Accordingly, Edgewood's appeal to this Court is timely.*

**ANSWER:**    Defendants deny that all portions of Plaintiff's action is timely.

306.   *M.G.O. § 28.183 provides the process and standards for the approval of conditional use permits.*

**ANSWER:**    This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the ordinance speaks for itself. Defendants deny all allegations inconsistent with the ordinance.

307.   *Under that process, a conditional use permit application is initially referred to the professional staff of the City's Planning Division, which drafts a detailed report containing findings and a recommendation. The application is then voted on by members of the City's Plan Commission, which is a subset of the Common Council. An applicant that loses at Plan Commission then must appeal the Plan Commission's ruling to the entire Common Council.*

**ANSWER:**    This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the ordinance speaks for itself. Defendants deny all allegations inconsistent with the ordinance.

308.   *M.G.O. § 28.183(6) provides the standards that the Plan Commission and/or Common Council must analyze when considering whether to grant or deny a conditional use application.*

**ANSWER:**    This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the ordinance speaks for itself. Defendants deny all allegations inconsistent with the ordinance.

309.   *On March 11, 2020, without prejudice to its lighting permit applications, Edgewood applied for its conditional use permit, which was exclusively for four outdoor lights.*

**ANSWER:**    Defendants admit that on March 11, 2020, Edgewood applied for a conditional use permit for outdoor lights but deny any remaining allegations.

310.   *On May 11, 2020 the Planning Division's professional staff concluded that Edgewood's application met the requirements of M.G.O. § 28.183(6) with conditions and recommended the Plan Commission approve Edgewood's conditional use application with those conditions.*

**ANSWER:**   Defendants deny.

311.   *Edgewood immediately agreed to all conditions recommended.*

**ANSWER:**   Defendants deny.

312.   *Per Wis. Stat. § 60.62(4e)(b)(1), "if an applicant for a conditional use permit meets or agrees to meet all of the requirements and conditions specified in the town ordinance or those imposed by the town zoning board, the town shall grant the conditional use permit."*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself. Defendants deny all allegations inconsistent with the statute.

313.   *Despite Edgewood's agreement to the recommended conditions, the Plan Commission rejected Edgewood's application.*

**ANSWER:**   Defendants object that this Paragraph is vague and confusing. Subject to that objection, Defendants admit that the Plan Commission voted to place Edgewood's conditional use permit application on file without prejudice. Any remaining allegations in this Paragraph are denied.

314.   *Per the procedures specified in M.G.O. § 28.183(5)(b), Edgewood timely filed its appeal of the Plan Commission's decision to the Common Council, which, after repeated deferrals, was ultimately heard on January 19-20, 2021.*

**ANSWER:**   Defendants admit. Defendants affirmatively allege that some of these deferrals were requested by Edgewood.

315.   *Per Wis. Stat. § 60.62(4e)(b)(1), the Plan Commission and Common Council's "decision to approve or deny the permit must be supported by substantial evidence."*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself. Defendants deny all allegations inconsistent with the statute.

316. *'Substantial evidence' means facts and information, other than merely personal preferences or speculation, directly pertaining to the requirements and conditions an applicant must meet to obtain a conditional use permit and that reasonable persons would accept in support of a conclusion." Id. § 60.62(4e)(a)(2).*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the statute speaks for itself. Defendants deny all allegations inconsistent with the statute.

317. *Prior to the Plan Commission and Common Council meetings, the Alders were provided the Planning Division report that recommended that the conditional use permit be approved with the conditions specified.*

**ANSWER:**   Defendants object that this Paragraph is vague and confusing as to which meetings are referenced in the allegation. Subject to that objection, Defendants admit that before the Plan Commission voted to place Edgewood's application for a conditional use permit on file without prejudice, City alders received a Planning Division report regarding the conditional use permit application. Defendants deny that the report recommended that the conditional use permit be approved and any remaining allegations in this Paragraph are denied.

318. *At the Plan Commission and Common Council, Edgewood submitted substantial expert data establishing that installation of the lights would comply with the requirements of M.G.O. § 28.183(6), including (but not limited to) that outlined in Paragraph 179.*

**ANSWER:**   Defendants deny.

319. *Edgewood provided "substantial evidence" to the Plan Commission and Common Council that its conditional use permit application for outdoor lighting complied with M.G.O. § 28.183(6).*

**ANSWER:**   Defendants deny.

320. *The opponents of Edgewood's conditional use application for outdoor lighting failed to provide any expert or professional findings or studies to the Plan Commission or Common Council, and their testimony to both consisted almost entirely of conjecture, speculation, and anecdotes.*

