UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

         Plaintiff,

v.

CITY OF MADISON, WISCONSIN, *et al.*

         Defendants.

Case No.: 3:21-cv-00118

---

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S
RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

---

TO:  Sarah A. Zylstra
      Evan B. Tenebruso
      Tanner G. Jean-Louis
      Boardman & Clark LLP
      P.O. Box 927
      1 South Pinckney Street
      Suite 410
      Madison, WI 53701-0927
      szylstra@boardmanclark.com

*Attorneys for Defendants*

     Edgewood High School of the Sacred Heart, Inc., by and through its undersigned attorneys, and pursuant to Fed. R. Civ. P. 33, hereby submits its written objections and responses to Defendants' First Set of Interrogatories.



Elliott
EXHIBIT NO. 94
5-10-22  RPTR PC
For the Record, Inc.
(608) 833-0392

## GENERAL OBJECTIONS

1.  Plaintiff objects to each specific interrogatory to the extent that it seeks information that is privileged and/or protected from disclosure by the attorney-client privilege, the work product doctrine, or any other constitutional, statutory, or common law privilege or protection. Nothing contained in these objections and responses is intended to be, or in any way shall be deemed, a waiver of such an available privilege or doctrine.

2.  Plaintiff objects to each specific interrogatory to the extent it is vague, ambiguous, unduly burdensome, attempts to impermissibly expand the scope of the requests, and/or attempts to impose obligations on Plaintiff beyond those imposed under applicable law or any agreement between the parties.

3.  Plaintiff objects to these interrogatories to the extent they are duplicative.

4.  Plaintiff objects to each interrogatory to the extent it seeks information that is not relevant to any party's claim or defense and proportional to the needs of the case.

5.  Plaintiff objects to each interrogatory to the extent that it purports to require Plaintiff to provide information beyond what is available to it at present after conducting a reasonable search of its own files and a reasonable inquiry of its current employees.

6.  Plaintiff objects to any interrogatory that seeks or requires the production of information that is confidential, a trade secret, or proprietary.

7.  Subject to and without waiving the foregoing objections, Plaintiff states that it shall respond hereto in accordance with and as required by the Federal Rules of Civil Procedure.

8.  To the extent specific objections are cited in a specific response, those objections are made because they are believed to be particularly applicable to the specific interrogatory and are not to be construed as a waiver of any General Objections. These General Objections are

incorporated into each of the following responses and are not waived or in any way limited by Plaintiff's specific responses or objections.

9. Plaintiff objects to each interrogatory to the extent the response is more appropriate for a deposition.

10. Each of the foregoing objections shall be considered continuing and is hereby incorporated into each specific response.

11. Edgewood objects to each and every interrogatory that requests "all . . . legal bases" for Edgewood's position and/or contentions. For each such request that Edgewood does not object to and refuse to answer, Edgewood has identified its factual bases but stands on its objection as to the identification of any and all legal bases.

## INTERROGATORIES

**INTERROGATORY NO. 1:** For every Request to Admit for which your answer is anything other than an unqualified admit, identify all factual and legal bases and any supporting documents for your denial or qualified admission.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 1 as overbroad, unduly burdensome, and as constituting more than a single interrogatory because it seeks responses to multiple Requests for Admission. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended, and specifically reserves the right to supplement this response until the close of discovery. In addition, Edgewood incorporates its objections to each and every Request for Admission as though fully set forth herein. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

- **RFA 3** – At all relevant times, Defendant Tag Evers was a member of the Madison Common Council. As a member of the Madison Common Council, Alder Evers was entitled to and did vote on Edgewood's application for conditional use permit to install lights on its athletic

3

field. Accordingly, Alder Evers had the authority to issue Edgewood's conditional use permit in his capacity as a Common Council member, in conjunction with other members of the Common Council.

