UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

                Plaintiff,

v.

CITY OF MADISON, WISCONSIN, *et al.*,

                Defendants.

Case No. 3:21-cv-0018-wmc

---

**DECLARATION OF NATHAN J. WAUTIER**

---

I, Nathan J. Wautier, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am an attorney and shareholder with the law firm of Reinhart Boerner Van Deuren s.c., counsel for Edgewood High School of the Sacred Heart, Inc.  I make this declaration upon my personal knowledge.

2.      I have been a practicing lawyer for almost 20 years.  One of my principal areas of practice is in real estate, land use and zoning advising developers, business owners and landowners in the development and financing of their projects.  In this capacity, I have worked extensively with the City of Madison's Building Inspection Division, Zoning Administration Division, and Planning Division to address my clients land use and zoning issues.

3.      In January 2019, Edgewood High School of the Sacred Heart, Inc. ("EHS") retained me to assist the school with land use regulatory matters surrounding the use and development of its athletic field, the Goodman Athletic Complex.  One item was Zoning Administrator Matt Tucker's interpretation of the EHS's adopted Master Plan and the limitations it placed on EHS's use of its field.  Another item was EHS's then-pending application to amend

that Master Plan to permit the addition of expanded seating, concessions, restrooms, storage, lights and amplified sound.

4.      On or about January 18, 2019, I met with Mr. Tucker and Assistant City Attorney John Strange to discuss the development of the Goodman Athletic Complex.

5.      In discussing the pending Master Plan amendment, Mr. Tucker, Attorney Strange and I agreed that the building structure sought would be difficult to pass in the Common Council. This would particularly be the case if a protest petition was filed by neighbors that would then require three quarters of the Common Council to approve.

6.      Mr. Tucker,  Attorney Strange and I then discussed the potential of EHS tabling the Master Plan amendment, with the high school instead pursuing lights, upgraded amplified sound, and additional temporary bleachers separately under each's administrative process. We were unable to identify any administrative process relating to amplified sound and temporary bleachers, and the need for a permit was likely not necessary.

7.      With respect to the outdoor lighting component, under such a "piecemeal" approach, Mr. Tucker expressed in that meeting to me that the City would have to approve the lights under M.G.O. § 10.085 if they complied with the technical photometric specifications.

8.      Attorney Strange and Mr. Tucker expressed understanding that EHS would potentially go the route of a piecemeal approach and table its Master Plan amendment.

9.      During this meeting, Mr. Tucker continued to assert the EHS Master Plan to restrict the existing use of the Goodman Athletic Complex to team practices and physical education classes.  While in his view this restriction may have been unintentional on EHS's part, Mr. Tucker believed that an amendment of the Master Plan was necessary to clarify what was

allowed and by whom at the Goodman Athletic Complex.  I conveyed my disagreement with his position.

10.     Based on my meeting with these City officials, I contacted the City's Planning Division Director a couple of days later to advise the City that EHS was tabling its Master Plan amendment.

11.     Thereafter, and in reliance on the statements from Mr. Tucker that a lighting permit would be issued if such application complied with the technical photometric requirements of M.G.O. § 10.085, EHS began work to prepare its outdoor lighting permit application.  EHS filed its application for outdoor lights with the City on February 22, 2019.

12.     On or about February 26, I had a telephone call with Attorney Strange.  During that call, Attorney Strange acknowledged that EHS's light permit was being reviewed for compliance with technical lighting requirements and advised me that he had told Mr. Tucker and Heather Stouder, the Planning Division Director, that the light application and the zoning use under the Master Plan were two separate issues.

13.     On March 1, Allen Arnsten, the interim City of Madison Common Council Alder for District 13, forwarded to me an email stream between Mr. Tucker and a disgruntled Edgewood neighbor.  A true and correct copy of that stream is attached as Exhibit 1.

14.     On or shortly after March 1, 2019, I noted on the City's online portal that EHS light application had been approved.

15.     On March 8, a week after the application had been approved, in a phone call with me, Mr. Tucker advised that there may be a problem with the height of the light poles under the terms of Master Plan and that the City may not be able to issue the permit.  I followed up with Attorney Strange by letter dated March 12, 2019, memorializing what Mr. Tucker had told me on

3

March 8 and setting forth my disagreement with the City's position.  A true and correct copy of that letter is in the record in this case as Deposition Exhibit 70.

16.     To my knowledge, no decision on the February 22, 2019 light application was conveyed to EHS.  I have never seen a denial letter from the City.  I did receive a March 21, 2019 letter from Attorney Strange responding to my March 12 correspondence, but that letter neither expressed what was happening to the permit nor addressed Mr. Tucker's novel March 8 argument about the non-compliance of the lights because of their height.  A true and correct copy of that letter is in the record in this case as Deposition Exhibit 71.

17.     I received a copy of City Attorney Michael P. May's July 12, 2019 letter inviting EHS to seek to repeal its Master Plan.  Thereafter, Attorney Strange and I discussed EHS's options with respect to the Master Plan going forward.  At my request, Attorney Strange summarized the options in an email to me dated July 17, 2019.  A true and correct copy of that email is in the record in this case as Deposition Exhibit 23.

18.     Based on the options as outlined by Attorney Strange, EHS decided to seek to repeal its Master Plan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of June, 2022.

Nathan J. Wautier