UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

        Plaintiff,

v.

CITY OF MADISON, WISCONSIN, *et al.*,

        Defendants.

Case No. 3:21-cv-00118-wmc

---

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S MEMORANDUM IN SUPPORT OF MOTIONS TO COMPEL, TO ADJOURN TRIAL, AND TO EXTEND DISCOVERY**

---

> **Due to the continued public outcry about the project, we have been told by the Director of our department, George Hank, not to issue this permit until further notice.**
>
> *Alan Harper, City of Madison Building Inspection, March 14, 2019 email (CITY-DEF-052764, produced August 17, 2022)*

On August 17, 2022, the Defendant City of Madison voluntarily produced forty-five (45) communications and documents that it had previously withheld on the basis of attorney-client privilege. In numerous respects, and as the recently disclosed Harper email shows above, these documents were new revelations confirming what Plaintiff Edgewood High School ("EHS") has long contended about the City's reasons for its unequal treatment of EHS. These new documents will ultimately warrant revisiting the record on the Defendants' pending motion for summary judgment. However, in the short term, the August 17 production included earlier emails between City officials and third parties – never arguably subject to privilege – that were not identified or produced in the City's discovery processes earlier this year. These communications alone, along

with the rest of the forty-plus documents over which the City has waived its privilege, warrant further exploration in discovery.

Just as importantly, the absence of the non-privileged communications contained within these new email streams now raises substantial questions regarding the sufficiency of the City's prior records searches. Plaintiff's counsel has reviewed the City's document production and has found no emails to, from or between City officials relating to its (a) interpretative decisions of the Edgewood Campus Master Plan, (b) decision to withhold the high school's approved outdoor lighting permit, or (c) processes for the consideration of the Plaintiff's Master Plan repeal and the City's contemporaneous Campus Institutional ordinance amendment. The August 17, 2022 production contains such documents, and demonstrates that other such documents likely exist.

On August 19, 2022, the Plaintiff requested that the City voluntarily review and supplement its document production and stipulate to jointly move the Court to adjourn the trial and extend discovery. The Defendants declined both invitations on August 23. Now, with little more than a week before the close of discovery and two weeks before pretrial submissions, Plaintiff EHS respectfully seeks to compel discovery, adjourn the trial date and related deadlines, and extend discovery three months.

## BACKGROUND

Plaintiff EHS has diligently pursued discovery in this matter. Defendants' motion to dismiss stayed discovery until August 13, 2021. (Dkt. #18) Plaintiff thereafter served combined discovery, including document requests, on November 2, 2021. (Ingrisano Decl. ¶ 2.) Shortly after being served with this discovery, the Defendants moved to extend the discovery stay, a request the Court denied on November 22, 2021. (Dkt. #19, 23.)

From December 2021 through March 2022, the parties met and conferred on multiple discovery issues, including appropriate search terms for the City to employ in searching for responsive electronic documents. (Ingrisano Aff. ¶ 3.) A March 11, 2022 letter from the City's counsel sets forth a summary of the final key word search terms applied by the City. (Id., Ex. A.) Presumptively using these search terms, on April 15, 2022, the City produced more than 40,000 pages of records. (Id. ¶ 4.)

With these records in hand, during the week of April 25, 2022, Plaintiff EHS took the depositions of George Hank, Alder Tag Evers, and Matthew Tucker. (Id. ¶ 5.) Throughout these depositions, the City stipulated to permit its witnesses to testify as to their discussions with Assistant City Attorney John Strange, provided such testimony would not be used by EHS to argue a wholesale subject matter waiver of the privilege. (Id.) The City deposed EHS President Mike Elliott and EHS Athletic Director Chris Zwettler on May 10 and 26, respectively. (Id.) On June 2, 2022, EHS deposed now-former Assistant City Attorney John Strange, and again the City stipulated to permit Mr. Strange to answer questions as to his otherwise-privileged conversations with City representatives. (Id.)

