# EXHIBIT F

# EXHIBIT F



SARAH A. ZYLSTRA
ATTORNEY
SZYLSTRA@BOARDMANCLARK.COM
DIRECT   (608) 283 1741
FAX      (608) 283 1709

August 23, 2022

**<u>Via Email Only</u>**

Jonathan Ingrisano
Godfrey & Kahn, S.C.
833 East Michigan Street
Suite 1800
Milwaukee, WI  53202

**RE:**   Edgewood High School of the Sacred Heart, Inc. v. City of Madison, et al.
        Case No. 3:21-CV-118

Dear Jonathan:

I write to respond to your letter that I received late Friday afternoon on August 19, 2022.

You raise several discovery concerns.  First, you note that I produced 40 new documents on Wednesday, August 17.  You also note that the documents were produced in response to a conversation that you and I had in July.  These documents related to Attorney John Strange, an Assistant City Attorney for the City of Madison.  During the depositions of George Hank, Matt Tucker and Tag Evers, you asked questions related to conversations between Matt Tucker and George Hank during the February and March 2019 timeframe as it related to Edgewood's February 19, 2019 lighting application.  I objected on attorney/client privilege because those communications all involved Attorney Strange.  With respect to the limited issue of allowing Matt Tucker and George Hank to testify as to their verbal conversations with Attorney Strange regarding that specific lighting application during the February 19 to early March timeframe, I offered to allow the witnesses to answer your questions with a stipulation that you would not argue or contend that such operated as a further waiver of the attorney/client privilege beyond those questions.  You agreed.

With respect to Tag Evers, you asked questions with regard to Mr. Evers' verbal conversations between him and Attorney Strange with respect to drafting the amendment of the campus instructional district ordinance that occurred late July 2019 and early August of 2019.  I again offered allow Mr. Evers to testify to those verbal conversations with the same stipulation. Again, you agreed.

Those depositions were completed on April 29, 2022.  You contacted me in July, a day or two before my scheduled vacation beginning July 16 and continuing through July 24.  You asked me whether I would produce the relevant email communications related to these distinct timeframes with these individuals involving these two topics: that is Mr. Hank, Mr. Tucker

and Mr. Strange's written communications in the February and early March 2019 timeframe as it relates to Edgewood's lighting application and with respect to Mr. Strange and Mr. Evers' written communications about Mr. Strange's drafting of the amendment to the Campus Institutional District Zoning Code.  I do not believe our prior stipulation required production, but I indicated to you that I would talk to the City about it, but that I was leaning towards producing those documents. I then proceeded on vacation.  We did not discuss a timeline for production of those documents.  On August 3, you served a second set of discovery requests on defendants and sought production of those documents.  I presumed, perhaps wrongly, that providing the documents in response to your document request would be sufficient.

Defendants had served a second set of discovery on plaintiff's which discovery was due on August 8.  On August 10, I wrote you a letter regarding that discovery and sent a follow up email on August 13.

On August 14, you advised by email that my supplemental production related to Mr. Strange should be made immediately and not delayed until responding to the outstanding discovery requests that you sent on September 2.  I then proceeded to produce those documents to you three days later, as requested.  Prior to production, we stipulated that production of these documents would not operate as a waiver of the privilege (with the exception of the actual documents produced).

In your letter you indicated that you were still reviewing these emails and asked me to advise what dates are available for follow up depositions on or before September 2.  ***Please advise who it is that you are intending to depose.***

You indicate that parts of the documents relating to John Strange were not previously produced and portions of those were not privileged.  You indicate that your office has reviewed the City's prior productions during a certain time period and have not been able to find any internal communications. You correctly note that the limitation in production may in part be related to search terms and searches that we agreed upon in the City responding to your discovery.  You asked why EHS communications were not captured during the process.

