# EXHIBIT G

# EXHIBIT G



833 EAST MICHIGAN STREET • SUITE 1800
MILWAUKEE, WISCONSIN 53202-5615

TEL • 414.273.3500   FAX • 414.273.5198

WWW • GKLAW.COM

Direct: 414-287-9611
jingrisa@gklaw.com

August 24, 2022

**VIA EMAIL AND U.S. MAIL**

Sarah A. Zylstra
Boardman & Clark LLP
1 South Pinckney St.
4th Floor
Madison, WI 53701

      RE:    <u>Edgewood High School of the Sacred Heart, Inc. v. City of Madison, et al.</u>
               Case No. 3:21-cv-0018-wmc (W.D.Wis.)

Dear Attorney Zylstra:

      I am in receipt of your letter from earlier yesterday, August 23, 2022. As you know, I wrote on Friday, August 19 about what by all appearances is a material gap in the City's production of responsive documents. Your letter's lengthy recitation fails to address the central issue, namely, that the City's search and production efforts failed to capture and produce responsive and highly relevant documents that plainly met the search criteria you outlined in the attached March 11, 2022 letter. There are three clear examples from your August 17, 2022 supplemental production that should have appeared in your original productions, but did not.

      First, none of the emails in CITY-DEF-052785 were produced. Emails in the stream meet the date and custodian criteria that you searched for earlier this year and would have hit at least on the fourth search – ("Master Plan" AND "Edgewood") -- identified in your March 11, 2022 letter. It is hard to imagine a more conspicuous "hit" than these email subject lines of "Edgewood permit." These emails, together with those found at CITY-DEF-052764 directly contradict City representatives' testimony and the rationale for their withholding of the Plaintiff's approved light permit. As of August 17, two weeks before the close of discovery, we have just now discovered this written admission by a City employee that the Building Inspector instructed his subordinates to withhold Edgewood High School's permit due to "public outcry" and not because of an interpretation of City ordinances or the Master Plan. These emails are illustrative of the City's bad faith in the interpretation of its ordinances and the Master Plan and are directly relevant to Edgewood High School's equal terms claim under RLUIPA and its state law vested rights claim. Moreover, had these emails been produced earlier, Edgewood could have insisted upon further refinement of the search terms in light of the contents of this email, including adding Mr. Harper as a custodian for search as well.

      Second, the earlier emails contained as a part of CITY-DEF-052788 were also never produced. This email was identified and withheld, temporarily, on the basis of privilege, but the

Sarah A. Zylstra
August 24, 2022
Page 2

City and its attorneys were on notice of the responsive, non-privileged emails earlier in the stream. While the later emails may have formed the basis of your delayed production on the basis of privilege, the earlier emails are clearly responsive. These were March 12, 2019 emails between Mr. Hank and Mr. Brodsky, copied to Ms. Stouder, where "Edgewood permits" and "Edgewood" appeared in both the subject line and body, respectively. These emails indicate yet another, different rationale for withholding Edgewood High School's permit – allegedly non-compliant light pole height – and again contradict the sworn testimony of the City's representatives about their claimed rationale.

Third, the earlier emails contained in CITY-DEF-05281 involve another, searched-for custodian (Evers) within the appropriate date range (August 22, 2019) that explicitly references Edgewood in its text. This email from Brodsky to Evers should have "hit" on multiple searches identified in your March 11, 2022 letter, including for ("Edgewood" AND "Master Plan") and ("event*" AND "Edgewood"), but was not produced. A similar email with the same verbiage sent to Ms. Stouder and Mr. Parks was produced at CITY-DEF-05018, but the Evers email inexplicably was not. The email to Evers is highly probative of the connection between Alder Evers' amendment and Edgewood High School and contradicts testimony about the role of Edgewood High School's neighbors in his and the City's policy and decision making.

I agree with you that few document productions are perfect. However, here the absence of these emails from the City's prior productions, and their production now only two weeks before the close of discovery as part of the production of John Strange's documents demonstrates a larger problem and a clear deficiency in the City's process. As I've noted, and you have not disputed, there is a notable absence of emails to and from the key City representatives during the critical time periods in this case, including a general absence of any internal emails discussing the City's prohibition on games being played on the Plaintiff's athletic field, the Plaintiff's February 22, 2019 outdoor lighting application, the City's response, or internal discussions of the Evers amendment to the zoning ordinance and its timing with Edgewood High School's repeal efforts. The conspicuous absence of communications by the City of Madison representatives cannot be simply dismissed by claiming that City representatives talk a lot in person, as your letter attempts to argue. Nor is it correct or fair to claim that the Plaintiff agreed to the search terms and is therefore stuck with them. The City failed to produce "hits," and thereby limited the Plaintiff's ability to re-evaluate the search terms themselves. This in turn has lead to an incomplete record on summary judgment.

