# EXHIBIT I

EXHIBIT I

**From:** Strange, John <JStrange@cityofmadison.com>
**Sent:** Friday, August 23, 2019 7:16 AM CDT
**To:** Evers, Tag <district13@cityofmadison.com>
**Subject:** Re: Comments on amendment to Campus/Institutional Zoning Ordinance

```
I think so.  I'll study it a bit more today.  I would suggest not doing another substitute right now.  We
can discuss whether you want to make these changes and, if so, you can raise them at the PC and
recommend that they recommend approval of the 2d sub with changes.  Then, we can do a third substitute
before it goes to CC.  That kind of thing happens often.

I'll study this a bit more and we can chat later today.

John

John W. Strange
Assistant City Attorney
Madison, Wisconsin
608-266-4511

_____
From: Evers, Tag
Sent: Friday, August 23, 2019 6:31 AM
To: Strange, John
Subject: Fw: Comments on amendment to Campus/Institutional Zoning Ordinance

Good morning, John.

Do you understand the gist of Ethan's email?

Thanks.


---
Tag Evers
DISTRICT 13 ALDER
CITY OF MADISON
(608) 424-2580
district13@cityofmadison.com

Subscribe to my blog at www.cityofmadison.com/council/district13/blog


_____
From: Ethan Brodsky <ethan.brodsky@gmail.com>
Sent: Thursday, August 22, 2019 10:34 PM
To: Evers, Tag
Subject: Comments on amendment to Campus/Institutional Zoning Ordinance

Alder Evers -

I am sending this specifically to you, as it contains a number of
suggestions for improving the language of the proposed changes to the
Campus/Institutional Zoning ordinance.  I still see some minor issues with
the changes as of the "Version 3" in legistar and wanted to offer suggested
improvements to you directly.

I am also going to send a less detailed version of this letter to the
Planning Commission and later to all alders which includes my unequivocal
support for the ordinance but not the suggested improvements, as I don't
want to be responsible for creating confusion or sowing doubt regarding a
change that I think would be a great first step in fixing the CI Zoning and
an enormous improvement over the status quo.

====

I am writing to express my support for:
   "2nd SUBSTITUTE Amending Sections 28.097(2) and (3) of the Madison
   General Ordinances to require conditional use approval in the
   Campus-Institutional District for the establishment, improvement, or
   modification exceeding 4,000 square feet in area on a zoning lot of any
   primary use and to require conditional use approval for the
   establishment, improvement, or modification of identified secondary uses."
   (File #56981)

The Campus/Institutional Zoning Ordinance has a number of issues and this
ordinance would address some of them.

First, this change makes the CI District Zoning operating principles consistent
```

**CONFIDENTIAL**                                                                                                               **CITY-DEF-052801**

```
with the rest of the city's zoning.  In MGO 28.004 "Interpretation":
  This ordinance applies to all land and land development within the
  jurisdictional limits of the City of Madison, Wisconsin.

  (1) This ordinance should be interpreted as a permissive zoning
  ordinance, which means that the ordinance permits only those principal and
  accessory uses and structures that are specifically enumerated in the
  ordinance. In the absence of a variance or special exception, any uses or
  structures not specifically permitted by the ordinance are prohibited.
```

Almost every district in the city defines a list of "Permitted Uses",
"Accessory Uses" and/or "Conditional Uses".  This includes the Special
Districts, with the only exception being the Campus/Institutional District,
which has a list of "Primary Uses" and "Secondary Uses", but no definition as
to how they are allowed.  While many have assumed that the Primary Uses were
"Permitted" and the Secondary Uses were "Conditional", this is not stated
anywhere, and it is essential that this be clarified in the ordinance.

The problem is exacerbated by inadequate language in 28.097(2)(c) that allows
such districts without a Master Plan to engage in any sort of development,
construction, or changes in use, as long as they did not involve a building
with more than 4,000 square feet of floor area.

The proposed amendment does so, clarifying that any development related to uses
in the "Secondary Uses" list require a Conditional Use approval, consistent
with what is required in other districts for uses other than the primary,
intended, use of a parcel as defined by its zoning.

