UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

Plaintiff,                                                    Case No. 3:21-cv-00118

v.

CITY OF MADISON, WISCONSIN, et al.,

Defendants.

---

### CITY DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY, TO ADJOURN TRIAL, AND TO EXTEND DISCOVERY

---

Defendants City of Madison, Wisconsin, City of Madison Zoning Board of Appeals, City of Madison Plan Commission, and City of Madison Common Council, (collectively "City" or "City Defendants"), by their attorneys, Boardman & Clark LLP, oppose plaintiff's Motion to Compel, Adjourn the Trial Date and Extend Discovery. Edgewood's eleventh-hour motion is unwarranted and not supported by the sequencing of events as explained more fully below. The parties conferred and agreed five months ago about what search terms would be used for locating responsive records and what City custodians' records would be searched. The City ran the exact searches that Edgewood itself drafted. The City has been transparent in its discovery and produced the documents from the searches that Edgewood drafted. For these and other reasons, the motion should be denied.

## FACTUAL BACKGROUND

The City Defendants apologize for the lengthy recitation of facts related to discovery but such cannot be helped as the lengthy history demonstrates the City-Defendants' efforts to be

transparent in discovery and the numerous opportunities for these issues to be raised prior to the end of discovery.

On November 2, 2021, plaintiff served its Request for Admission, Interrogatories and Request for Production of Documents on all defendants. Zylstra Dec., ¶¶2-4. At the time that plaintiff served those discovery requests, defendants had a motion to dismiss pending that defendants believed would significantly limit discovery. Zylstra Dec., ¶5. Accordingly, defendants moved to extend the automatic stay of discovery that this Court permits upon the filing of a motion to dismiss. Dkt. #19. After briefing, the Court denied the motion to extend the stay of discovery. Text Only Order, dkt. #23.

Plaintiff's discovery was incredibly extensive. Plaintiff served 168 requests for admissions and 58 document requests. Zylstra Dec.,¶6. Some of the requests for admissions stretched back over 100 years, seeking admission to things that occurred in 1881. *See* Zylstra Dec., dkt. #20-01, at Req. No. 1. Further, some of the 58 document requests also had no time limit or stretched back for many years. *See* Zylstra Dec., ¶6. As a result, when the City answered the discovery, it objected to a number of plaintiff's requests and proposed its own limit of January 1, 2018 to the discovery requests. *Id*.

On December 14, 2021, plaintiff reached out to defendants desiring a meet and confer conference. Zylstra Dec., Ex. A, at 5. Plaintiff indicated that before the meet and confer conference, they would send a letter outlining the specific responses that the plaintiff would like to discuss. *Id.* Defense counsel responded that after receipt of the letter, she might want to have a conference with the City Defendants before the actual meet and confer conference so as to make the call productive. *Id.* The parties scheduled the meet and confer conference for January 5, 2022. *Id*. at 4. On January 4, 2022, plaintiff sent their meet and confer letter. *Id.* at 2; Zylstra Dec., Ex.

B. Defense counsel responded to plaintiff that she had expected to receive the letter back in December and given the lateness of the receipt of the letter in relation to the call scheduled for the following day, it was unlikely that she could confer with her client prior to the meet and confer. Zylstra Dec., Ex. A at 2.

The parties subsequently had a lengthy meet and confer conference by phone. Subsequently, on January 11, 2022, defense counsel responded in writing to the meet and confer matters. Zylstra Dec., Ex. C. In that letter, defense counsel explained that even limiting the response to January 1, 2018 and searching on the term "Edgewood" or "EHS" still produced too many records—over 28,000. The City Defendants' use of a January 1, 2018 time limit was a significantly shorter timespan than plaintiff's requests sought. Counsel also included in her letter a list of 27 custodians at the City whose records were searched, and whom defendants proposed to use for future searches. *Id.*

Following the City's letter, the parties engaged in additional meet and confer conferences by phone and subsequently, plaintiff sent two discovery letters both dated February 8, 2022. Zylstra Dec., Exs. E-F. The parties agreed in their meet and confer conference that Edgewood would design searches for the City to run. *Id.* The City would then run the proposed searches across the identified custodians and inform Edgewood of the number of hits for each search. *Id.* In response to the City Defendants' email explaining the searching capabilities of the City's electronic system, in one of the February 8 letters, Edgewood provided the City with ten specific searches that Edgewood wanted performed on defendants' records. Zylstra Dec., Ex. D at 2-3. Each search included a specific a date range for the search. *Id.* In addition to negotiating the search terms and custodians for searching, the parties continued to negotiate specific requests,

coming to agreement on some and remaining at an impasse as to others. *See, e.g.*, Zylstra Dec., Exs. G-H.

On February 14, 2022, plaintiff sent another discovery letter and at the end of that letter, plaintiff requested the depositions of Alder Tag Evers and City Building inspection Director George Hank. Zylstra Dec., Ex. G. On March 4, 2022, the City Defendants responded by letter as to some of the outstanding meet and confer items. Zylstra Dec., Ex. H. In that letter, counsel wrote:

> In your other February 8 letter, you requested the City run 10 searches for the time period specified in each request. We are in process of running those across the 27 custodians that the City previously identified to you. I had thought we would have those results to you today but the City has run into a few technical difficulties. I hope to have the results to you ASAP next week. It will be my priority as soon as I have the information. I note that search 10 appear to contain missing parentheses. We assume you meant to include a parenthesis before Memorial and after grade school and are running the search as follows:
>
> (Zone OR Zoning) AND (ticket* OR violat* OR cite OR citation OR infraction OR fine) AND (Memorial OR "Madison West" OR "West High" OR LaFollette OR "La Follette" OR "Madison East" OR "East High" OR UW OR "UW-Madison" OR "University of Wisconsin" OR "middle school" OR "primary school" OR "junior high" OR "elementary school" OR "grade school") AND (athletic OR field* OR facility OR gym* OR complex OR game* OR match* OR event* OR contest)

Zylstra Dec., Ex. H.

