

SARAH A. ZYLSTRA
ATTORNEY
SZYLSTRA@BOARDMANCLARK.COM
DIRECT (608) 283-1741
FAX (608) 283-1709

March 4, 2022

Via E-Mail Only
pcovaleski@gklaw.com

Paul Covaleski
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Re: Edgewood v. City of Madison, et al.
Case No. 21-CV-118

Dear Paul:

I write in response to your letter that you sent on February 8, 2022. There are some inaccuracies in your letter, which I will address below.

**Interrogatories**

I agree the parties are at an impasse with respect to Interrogatory 2.

As to Interrogatory 3, while I still believe that the attorney-client and work product doctrine privileges apply, I offer as a compromise that if Edgewood agrees my answering the interrogatories and providing the name of any responsive attorney, if any, will not constitute a waiver of the privilege and Edgewood will not inquire further as to the attorney's involvement, if any, the City is willing to provide the information. If, however you intend to take the position that it is a waiver of the privilege, the City will stand on its objection.

As to Interrogatory 4, we agree with your description and will produce any outdoor lighting permits for Madison area schools zoned Campus Institutional from 2013 to present to the extent the records exist. I note that 2013 is beyond the City's normal record retention.

As to Interrogatory 5, I offered as a compromise to ask Mr. Tucker to respond based on his best recollection as the City did not have a way to search for the information to be able to answer the interrogatory, not to mention the other bases we asserted for objection. I asked if this would resolve our dispute as to Interrogatory #5. Your position seems to be that I provide Tucker's best recollection (despite what I believe to be are valid objections) and you are still reserving and may bring a motion to compel. It seems unfair for you to request my adherence to the compromise and for you to reserve. Let me know if my providing a

Exhibit H
Declaration of Sarah Zylstra

MARCH 4, 2022
PAGE 2

response based on Mr. Tucker's memory is sufficient to resolve our dispute as to Interrogatory 5. If you intend to bring a motion to compel on Interrogatory 5 regardless, then I may simply stand on my objections.

As to Interrogatory 6, other than privileged communications, I am not aware of any additional information responsive to the request. I note that the 2019 lighting application was part of the first lawsuit Edgewood brought against the City. I also note that due to the disputes about the email search, that has not been completed and it is possible that the City would amend its responses if further information is uncovered. The City is not aware of anyone else at this time.

As to Interrogatory 7, I agree.

As to Interrogatory 8, I do not agree. I agreed to ask the City if there was a listing of city owned parks and recreational areas with outdoor lighting and if so, to produce that. The City has no way of determining whether any outdoor lighting is sufficient for nighttime recreational activities. The City has identified the following parks and/or recreational areas with outdoor lighting: Bowman, Breese, Burr Jones, Demetral, Elver, Garner, Goodman, McPike, Olbrich, Rennebohm, Tenney, Vilas, Warner, and Westmoreland.

As to interrogatory 9, while I agree the parties are at an impasse, I disagree with your recitation that my objection was solely as to relevance. I am also relying upon Rule 33(d) as the City produced the master plan.

**Requests for Production of Documents**

As a preliminary matter, nearly every request for production ("RFP") that you discuss contains the following sentence, "Defendants will search for responsive hard-copy files in the possession, custody and control of the Defendants and agreed-upon custodians." There was no specific discussion of hard copy documents during our meet and confer, with a minor exception I note below. In addition, your sentence suggests that I agreed to search for hard copy files of the "Defendants," which would include all hardcopy files of the City of Madison. I did not and would not agree to that. The City has thousands of employees. I certainly have requested any hard copy documents from the individuals involved but your statements are broader and are not accurate. We did state that while we believed Requests 20 and 21 lacked the necessary relevance to Edgewood's claims to conduct an electronic search, we would produce any hard copy files in the possession of the custodians we identified, along with the Legistar materials. I do not repeat this objection for all the RFPS that I address below but intend this as part of my response for any that contain that or a similar sentence.

