UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

        Plaintiff,

v.

CITY OF MADISON, WISCONSIN, *et al.*,

        Defendants.

Case No. 3:21-cv-00118-wmc

---

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S
SUPPLEMENTAL RESPONSES TO DEFENDANT'S PROPOSED FINDINGS OF FACT**

---

Plaintiff Edgewood High School of the Sacred Heart, Inc. ("EHS"), by and through its counsel, Godfrey & Kahn, S.C., submits the following supplemental responses to Defendant's proposed findings of fact in support of its motion to supplement the summary judgment record:

97. Hank decided that Edgewood's lighting permit should not be issued to Edgewood based on M.G.O. §10.085(1) and (5)(b). Tucker Dep., dkt. #32, 44:23-48:3.

**Supplemented Response**[1]: Disputed. The cited testimony is objected to as hearsay pursuant to Federal Rule of Evidence 801 and is not admissible as evidence on summary judgment. Tucker cannot attribute self-serving statements to another City representative for the truth of the matter asserted. In addition, according to Hank, Tucker and Hank discussed the light permit and "it was our belief that we should withhold it. . ." Hank Dep. at 55. Hank's rationale for withholding the permit was limited to the uses outlined in the Open Spaces section of EHS's Master Plan. Hank Dep. at 81, 84-86. He did not testify to relying on M.G.O. Section 10.085(1)

---

[1] EHS's supplemental responses to Defendant's Proposed Findings of Fact are set forth in **bold**.

and (5)(b).  **Instead, multiple inconsistent rationales for withholding the permit have been expressed.  George Hank told City employee Alan Harper and others that EHS's outdoor lighting permit was being withheld "[d]ue to the continued public outcry about the project…."  August 25, 2022 Declaration of Jonathan R. Ingrisano ("Ingrisano Decl.") ¶ 17, Ex. J, dkt. 65-10. Earlier, Hank had advised an EHS neighbor that the EHS permit was withheld because it included 80' light poles, and that a permit would issue if the application was amended to include 68' light poles.  Ingrisano Decl. ¶ 18, Ex. K, dkt. 65-11.  Then the City later opined that the EHS permit must be withheld because the Master Plan omitted discussion of outdoor lighting generally.  Ingrisano Decl. ¶ 19, Ex. L, dkt. 65-12.**

99.   Hank believed that the language of Edgewood's Master Plan was inconsistent with its lighting application. Tucker Dep., dkt. #32, 46:18-48:3.

**Supplemented Response**:   Disputed. The cited testimony is objected to as hearsay pursuant to Federal Rule of Evidence 801 and is not admissible as evidence on summary judgment. Tucker cannot attribute self-serving statements to another City representative for the truth of the matter asserted. According to Hank, Tucker and Hank discussed the light permit and "it was our belief that we should withhold it…" Hank Dep. at 55. Tucker was the source of Hank's interpretation of the Master Plan. Hank Dep. at 46. Hank's rationale for withholding the permit was limited to the uses outlined in the Open Spaces section of EHS's Master Plan. Hank Dep. at 81, 84-86. Even under the new interpretation that the Master Plan used to withhold lights, Hank and City recognize that there was at least one permitted use for the athletic field – team practices – for which the outdoor lights could have been permissibly used. Hank Dep. at 63-65. Nevertheless, Hank's concern was that if the City issued the permit but restricted EHS from

2

playing games on its field, that EHS would be upset at his department for granting the application and allowing less than full use of the field. Hank Dep. at 61. According to Hank, this was the only reason – the risk that EHS would have unmet expectations that it could hold night games – for withholding the permit. Hank Dep. at 61. Hank claims that the decision to withhold EHS's permit was in part motivated by a desire to protect EHS. Hank Dep. at 62. **Hank expressed multiple inconsistent rationales for withholding the permit. He told City employee Alan Harper and others that EHS's outdoor lighting permit was being withheld "[d]ue to the continued public outcry about the project…." Ingrisano Decl. ¶ 17, Ex. J, dkt. 65-10. Earlier, Hank had advised an EHS neighbor that the EHS permit was withheld because it included 80' light poles, and that a permit would issue if the application was amended to include 68' light poles. Ingrisano Decl. ¶ 18, Ex. K, dkt. 65-11.**

130.   Alder Evers wanted "to address a flaw that would allow a landowner to proceed with a significant change of use that would be in contrast with the explicit Statement of Purpose as articulated in the Campus-Institutional District." Evers Dep., dkt. #31, 91:3-9.

**Supplemental Response:**   Disputed.  **Evers's self-serving statements of his intent are contradicted by the factual record.**  Evers was motivated to prevent EHS from adding lights to its field by changing the Campus Institutional District zoning ordinance to require conditional use permits for lighting before EHS repealed its Master Plan.  The EHS field lights "debate pointed to these flaws."  Evers Dep. at 93.  Indeed, the EHS stadium and lights issue was the only actual or active controversy that pointed to these "flaws" and the need for a change.  Evers Dep. at 93-94.  Evers intended that his amendment would require EHS to go through a conditional use or Master Plan amendment process in order to get lights.  Evers Dep. at 97-99.

The original title of Evers' proposed ordinance specifically applied to the Evers' issues with EHS's athletic field, including a potential agricultural issue on the Edgewood campus that had come up during discussions at the ZBA hearing.  Evers Dep. at 121-122.  **At least one City representative, Assistant City Attorney John Strange, referenced both the Master Plan repeal and Evers's proposed ordinance amendment together as the "Edgewood ordinances," thereby clearly implying their relatedness.  Ingrisano Decl. ¶ 15, Ex. H, dkt. 65-8.  Earlier, and further highlighting that relatedness, Strange strategized that Evers could introduce his amendment from the floor on August 6 for it to "track with" the Master Plan repeal then-sponsored by the mayor.  Ingrisano Decl. ¶ 20, Ex. M, dkt. 65-13.**

Dated:  September 19, 2022

GODFREY & KAHN, S.C.

 s/ Jonathan R. Ingrisano
Jonathan Ingrisano (SBN 1033977)
Mike Wittenwyler (SBN 1025895)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: (414) 273-3500
Fax: (414) 273-5198
jingrisa@gklaw.com
mwittenw@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State St., Suite 509
Rockford, IL 61101
Phone: (815) 986-8050
Fax: (313) 859-8888
nsterett@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

4

27893212.2