**ANSWER:**   Defendants deny.

81

321.   *The opponents of Edgewood's conditional use permit application for outdoor lighting failed to provide "substantial evidence" upon which the Plan Commission and/or Common Council could base its denial.*

**ANSWER:**   Defendants deny.

322.   *In its denial, the Plan Commission failed to identify any "substantial evidence" that supported its decision, repeatedly made statements that were demonstrably factually inaccurate, and failed to identify any facts as to how Edgewood's conditional use application failed to meet the requirements of M.G.O. § 28.183(6).*

**ANSWER:**   Defendants deny.

323.   *In its denial, the Common Council failed to identify any "substantial evidence" that supported its decision or any facts as to how Edgewood's conditional use application failed to meet the requirements of M.G.O. § 28.183(6).*

**ANSWER:**   Defendants deny.

324.   *Indeed, after ten months, hundreds of pages of submissions, data, and professional reports, and over four hours of public comments, the Common Council asked questions to two witnesses, none of its professional staff, "deliberated" and then voted to deny Edgewood's conditional use permit within approximately a half-hour.*

**ANSWER:**   Defendants deny.

325.   *The Plan Commission and Common Council's decisions to deny Edgewood its conditional use permit for outdoor lights was improper under Wis. Stat. § 60.62(4e)(b)(1).*

**ANSWER:**   Defendants deny.

326.   *The Plan Commission and Common Council's decisions to deny Edgewood its conditional use permit for outdoor lights in contravention of its own Planning Division's report, state, local and federal laws, and the overwhelming amount of evidence supporting approval were unreasonable, arbitrary, and capricious.*

**ANSWER:**   Defendants deny.

### COUNT VII (Wisconsin State Constitution)

327.   *The allegations contained in all preceding paragraphs are incorporated here by reference.*

82

**ANSWER:** Defendants incorporate by reference the answers contained in all preceding paragraphs.

328. *This Court has supplemental jurisdiction of this claim pursuant to 28 U.S.C. 1367(a) as it "derive[s] from a common nucleus of operative fact" as the federal claims. Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny that Plaintiff has stated a claim.

329. *Article I, Section 18 of the Wisconsin Constitution provides:*

***Freedom of worship; liberty of conscience; state religion; public funds.*** *The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.*

*WI Const. Art. 1, § 18.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the article speaks for itself, and Defendants deny all allegations inconsistent with the article.

330. *In Coulee Catholic Sch. v. Labor & Indus. Review Comm'n, 2009 WI 88, ¶ 33, 320 Wis. 2d 275, 768 N.W.2d 868, the Wisconsin Supreme Court explained that the Wisconsin Constitution "include[s] more specific and more extensive protections for religious liberty" than under the First Amendment of the Federal Constitution.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the opinion speaks for itself, and Defendants deny all allegations inconsistent with applicable law and deny that such is a complete statement of the law.

331. *In Coulee, the Wisconsin Supreme Court interpreted Article I, Section 18 of the Wisconsin State Constitution to mean that strict scrutiny is to be*

> applied to any situation involving violations of an individual or organization's freedom of conscience.
>
> When faced with a claim that a state law violates an individual or organization's freedom of conscience, we have generally applied the compelling state interest/least restrictive alternative test. Under this test, the religious organization has to prove (1) that it has a sincerely held religious belief, and (2) that such belief is burdened by the application of the state law at issue. Upon this showing, the burden shifts to the state to prove (3) that the law is based upon a compelling state interest (4) that cannot be served by a less restrictive alternative.

*Id.,¶ 61.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the opinion speaks for itself, and Defendants deny all allegations inconsistent with applicable law and deny that such is a complete statement of the law.

332.   *In Coulee, the Wisconsin Supreme Court established a framework by which religious freedom claims are analyzed. In this case, Edgewood has the burden to prove that (1) it has a sincerely held religious belief and that (2) its sincerely held religious belief is burdened by the City's application of its zoning laws. The burden then shifts to the City to prove (1) that the zoning laws at issue are based upon a compelling state interest and that (2) the interest cannot be served by a less restrictive means. Id.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, the opinion speaks for itself, and Defendants deny all allegations inconsistent with applicable law and deny that such is a complete statement of the law.

333.   *Edgewood is a religious organization with sincerely held religious beliefs.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of these allegations and therefore deny the same.