- **RFA 5** – When the City of Madison adopted the Campus-Institutional Zoning District and Master Plan option for CI-zoned schools, it represented that the voluntary adoption of a Master Plan would confer certain benefits on schools. One of those purported benefits was that the school would not need to go through the conditional use permit process for certain buildings that were identified in its Master Plan. The City did not represent the Master Plan as providing any type of limitation that would restrict Edgewood to only erect buildings specifically identified in the Master Plan; rather, those buildings would simply have to go through the then-applicable approval process any school in the Campus-Institutional District without a master plan would be subject to following. Relying on this information and the plain wording of the ordinances, Edgewood voluntarily adopted its Master Plan in 2014.

When Edgewood applied for outdoor lights for its athletic complex in February and September 2019, it discovered that its voluntary adoption of the Master Plan did not confer any of the benefits promised by the City; instead, the City weaponized Edgewood's Master Plan to rule that Edgewood could not install lights because each light pole was not individually outlined in its Master Plan—even if Edgewood's outdoor lighting application met all objective administrative requirements. Moreover, the City unilaterally determined that Edgewood's Master Plan not only limited its buildings, but also prevented Edgewood from using its pre-existing facilities for any *use* not specifically identified in the Master Plan—despite City ordinances making clear that Master Plans do not govern uses. Accordingly, the City engaged in a bait-and-

switch, holding out Master Plans as conferring benefits on schools that adopted them, but in Edgewood's case using it primarily as a limitation.

- **RFA 7** – Edgewood submitted a written request for its Master Plan to be repealed, but only after justifiably relying on the written representations of City Attorneys Michael May and John Strange that repealing its Master Plan would result in Edgewood's objectively satisfactory lighting applications being approved and Edgewood being granted a permit to install its lights. Because Edgewood's written request for repeal was induced by and predicated on the City's dishonest and bad-faith actions, its request for repeal was not voluntary.

- **RFA 8** – Edgewood admits its Master Plan was effective over the dates identified in RFA 8. However, Edgewood's 2019 applications for outdoor lighting permits should have been assessed under the objective administrative criteria without regard to the Master Plan. *See* Resp. to RFA 5 *supra*. Moreover, there was a moment in time in connection with Edgewood's September 2019 outdoor lighting application where Edgewood had a fully compliant pending application for outdoor lights, the Master Plan was repealed, and the new revised ordinance was not yet effective.

- **RFA 9** – On or around July 12, 2019, the City stopped trying to force Edgewood to pay the fines in the citations it issued to Edgewood after the City sent representatives to observe daytime high school athletic activities on the same field Edgewood has been hosting such activities on for almost 100 years and issued Edgewood citations for doing so. However, Edgewood remained subject to the citations' prohibition against "athletic contents" and other activities not specifically identified in the Master Plan. Since July 12, 2019 the City has also engaged in myriad actions designed to prevent Edgewood from "hosting athletic events under its 2014 Master Plan," many of which violated state and/or federal law as set forth in Edgewood's

Complaint. These include (but are not limited to): denying Edgewood's fully compliant outdoor lighting application in September 2019; insisting that Edgewood's application for outdoor lights is subject to its Master Plan and/or is not addressed in its Master Plan even if it is subject to it; advising Edgewood to withdraw its Master Plan to obtain outdoor lights, then intentionally delaying the approval of Edgewood's requested withdraw to enact a new ordinance requiring Edgewood to apply for a conditional use permit for its outdoor lights; and denying Edgewood's conditional use application at both the Plan Commission and Common Council level, despite lacking substantial evidence to deny it, having substantial evidence to approve it, and the City staff's recommendation to approve it.

- **RFA 10** – Although the conditional use approval process outlined in M.G.O. §§ 28.097 and 28.183 are written facially neutrally, the timing and substance of the conditional use requirement was enacted to specifically target Edgewood and prohibit it from installing outdoor stadium lights because Edgewood's pending 2019 lighting applications already satisfied the previous objective administrative requirements. Moreover, the conditional use approval process has not been applied neutrally—to the contrary, the City's own professional zoning staff recommended that Edgewood's conditional use permit be granted using objective criteria, only for the City's elected representatives on the Planning Commission and Common Council to overwhelmingly reject the recommendations of its professional zoning staff to deny Edgewood's conditional use permit for heretofore unspecified reasons and without citation to substantial evidence.