After this Court's May 3, 2022 decision on the Defendants' Motion to Dismiss, the remaining Defendants answered on May 13 and moved for summary judgment on May 20. (Dkt. ## 28, 29, 34.) EHS did not move for summary judgment but opposed Defendants' motion based on the existence of genuine issues of material fact concerning, among other things, the City's reason for not issuing EHS a light permit. Summary judgment submissions, totaling some 200 pages of briefing, almost 500 proposed findings of fact, six deposition transcripts, and fourteen declarations were completed on June 21, 2022. (Ingrisano Aff. ¶ 6.)

In July, after summary judgment submissions were complete, the parties returned to discovery efforts, including scheduling depositions for August, and issuing third party subpoenas. (Ingrisano Aff. ¶ 7.) On July 15, 2022, Plaintiff's counsel raised the issue of the production of John Strange's communications with City representatives from 2019, given the breadth of what he and other City witnesses were permitted to testify to. (Ingrisano Aff. ¶ 8, Ex. B.) Counsel for the Defendant advised she would look into the request upon her return from vacation the following week. (Id.) Plaintiff's counsel did not hear back on the issue and followed up on August 10, 2022. (Id. ¶ 9, Ex. C.)

On August 17, 2022, the City produced forty new files – emails, calendar entries and draft documents – related to Attorney John Strange. (Ingrisano Aff. ¶ 10.) Prior to doing so, the City sought to reaffirm the stipulation on privilege – "Prior to sending those to you, I want to make sure that our same stipulation applies, that is, that you agree that our production of these documents does not operate as a wholesale waiver of the attorney-client privilege. I am not looking for you to concede that something is privileged but only agreement that you will not contend that our responses/production operate as a waiver of the privilege." (Id. ¶ 10, Ex. D.) Plaintiff's counsel confirmed, while also seeking and receiving his own clarification, that the produced documents themselves would not be considered privileged. (Id.)

During an August 19 telephone conference, Plaintiff's counsel discussed seeking an adjournment to address problems he saw in the review of the Strange documents produced on August 17. (Ingrisano Aff. ¶ 12.) Counsel later formalized his request for corrective action in a letter. (Id. ¶ 12, Ex. E.) Specifically, Plaintiff complained that the August 17 production contained non-privileged, responsive communications that were not previously produced. (Id.) Upon review, Plaintiff was unable to find in the City's original production any communications

from the critical period – October 1, 2018 through December 1, 2019 – in which the relevant issues and incidents in this litigation were discussed. (Ingrisano Aff. ¶¶ 11-12, Ex. E.) Further, given the Defendants' confirmation that the documents in the Strange production would not be treated as privileged, the Plaintiff also took issue with the selective redaction in the middle of an email that otherwise appears to show a causal connection between the City's introduction of Alder Evers's ordinance change and EHS's Master Plan repeal. (Ingrisano Aff. ¶ 12, Ex. E.)

On August 23, the City's counsel declined the invitation to adjourn the trial date and further declined to revisit its document production efforts in light of the contents of the Strange production the week before. (Id. ¶ 13, Ex. F.) In response, on August 24, counsel for EHS noted the particular failure of the City's search terms to "hit" key, non-privileged communications in the August 17 Strange production, despite the apparent presence of those terms in the communications. (Id. ¶ 14, Ex. G.) Defendants were advised that Plaintiff would file the present motions. (Id.)

## ARGUMENT

### I. MOTION TO COMPEL DISCOVERY

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Drake v. Aerotek, Inc.*, 2014 WL 7408715, at *1 (W.D. Wis. Dec. 30, 2014) (Crabb, J.). "If a party fails to respond to discovery requests, or provides a response that is evasive or incomplete," then the requesting party may seek to compel discovery. *Leiser v. Schrubbe*, 2012 U.S. Dist. LEXIS 191259, at *3 (W.D. Wis. Aug. 7, 2012) (Crocker, M.J.); *see also Design Basics LLC v. Best Built, Inc.*, 2016 WL 1060253, at *2 (E.D. Wis. Mar. 15, 2016). "[F]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the

5

action." *Drake*, 2014 WL 7408715, at *1. In ruling on motions to compel discovery, courts have "consistently adopted a liberal interpretation of the discovery rules" in order to "aid the search for truth." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (internal quotation marks and citation omitted).