First, with regard to the email that you and I discussed by phone, which was an email that involved Jennifer Luhman at Forward Electric asking about a permit, that document does not fall within any of the searches that we agreed to perform.  The closest search for that document was Search #9, which consisted of "(Edgewood OR EHS) AND electric* AND (application OR apply OR permit OR grant* OR deny OR denial OR denied OR reject*).  While the terms of the email fall within that search, we agreed to limit that search for the years 2014 through 2016.  The email from Ms. Luhman is dated March of 2019.

I also note that we also agreed to the custodians that the City would search.  The City agreed to search the records of 27 custodians.  Your August 19 letter demands the City supplement its

production as to 10 custodians, but three of those listed (Rewey, May and Harper) were never included in agreed custodian list.

Neither the City's nor Edgewood's searches for documents was perfect. Throughout the deposition process, we both have located documents that were relevant and that for reasons of the imperfection of searching did not fall within the category of documents for production.

With respect to your claim about the lack of internal communications during October 2018 and November 2019, I have not gone back yet and reviewed our production but if what you contend is accurate, it is not completely surprising to me. First, we heard testimony from, for example, Tim Parks, that his office is 100 feet away from Matt Tucker. Mr. Parks testified that due to the proximity of the offices, many of the communications internally occurred verbally. In addition, as you know, Mr. Tucker wrote an email to Edgewood in October of 2018. Edgewood "lawyered up" and had an attorney respond to Mr. Tucker by letter challenging his assessment. It is not surprising that the City attorneys began being involved during that time period for which you are seeking records. Although we have not done a full or an exhaustive search, our quick search of records during that time period reveals some written communications, but all involve City attorneys for which we have claimed privilege.

You have demanded that we undergo additional searching for internal communications between the individuals listed for the date range you requested. I do not think that it is fair to be putting additional discovery demands on the City at this late date. The searches that we performed were agreed to by the parties. So were the custodians that we agreed to search. Furthermore, there is only 2 weeks left in the discovery period, and you have outstanding requests that I need to respond to, not to mention both of us preparing our Rule 26(a)3 disclosures which are due in three weeks.

Lastly, your letter asks about the redaction of one document within the City's production. What I indicated on the phone to you with regard to that redaction is that it related to the mayor. Our stipulation did not include any communications related to the mayor. I am declining your invitation for a further production beyond what I provided as it relates to the Strange documents.

Finally, in our call on Friday, August 19 you inquired as to the parties stipulating to adjournment of the trial date and extending discovery. When I asked about what potential discovery you wanted to take , you indicated that there was a reference to a city employee, Alan Harper, in one of the Strange emails and that you would like to depose Mr. Harper. You also indicated a desire to depose a representative of Potter Lawson.

I have discussed your proposal with the City. From the City's perspective, delaying the trial date in this matter is prejudicial to the City. First, as I mentioned, in a recent preliminary pretrial conference that I had on another matter, the Court was scheduling trials for 2024. I do

not believe extending this case for two years is in any of the litigants' interest.  In addition, your claimed damages are ongoing, and such delay would only increase the damages potentially owed by the City if there were liability. Further, you claim entitlement to your attorney's fees as a result of the claims in this lawsuit.  Allowing several months of more discovery only increases the fees that you claim the City is liable for.  In short, the City has an interest in trying to get this case resolved promptly.

As a compromise, I am willing to agree for you to you take a short deposition of Alan Harper. I will also have the City search for any email communications involving Mr. Harper in the February and March 2019 timeframe relating to Edgewood.  I will endeavor to produce Mr. Harper before the close of discovery on September 2, 2022.  If for any reason, we cannot find a date that is available for you, me and Mr. Harper prior to September 2, 2022, I will permit us to extend the deadline solely for the purpose of taking Mr. Harper's deposition in the following week if necessary.  I have not yet checked with Mr. Harper as to his schedule but I am available on August 31.  Please let me know whether you wish for the search to be run for those documents involving Mr. Harper and whether you wish to depose him.  If so, let me know whether August 31 works for you and I will check with Mr. Harper.

Very Truly Yours,

BOARDMAN & CLARK LLP

Sarah A. Zylstra

SAZ/mp

\\msnfs2\share\DOCS\WD\25981\424\A4623872.DOCX