The Plaintiff has a right to this evidence. The City's missing email communications are highly material – raising grave questions about the City's position. We will be moving to compel, and to adjourn the trial and extend discovery to allow the full and transparent exploration of the City's actions and motivations.

Your letter raises a second question. Please confirm whether the August 17, 2022 production of John Strange's emails and drafts was a complete production or was rather a selective production of only some emails and documents on the subject of the Edgewood High School's outdoor lighting application and permit in February and March, and of the Alder Evers amendment later that year.

Finally, please be advised that we will proceed to take the deposition of Alan Harper on August 31, 2022, at 1:00 p.m. The Notice of Deposition will be forthcoming. Please note that we expect any and all emails related to the Edgewood High School outdoor lighting permit or his response to Ms. Luhman found in CITY-DEF-052764 and 052785 to be produced in advance. Please be advised also that we will be subpoenaing the deposition of Doug Hursh and/or Potter Lawson to occur on September 2, 2022.

Sincerely,

GODFREY & KAHN, S.C.

Jonathan R. Ingrisano

Enclosure
cc: (via email)
     Tanner Jean-Louis
     Noel Sterett
     Mike Wittenwyler

27757919.1



SARAH A. ZYLSTRA
ATTORNEY
SZYLSTRA@BOARDMANCLARK.COM
DIRECT   (608) 283-1741
FAX       (608) 283-1709

March 11, 2022

Via E-Mail Only
pcovaleski@gklaw.com

Paul Covaleski
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

  Re: Edgewood v. City of Madison, et al.
     Case No. 21-CV-118

Dear Paul:

  I write in response to your letter that you sent on February 8, 2022 regarding search terms. You requested the City run 10 searches for the time periods specified in each request. We have run those across the 27 custodians that the City previously identified to you. Below is the number of results for each search. I note that search #10 appeared to contain missing parentheses. We assume you meant to include a parenthesis before Memorial and after grade school and have run the search as shown in the chart below.

|   | Search | Time Period | Number of Documents with Hits |
|---|--------|-------------|-------------------------------|
| 1. | Field OR athletic OR Goodman OR stadium OR game OR match OR practice* OR event* OR contest AND (Edgewood OR EHS). | 2013-present | 363 |
| 2. | Renovat* OR install* OR construct* OR "put in" OR refurbish AND field OR scoreboard OR Goodman OR complex OR turf AND (Edgewood OR EHS). | 2014-2016 | 0 |
| 3. | "Campus institutional" OR CID OR 28.097 OR 14-0082 OR 14-82 AND (reason* OR purpos* OR rationale OR goal* OR accomplish* OR aim OR motiv* OR intend* OR intent* OR justif* OR objective* OR draft) | 2012-2014 | 27 |
| 4. | "Master Plan" AND (Edgewood or EHS). | 2013-present | 10,367 |
| 5. | (Vilas OR Dudgeon OR "neighborhood association" OR neighbor OR DMNA OR VNA) AND (Edgewood OR EHS) AND ("master plan" OR field OR athletic OR Goodman OR stadium OR game* OR match* OR practice* OR event* OR contest) | 2017-present | 17,137 |
| 6. | (Edgewood OR EHS) AND ("master plan" OR field OR athletic OR Goodman OR stadium OR game* OR match* OR | 2013-present | 31,149 |