It is also modifies the language for developments related to the Primary
Use, clarifying that development that does not include enclosed buildings
is covered.  I would suggest, however, that the new language is still
somewhat ambigious.  I read the new language as being:

```
  (c) In a Campus-Institutional District without a Campus Master Plan,
  individual development proposals, improvements, or modifications related
  to primary uses identified in sub. (3)(a) below require conditional use
  approval except that any proposals, improvements, or modifications not
  exceeding four thousand (4,000) square feet in [sic] on a zoning lot
  within any five (5) year period are allowed. "
```

As this is written, it is unclear whether the "except" includes "any proposals,
improvements, or modifications not exceeding four thousand (4,000) square feet"
***that do not relate to primary uses***.  The following (d) makes it clear
that all development relating to secondary uses requires a CUP, but (c) could
be read as contradicting that.

What I think the ordinance means to say is:
```
  (c) In a CI district without a Master Plan, individual development
  proposals, improvements, or modifications relating to primary uses
  identified in sub. (3)(a) below require conditional use approval if
  they exceed 4,000 square feet on a zoning lot within any five year
  period."
```

Furthermore, it is unclear whether the square foot limitation is cumulative
across all projects over a five-year period, or applies only to "individual"
projects, or exactly what.  Perhaps that language could be further clarified?
I don't actually understand what the intent is for that, so I am not going to
suggest improved language.

It is clear that these changes are consistent with the original intent of the
ordinance, as the city wrote the ordinance with the intent of encouraging
Campus/Institutional entities to have a Master Plan and would not have
intentionally allowed greater priviliges for intitutions that lack them than
institutions that have them.  This is clear for a number of reasons:

  1.  In the "Statement of Purpose Section", the ordinance states that
      "The CI District is established to recognize the City's major
      educational and medical institutions as important activity centers and
      traffic generators, accommodate the growth and development needs of
      these institutions, and coordinate the master plans of these institutions
      with the City's plans, policies and zoning standards. The district is
      also intended to:
      ...
      (c) Encourage the preparation of Campus Master Plans that enable adjacent
      neighborhoods and the broader community to understand the levels of
      development being proposed, their likely impacts, and appropriate

```
     mitigation measures."

  2.  All newly-formed CI Districts created after the formation of the
      ordinance were *required* to have a Master Plan, to be
      "approved as part of the map amendment."
```

While I strongly support this ordinance, I also would like to state that I
oppose allowing Edgewood to be released from the agreements in its Master Plan.
The Master Plan encompasses much more than these questions of use and this
ordinance is nowhere near adequate to eliminate the harm associated with
allowing an institution to abrogate its Master Plan.  I have written at length
on this topic in a separate letter.

I would suggest, further, that 28.097(2)(b) be updated to say something along
the lines of:
```
   Approved Campus Master Plans shall be effective in full for ten (10)
   years, and, during that period, may be altered pursuant to (8) below.
   After the conclusion of the ten-year period, all existing conditions,
   whether they be defined in the "Existing Conditions" section of the
   Master Plan or defined in the "Proposed Conditions" section at the time
   of the approval of the Master Plan but are now actually constructed,
   and all other agreements regarding use, remain in effect until the
   approval of a new Master Plan.
```
This would further achieve the city's goal of eventually having all CI parcels
have adopted and approved Master Plans, and eliminate an ambiguity that is
going to arise in the future, when Master Plans start expiring and nobody is
sure what to do when a district has an "approved" master plan that is not
"effective".

Finally, as long as I am writing, I would like to suggest a few additional
miscellaneous technical corrections in city ordinances:

28.091 SPECIAL DISTRICT USES.
```
   (1)
   "Table 28G-1 lists all permitted and conditional uses in the Special
   Districts, except that uses allowed within the Campus Institutional
   District are listed separately in Sec. 28.096."
   This should read "listed separately in Sec. ***28.097.***"
```

8.40 PRESERVATION OF CONSERVATION PARKS.
```
   (2) Definitions
   ""Firearm" has the meaning set forth in Wis. Stat.  25.01(1)."
   Wis. Stat 25.01 relates to the State Investment Fund.  This should
   reference ***MGO*** 25.01, not Wis. Stat.
```


Thank you for your consideration,

Ethan Brodsky

**CONFIDENTIAL**                                                                                                 **CITY-DEF-052803**