On March 11, 2022, the City Defendants wrote to plaintiff with the results of the 10 searches. *See* Zylstra Dec., Ex. I. The total number of documents produced by the 10 searches that plaintiff sought was 121,427 documents. *Id.* The City Defendants indicated in that letter that reviewing 121,427 records was overly broad, unduly burdensome and not proportional to the litigation. *Id.* For half of the searches, the return hits were arguably more manageable than the other half. As a result, the City Defendants indicated that it would produce responsive records for

searches 1, 2, 3, 9 and 10. The City Defendants' counsel and plaintiff's counsel also continued to meet and confer regarding other outstanding issues related to discovery, and the City sent a letter dated March 23, 2022 addressing some of the requests for admissions. *See* Zylstra Dec., Ex. J.

The City Defendants proceeded to produce the records in response to the searches 1-3 and 9-10. The City Defendants produced their initial documents in December of 2021, and produced nearly 50,000 pages by April 15, 2022. Zylstra Dec., ¶17. The City completed its response to plaintiff's first set of discovery by April 26, 2022. *Id.*

In response to the request for depositions, emails communications in early March had counsel trying to find dates in late March and early April for depositions. After initial dates proved unworkable, defendants then offered to try and hold the entire week of April 25th for the depositions that plaintiff sought and those the defendants wanted to take as well. Zylstra Dec., Ex. L at 3-5. Hence, the City Defendants indicated that they would produce Alder Evers, George Hank and City Zoning Administrator Matt Tucker (who plaintiff had also requested) that week and asked plaintiff to produce Edgewood High School president Mike Elliott that week as well. *Id.* Plaintiff responded that they would take all of the City Defendants the week of April 25th, but indicated they would not produce Mr. Elliott until after the summary judgment deadline. *Id.* at 1-2. When the City Defendants objected to that, plaintiff's counsel offered to adjourn the summary judgment deadline and the trial date. *See* Zylstra Dec., ¶19, Ex. M. Defense counsel was opposed to the adjourning of the trial date. Zylstra Dec., ¶19. After meeting and conferring, plaintiff's counsel agreed to produce Mike Elliott for deposition on May 10, and the parties agreed to a short extension of the summary judgment deadline from May 13 to May 20. Zylstra Dec., ¶19, Ex. M.

The depositions occurred as scheduled, with Matthew Tucker, Tag Evers and George Hank being deposed in the last week of April. Zylstra Dec., ¶20. During the deposition of George

Hank, plaintiff asked questions relating to a February 2019 lighting application that Edgewood submitted to the City. Hank Dep. dkt. #30, 52:16-23. Following the submission of that February 2019 lighting application, there was a discussion between the Zoning Administrator Matthew Tucker, Building Inspection Director George Hank (who was also Mr. Tucker's supervisor), and then Assistant City Attorney John Strange about whether the permit could be issued. When plaintiff's counsel asked questions about that discussion, defense counsel claimed attorney-client privilege. Defense counsel and plaintiff's counsel argued about Assistant City Attorney John Strange's role in the process as it relates to the privilege. However, as a compromise and a hope to move the case forward, defense counsel offered a stipulation to allow Mr. Hank to answer the question posed if such would not constitute a waiver of the attorney-client privilege beyond the answer to the question. Zylstra Dec., ¶21. The record reflects:

> Q. MR. INGRISANO: Did John Strange recommend to you or your department that you withhold this permit application referenced in Exhibit 3?
>
> MS. ZYLSTRA: Would you agree that if I allowed him to answer that question that it would not be a waiver of the privilege just the fact that he answered that question. Would you be willing to agree to that?
>
> MR. INGRISANO: If I can get a similar stipulation that I'm not agreeing that other questions are privileged.
>
> MS. ZYLSTRA: Understand. I'm not saying that that applies for everything else, but just for that particular question you're not going to turn around and argue that that's a waiver of the privilege, the fact that I allowed him to answer that.
>
> MR. INGRISANO: I won't use your permission here as a waiver argument.

Hank Dep. dkt. #30, 54:21-55:10. With the stipulation in place, counsel allowed Mr. Hank to answer the question with respect to his communications with Matt Tucker and John Strange as it relates to the February lighting application.

Similarly, in August of 2019, an amendment to the Campus Institutional Zoning District was introduced at a Common Council meeting. Alder Tag Evers contacted City Attorney John Strange regarding drafting that amendment. When Alder Evers was deposed, plaintiff's counsel asked Alder Evers regarding his conversation with John Strange as it related to the drafting of the ordinance. Defense counsel again claimed privilege. *See* Zylstra Dec., ¶22. The parties again agreed on record that if defense counsel allowed Alder Evers to answer the questions regarding his verbal communications with John Strange about the drafting of the ordinance amendment, that plaintiff would not argue that it was a waiver of the privilege. Zylstra Dec., ¶22. Following those depositions, the parties briefed summary judgment.

Plaintiff subsequently requested the deposition of John Strange, which deposition occurred on June 1, 2022. Strange Dep., dkt. #56. The parties again agreed to the same stipulation:  that Mr. Strange would be permitted to disclose his verbal communications in February 2019 with Matthew Tucker and George Hank about the lighting application and his verbal communications with Alder Tag Evers in late July/early August about drafting an amendment to the Campus Institutional District Zoning Ordinance, but that plaintiff would agree not to argue that it was a waiver of the privilege. Zylstra Dec., ¶23.

On July 15, one day before defense counsel was going on a vacation (from July 16 through July 24), plaintiff's counsel called and asked whether the defendants would produce written attorney-client privileged communications relating to the two limited topics for which the parties were allowed to answer at deposition. Zylstra Dec., ¶25. Defense counsel indicated that she would discuss the matter with her client and get back to plaintiff's counsel but that she was going on vacation and would not do so until she returned. *Id.*; *see also* Zylstra Dec., Ex. N at 2.