MARCH 4, 2022
PAGE 3

    In addition, for all request for production that mention running search terms "across the agreed-upon custodians," such agreement was for the custodian list the City provided to you, which list includes 27 different custodians.  In a separate letter dated February 8, you request the City run the searches across all employees assigned to any department for which the City identified a custodian. The City will not agree to that. The City has made a good faith effort to identify those custodians who were involved in the subject matter at hand and who it believes could potentially have responsive records. There is no basis to enlarge the custodians just because someone works in the same department as another employee.  As your client had regular interactions with the City, if there is a specific employee whom they believe should be added, the City would of course consider that, but simply naming entire departments is overly broad and unduly burdensome.

    **RFP 4**:  I disagree. We said that we would confirm that we were not withholding specific documents, but did not agree to search for documents related to your 168 request for admission, some of which stretch back over one hundred years. If you insist on such a search, I will stand on my objections.

    **RFP 5**:  We will run a search based on the search terms you provided, and the parties can revisit this RFP after that search is done.

    **RFP 8**:  As I believe I explained during our call, the City does not have a good way to search for the information you seek.  The City is willing to stipulate that athletic contest is not defined in the zoning code or the municipal code.  I agree we are at an impasse.

    **RFP 9**:  I do not believe your recitation of RFP 9 accurately portrays the status.  I believe I indicated to you that the City received a complaint about Edgewood, which is what lead to the City's investigation.  I also noted that in response to your request for admissions.  In the RFP response, I noted that a separate request sought complaints about Edgewood and we were providing those for the relevant period of time.  Therefore, I do not believe we are at an impasse.

    **RFP 10**:  I do not believe your recitation of RFP 10 accurately portrays the status.  First, you have suggested searches for records that would arguably produce documents related to this request.  It does not appear to me that we are at an impasse until we come to the end of the line as to those searches/records.  Second, as a further compromise, the City is willing to provide as an alternative, that it generally does not actively audit/monitor whether an entity is complying with its master plan, but gets involved if there is a complaint or a violation of a master plan otherwise comes to the City's attention.  To the best of the City's knowledge, the City has not received any complaints about UW violating its master plan.

    **RFP 11**:  I disagree with your statement.  We indicated that we were producing documents.

Exhibit H
Declaration of Sarah Zylstra

MARCH 4, 2022
PAGE 4

**RFP 12**: We do not have a good way to search for athletic contests. As to master plans, see my response to RFP 10 above.

**RFP 13**: I agree we are at an impasse. To be clear, we have offered and will produce the documents in Legistar related to approval of Edgewood's master plan. Further searching of records from 2014 and earlier is overly broad, unduly burdensome and not proportional to the needs of the case.

**RFP 16**: I do not believe we are at an impasse yet. You have suggested searches for records that would arguably produce documents related to this request. It does not appear to me that we are at an impasse until we come to the end of the line as to those searches/records.

**RFP 17**: I agree with your statement, with the clarification that this is with the exception of outside counsel.

**RFP 18**: I agree that we discussed you providing proposed search terms, us running a search, and the parties revisiting this RFP after that search was done. However, you agreed to check on whether Edgewood applied to the City for any permits to construct a scoreboard. As further follow-up, the City will produce what permits it can find, if any, related to the scoreboard.

**RFP 19**: I agree that we discussed you providing proposed search terms, us running a search, and the parties revisiting this RFP after that search was done.

**RFP 20, 21, 22, 24, and 26**: We will run a search based on the search terms you suggested, and the parties can revisit these RFPs after that search is done.

**RFP 28**: As to this request, we will search for those individuals for the time period requested but will need to limit the search to the custodians identified. It is not feasible to search all City employees.

**RFP 29**: We will run a search based on the search terms you suggested, and the parties can revisit this RFP after that search is done.

**RFP 30 and 31**: We will run a search based on the search terms you suggested, and the parties can revisit these RFPs after that search is done.

**RFP 32**: We are producing responsive records for the relevant time period.

**RFP 36**: I have conferred with the City further. Records sufficient to show the governmental interest are being produced as such is contained, for example, in the ordinance

MARCH 4, 2022
PAGE 5

itself.  Searching for "all documents and communications" is unduly burdensome and overly broad as Edgewood's master plan dates back to 2014.

    **RFP 38**:  We will run a search based on the search terms you suggested, and the parties can revisit this RFP after that search is done.