334.   *Edgewood's sincerely held religious beliefs have been and are being substantially burdened by the City's arbitrary, irrational, and capricious*

84

*interpretation and application of its zoning and permitting ordinances, which prohibit Edgewood from installing four outdoor lights for the athletic field on its privately owned property.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

335.   *Edgewood's sincerely held religious beliefs have been and are being substantially burdened in at least all of the ways enumerated herein.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

336.   *The City cannot provide a compelling state interest for its application of the zoning laws to Edgewood and the resultant burden on Edgewood's exercise of its sincerely held religious beliefs. There is no compelling state interest for prohibiting a high school from using its own property to host athletic contests, religious services, and community events at night.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

337.   *Even if it could provide a compelling state interest for its treatment of Edgewood, the City cannot prove that its actions are the least restrictive means of achieving that interest.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

338.   *Intentionally and capriciously misinterpreting, misapplying, and then post-hoc changing the zoning and permitting laws applicable to Edgewood's application for lighting permit are not legitimate means to achieving that interest, much less the "least restrictive means".*

**ANSWER:**   This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

339.   *Moreover, the City's own Planning Division recommended one such less restrictive means even after the City gerrymandered its zoning laws: approving Edgewood's conditional use permit, subject to specified conditions.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

340. *There were myriad additional, less restrictive options that the Common Council could have taken in fashioning conditions to its approval of Edgewood's conditional use permit: for example, only allowing use of the lights during the school year; or limiting the use of lights to a specified amount of days (which Edgewood agreed to); or putting a reasonable, maximum capacity on attendance.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

341. *The Common Council was specifically informed by representatives of Edgewood that there were less restrictive means available.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

342. *Nonetheless, the Common Council chose the most restrictive option and denied Edgewood's conditional use application outright.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

343. *By prohibiting Edgewood from hosting games and engaging in other activities which further the religious mission of the school on its athletic field at any time when lights are required, the City has imposed a burden on Edgewood's exercise of its sincerely held religious beliefs, and the City's actions constitute an "unlawful" and unnecessary "interference" with Edgewood's "rights of conscience." Id.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

344. *By prohibiting Edgewood from hosting games and engaging in other activities which further the religious mission of the school on its athletic field at any time when lights are required, the City has violated Article I, Section 18 of the Wisconsin Constitution by burdening Edgewood's constitutionally-protected religious exercise and imposing its zoning laws on Edgewood in a manner that interferes with Edgewood's religious freedom.*

**ANSWER:** This Paragraph contains a legal conclusion to which no answer is required. To the extent answer is required, Defendants deny.

Defendants deny any allegation not expressly admitted above.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim for relief on any count.

2. Plaintiff has failed to comply with the written notice provisions of Wis. Stat. § 893.80(1d).

3. Defendants are protected by common law and statutory privileges and immunities, including municipal immunity.

4. Plaintiff has failed to exhaust administrative remedies and its claims are otherwise not ripe for statutory adjudication.

5. Plaintiff's claims are not ripe for adjudication.

6. Some or all of Plaintiff's claims may be barred by the doctrines of claim or issue preclusion.

7. Plaintiff is barred from seeking any relief related to Edgewood's use of the field to host athletic contests under the Master Plan, because Edgewood failed to appeal the decision of the Zoning Board of Appeals.

8. Plaintiff has unclean hands and is not entitled to injunctive relief.

9. Some of Edgewood's claims are barred as moot.

10. Some or all of Edgewood's claims may be barred by the statute of limitations.

11. Some or all of Edgewood's claims are barred by the doctrines of waiver, equitable estoppel, and laches and Edgewood may not pursue them by reason of its own actions, omissions and course of conduct.

12.     Plaintiff is the cause of any damages that it suffered.

13.     Plaintiff failed to mitigate any damages it suffered.

14.     Plaintiff's damages are capped by Wis. Stat. § 893.80(3).

15.     Plaintiff has not relied on any of Defendants' statements or conduct to its detriment.

16.     Defendants at all times acted in good faith based on the current state of the law.

17.     The City's ordinances provide fair notice of the proscribed conduct, is not vague and indefinite, has a rational basis, and furthers substantial governmental interests.

WHEREFORE, defendants request dismissal of plaintiff's complaint as a matter of law and such further relief as the court deems appropriate.

**DEFENDANTS DEMAND A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

Dated this 13th day of May, 2022.

Respectfully submitted,

*/s/ Sarah A. Zylstra*
Sarah A. Zylstra, State Bar No. 1033159
Tanner G. Jean-Louis, State Bar No. 1122401
BOARDMAN & CLARK LLP
1 South Pinckney Street, Suite 410
P. O. Box 927
Madison, WI  53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
szylstra@boardmanclark.com
tjeanlouis@boardmanclark.com
*Attorneys for Defendants*

\\msnfs2\share\docs\WD\25981\424\A4533461.DOCX