- **RFA 12** – In 2018 Memorial High School applied for virtually identical outdoor stadium lights as Edgewood did in 2019 under the then-existing objective administrative review criteria applicable to both Edgewood and Memorial High School, and the City quickly granted the

6

application and issued the permits. On information and belief, these post-2018 lights had significant differences to the pre-existing lights. Accordingly, the current lights—or their reasonable equivalents—have not been in place "for decades," but for a few years. Edgewood does admit that Memorial High School previously had other, more intrusive lights installed on its field, but the existence of prior lights was not a relevant criteria under the then-existing objective ordinances governing applications for outdoor lights.

- **RFA 13** – The City approved Memorial High School's 2018 application for outdoor lights under the same objective administrative criteria that it approved Edgewood's 2019 application for outdoor lights under. However, the City issued Memorial's permit after approving its application and refused to issue Edgewood's. Both Edgewood and Memorial's applications were submitted, reviewed and approved prior to the City's enactment of the conditional use approval process in 2020.

- **RFA 14** – The outdoor lights Memorial High School and the City approved in 2018 were not "pre-existing." *See* Resp. to RFA 12, *supra*. Regardless, the fact that Memorial previously had different lights installed on its field was not (or should not have been) relevant to Defendants when assessing Memorial's 2018 outdoor lighting applications.

- **RFA 17** – Prior to the Common Council's enactment of the conditional use process in January 2020, applications for outdoor lighting were governed by Madison's objective lighting and zoning ordinances. Like Edgewood, Madison Memorial was zoned Campus-Institutional in 2018 and could therefore use its facilities for permitted secondary uses, which included athletic practices and contests. Memorial's 2018 application for new outdoor lighting did not therefore involve a "new use;" rather, it allowed Memorial to continue using its athletic fields for the same, already-permitted uses but at night. The extension of an existing use to a new time of day

is not a "new use." Edgewood's 2019 application for outdoor lights similarly sought to allow Edgewood to continue using its athletic fields for the same, already-permitted uses at night, but was denied. Accordingly, neither Edgewood nor Memorial's lighting application under the prior objective administrative process required a conditional use approval.

- **RFA 20** – Although Edgewood has only identified Memorial High School and UW-Madison individually by name, Edgewood pleaded that Defendants have treated it unequally with the MMSD high schools and nonreligious schools and institutions in the Campus-Institutional Zoning District. Defendants have thus far been unable to provide Edgewood with basic information or documents, such as other Madison schools that have applied for outdoor lighting permits, and Edgewood anticipates supplementing this answer when they do.

- **RFA 21** – Edgewood's response to RFA 21 merely clarifies that the reason no other entity is known to have gone through the conditional use process is because it was enacted so that Edgewood and only Edgewood would have to go through it, as evidenced (among other actions) by its grandfathering in of all prior outdoor lighting approvals and permits.

**INTERROGATORY NO. 2:** For any entity which you allege is a similarly situated secular comparator that was treated more favorably than Edgewood, identify all factual and legal bases and any supporting documents for that contention.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 2 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

In addition to the legal and factual bases set forth in Edgewood's complaint and supporting documents, Edgewood identifies Memorial High School as a comparator because it is

a Madison high school zoned Campus-Institutional and it applied for virtually identical outdoor lighting in 2018 as Edgewood did in 2019, both of which were reviewed under the same objective administrative lighting and zoning ordinances. Despite this, Memorial's application was quickly granted and issued, while Edgewood's was granted but Defendant Matt Tucker and the City refused to issue it. Defendant Tucker and the City then proceeded to impose a litany of additional hurdles on Edgewood that it does not impose on Memorial.