As the Plaintiff's discovery letters outline there is significant reason to believe that the Defendants' document production with respect to City employee emails is incomplete. (Ingrisano Aff. ¶¶ 11-14, Exs. E & G.) The Plaintiff is not questioning the City's good faith in discovery at this time, but it doesn't need to. An innocently incomplete production is incomplete, nonetheless. For reasons unknown, multiple non-privileged emails contained within the August 17 Strange production should have "hit" on the Defendants' search terms and been produced, but were not. The Strange production shows the existence of highly relevant and responsive emails that were not previously produced. It is not unreasonable under these circumstances to require Defendants to revisit and re-evaluate their search processes. Search terms and protocols are not written in stone, particularly where they appear to have been lacking.

With respect to the selectively redacted document in the August 17 Strange production, CITY-DEF-052797, the unredacted portion is highly probative of the link between the timing of EHS's master plan repeal – i.e., the "mayor's ordinance" referenced – and Alder Evers's ordinance to change Campus Institutional zoning. (Ingrisano Aff. ¶ 20, Ex. M, CITY-DEF-052797.) That timing looms large with Mr. Strange's closing suggestion that "I suppose [Evers] could intro something from the floor on August 6 *for it to track* with the mayor's ordinance." (Id.)(emphasis added.) The redaction is in the middle of a single paragraph email with the subject line of "Edgewood." The redaction obscures a potentially critical part of the communication. Having confirmed prior to the Strange production that the produced documents

6

themselves would not be privileged, the City's counsel has identified no basis to conclude that one part of the unprivileged email somehow remains privileged. An unredacted version of this email should be produced.

## II. MOTION TO ADJOURN TRIAL AND EXTEND DISCOVERY

Rule 6(b)(1) permits the Court to extend deadlines that it has established upon a showing of good cause. The Plaintiff believes good cause exists for extending the upcoming pretrial deadlines in this case and adjourning the trial date to permit limited additional discovery on key custodians during the critical period and on central issues to the case.

As set forth above, the motion to compel discovery, if granted, will likely lead to the discovery of additional documents that are probative of the City's reasoning and good faith in its (a) interpretation of the Master Plan to prohibit games on EHS's athletic field, (b) withholding of EHS's approved outdoor lighting permit, and (c) tailoring of Alder Evers's ordinance to EHS in both timing and content. Evidence of the City's shifting, inconsistent, and arbitrary positions provide sufficient basis for a reasonable jury's finding of pretext. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir.2003); *see also Lawhead v. Ceridian Corp.*, 463 F. Supp. 2d at 856, 864 (N.D. Ill. 2006). Evidence of pretext is certainly highly probative of Plaintiff's equal terms claim under RLUIPA and its state law vested rights claims. Moreover, evidence which shows the government acting arbitrarily, or in bad faith, or even upon shifting positions can buttress a substantial burden claim under RLUIPA. *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005); *see also World Outreach Conf. Ctr. v. City of Chicago,* 787 F.3d 839, 843–44 (7th Cir. 2015).

Beyond the Harper email and the "continued public outcry" as the admitted reason for withholding the Plaintiff's approved light permit, the John Strange documents produced on

August 17 – some two months after Plaintiff's summary judgment response deadline and two weeks before the close of discovery – give ample good cause for further exploration of pretext, bad faith and the shifting positions by City officials.

- John Strange's August 14, 2019 meeting invitation references the need to meet "with zoning and planning staff regarding the *Edgewood ordinances* ASAP." (Ingrisano Aff. ¶ 15, Ex. H, CITY-DEF-052799.) This and similar emails could confirm for a reasonable jury that the City indeed considered both the Master Plan repeal and Evers's ordinance amendment to be "Edgewood-related" and targeted at EHS.