BOARDMAN & CLARK LLP
1 S PINCKNEY ST SUITE 410   PO BOX 927   MADISON WI 53701-0927   BOARDMANCLARK.COM

MERITAS® LAW FIRMS WORLDWIDE

MARCH __, 2022
PAGE 2

|    |                                                                                                                                                                                                                                                                                                                                                      |              |         |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|---------|
|    | practice* OR event* OR "conditional use" OR CUP OR "light* application" OR "application for light*" OR "apply for light*" OR "request for light*" OR "request light*" OR "light* request. OR contest)"                                                                                                                                              |              |         |
| 7. | (UW OR "UW-Madison" OR "UW Madison" OR "University of Wisconsin") AND (field* OR facility OR facilities OR stadium* OR arena* OR complex OR contest) AND (zon* or permit or "master plan")                                                                                                                                                           | 2017-present | 18,808  |
| 8. | (Memorial OR "Madison West" OR "West High" OR LaFollette OR "La Follette" OR "Madison East" OR "East High" OR "Breese Stevens" OR UW OR "UW-Madison" OR "University of Wisconsin") AND (field* OR facility OR facilities OR stadium* OR arena* OR complex OR contest) AND ("permitted use*" OR "conditional use*" OR game* OR match* OR practice* OR event* OR activit* OR host OR contest) | 2013-present | 38,766  |
| 9. | (Edgewood OR EHS) AND electric* AND (application OR apply OR permit OR grant* OR deny OR denial OR denied OR reject*)                                                                                                                                                                                                                                | 2014-2016    | 132     |
| 10.| (Zone OR Zoning) AND (ticket* OR violat* OR cite OR citation OR infraction OR fine) AND (Memorial OR "Madison West" OR "West High" OR LaFollette OR "La Follette" OR "Madison East" OR "East High" OR UW OR "UW-Madison" OR "University of Wisconsin" OR "middle school" OR "primary school" OR "junior high" OR "elementary school" OR "grade school") AND (athletic OR field* OR facility OR gym* OR complex OR game* OR match* OR event* OR contest) | 2013-present | 4,678   |
|    |                                                                                                                                                                                                                                                                                                                                                      | TOTAL        | 121,427 |

We maintain that reviewing 121,427 records is overly broad, unduly burdensome and not proportional to the litigation. We will review and produce responsive records for searches 1-3 and 9-10. For searches 4-8, I will try to obtain more clarity on why the results are so high.

Very truly yours,

BOARDMAN & CLARK LLP

*Electronically Signed by Sarah A. Zylstra*

Sarah A. Zylstra

SAZ/ja
cc:     Counsel of Record

\\msnfs2\share\DOCS\WD\25981\424\A4451799.DOCX

**From:** Jennifer Luhman <jennifer@forwardelectric.com>
**Sent:** Thursday, March 14, 2019 5:09 PM CDT
**To:** Hank, George <GHank@cityofmadison.com>; Harper, Alan <AHarper@cityofmadison.com>
**CC:** Strange, John <JStrange@cityofmadison.com>
**Subject:** RE: Edgewood permit

No problem.
I was just checking in.

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com


-----Original Message-----
From: Hank, George [mailto:GHank@cityofmadison.com]
Sent: Thursday, March 14, 2019 4:59 PM
To: Harper, Alan <AHarper@cityofmadison.com>; 'Jennifer Luhman' <jennifer@forwardelectric.com>
Cc: Strange, John <JStrange@cityofmadison.com>
Subject: RE: Edgewood permit

Jennifer,

Alan is definitely out of the loop. It had nothing to do with public outcry. We have a concern that the 80 foot poles may be a violation of their master plan and/or the zoning code. We did not want to issue the permit to find that out and then order them down or changed.

Thanks,

George


George C. Hank III
Director
Building Inspection Division
PO Box 2984
Madison, Wisconsin  53701-2984

Madison Municipal Building, Suite 017
215 Martin Luther King Jr Blvd.
Madison, Wisconsin  53703




-----Original Message-----
From: Harper, Alan <AHarper@cityofmadison.com>
Sent: Thursday, March 14, 2019 1:41 PM
To: 'Jennifer Luhman' <jennifer@forwardelectric.com>
Cc: Hank, George <GHank@cityofmadison.com>
Subject: RE: Edgewood permit

I am not really in the loop on this one but I thought you were. Due to the continued public outcry about the project, we have been told by the Director of our department, George Hank, not to issue this permit until further notice.

-----Original Message-----
From: Jennifer Luhman [mailto:jennifer@forwardelectric.com]
Sent: Thursday, March 14, 2019 1:03 PM
To: Harper, Alan <AHarper@cityofmadison.com>
Subject: RE: Edgewood permit

Alan:

I see the permit still hasn't been issued.

Do you have everything you need from me for this?

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com

-----Original Message-----
From: Harper, Alan [mailto:AHarper@cityofmadison.com]
Sent: Wednesday, March 6, 2019 8:53 AM
To: 'Jennifer Luhman' <jennifer@forwardelectric.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: RE: Edgewood permit

I didn't realize you had approved plans. Yes. You can do this online or by mail or come in.


Alan Harper
CITY OF MADISON BUILDING INSPECTION
215 Martin Luther King Jr. Blvd. #017
Madison, WI 53703
(608)266-4558



-----Original Message-----
From: Jennifer Luhman [mailto:jennifer@forwardelectric.com]
Sent: Wednesday, March 06, 2019 8:14 AM
To: Harper, Alan <AHarper@cityofmadison.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: RE: Edgewood permit

Alan:

Attached are the approved lighting plans.