On August 3, plaintiff's counsel served a second set of discovery requests on the City. Among other requests, the discovery sought the privileged written communications relating to the two specific items for which the witnesses testified at deposition, as well as other internal communications among City staff and officials relating to the same two topics. Zylstra Dec., Ex. O (RFP 61-63). The time for responding to those discovery requests is September 2, the last day of discovery in this case.

Meanwhile, mindful that discovery was scheduled to close September 2, the City Defendants served five subpoenas on third-party witnesses in early July, with return dates of July 28. Zylstra Dec., ¶28. The five subpoenas related to third parties that had communications with Edgewood regarding the matters at issue in this lawsuit. The City Defendants also served a second set of discovery on Edgewood in early July, which were due August 8, 2022. Zylstra Dec., ¶24.

On July 15, defense counsel and plaintiff's counsel also had a phone conference about the remaining depositions that each wanted to do before discovery closed. Zylstra Dec., ¶26. The City Defendants requested the depositions of Sister Kathleen Phelan, Susan VanderSanden and Maggie Balistreri-Clarke. Edgewood wanted to take the depositions of Timothy Parks and representatives from the University of Wisconsin. *Id.* Counsel conferred and agreed to block off five days in August for all five of those depositions to occur. *Id.*; *see also* Zylstra Dec., Ex. N.

On August 8, plaintiff responded to the City Defendants' second set of discovery and objected to many of the requests, and did not provide any documents at that time. Zylstra Dec., ¶31, Ex. P. Defendants' counsel had email communications with plaintiff's counsel indicating that she needed the documents prior to the upcoming depositions, one of which was scheduled for August 10, with the other three scheduled for the week of August 15. Zylstra Dec., Ex. Q at 1. In

response to emails from defendants' counsel reminding plaintiff of the need for the documents and for them to be produced straight away, plaintiff's counsel stated that the John Strange documents should be produced forthwith instead of on September 2. Zylstra Dec., Ex. R. Upon that request, defense counsel provided a document production early on August 17, with the same stipulation that plaintiff would not contend that production would operate as a further waiver of the attorney-client privilege. Zylstra Dec., ¶34, Exs. S-T.

Susan VanderSanden was listed as a witness on plaintiff Edgewood's Rule 26 initial disclosures and the City Defendants deposed her on Wednesday, August 17. Zylstra Dec., ¶35. At that deposition, Ms. VanderSanden was shown a document that had been produced by Potter Lawson in response to one of the five subpoenas defendants had served in July. Zylstra Dec., ¶36. The document (Deposition Exhibit 119) was an email between Edgewood High School's then president Judd Schemmel, Ms. VanderSanden and Potter Lawson principal Doug Hursh relating to one of the central issues in the case. Zylstra Dec., ¶37. Potter Lawson was involved in the drafting and submission of Edgewood's master plan to the City.

In the email, Ms. VanderSanden tells Mr. Schemmel that Doug Hursh (whom she carbon copied) asked her to confirm the high school's uses of its athletic field for inclusion in the open spaces section of the master plan. Zylstra Dec., Ex. U.  Ms. VanderSanden asked Mr. Schemmel if the field was only used for practices or if it was also used to host games. Mr. Schemmel replied to Ms. VanderSanden and Mr. Hursh that the high school did host games on the field, and also used the field for team practices and physical education classes. *Id.* The email was significant because it demonstrated that Potter Lawson considered it relevant and material to the master plan to know whether or not the high school played games on its athletic field, and despite receiving this information, Edgewood's master plan did not include any description of the field's use to

include games.  Rather, it stated that Edgewood used the field only for team practices and physical education classes. Edgewood had not produced this document in the litigation. Zylstra Dec., ¶37.

The parties took the deposition of three UW witnesses the following day on Thursday, and plaintiff's counsel asked to speak to defense counsel on Friday morning. Zylstra Dec., ¶38. On Friday, August 19, plaintiff's counsel requested the defendants stipulate to adjournment of the trial date and to extend discovery by three or four months. Zylstra Dec., ¶39. Defense counsel asked plaintiff's counsel what additional discovery that plaintiff wanted to do. Plaintiff indicated that they had a desire to take the deposition of a representative from Potter Lawson to understand Potter Lawson's role in the submission of Edgewood's master plan. *Id.* Counsel admitted that the email marked in Susan VanderSanden's deposition, which had been produced by Potter Lawson, took him by surprise. *Id.* Further, while it was an Edgewood internal email, he informed counsel that the email was not available to him due to the age of the document.[1] *Id.*

In addition to taking the deposition of Potter Lawson, plaintiff's counsel indicated that he wanted to take the deposition of Alan Harper due to an email produced as part of the Strange production on August 17. Zylstra Dec., ¶40. Plaintiff's counsel also indicated that he was having difficulty locating any internal emails between City staff and officials between October 1, 2018 and November 1, 2018. Zylstra Dec., ¶41. Plaintiff's counsel indicated that while he was hoping the City Defendants would stipulate to adjournment, he would likely move for adjournment even

---

[1] Defense counsel believes that plaintiff's counsel had not previously seen the email. While counsel has suggested that the age of the email may be the reason, Edgewood has produced other documents in that time period. Counsel believes that the omission may also be the result of imperfect searching methods that hampered both sides in discovery.

if the City Defendants objected. *Id.* He also indicated an intent to supplement his response to the City's summary judgment motion. *Id.*

Late that afternoon, defense counsel received the letter that is attached as Exhibit E to the Declaration of Jonathan Ingrisano. Zylstra Dec., ¶42. The City Defendants responded to that letter, which response letter appears as Exhibit F to Ingrisano declaration. Zylstra Dec., ¶43. The City explained that it was opposed to adjourning the trial date. Allowing months of more discovery and delaying trial would increase the damages that plaintiff contends that the City owes. Zylstra Dec., ¶43. Plaintiff seeks damages for renting fields for night games of its athletic field as well as attorney's fees and costs. Further, plaintiff seeks the difference in cost to erect the lights that have occurred from the time that they requested the lights to now. As a result, more discovery and delay would increase the damages Edgewood seeks to recover against the City. Thus, adjournment would be incredibly prejudicial to the City.