    **RFP 39**:  I do not believe your recitation is quite accurate.  We offered to produce Memorial's lighting application. We indicated that we thought "all documents" relating to the application was too broad but we were willing to run a narrow targeted search. We asked for a commitment from you that you would not simply turn around and move to compel and request all documents without regard to trying to narrow this search.  You indicated that you would discuss this internally.  Your response suggests that we offered you either hard copy documents or electronic.  I do not believe that to be the case.  Your letter suggests that you are rejecting the compromise offered.  I note that you have offered a specific search to try.  We will run a search based on the search terms you suggested, and the parties can revisit this RFP after that search is done.

    **RFP 40**:  Upon further discussion with the City, these records, which include the relevant ordinances and Edgewood's master plan, are being produced.

    **RFP 41, 42, and 43**: We will run a search based on the search terms you suggested, and the parties can revisit these RFPs after that search is done.

    **RFP 44**:  I have confirmed that UW did not apply for any permits from the City and they were not required to because it is state owned property.  UW did voluntarily submit a courtesy copy of its lighting plan, although such was not required.  We are producing that lighting plan.

    **RFP 45**:  I checked with the City.  It is not aware of the existence of any such informal flow charts, checklists, etc.

    **RFP 51**:  The City will produce the leases that it has located.

    **RFP 54 & 55**:  Your letter as to these requests befuddles me.  This is not an issue of the City not knowing where the documents are *per se* but rather that the documents cannot be identified or isolated without significant burden and expense.  The City does not keep the records in the manner in which you seek them as I explained in detail in my January 11, 2022 letter.  Your response seems to suggest that I simply ask Mr. Tucker, for example, whether he is aware of any outdoor lighting permits that the City issued in 2018 and 2019, and only pull and produce ones that he recalls.  I doubt that is what you intend but if it is, please clarify that.

Exhibit H
Declaration of Sarah Zylstra

MARCH 4, 2022
PAGE 6

**RFP 56 & 57**: You correctly note that with regard to the Madison West expansion project, we note that there were plans submitted by West in or around October of 2021, but none of those plans showed any athletic field lighting. We offered as a compromise, that the City would produce documents relating to Madison West's expansion project that are in Legistar and collect and produce the folder that the City planner working on the Madison West expansion project has. You have rejected that offer, contending that "At least one of Defendants and/or their proposed custodians have been intimately involved with, and have knowledge of, West High School's expansion project…." To whom are you referring?

**RFP 58**: I agree that you have rejected our offer to compromise and have offered no compromise of your own. In terms of an impasse, however, one of your searches appears to seek this information. We will run a search based on the search terms you suggested, and the parties can revisit this RFP after that search is done.

**Searches**

In your other February 8 letter, you requested the City run 10 searches for the time periods specified in each request. We are in process of running those across the 27 custodians that the City previously identified to you. I had thought we would have those results to you today but the City has run into a few technical difficulties. I hope to have the results to you ASAP next week. It will be my priority as soon as I have the information. I note that search 10 appeared to contain missing parentheses. We assume you meant to include a parenthesis before Memorial and after grade school and are running the search as follows:

> (Zone OR Zoning) AND (ticket* OR violat* OR cite OR citation OR infraction OR fine) AND (Memorial OR "Madison West" OR "West High" OR LaFollette OR "La Follette" OR "Madison East" OR "East High" OR UW OR "UW-Madison" OR "University of Wisconsin" OR "middle school" OR "primary school" OR "junior high" OR "elementary school" OR "grade school") AND (athletic OR field* OR facility OR gym* OR complex OR game* OR match* OR event* OR contest)

Finally, there is a certain amount of "mudslinging" in your letter. I do not believe it productive to get into a lot of back and forth about that. Needless to say, my decision not to address that should not be taken as agreement to those statements.

We are producing some additional documents today. My paralegal, Kim Crowell will be sending those. Thank you.

MARCH 4, 2022
PAGE 7

          Very truly yours,

          BOARDMAN & CLARK LLP

          *Electronically Signed by Sarah A. Zylstra*

          Sarah A. Zylstra

SAZ/ja

\\msnfs2\share\DOCS\WD\25981\424\A4451799.DOCX