Edgewood identifies UW-Madison as a comparator because it is an educational institution in Madison zoned Campus-Institutional that has voluntarily adopted a Master Plan. On information and belief, the City and Defendants Tucker and Hank have interpreted and applied UW's Master Plan in a matter wholly inconsistent with Edgewood's. For example, Defendants have approved projects for UW-Madison that were not specifically identified in its Master Plan, and have not interpreted UW's Master Plan as limiting activities or uses of any University facility to only those specifically outlined in the Master Plan. For additional examples, please refer to Edgewood's Complaint.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 3:** Identify all factual and legal bases and any supporting documents for the allegation that the denial of the conditional use permit or any other action by any defendant has imposed a substantial burden upon your free exercise of religion.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 3 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

9

In addition to the legal and factual bases set forth in Edgewood's complaint and supporting documents, Edgewood's religious mission statement as a Catholic High School is to "educate the whole student for a life of learning, service, and personal responsibility through a rigorous academic curriculum that embraces the Sinsinawa Dominican values of Truth, Compassion, Justice, Community, and Partnership"—educating the student consistent with this mission statement is how Edgewood "practices" its religion, and Defendants' conduct has burdened that practice in numerous ways:

- Edgewood cannot engage in "traditional" religious activities, such as holding mass or holding events containing a mass, on its own facilities at night. Many of Edgewood's community-based activities, including graduations, assemblies, pep-rallies, and celebrations, contain masses, none of which can be held on Edgewood's own facilities in non-daylight hours when many members of the Edgewood community are available to participate.

- A primary way that Edgewood educates the "whole" student in its mission is through participation in sports. The reality is that high school sports occur in the fall, winter, and spring, when days are shorter, such that the inability to host home games or practices at night functions as an inability to host them at all. This imposes a substantial and sometimes dispositive burden on students and families who cannot travel, or can only travel with great difficultly, to practices and "home games" in different locations. It also subjects Edgewood students to additional safety hazards associated with daily travel to offsite games and practices. These obstacles make it more difficult for students to participate in sports and Edgewood to fulfill its mission.

- Hosting onsite home games on Edgewood's property is a primary way in which the Edgewood religious community interacts with each other to further its religious mission. It is also a primary way in which Edgewood interacts with neighboring communities and students and

families in parochial schools who are deciding whether to attend Edgewood. Moreover, the unique feeling of hosting an onsite home game in front of the Edgewood community is an irreplicable show of community support to Edgewood's current student-athletes and a draw for perspective student-athletes, as evidenced by the substantially increased community attendance at the onsite football games Edgewood was able to host last year before daylight hours became too short. Accordingly, Edgewood's inability to host onsite home games on its facility hinders its ability attracts students and families into the Edgewood community and spread and further its mission. In a contemporary culture that places a premium on athletics, modern on-campus athletic facilities enhance Edgewood's ability to compete for and attract students to attend a Catholic high school in furtherance of its religious mission. Denial of such facilities hurts Edgewood's ability to attract students and thus limits and hinders its religious mission.

- Because Edgewood cannot host onsite home games and practices, it must rent fields from MMSD or other institutions. This empowers the City to restrict or refuse Edgewood from hosting games or having practices within the City or on any City-owned property, as it has done previously. Further, the monies that Edgewood unnecessarily spends on renting fields could be applied to other causes that further Edgewood's religious purposes. Goes off field for practice for fields.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 4:** Identify all factual and legal bases and any supporting documents for any contention that the City of Madison failed to appropriately interpret or apply the terms of Edgewood's Master Plan. ** The City Defendants seek answer to this request only to the extent that Edgewood refuses to withdraw its similar document request, moves to compel the City Defendants and the Court holds that such request is relevant.

11

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 4 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

In addition to the legal and factual bases set forth in Edgewood's complaint and supporting documents, in 2013 Madison enacted ordinances that allowed schools zoned Campus-Institutional to voluntarily submit a Master Plan. The supposed intent behind this enactment was to provide an avenue for schools and other educational institutions to streamline development of their campuses or facilities—the school could identify future building projects in its Master Plan; the City could approve the Master Plan; and the school would therefore not have to get full conditional use approval for each identified building on an ad-hoc basis, but instead have a more streamlined approval process focused on the architectural design of the buildings identified by the Master Plan. The ordinances made clear that Master Plans controlled the development of buildings/facilities, not uses.