- John Strange's August 23, 2019 exchange with Alder Evers demonstrates a clear collaboration with a Mr. Ethan Brodsky, an EHS neighbor and a core member of the anti-EHS group, No New Stadium. (Ingrisano Aff. ¶ 16, Ex. I, CITY-DEF-052801; Evers Dep. at 25, Dkt. # 31.) The Brodsky-to-Evers email, non-privileged, would have "hit" on the search terms ("Edgewood" and "Master Plan") and would have been used to follow up on Evers ambiguous answer about not receiving input from constituents on his draft amendment. (See Evers Dep. at 111, Dkt. # 31.)

- George Hank later attempted to backtrack from Alan Harper's admission on "continued public outcry," justifying withholding the permit instead because "[a]fter further review we concluded the 80-foot poles would likely result in a zoning violation." (Ingrisano Aff. ¶ 17, Ex. J, CITY-DEF-052764.) This is yet another contradictory rationale being asserted as the basis for withholding of the light permit. (Compare Defs.' PFOF 97, 99, 101, Dkt. # 41; see also Hank Dep. at 47, 75, 81, Dkt. # 30).

- Previously, on March 7, George Hank advised Ethan Brodsky that, regarding EHS's outdoor lighting permit application: "After additional review we have concluded that the light poles do need to conform to the 68 foot requirement…. If they [EHS] resubmit their lighting plans with poles the [sic] meet the 68 foot requirement we would then look to issue the electrical permit to install the 68 foot poles." (Ingrisano Aff. ¶ 18, Ex. K, CITY-DEF-052788.) No other witness testimony or document produced to date discloses this version of the City's rationale; nor is there any evidence in the record that EHS was told that the City would have approved and issued a permit for 68 foot poles.

- A never-before-seen "City of Madison Interdepartmental Correspondence" between George Hank and Matt Tucker bases withholding the permit on the Master Plan's failure to provide for the installation of light poles. (Ingrisano Aff. ¶ 19, Ex. L, CITY-DEF-052753.) This memo's eleventh-hour production rendered it impossible to compare and explore the shift from Hank's 68 foot pole interpretation above, or his prior testimony that it was the "Open Spaces" section of the Master Plan – not its minimal discussion of lights – that justified the withholding of the approved permit. (Hank Dep. at 81, Dkt. # 30.) It is unknown why any claim of privilege delayed production of this memo until August 17, 2022.

The central questions for the Defendant's liability under the Plaintiff's claims all examine the City's reasons – stated versus real – behind the distinctive and unequal treatment accorded the high school under the City's land use regulations. The August 17 Strange production, coupled with its implications on the completeness and sufficiency of prior productions, demonstrates a substantial risk that the Plaintiff has been deprived, even if unintentionally, of a full picture of why the City decided what it did.

Plaintiff EHS respectfully requests:

A. An order compelling the City to review and re-examine its document production and search terms, and to cooperate with Plaintiff to identify reasonable modified search terms, custodians and protocols for electronic discovery of the City's records during the period October 1, 2018 through December 1, 2019.

B. An order compelling production of an unredacted copy of CITY-DEF-052797.

C. An order adjourning the trial date and resetting the pre-trial deadlines.

D. Extending discovery 120 days to allow reasonable follow-up discovery.

Dated: August 25, 2022

Respectfully submitted,

GODFREY & KAHN, S.C.

*s/Jonathan R. Ingrisano*
Mike Wittenwyler (SBN 1025895)
Jonathan Ingrisano (SBN 1033977)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: (414) 273-3500
Fax: (414) 273-5198
mwittenw@gklaw.com
jingrisa@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State St., Suite 509

Rockford, IL 61101
Phone: (815) 986-8050
Fax: (313) 859-8888
nsterett@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

27760226.2