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com


-----Original Message-----
From: Harper, Alan [mailto:AHarper@cityofmadison.com]
Sent: Wednesday, March 6, 2019 8:11 AM
To: 'jennifer@forwardelectric.com' <jennifer@forwardelectric.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: FW: Edgewood permit

Jennifer,

You need to submit lighting plans for this project. Once the plan is approved, you can get a permit by mail or by coming into the office.


Alan Harper
CITY OF MADISON BUILDING INSPECTION
215 Martin Luther King Jr. Blvd. #017
Madison, WI 53703
(608)266-4558

CONFIDENTIAL

-----Original Message-----
From: Antony, Lisa
Sent: Wednesday, March 06, 2019 6:54 AM
To: Harper, Alan <AHarper@cityofmadison.com>
Subject: FW: Edgewood permit

---

From: Jennifer Luhman [jennifer@forwardelectric.com]
Sent: Tuesday, March 5, 2019 10:05 AM
To: Antony, Lisa
Subject: Edgewood permit

Lisa:

I will be applying for a permit to install 4 new light poles and a new service for Edgewood High.
Can I apply for that permit online?

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com<mailto:jennifer@forwardelectric.com>

CONFIDENTIAL

CITY-DEF-052787

**From:** Hank, George <GHank@cityofmadison.com>
**Sent:** Thursday, March 14, 2019 4:24 PM CDT
**To:** Strange, John <JStrange@cityofmadison.com>
**Subject:** FW: Edgewood permit

Please see below.

Here is my response:

Jennifer,

It had nothing to do with public outcry. After further review we concluded the 80 foot poles would likely result in a zoning violation. We did not want to issue the permit and then order them down or changed.

-----Original Message-----
From: Harper, Alan <AHarper@cityofmadison.com>
Sent: Thursday, March 14, 2019 1:41 PM
To: 'Jennifer Luhman' <jennifer@forwardelectric.com>
Cc: Hank, George <GHank@cityofmadison.com>
Subject: RE: Edgewood permit

I am not really in the loop on this one but I thought you were. Due to the continued public outcry about the project, we have been told by the Director of our department, George Hank, not to issue this permit until further notice.

-----Original Message-----
From: Jennifer Luhman [mailto:jennifer@forwardelectric.com]
Sent: Thursday, March 14, 2019 1:03 PM
To: Harper, Alan <AHarper@cityofmadison.com>
Subject: RE: Edgewood permit

Alan:

I see the permit still hasn't been issued.
Do you have everything you need from me for this?

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com

-----Original Message-----
From: Harper, Alan [mailto:AHarper@cityofmadison.com]
Sent: Wednesday, March 6, 2019 8:53 AM
To: 'Jennifer Luhman' <jennifer@forwardelectric.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: RE: Edgewood permit

I didn't realize you had approved plans. Yes. You can do this online or by mail or come in.


Alan Harper
CITY OF MADISON BUILDING INSPECTION
215 Martin Luther King Jr. Blvd. #017
Madison, WI 53703
(608)266-4558



-----Original Message-----
From: Jennifer Luhman [mailto:jennifer@forwardelectric.com]
Sent: Wednesday, March 06, 2019 8:14 AM
To: Harper, Alan <AHarper@cityofmadison.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: RE: Edgewood permit

Alan:

Attached are the approved lighting plans.

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com


-----Original Message-----
From: Harper, Alan [mailto:AHarper@cityofmadison.com]
Sent: Wednesday, March 6, 2019 8:11 AM
To: 'jennifer@forwardelectric.com' <jennifer@forwardelectric.com>
Cc: Antony, Lisa <LAntony@cityofmadison.com>
Subject: FW: Edgewood permit

Jennifer,

You need to submit lighting plans for this project. Once the plan is approved, you can get a permit by mail or by coming into the office.


Alan Harper
CITY OF MADISON BUILDING INSPECTION
215 Martin Luther King Jr. Blvd. #017
Madison, WI 53703
(608)266-4558



-----Original Message-----
From: Antony, Lisa
Sent: Wednesday, March 06, 2019 6:54 AM
To: Harper, Alan <AHarper@cityofmadison.com>
Subject: FW: Edgewood permit


_____
From: Jennifer Luhman [jennifer@forwardelectric.com]
Sent: Tuesday, March 5, 2019 10:05 AM
To: Antony, Lisa
Subject: Edgewood permit

Lisa:

I will be applying for a permit to install 4 new light poles and a new service for Edgewood High. Can I apply for that permit online?