While opposing adjournment, the City did make efforts to address plaintiff's concerns. The City offered to search for records involving Alan Harper and produce those. Zylstra Dec., ¶44. The City also offered plaintiff the opportunity to depose Mr. Harper on August 31. *Id.* Plaintiff has taken the City up on its offer. *Id.* at ¶45. The Harper documents were produced on August 30 and Mr. Harper was deposed on August 31. *Id.* Plaintiff also noticed up the deposition of Potter Lawson for September 2. Zylstra Dec., ¶46. Thus, plaintiff's chief reasons for seeking an extension of discovery have been ameliorated.

Additional facts will be detailed as necessary in the argument below.

## ARGUMENT

## I.   PLAINTIFF'S ELEVENTH-HOUR MOTION TO COMPEL AND EXTEND DISCOVERY SHOULD BE DENIED.

Plaintiff notes in his brief that the City has produced over 40,000 pages of documents in response to its discovery requests. In actuality, the City had produced 52,686 pages of documents by April 26, 2022. Zylstra Dec., ¶17. The only documents that were not produced by April 26, 2022 were the handful of documents that were produced on August 17, which were not due and owing prior to their production (more on that later). *Id.* Plaintiff's motion complaining about the City Defendants' production, which comes approximately one week before the close of discovery and two weeks before the parties' Rule 26(a)(3) pretrial submissions are due, is simply too little too late. As this Court instructed the parties in the preliminary pretrial conference order, "this court also expects the parties to file discovery motions promptly if self-help fails. Parties who fail to do so may not seek to change the schedule on the ground that discovery proceeded too slowly to meet the deadline set in this order."  Order, dkt. #18 at 4; *see also Lands' End, Inc. v. Genesys Software Systems, Inc.*, No. 13-CV-38-BBC, 2014 WL 1413433, at *4 (W.D. Wis. April 11, 2014) ("Genesys has no basis to complain about how much time has passed without resolution of this dispute because Genesys chose not to file a motion to compel earlier in the process").

"Adherence to progression order deadlines is critical to achieving the primary goal of the judiciary: to serve the just, speedy, and inexpensive determination of every action." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quotation mark omitted). "[C]ase management depends on enforceable deadlines, and discovery must have an end point." *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (quotation mark omitted). "In managing their

caseloads, district courts are entitled to—indeed they must—enforce deadlines." *Id.* (quotation mark omitted).

"Under Rule 16(b)(4), a court may modify a scheduling order for 'good cause,' where 'the primary consideration for district courts is the diligence of the party seeking amendment.'" *Gravitt v. Mentor Worldwide LLC*, No. 17 C 5428, 2022 WL 3584620, at *2 (N.D. Ill. Aug. 22, 2022) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)). One of the factors courts consider in assessing the diligence of a party is whether a party was able to bring a motion for relief earlier than it did. *See id.* Here, plaintiff has waited until the last minute to bring its complaints regarding discovery to the Court, as justification for its request to delay trial and apparently even request a second bite at summary judgment. *See* Pls. Br., dkt. #64, at 1 ("These new documents will ultimately warrant revisiting the record on the Defendants' pending motion for summary judgment.").

Plaintiff's belief that somewhere in the recesses of the City of Madison's sprawling data storage system lies a smoking gun that was not revealed by the 52,000 pages of documents produced by the City does not justify plaintiff's request to delay trial for the purposes of more discovery. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (Rule 16 aims "to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'"); *see also Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011) (declining to reverse a trial court's exercise of discretion not to extend discovery deadlines because "[w]here a party has had an 'adequate opportunity to investigate,'" actual and substantial prejudice requires a party to show "something more than the absence of the smoking gun the party was looking for.").

Here, plaintiff complains that it has failed to find internal emails between certain City employees between August 1, 2018 and November 1, 2019. Pl. Br., dkt. #64, at 2. Setting aside

that plaintiff is incorrect that no internal emails during that time period were produced,[2] plaintiff

has had defendants' production since April 26, 2022. Plaintiff has also had the opportunity to

search those documents, and to use those documents in the depositions of four City employees.

There is no reason that plaintiff's counsel could not have discovered his concern upon receipt of

the documents. Raising the issue at this late date is prejudicial to the City Defendants, who have

an interest in maintaining the close of discovery so that pretrial submissions may be prepared and

submitted and so that the parties may keep their trial date. Postponing the trial will not only delay

resolution of this case, but would cause plaintiff's alleged damages to continue to accrue

(including the attorneys' fees plaintiff has claimed). Plaintiff's untimely motion does not justify

such prejudice to defendants.

## II.     THE CITY DEFENDANTS SEARCHED FOR RECORDS USING SEARCHES THAT PLAINTIFF SPECIFIED AND PRODUCED RESPONSIVE RECORDS.

### A.  *Plaintiff's Error With Respect To Its Search Does Not Justify This Motion To Compel, Extend Discovery Or Adjourn The Trial Date.*

Plaintiff complains that a City of Madison internal departmental correspondence between

George Hank and Matt Tucker was not previously produced and asserts that it is unknown why

any claim of privilege delayed production of this memo. Pl. Br., dkt. #64, at 8. The City

Defendants did not claim privilege on this memo. This memo was not produced because it did not

fall within the search parameters that Edgewood provided to the City to run.