When Edgewood applied for its outdoor lighting application in February 2019, it was approved under, and met the requirements of, the then-existing Madison zoning and lighting ordinances. Defendant Tucker, after initially sending a letter saying Edgewood's application complied and that he would issue the permit, unilaterally decided to withhold Edgewood's permit because he ostensibly reviewed Edgewood's Master Plan and determined that because it did not specifically say the purpose of Edgewood's athletic field was to host "athletic contests" Edgewood's permit must be denied. Defendant Tucker did not and could not identify a single other reason Edgewood's application for outdoor lighting should be denied, other than his

interpretation of the Master Plan. Setting aside the fact that under Defendant Tucker's interpretation Edgewood still should have been issued the permit to continue its allegedly specified uses ***at night*** (which Mr. Tucker has never explained), Master Plans clearly do not govern uses per the ordinances under which they were enacted, so Mr. Tucker's reference to the Master Plan in conjunction with any "use based" theory of denial was entirely misplaced and contrary to the law.

Further, Master Plans govern buildings, and the ordinances provide that buildings specified in the Master Plan do not require certain additional approvals.[1] The ordinances ***do not*** say that buildings not specified in the Master Plan are subject to some heightened standard or restriction; rather, they are subject to the generally applicable approval process. Here, the standards governing Edgewood's outdoor lighting applications were governed by Madison's objective lighting and zoning ordinances. Edgewood's application satisfied the requirements of those ordinances, and Mr. Tucker was not within his rights to enact additional restrictions on Edgewood because of, or in accordance with, Edgewood's Master Plan.

Finally, even if Mr. Tucker was allowed to rely upon Edgewood's Master Plan in connection with its outdoor lighting applications, Edgewood repeatedly made reference to projects involving outdoor lighting on various parts of its campus and in connection with the development thereof. Mr. Tucker ignored those provisions and interpreted Edgewood's Master Plan in an artificially and arbitrarily restrictive way that belies both common sense and a reasonable reading of the Master Plan as a whole.

---

[1] Edgewood does not concede that adding outdoor lights is a building, structure or project as those terms are meant under the Master Plan or zoning ordinances. To the contrary, no other place or district in the Madison zoning code considers lights a project that requires a conditional use zoning process.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 5:** Identify all factual and legal bases and any supporting documents for any contention that the City of Madison improperly denied Edgewood's conditional use application.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 5 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Edgewood further objects because Interrogatory 5 is overly broad and unduly burdensome. Edgewood further objects to Interrogatory 5 because it is vague as to whether Defendants only seek a response as to how they improperly denied Edgewood's conditional use application, or whether they also seek a response as to how Edgewood contends they improperly subjected Edgewood to it to begin with. Subject to and without waiving these or its General Objections, Edgewood states as a general matter that both the Plan Commission and Common Council improperly denied Edgewood's conditional use application because both bodies had substantial evidence that Edgewood's conditional use application should be granted and both bodies lacked substantial evidence that Edgewood's conditional use application should be denied, yet both bodies denied it despite the opposite recommendation by the City's professional staff. Edgewood otherwise stands on its objections as to this Interrogatory.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 6:** Identify all factual and legal bases and any supporting documents for any contention that Edgewood has a vested right to use its field to host athletic contests. ** The City Defendants seek answer to this request only to the extent that Edgewood

14

refuses to withdraw its similar request, moves to compel the City Defendants and the Court holds that such request is relevant.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 6 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