Thanks

Jennifer Luhman
Forward Electric, Inc
6909 Raywood Rd
Madison, WI 53713
608-221-1945 phone
608-516-1265 cell
608-221-9307 fax
jennifer@forwardelectric.com<mailto:jennifer@forwardelectric.com>

CONFIDENTIAL

CITY-DEF-052765

From: Strange, John <JStrange@cityofmadison.com>
Sent: Wednesday, March 13, 2019 5:21 AM CDT
To: Hank, George <GHank@cityofmadison.com>; Stouder, Heather <HStouder@cityofmadison.com>; Tucker, Matthew <MTucker@cityofmadison.com>
Subject: Re: Inquiry about recently issued Edgewood permits

George,

This all looks good except, in number 2, I think this is more accurate:

The lighting plan approval is correct and stands. Nothing has been rescinded. The lighting ordinance does not address pole height. The electrical permit to install the lights is currently locked while staff reviews whether installation would result in a zoning violation. We would not want to issue it and then tell them to take them down.

If you are more comfortable saying "while the City Attorney's Office reviews..." that is fine too. Or, if anyone disagrees with this change, let me know.

Thanks,

John

---

From: Hank, George
Sent: Tuesday, March 12, 2019 5:02 PM
To: Strange, John; Stouder, Heather; Tucker, Matthew
Subject: FW: Inquiry about recently issued Edgewood permits

John,
Please see the following from an Edgewood neighbor:
My thoughts and "responses" in yellow
Mr. Hank -
I just wanted to check in on the status of the questions that I asked you in my email on 3/7:
1. If Edgewood were to submit another application, are you able to send a copy of it to me immediately?
I feel uncomfortable stating I will keep an eye out for an application and send it off immediately. If he asks, even daily, I would tell him if we received one.
2. At what point do these applications become public record and what is the best avenue to ensure that we are notified of them immediately?
I have always thought it becomes public when we receive it
Also, I'd like to verify that my current understanding of the situation is
correct:
My understanding is that Edgewood's "site plan verification"
(LNDSPR-2019-00020) was initially approved and then rescinded (due its violation of the 68-foot limit), and that they have a pending electrical permit (BLDELE-2019-02858) that was submitted on 3/6 and whose review is currently on hold, but would be approved immediately if Edgewood were to submit and get approved a new, compliant, site plan verification, and that Edgewood has not submitted any new applications since your email on 3/7.
Is that correct?
The lighting plan approval is correct and stands. The lighting ordinance does not address pole height. The electrical permit to install the lights is currently locked because their installation would result in a zoning violation. We would not want to issue it and then tell them to take them down.
At what points would the community members have additional opportunities to raise legal issues with these permits?
There would be no opportunity, i.e. public hearing, if the light installation were found to be compliant with the current CI Zoning.
Ethan
-----Original Message-----
From: Ethan Brodsky
Sent: Tuesday, March 12, 2019 2:13 PM
To: Hank, George
Cc: Stouder, Heather
Subject: RE: Inquiry about recently issued Edgewood permits
On Thu, 7 Mar 2019, 'Ethan Brodsky' wrote:
> On Thu, 7 Mar 2019, Hank, George wrote:
> > The electrical permit has not been issued. They do not need a
> > building permit.
> >
> > After additional review we have concluded that the light poles do
> > need to conform to the 68 foot requirement. While they are not a
> > building, they are structures per the Zoning Code and not given an
> > exemption similar to steeples, spires,,,flag poles. Everything with
> > the exception of flag poles would require a building permit. Light
> > poles do not require building permits.
> >
> > If they resubmit their lighting plans with poles the meet the 68
> > foot requirement we would then look to issue the electrical permit