With respect to this memo, it was dated March 11, 2019. Searches 2, 3 and 9 were search

terms that were limited by year to either 2014 to 2016 or 2012 to 2014. Because of the date

restrictions of those searches, this memo would not have been retrieved for purposes of

---

[2] *See*, infra, II.D. for citations in the City's production to internal emails during this time period.

production. Search 10 did cover the date of this memorandum, but required as a search term the names of one of the other high schools, the University, or the names of certain types of schools. As this memo does not contain any of those terms, it would not have been retrieved with search 10.

With respect to Search 1, it appears that Edgewood made an error in requesting the search, and as a result, this document does not fall within the search as Edgewood drafted it. Edgewood requested that the search be as follows:

> Field OR athletic OR Goodman OR stadium OR game OR match OR practice* OR event* OR contest AND (Edgewood OR EHS)

*See* Zylstra Dec., Ex. E (Edgewood letter specifying the precise searches to the City to run). The City ran the search as Edgewood provided it. However, the search was missing key parentheses. Likely, Edgewood wanted the search to be:

> (Field OR athletic OR Goodman OR stadium OR game OR match OR practice* OR event* OR contest) AND (Edgewood OR EHS)

The lack of parentheses affected which documents were returned on the search. And while the City realized that there were missing parentheses on Search 10, informed Edgewood of the error, and corrected it before running the search, the City Defendants did not realize that Edgewood had committed an error on Search 1. Zylstra Dec., ¶14, Ex. H. Further, despite the City drawing to Edgewood's attention the error on Search 10, Edgewood never corrected or changed Search 1. Zylstra Dec., ¶14. The City Defendants ran the search exactly as Edgewood had provided it.

The City Defendants have now tried to run this search with the added parentheses. The search that Edgewood tried to propose returns over 23,000 documents. Zylstra Dec., ¶14. Such a search is overly broad and unduly burdensome. The search produces thousands of records that are completely unrelated to the litigation. Indeed, a cursory review of the terms demonstrates its

overbreadth. The search pulls every instance in which an individual at Edgewood has ever emailed the City regarding any "event" (as the term "Edgewood" appears in Edgewood's email domains of @edgewood.edu and @edgewood.k12.wi.us). It also hits on every newspaper subscription and newsletter where someone from Edgewood is featured and there is any discussion of a practice series, event or contest. Further the acronym EHS refers to many other organizations besides Edgewood, including Early Head Start and Environmental Health and Safety to name just a few. The overbreadth of this search is also compounded by the fact that the plaintiff sought 10 years of records.

### B. The Brodsky-to-Evers Email Falls Outside the Parties' Agreed Search Criteria.

Plaintiff complains that the John Strange documents contain portions that were not privileged and that those documents should have been produced earlier. Specifically, plaintiff points on page 8 that a Brodsky-to-Evers email would have "hit" on the search terms ("Edgewood" and "Master Plan"), and then asserts that such document should have been produced. Pl. Br., dkt. #64 at 8. Plaintiff is correct that such a search would have hit on this document. The problem is, the City Defendants never agreed to review and produce the results of that search. The Ingrisano Declaration Exhibit A identifies 10 searches and the resulting hits. As the chart shows, search the terms "Edgewood" and "Master Plan" returned over 10,000 records.[3] That was Search 4 on the chart of the 10 searches that plaintiff suggested. Defendants objected that Search 4 was overly broad and unduly burdensome.[4] Defense counsel agreed to run Searches 1 through 3 and 9 and 10, not 4 through 8. Plaintiff was aware of the searches that were agreed to

---

[3] Search 6, which included Edgewood and Master Plan, but also additional OR options, produced over 31,000 records.

[4] The term, "master plan," is not unique to Campus Institutional District Zoning. For example, the City of Madison has a Comprehensive Master Plan, as do many cities and towns.

be run and accepted the defendants' position. And indeed, for the five searches that the City did agree to run, it produced over 52,000 pages of documents. Plaintiff cannot complain now when discovery is closing in less than a week and pretrial submissions are due that it disagrees with the selected searches of discovery documents; especially considering that Edgewood has been aware of what searches the City performed since March.

C.   *Both sides were well aware and accepted that there were gaps and deficiencies in both parties' production.*

The fact that Edgewood's Search 1 was not perfect does not change the fact that both parties searched for and provided substantial records to each other and both parties have a substantial amount of records related to the matters at hand. However, both parties were aware that there were some gaps in each of their productions. At the depositions of City officials, plaintiff's counsel identified and marked several documents that had not been produced by either party in discovery, despite the fact that the documents were in both parties' possession. Defense counsel did the same. Zylstra Dec., ¶20. Neither party objected to that.[5]  Both parties accepted that the production of documents in this case was very challenging and that, through no fault of either counsel, there were gaps in the discovery.

The fact that discovery was imperfect on both sides of the aisle is not rare. To the contrary, "[i]t is the rare case that a litigant does not allege some deficiency in the production of electronically stored information, particularly e-mail." *Covad Communications Co. v. Revonet, Inc.,* 258 F.R.D. 5, 13 (D.D.C. 2009). Having been on notice since at least the depositions in

---

[5] Plaintiff did object to one document at the deposition of Susan VanderSanden taken on August 17 but did not object prior to that date. The document to which plaintiff objected contains a number of Edgewood High School representatives on it and thus, is a document that is arguably within Edgewood's documents but was not part of Edgewood's production. Zylstra Dec., ¶20.

April that there were gaps in both parties' discovery, causing both counsel to mark and use documents that had not been produced, plaintiff's eleventh-hour motion is untimely. To wait until the end of discovery and to seek an adjournment of the trial date is unfair and prejudicial to the City Defendants.