In addition to the factual and legal bases set forth in Edgewood's complaint and supporting documents, Edgewood has and always has had the right to host athletic contests on its athletic field, as evidenced by Edgewood hosting such contests uninterrupted for nearly 100 years before Defendant Tucker unilaterally determined that Edgewood could not. Since 2013, Edgewood has been zoned Campus-Institutional, and that zoning classification specifically allows Edgewood to use its facilities for various secondary uses, including hosting events such as "athletic contests"—which it did uninterrupted from 2013-2019. Moreover, under the express terms of the ordinances that created Campus-Institutional zoning districts and the option for Master Plans, Master Plans govern buildings, not uses, and therefore in no way impact the permitted secondary uses of Campus-Institutional zoned schools.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 7:** Identify all factual and legal bases and any supporting documents for any contention that Edgewood has a vested right to install lights on its athletic field.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 7 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any

15

supporting documents" is premature as discovery has not yet ended. Edgewood further objects to Interrogatory 7 to the extent is duplicative of Interrogatory 6. Subject to and without waiving these or its General Objections, Edgewood responds as follows:

In addition to the factual and legal bases set forth in Edgewood's complaint and supporting documents, Edgewood submitted applications for outdoor lighting in February and September 2019, both of which were fully compliant with, and met the objective requirements of, Madison's outdoor lighting and zoning ordinances applicable in 2019. Accordingly, Edgewood had and has a vested right to have its outdoor lighting applications granted and issued, without regard to whether Edgewood's applications complied with any subsequently enacted ordinance or law, including the ordinance enacting the conditional use approval process.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

**INTERROGATORY NO. 8:** Identify all factual and legal bases and any supporting documents for any contention that the City of Madison was aware that Edgewood intended to use its field to host athletic contests. ** The City Defendants seek answer to this request only to the extent that Edgewood refuses to withdraw its similar request, moves to compel the City Defendants and the Court holds that such request is relevant.

**RESPONSE:** In addition to its General Objections, Edgewood objects to Interrogatory 8 to the extent it constitutes an impermissible contention interrogatory. Edgewood further objects because Defendants' request that Edgewood identify "all factual and legal bases and any supporting documents" is premature as discovery has not yet ended. Edgewood further objects to Interrogatory 8 because it is vague as to whether Defendants are inquiring about Edgewood hosting athletic contests at any time of day, or only at night. Edgewood further objects to Interrogatory 8 because it requests information that is equally within the City's knowledge and possession—for example, Edgewood has been using its athletic field to host athletic contests for

16

nearly 100 years—a field which is located off Monroe Street and not concealed. Presumably, the City or one of its representatives has at some point seen Edgewood hosting athletic contests during daylight hours. One or more City representatives, including Defendant Hank, have participated in or attended an athletic contest on Edgewood's field. Moreover, Edgewood combines with Madison West High School, and previously also combined with Memorial High School, to form lacrosse teams, and those teams occasionally host games at Edgewood, including against other MMSD schools—thus, City schools have been participants in the athletic contests it ostensibly did not know about. In fact, Madison West has previously played its home soccer games on Edgewood's field when necessary due to poor field conditions. The City also zoned Edgewood Campus-Institutional in 2013 and specifically identified athletics as a permitted secondary use of Edgewood's facilities. In 2015, Edgewood received an electrical permit for a scoreboard on its field, putting the City on notice that Edgewood hosts athletic contests on the field, as the primary purpose of a scoreboard is to track the score in athletic contests, day or night. These are merely examples: Edgewood stands on its objections as to this Interrogatory.

Edgewood specifically reserves the right to supplement this response until the close of discovery.

As to Interrogatory Responses:

Dated: March 16, 2022.

EDGEWOOD HIGH SCHOOL

By: *signature*
Michael Elliott
President

As to Objections and all else:

Dated: March 17, 2022.

GODFREY & KAHN, S.C.

By: *signature*
Mike Wittenwyler (SBN 1025895)
Jonathan Ingrisano (SBN 1033977)
Paul Covaleski (SBN 1117236)

P.O. Address
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701
Phone: 608-257-3911
Fax: 608-257-0609
jingrisa@gklaw.com
pcovaleski@gklaw.com
mwittenw@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State Street
Rockford, IL 61101
(815) 986-8050 (telephone)
(313) 859-8888 (facsimile)
nsterett@daltontomich.com
sleahu@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*