CONFIDENTIAL

\> \> to install the 68 foot poles. They will be required to meet the outdoor light code.
\>
\> Mr. Hank -
\>
\> Thank you for this information. I do have a number of other
\> questions, but my colleagues are meeting with the city tomorrow to
\> discuss this issue further, so perhaps they would be best answered at that time.
\>
\> If Edgewood were to submit another application, are you able to send a
\> copy of it to me immediately? We were not able to get a copy of this
\> application until long after it had been submitted and approved. At
\> what point do these applications become public record and what is the
\> best avenue to ensure that we are notified of them immediately?
Mr. Hank -
I just wanted to check in on the status of the questions that I asked you in my email on 3/7:
1. If Edgewood were to submit another application, are you able to send a copy of it to me immediately?
2. At what point do these applications become public record and what is the best avenue to ensure that we are notified of them immediately?
Also, I'd like to verify that my current understanding of the situation is
correct:
My understanding is that Edgewood's "site plan verification"
(LNDSPR-2019-00020) was initially approved and then rescinded (due its violation of the 68-foot limit), and that they have a pending electrical permit (BLDELE-2019-02858) that was submitted on 3/6 and whose review is currently on hold, but would be approved immediately if Edgewood were to submit and get approved a new, compliant, site plan verification, and that Edgewood has not submitted any new applications since your email on 3/7.
Is that correct?
At what points would the community members have additional opportunities to raise legal issues with these permits?
Ethan

CONFIDENTIAL

CITY-DEF-052789

**From:** Strange, John <JStrange@cityofmadison.com>
**Sent:** Friday, August 23, 2019 7:16 AM CDT
**To:** Evers, Tag <district13@cityofmadison.com>
**Subject:** Re: Comments on amendment to Campus/Institutional Zoning Ordinance

I think so. I'll study it a bit more today. I would suggest not doing another substitute right now. We can discuss whether you want to make these changes and, if so, you can raise them at the PC and recommend that they recommend approval of the 2d sub with changes. Then, we can do a third substitute before it goes to CC. That kind of thing happens often.

I'll study this a bit more and we can chat later today.

John

John W. Strange
Assistant City Attorney
Madison, Wisconsin
608-266-4511

------------------------------

From: Evers, Tag
Sent: Friday, August 23, 2019 6:31 AM
To: Strange, John
Subject: Fw: Comments on amendment to Campus/Institutional Zoning Ordinance

Good morning, John.

Do you understand the gist of Ethan's email?

Thanks.


---
Tag Evers
DISTRICT 13 ALDER
CITY OF MADISON
(608) 424-2580
district13@cityofmadison.com

Subscribe to my blog at www.cityofmadison.com/council/district13/blog


------------------------------

From: Ethan Brodsky <ethan.brodsky@gmail.com>
Sent: Thursday, August 22, 2019 10:34 PM
To: Evers, Tag
Subject: Comments on amendment to Campus/Institutional Zoning Ordinance

Alder Evers -

I am sending this specifically to you, as it contains a number of suggestions for improving the language of the proposed changes to the Campus/Institutional Zoning ordinance. I still see some minor issues with the changes as of the "Version 3" in legistar and wanted to offer suggested improvements to you directly.

I am also going to send a less detailed version of this letter to the Planning Commission and later to all alders which includes my unequivocal support for the ordinance but not the suggested improvements, as I don't want to be responsible for creating confusion or sowing doubt regarding a change that I think would be a great first step in fixing the CI Zoning and an enormous improvement over the status quo.

====

I am writing to express my support for:
  "2nd SUBSTITUTE Amending Sections 28.097(2) and (3) of the Madison
   General Ordinances to require conditional use approval in the
   Campus-Institutional District for the establishment, improvement, or
   modification exceeding 4,000 square feet in area on a zoning lot of any
   primary use and to require conditional use approval for the
   establishment, improvement, or modification of identified secondary uses."
   (File #56981)

The Campus/Institutional Zoning Ordinance has a number of issues and this ordinance would address some of them.

First, this change makes the CI District Zoning operating principles consistent

CONFIDENTIAL

CITY-DEF-052801

with the rest of the city's zoning.  In MGO 28.004 "Interpretation":
  This ordinance applies to all land and land development within the
  jurisdictional limits of the City of Madison, Wisconsin.

  (1) This ordinance should be interpreted as a permissive zoning
  ordinance, which means that the ordinance permits only those principal and
  accessory uses and structures that are specifically enumerated in the
  ordinance. In the absence of a variance or special exception, any uses or
  structures not specifically permitted by the ordinance are prohibited.

Almost every district in the city defines a list of "Permitted Uses",
"Accessory Uses" and/or "Conditional Uses".  This includes the Special
Districts, with the only exception being the Campus/Institutional District,
which has a list of "Primary Uses" and "Secondary Uses", but no definition as
to how they are allowed.  While many have assumed that the Primary Uses were
"Permitted" and the Secondary Uses were "Conditional", this is not stated
anywhere, and it is essential that this be clarified in the ordinance.