### D. Plaintiff is incorrect regarding the lack of internal emails.

Plaintiff maintains that he could find no internal emails between City officials relating to Edgewood between October 1, 2018 and November 1, 2019. Pl. Br., dkt. #64 at 4-5. While defendants do not seek to provide an exhaustive list, plaintiff's statement is in error. Zylstra Dec., ¶47. There are emails between Alder Tag Evers and Zoning Administrator Matthew Tucker regarding Edgewood on May 3, 2019 (CITY-DEF-43155) and May 5, 2019 (CITY-DEF-43158) and again on July 30, 2019 (CITY-DEF -44373). There is an internal email involving Timothy Parks and Heather Stoddard on August 23, 2019 (CITY-DEF-44143). There are internal emails between Matthew Tucker and Jason Freeman on July 9, 2019 (CITY-DEF-43632, 44469, 44470). There are internal City emails involving Heather Stoddard at CITY-DEF-44473 and 44476. There are a number of City internal emails between Matthew Tucker and Carey Perzan at CITY-DEF-43147-43157. Zylstra Dec., ¶47. These are just some examples of internal emails involving City officials.

In addition, a number of the City Defendants testified that many of their conversations involving Edgewood were verbal and not in writing. Timothy Parks testified that his office is 100 feet from Matthew Tucker's and thus, nearly all of their communications occurred orally. Parks Dep., 74:19-23. Further, the City has produced outlook calendar meeting invitations, demonstrating that there were verbal discussions among the relevant city personnel during this time period.  Zylstra Dec., ¶48.

In addition, the low volume of non-privileged emails related to Edgewood during this time period is not surprising. On October 26, 2018, Zoning Administrator Matthew Tucker sent an email to Edgewood indicating that their activities on their athletic field were not consistent with Edgewood's master plan. Dkt. #40-11, Ex. J.  On November 14, 2018, Edgewood responded to Mr. Tucker by a letter from its counsel, Katherine Rist from Foley & Lardner. Dkt. #40-13, Ex. L. Attorney Rist challenged Mr. Tucker's conclusions as it related to Edgewood's master plan. *Id.* In other words, Edgewood lawyered-up. At that point, City personnel began communicating internally with Assistant City Attorneys regarding Edgewood as the dispute began in full force. Indeed, Edgewood's first lawsuit against the City with respect to these issues was filed on August 22, 2019.[6] It is not surprising that any internal emails during that time would involve the City's attorneys and would be privileged when the time period that plaintiff complains of includes the time period in which the parties were actively in a suit against each other.

### III.  THE PRODUCTION OF THE JOHN STRANGE DOCUMENTS DO NOT JUSTIFY PLAINTIFF'S MOTION.

Plaintiff argues that the recent production of the John Strange documents demonstrates "good cause" for its motion because plaintiff wants to explore whether the City's actions in denying Edgewood's lighting applications were pretext and done in bad faith. Pl. Br., dkt. #64, at 7. First, to the extent that plaintiff is suggesting that its theme of pretext and bad faith is something new, that is inaccurate. Plaintiff has explored its claim of alleged pretext and bad faith by City officials in every deposition it has taken. Indeed, Edgewood contends the same in its

---

[6] That lawsuit was dismissed under a tolling agreement and thus, this is the second lawsuit between the parties.

complaint and it has been part of its case in chief from the beginning. *See, e.g.*, Compl., dkt. #1, at ¶¶145-147, 286. There is nothing new in plaintiff's allegations (albeit unfounded).

Second, the John Strange emails were produced *early*. Plaintiff served a discovery request requesting these records on August 3 and a response to that request is not due until September 2. Zylstra Dec., ¶34, Ex. S. There has been no delay on the part of the City Defendants to respond. Even if one treated plaintiff's verbal request before counsel went on vacation as a formal discovery request—which it was not—the documents would have been due on August 16 and were produced on August 17. Plaintiff can hardly be heard to complain about receiving the documents when it did when it did not make the request until mid-July. Indeed, the depositions of the witnesses occurred in April. No request was made at that time.

Third, plaintiff's contentions that the John Strange emails demonstrate pretext and bad faith are simply wrong. These documents are completely consistent with the testimony that Alder Evers and John Strange gave and which plaintiff has already had in its possession since it took those depositions. But to the extent that plaintiff erroneously believes these documents are its smoking gun, it has the documents now and can use them at trial. There is no basis for extending discovery.

For example, nothing in the "never-before-seen" interdepartmental memo is inconsistent with the testimony of George Hank or other City staff; nor is the memo inconsistent with the email between George Hank and Strange regarding Ethan Brodsky. The memo, written by Matthew Tucker to George Hank and dated March 11, 1019 provides:

> The Edgewood campus has an approved Master Plan.  Per MGO Sec. 28.097(4), Dimensional Requests in the Campus Institutional District states that "In CI districts, with an approved Master Plan, dimensional requirements will be determined by the Master Plan." Also, Sec. 28.097(5)(c)2.(a) and (d) Contents of Master Plan, Facilities Plan, Proposed Conditions requires the Master Plan include

> "Future needs/capital improvements" and "Building Form (building type, height, bulk, etc.)."
>
> I am aware that Edgewood High School has requested an electrical permit to install 80' tall poles, for the purpose of lighting of the athletic field, which is an improvement to its use and facility.  The Zoning Office typically would not review a request for lighting, however, since this property has an approved Master Plan, an improvement of this nature must be found consistent with the approved master plan document.
>
> I have reviewed the approved Master Plan, I find no information in the document that would allow for the installation of light poles, for the purpose of improving the facility.  If the electrical permit is issued and the light poles are erected, this construction would constitute a violation of the approved Master Plan.
>
> To resolve this problem, Edgewood may apply for an alteration to its Master Plan to accommodate improvements to the facility.  Edgewood has applied for such an alteration, with their December 2018 application for construction of stadium infrastructure and field lighting.  If this Master Plan alteration is approved, or a similar approval is granted to allow for the lighting of the field, the lighting permits and subsequent construction would not constitute a zoning violation.