The problem is exacerbated by inadequate language in 28.097(2)(c) that allows
such districts without a Master Plan to engage in any sort of development,
construction, or changes in use, as long as they did not involve a building
with more than 4,000 square feet of floor area.

The proposed amendment does so, clarifying that any development related to uses
in the "Secondary Uses" list require a Conditional Use approval, consistent
with what is required in other districts for uses other than the primary,
intended, use of a parcel as defined by its zoning.

It is also modifies the language for developments related to the Primary
Use, clarifying that development that does not include enclosed buildings
is covered.  I would suggest, however, that the new language is still
somewhat ambigious.  I read the new language as being:

  (c) In a Campus-Institutional District without a Campus Master Plan,
  individual development proposals, improvements, or modifications related
  to primary uses identified in sub. (3)(a) below require conditional use
  approval except that any proposals, improvements, or modifications not
  exceeding four thousand (4,000) square feet in [sic] on a zoning lot
  within any five (5) year period are allowed. "

As this is written, it is unclear whether the "except" includes "any proposals,
improvements, or modifications not exceeding four thousand (4,000) square feet"
***that do not relate to primary uses***.  The following (d) makes it clear
that all development relating to secondary uses requires a CUP, but (c) could
be read as contradicting that.

What I think the ordinance means to say is:
  (c) In a CI district without a Master Plan, individual development
  proposals, improvements, or modifications relating to primary uses
  identified in sub. (3)(a) below require conditional use approval if
  they exceed 4,000 square feet on a zoning lot within any five year
  period."

Furthermore, it is unclear whether the square foot limitation is cumulative
across all projects over a five-year period, or applies only to "individual"
projects, or exactly what.  Perhaps that language could be further clarified?
I don't actually understand what the intent is for that, so I am not going to
suggest improved language.

It is clear that these changes are consistent with the original intent of the
ordinance, as the city wrote the ordinance with the intent of encouraging
Campus/Institutional entities to have a Master Plan and would not have
intentionally allowed greater priviliges for intitutions that lack them than
institutions that have them.  This is clear for a number of reasons:

  1.  In the "Statement of Purpose Section", the ordinance states that
      "The CI District is established to recognize the City's major
      educational and medical institutions as important activity centers and
      traffic generators, accommodate the growth and development needs of
      these institutions, and coordinate the master plans of these institutions
      with the City's plans, policies and zoning standards. The district is
      also intended to:
      ...
      (c) Encourage the preparation of Campus Master Plans that enable adjacent
      neighborhoods and the broader community to understand the levels of
      development being proposed, their likely impacts, and appropriate

CONFIDENTIAL

```
         mitigation measures."

   2. All newly-formed CI Districts created after the formation of the
      ordinance were *required* to have a Master Plan, to be
      "approved as part of the map amendment."
```

While I strongly support this ordinance, I also would like to state that I oppose allowing Edgewood to be released from the agreements in its Master Plan. The Master Plan encompasses much more than these questions of use and this ordinance is nowhere near adequate to eliminate the harm associated with allowing an institution to abrogate its Master Plan. I have written at length on this topic in a separate letter.

I would suggest, further, that 28.097(2)(b) be updated to say something along the lines of:
```
    Approved Campus Master Plans shall be effective in full for ten (10)
    years, and, during that period, may be altered pursuant to (8) below.
    After the conclusion of the ten-year period, all existing conditions,
    whether they be defined in the "Existing Conditions" section of the
    Master Plan or defined in the "Proposed Conditions" section at the time
    of the approval of the Master Plan but are now actually constructed,
    and all other agreements regarding use, remain in effect until the
    approval of a new Master Plan.
```
This would further achieve the city's goal of eventually having all CI parcels have adopted and approved Master Plans, and eliminate an ambiguity that is going to arise in the future, when Master Plans start expiring and nobody is sure what to do when a district has an "approved" master plan that is not "effective".

Finally, as long as I am writing, I would like to suggest a few additional miscellaneous technical corrections in city ordinances:

```
28.091 SPECIAL DISTRICT USES.
   (1)
   "Table 28G-1 lists all permitted and conditional uses in the Special
   Districts, except that uses allowed within the Campus Institutional
   District are listed separately in Sec. 28.096."
   This should read "listed separately in Sec. ***28.097.***"

8.40 PRESERVATION OF CONSERVATION PARKS.
   (2) Definitions
   ""Firearm" has the meaning set forth in Wis. Stat. 25.01(1)."
   Wis. Stat 25.01 relates to the State Investment Fund. This should
   reference ***MGO*** 25.01, not Wis. Stat.
```

Thank you for your consideration,

Ethan Brodsky

CONFIDENTIAL

CITY-DEF-052803

-----Original Message-----
From: Ethan Brodsky <ethan.brodsky@gmail.com>
Sent: August 22, 2019 10:44 PM
To: Parks, Timothy <TParks@cityofmadison.com>; Stouder, Heather <HStouder@cityofmadison.com>
Subject: Comments on amendment to Campus/Institutional Zoning Ordinance

Ms. Stouder, Mr. Parks -

This letter is for the Planning Department and for the Planning Commission.
Please pass it on to all members of the Planning Commission.  It relates to a topic to be heard at the Planning Commission Hearing on 8/26.