Ingrisano Dec., dkt. #65-12, Ex. L. This is thoroughly consistent with George Hank's deposition testimony, where he stated that the reason the permit was not issued "was because the purpose to install the lighting was for athletic competitions at night, and I believe it was the interpretation that that was not permitted under either their master plan at the time or they did not get the proper approvals from the Plan Commission later." Hank Dep., dkt. #30, 38:7-12. This was also testified to in detail by Matthew Tucker. *See, e.g.*, Tucker Dep., dkt. #32, 45:24-48:3, 51:2-12, 125:8-22. Similarly, in the draft email to Ethan Brodsky that Hank sent to John Strange the next day, Hank wrote:

> The lighting plan approval is correct and stands. The lighting ordinance does not address pole height. The electrical permit to install the lights is currently locked because their installation would result in a zoning violation. We would not want to issue it and then tell them to take them down.

Ingrisano Dec., dkt. #65-11, Ex. K, at 2. Nothing in this email is inconsistent with Hank's

testimony or the interdepartmental memo. In each of these examples, City staff express the same

view that the City takes in the litigation today—that allowing Edgewood to build its lights in

February or March of 2019 without amending its master plan would be a zoning violation.

As for plaintiff's assertion that Hank's consideration (or lack thereof) of Ethan Brodsky's

argument that light poles may be no taller than 68 feet is some new, unexplored evidence of

pretext, Edgewood has been on notice since at least ***March of 2019*** that the City considered

whether 80-foot poles exceeded a 68-foot maximum height limitation. Edgewood has contended

that the height issue was somehow pretext ever since that time, and has had plenty of opportunity

to explore that question in discovery. On March 12, 2019, Edgewood's attorney Nathan Wautier

wrote to John Strange:

> It has come to my attention that the City of Madison is considering the revocation
> of its prior approval of the compliant application based upon a *new* zoning
> interpretation for the Edgewood Campus that light poles of <u>any</u> height are not
> allowed! ***This decision appears to be a pre-text to assuage concerns of a small
> minority of plaintiff neighbors*** attempting to interfere with Edgewood's historical
> use of its athletic fields. The interpretation is arbitrary and capricious.
>
> While Edgewood's outdoor lighting application is compliant with the applicable
> City ordinance regarding Outdoor Lighting, the City is now pointing to the fact
> that the Edgewood Campus was re-zoned by the City to the Campus-Institutional
> District in January, 2013. The Campus Institutional District provides bulk
> requirements within the district and notes a general height maximum of 3 stories
> or 68 feet unless a voluntary 10-year master plan is in place. The City is
> incorrectly arguing that my client's voluntarily adopted 2014 Master Plan is silent
> on the height of future light poles with such silence resulting not in a default
> height of the 68 foot maximum of the zoning district but a default height of zero
> (0) feet! In coming to this conclusion, the City is ignoring (i) the fact that the
> Outdoor Lighting ordinance does not have a maximum height, and (ii) the
> practical intention of the zoning code height requirements are to limit the height
> of imposing structures rather than light poles.

Dkt. #40-19, Ex. R. (bolded emphasis added). What is more, Edgewood submitted a new lighting application in September of 2019. The new application lowered the proposed height of the lights from 80 feet to 68 feet. In a letter accompanying that application, Attorney Wautier wrote:

> "***The revisions lower the height of the four light poles from 80 feet to 68 feet***, reduce the foot candle illumination intensity, and remove 'punt' lighting. . . . if the City intends to continue to withhold an electrical permit under the Existing Approved Application, please use the attached Alternative Application to issue an electrical permit allowing Edgewood to install outdoor lighting in full compliance with City of Madison Ordinance Section 10.085 'Outdoor Lighting.'"

Dkt. #40-29, Ex. BB (emphasis added). Counsel for Edgewood quoted the emphasized portion of Attorney Wautier's September letter *verbatim* at George Hank's deposition, but he never asked Hank or any other City employee about the 68-foot height limitation issue, instead, he focused his questions to Hank and Tucker about the city standards applicable to the lights on the 'punt' lighting question. *See* Hank Dep., dkt. #30, 71:11-14. Having literally read out loud words written by another Edgewood attorney addressing the 68-foot issue, plaintiff's counsel cannot argue that the issue took him by surprise.

As to the Alan Harper email that plaintiff presents front and center, plaintiff presents an unfair excerpt of that email. Alan Harper begins the email stating that "I am not really in the loop on this one…."  Ingrisano Dec., dkt. #65-7, Ex. G, at CITY-DEF-052785. And such is undisputedly true because of the over 52,000 pages of records that the City has produced, Alan Harper does not appear on anything else involving Edgewood High School at all other than this one email exchange. Zylstra Dec., ¶45. And George Hank, who was involved with Edgewood, immediately responded to the Harper email the same day indicating that

> "Alan is definitely out of the loop. It had nothing to do with public outcry. We have a concern that the 80-foot poles may be a violation of their master plan and/or the zoning code. We did not want to issue the permit to find that out and then order them down or changed."

Ingrisano Dec., dkt. #65-7, Ex. G, at CITY-DEF-052785. Moreover, this email was sent to Edgewood's lighting representative, Jennifer Luhman at Forward Electric. As the City Defendants have not served a subpoena on Forward Electric, it is unclear whether Edgewood received this email from Forward Electric at the time of its writing in March of 2019 but due to the limitations of searching for records simply has not located it.

Plaintiff also complains that one of the documents produced as part of the Strange production contains a redaction. The redaction references legal advice that City Attorney Michael May gave to the City's mayor. Defense counsel had previously indicated, during George Hank's deposition, that she would maintain the claim of privilege on conversations involving City Attorney May and the mayor. Hank Dep., dkt. #30, 159:2-6. At no point has defense counsel ever stipulated to waive privilege with respect to attorney communications with the mayor. In any event, the redacted legal advice being given to the mayor did not relate to (1) the amendment to the Campus Institutional District Zoning Ordinance being discussed in July by Alder Evers; or (2) any change to the Campus Institutional District Zoning Ordinance that Alder Tag Evers was contemplating relating to the drafting of the CI-District Ordinance amendment.