I am writing to express my support for:
  "2nd SUBSTITUTE Amending Sections 28.097(2) and (3) of the Madison
  General Ordinances to require conditional use approval in the
  Campus-Institutional District for the establishment, improvement, or
  modification exceeding 4,000 square feet in area on a zoning lot of any
  primary use and to require conditional use approval for the
  establishment, improvement, or modification of identified secondary uses."
  (File #56981)

This change would address a number of issues with the Campus/Institutional Zoning Ordinance.

First, this change makes the operating principles of the CI District Zoning consistent with the rest of the city's zoning.  In MGO 28.004 "Interpretation":
  This ordinance applies to all land and land development within the
  jurisdictional limits of the City of Madison, Wisconsin.

  (1) This ordinance should be interpreted as a permissive zoning
  ordinance, which means that the ordinance permits only those principal and
  accessory uses and structures that are specifically enumerated in the
  ordinance. In the absence of a variance or special exception, any uses or
  structures not specifically permitted by the ordinance are prohibited.

Almost every district in the city defines a list of "Permitted Uses", "Accessory Uses" and/or "Conditional Uses".  This includes the Special Districts, with the only exception being the Campus/Institutional District, which has a list of "Primary Uses" and "Secondary Uses", but no definition as to how they are allowed.  While many have assumed that the Primary Uses were "Permitted" and the Secondary Uses were "Conditional", this is not stated anywhere, and it is essential that this be clarified in the ordinance.

The problem is exacerbated by inadequate language in 28.097(2)(c) that allows such districts without a Master Plan to engage in any sort of development, construction, or changes in use, as long as they did not involve a building with more than 4,000 square feet of floor area.

The proposed amendment fixes this, clarifying that, for districts without a Master Plan, any development related to uses in the "Secondary Uses" list require a Conditional Use approval, consistent with what is required in other districts for uses other than the primary, intended, use of a parcel, as defined by its zoning.

CITY-DEF-005018

It is also modifies the language for developments that are related to the Primary Use, clarifying that large developments that do not include enclosed buildings still requires the Conditional Use process if a district lacks a Master Plan.

It is clear that these changes are consistent with the original intent of the ordinance, as the city wrote the ordinance with the intent of encouraging Campus/Institutional entities to have a Master Plan and would not have intentionally allowed greater priviliges for intitutions that lack them than institutions that have them.  This is clear for a number of reasons:

1. In the "Statement of Purpose Section", the ordinance states that
   "The CI District is established to recognize the City's major
   educational and medical institutions as important activity centers and
   traffic generators, accommodate the growth and development needs of
   these institutions, and coordinate the master plans of these institutions
   with the City's plans, policies and zoning standards. The district is
   also intended to:
   ...
   (c) Encourage the preparation of Campus Master Plans that enable adjacent
   neighborhoods and the broader community to understand the levels of
   development being proposed, their likely impacts, and appropriate
   mitigation measures."

2. All newly-formed CI Districts created after the formation of the
   ordinance were *required* to have a Master Plan, to be
   "approved as part of the map amendment."

While I strongly support this ordinance, I also would like to state that I oppose allowing Edgewood to be released from the agreements in its Master Plan.
The Master Plan encompasses much more than these questions of use and this ordinance is nowhere near adequate to eliminate the harm associated with allowing an institution to abrogate its Master Plan. I have written at length on this topic in a separate letter.

Finally, as long as I am writing, I would like to suggest an additional technical correction in an ordinance that relates to this:

28.091 SPECIAL DISTRICT USES.
   (1)
   "Table 28G-1 lists all permitted and conditional uses in the Special
   Districts, except that uses allowed within the Campus Institutional
   District are listed separately in Sec. 28.096."

   This should read "listed separately in Sec. ***28.097.***"

Thank you for your consideration,

Ethan Brodsky

CITY-DEF-005019