Defendants produced some privileged John Strange communications to Edgewood, at Edgewood's urging, but with the stipulation that such would not be a further waiver of the privilege. The City maintains its claim of privilege relating to any conversations between the City Attorney and the mayor. The City is moving to provide an unredacted version of the email to the Court, under seal, for *in camera* review.

E. *Much of the discovery plaintiff seeks will be produced in response to outstanding discovery requests due September Second.*

Plaintiff's motion should be denied because plaintiff's motion seeks additional discovery on topics that are duplicative of outstanding discovery requests due September 2. In his August 24 letter to defense counsel, plaintiff's counsel wrote:

> ... there is a notable absence of emails to and from the key City representatives during the critical time periods in this case, including a general absence of any internal emails discussing the City's prohibition on games being played on the Plaintiff's athletic field, the Plaintiff's February 22, 2019 outdoor lighting application, the City's response, or internal discussions of the Evers amendment to the zoning ordinance and its timing with Edgewood High School's repeal efforts.... The Plaintiff has a right to this evidence. The City's missing email communications are highly material —raising grave questions about the City's position. We will be moving to compel, and to adjourn the trial and extend discovery to allow the full and transparent exploration of the City's actions and motivations.

As outlined in the above excerpt, Plaintiff's counsel indicated that the purpose of the motion to compel and extend discovery is so that plaintiff may obtain additional discovery on three topics, 1) internal emails discussing the City's prohibition on games being played on the plaintiff's athletic field, 2) internal emails relating to the Plaintiff's February 22, 2019 outdoor lighting application, or the City's response; and 3) internal discussions of the "Evers amendment" to the zoning ordinance and its timing with Edgewood High School's repeal efforts.[7] However plaintiff, on August 3, served new discovery requests, including requests for documents, relating to these topics, especially the latter two topics:

> REQUEST NO. 61: All documents and communications authored by or sent or received by John Strange relating to (a) Edgewood's February 22, 2019 outdoor light application and/or (b) the drafting of the ordinance reflected in Deposition

---

[7] Plaintiff's reference to "Evers amendment" is argumentative and is more properly noted as the amendment to the Campus Institutional District Zoning Ordinance. That amendment was introduced at the Common Council meeting on August 6, 2019 and was sponsored by 13 of the 20 Common Council Alders.

Exhibit 20, including drafting and revisions to its title, and first, second and third substitutes.

REQUESET NO. 62: All documents and communications authored by or sent or received by Tag Evers relating to (a) Edgewood's February 22, 2019 outdoor light application and/or (b) the drafting of the ordinance reflected in Deposition Exhibit 20, including drafting and revisions to its title, and first, second and third substitutes.

REQUEST NO. 63: All documents and communications authored by or sent or received by Matt Tucker relating to (a) Edgewood's February 22, 2019 outdoor light application and/or (b) the drafting of the ordinance reflected in Deposition Exhibit 20, including drafting and revisions to its title, and first, second and third substitutes.

Responses to these requests are due September 2. While plaintiff has had many months to raise any issues it had relating to what it sees as the lack of internal communications relating to these topics produced in response to plaintiff's first set of discovery, plaintiff took a second bite at the apple for these topics by specifically requesting internal communications on these topics during the relevant time period.

The search terms plaintiff and defendants agreed to run back in March were meant to pull documents relating to 20 different requests for documents (specifically plaintiff's document request nos. 5, 10, 12, 16, 18, 19, 20, 21, 22, 24, 26, 29, 30, 31, 38, 39, 41, 42, 43, and 58), many of which requests were extremely broad. The search terms the parties agreed upon were necessarily imperfect as a result. However, after receiving plaintiff's new, more targeted discovery requests on August 3, the City has crafted new, more targeted search terms and will be producing additional responsive documents on these topics by September 2.

## IV.   THE STEPS BEING TAKEN AMELIORATE ANY CONCERNS.

In requesting that the City Defendants stipulate to adjourning the trial date and extend discovery, plaintiff's counsel indicated a desire to depose Alan Harper and take the deposition of

a representative of Potter Lawson. The City Defendants took steps to accommodate those requests. The City Defendants offered to search for records related to Alan Harper and offered to produce him for deposition on August 31. Both the deposition and the production have occurred. Plaintiff also noticed up the deposition of Potter Lawson for September 2, which presumably will occur. Thus, the main areas that plaintiff wanted to extend discovery for have been accomplished.

## CONCLUSION

For the above reasons, the City Defendants respectfully request that the Court deny plaintiff's motion to compel, adjourn the trial date and extend discovery. The parties agreed upon a list of searches, the City Defendants ran those exact searches, and the City Defendants produced all responsive documents to Edgewood. The City Defendants' process was straightforward and transparent: if the search hit on a document that was responsive, the City Defendants produced it to Edgewood. Despite Edgewood's eleventh-hour concerns about discovery, the City Defendants did not simply say no, but took reasonable steps to try to address those concerns. At some point, discovery must end. The City Defendants would be significantly prejudiced by allowing plaintiff more discovery, especially with the parties' pretrial submissions due in one week. Further allowing months of more discovery and adjourning the trial has a direct impact of increasing the damages that plaintiff seeks in this lawsuit.

Dated September 1, 2022.

BOARDMAN & CLARK LLP

/s/ Sarah A. Zylstra
Sarah A. Zylstra, State Bar No. 1033159
Tanner G. Jean-Louis, State Bar No. 1122401
P. O. Box 927
1 South Pinckney Street, Suite 410
Madison, WI 53701-0927
Telephone: (608) 257-9521

Facsimile: (608) 283-1709
szylstra@boardmanclark.com
tjeanlouis@boardmanclark.com
*Attorneys for Defendants*