UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC., | Case No. 3:21-cv-00118-wmc |
| Plaintiff, | |
| v. | |
| CITY OF MADISON, WISCONSIN, *et al.*, | |
| Defendants. | |

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD AND SUPPLEMENTAL ARGUMENT**

Edgewood High School of the Sacred Heart ("EHS") respectfully submits its brief in support of its motion to supplement the summary judgment record with evidence from the City's recent August 17 document production—evidence which was not produced until well after EHS's opposition to the City's motion for summary judgment was due on June 10, 2022.

**INTRODUCTION**

Plaintiff EHS challenges the City's unequal and burdensome treatment of EHS and asserts claims under the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), 42 § U.S.C. 2000cc et seq., the United States Constitution, and Wisconsin law. On May 20, 2022, the City moved for summary judgment on all EHS's claims. (Dkt. #34.) EHS did not move for summary judgment but timely filed its opposition papers three weeks later. (Dkt. # 46-48.) Even based on the City's document production at the time, EHS asserted that genuine issues of material fact precluded summary judgment for the City, and that there is sufficient evidence upon which a reasonable jury could find in EHS's favor on the school's claims. (Dkt. # 46-48.)

However, more than two months after EHS's opposition papers were filed, on August 17, 2022, the City voluntarily produced forty-five communications and documents that it had previously withheld on the basis of attorney-client privilege. As discussed below, these documents were new revelations confirming what EHS has long contended about the City's reasons or pretexts for its unequal treatment of EHS. These documents underscore the existence of genuine disputes of material fact and reinforce why the City's motion for summary judgment should be denied.

The parties have already litigated the issue of the belated production on August 17, 2022, and its inclusion of critical documents EHS contends should have been produced before summary judgment. (E.g. Pl.'s Mot. to Compel Discovery, to Adjourn Trial, and to Extend Discovery, dkt. 64.) The Court has required the City to submit to revised searches of its records to look for even more relevant records. (Text Ord., dkt. 74.) Nevertheless, for the reasons set forth in its prior briefing and below, Plaintiff EHS believes it should be permitted in the meantime to supplement its opposition to summary judgment to demonstrate further genuine issues of material fact from the evidence produced on August 17, 2022.

## ARGUMENT

### I. THERE IS GOOD CAUSE TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD WITH EVIDENCE FROM THE CITY'S AUGUST 17 PRODUCTION.

Rules 6(b)(1) permits the Court to extend deadlines that it has established upon a showing of good cause. Likewise, Rule 16(b)(4) permits the Court to modify a pretrial schedule upon a showing of good cause. And Rule 56(d) allows the Court to defer consideration of a motion for summary judgment and "issue any other appropriate order," if the nonmovant can show by affidavit or declaration that, for specified reasons, it was not able to present certain facts at the time its opposition was due. Moreover, the Seventh Circuit has instructed attorneys to alert the

2

district court to newly discovered evidence and bring it to the court's attention before the court reaches a decision on a motion with respect to which the evidence is relevant. *Hecker v. Deere & Co.*, 556 F.3d 575, 590 (7th Cir. 2009).

Here, EHS seeks to bring to the Court's attention newly produced evidence that is highly relevant to EHS's opposition to the City's pending motion for summary judgment. Good cause exists for the Court to grant EHS leave to supplement the summary judgment record with facts and documents which were not available to EHS at the time its opposition to the City's motion for summary judgment was due on June 10, 2022.

> A. <u>Despite EHS's Diligence in Discovery, the City Produced Material Evidence Well After EHS's Opposition to the Motion for Summary Judgment Was Due in June 2022</u>.

EHS diligently pursued discovery in this matter. The City's motion to dismiss stayed discovery until August 13, 2021. (Dkt. #18.) EHS thereafter served combined discovery, including document requests, on November 2, 2021. (See August 25, 2022 Declaration of Jonathan R. Ingrisano ("Ingrisano Decl.") ¶ 2.) Shortly after being served with this discovery, the City moved to extend the discovery stay, a request the Court denied on November 22, 2021. (Dkt. #19, 23.) From December 2021 through March 2022, the parties met and conferred on multiple discovery issues, including appropriate search terms for the City to employ in searching for responsive electronic documents. (Ingrisano Decl. ¶ 3.) Using these search terms, the City produced more than 40,000 pages of records on April 15, 2022. (Id. ¶ 4.)

With these records in hand, during the week of April 25, 2022, EHS took the depositions of George Hank, Alder Tag Evers, and Matthew Tucker. (Id. ¶ 5.) The City deposed EHS President Mike Elliott and EHS's Athletic Director Chris Zwettler on May 10 and 26, respectively. (Id.) On June 2, 2022, EHS deposed now-former Assistant City Attorney John Strange. (Id.)

After this Court's May 3, 2022, decision on the Motion to Dismiss, the City answered on May 13 and moved for summary judgment on May 20. (Dkt. ## 28, 29, 34.) EHS did not move for summary judgment but opposed the City's motion based on the existence of genuine issues of material fact concerning, among other things, the City's reason or pretext for not issuing EHS its light permit, the targeted nature of the City's amendment to the Campus Institutional zoning ordinance, and the City's bad faith and shifting positions. (Dkt. # 46 at 14-15, 41, 45, 52.) Summary judgment submissions, totaling over 200 pages of briefing and almost 500 proposed findings of fact were completed on June 21, 2022. (Ingrisano Decl. ¶ 6.)

In July, after briefing was complete, the parties returned to discovery efforts, scheduled depositions for August, and issued third party subpoenas. (Ingrisano Decl. ¶ 7.) On July 15, 2022, EHS's counsel raised the issue of the production of John Strange's communications with City representatives from 2019, given the breadth of what he and other City witnesses had been permitted to testify to in the earlier depositions. (Ingrisano Decl. ¶ 8, Ex. B.) Counsel for the City advised she would look into the request upon her return from vacation the following week. (Id.) EHS's counsel did not hear back on the issue and followed up on August 10, 2022. (Id. ¶ 9, Ex. C.)

On August 17, 2022, the City voluntarily produced forty-five new files – emails, calendar entries and draft documents – related to Attorney John Strange. (Ingrisano Decl. ¶ 10.) Thereafter, EHS sought and obtained an order compelling the City to conduct an additional search of its records in order to address concerns EHS raised with the completeness of the City's production in light of the City's August 17 production. (Text Ord., dkt. 72.)  In short, EHS has diligently pursued discovery throughout this litigation.  The City's August 17 production came months after EHS was obligated to file its opposition papers in June 2022.

B. <u>The Evidence from the City's August 17 Production Supports EHS's Opposition to the City's Motion for Summary Judgment and the Merits of EHS's Claims</u>.

The evidence from the City's August 17 production is highly relevant to EHS's claims and its opposition to the City's pending motion for summary judgment. Had this evidence been produced in a timely manner, it would have been included in EHS's opposition. This evidence should be considered now so that the Court may fully assess the existence of disputed issues of material fact.

1. *Evidence the City treated EHS on less than equal terms because of "public outcry" supports EHS's claims under RLUIPA's "equal terms" provision*.

The "Equal Terms" provision of RLUIPA states that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000(b)(1). To succeed on an equal-terms claim, a plaintiff must show there is a comparable institution that the government treated better from the standpoint of the accepted zoning criterion, such as "commercial district," "residential district," or in this case "campus institutional district." *Edgewood High Sch. of the Sacred Heart, Inc. v. City of Madison*, No. 21-cv-118, slip op. at 15 (W.D. Wis. May 3, 2022); *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371-73 (7th Cir. 2010).

The evidence from the City's August 17 production supports EHS's claim that the City treated other schools zoned Campus Institutional better with respect to the use and lighting of their fields. While the City allowed James Madison Memorial High School and the University of Wisconsin-Madison to use their fields for uses related to their primary missions and issued those institutions light permits after their lighting applications were approved, the City restricted EHS's field usage *and withheld* EHS's light permit after its lighting application had been approved.

5

Documents produced on August 17, 2022 demonstrate that the City knew and recognized that EHS's outdoor lighting permit had been approved and could issue. (Supp. APFOF ¶¶ 264, 267.) The record now demonstrates that after the permit was approved, City officials put forth over time a variety of shifting and contradictory excuses for withholding the permit they said would issue – (i) the Open Spaces section of the Master Plan, (ii) the absence of lights in the Master Plan, (iii) 80' light poles versus '68 light poles, (iv) Section 10.085 of the M.G.O., (v) a concern over EHS's "unmet expectations," and (vi) "continued public outcry." (APFOF ¶¶ 124, 126, 127; Supp. AFPFOF ¶¶ 261-262, 265-270; and Def.'s PFOF 97.)

On its own, the City employee's email admission that "continued public outcry" was the reason for withholding the permit is not just material to -- but dispositive of -- summary judgment and requires the motion's denial. (Supp. APFPF ¶ 268.) Courts have recognized that evidence showing a government decision was made in reaction to "public outcry" is sufficient to give rise to an inference upon which a jury can find unequal treatment and even discrimination under RLUIPA. *See, e.g., Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 326 F. Supp. 2d 1140, 1153 (E.D. Cal. 2003) (evidence that County's decision to deny permit based on public outcry "at least raises an inference of possible discrimination") aff'd sub nom. *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006); *Westchester Day Sch. v. Vill. of Mamaroneck*, 386 F.3d 183, 191 (2d Cir. 2004) (holding that it was for the jury to decide whether Village acted in good faith or reacted to "belated public outcry"). Here, Mr. Harper's "public outcry" e-mail is highly probative of the City's unequal treatment of EHS, as well as the City's bad faith and shifting positions.

The August 17, 2022 production also establishes disputes of fact surrounding the City's August 2019 introduction of Alder Evers's zoning ordinance amendment and its specific targeting

of EHS. Courts have also held that a plaintiff may establish an equal-terms claim if it can show by the preponderance of the evidence that the government departed from basic principles of neutrality to implement or impose its regulations in a manner designed to place a burden solely on a religious institution. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006) *citing Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1308 (11th Cir.2006); *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993). To decide this claim, the jury can consider the text of the regulation, the effect of the regulation, and the circumstances surrounding the regulations enactment. *Vision Church*, 468 F.3d at 1003; *Primera Iglesia, Inc.*, 450 F.3d at 1308; *see Church of Lukumi Babalu Aye,* 508 U.S. at 535.

The City's August 17 production includes substantial evidence upon which a reasonable jury can find that the City departed from basic principles of neutrality when it amended the Campus-Institutional zoning ordinance on October 1, 2019, to place a burden solely on EHS. Specifically, Attorney Strange's August 14, 2019 meeting invitation references the need to meet "with zoning and planning staff regarding the ***Edgewood ordinances*** ASAP." (emphasis supplied) (Ingrisano Decl. ¶ 15, Ex. H.) This contradicts the City's fiction that the two legislative initiatives are unrelated and serves to confirm for a reasonable jury that the City indeed considered both the Master Plan repeal and Alder Evers's ordinance amendment to be "EHS-related" and targeted at EHS. Instead, a jury has ample reason to doubt the innocence of the City's timing of the Evers amendment's introduction, given Strange's strategic recommendation that Evers could "intro" his ordinance from the floor on August 6 "to track with" the EHS Master Plan repeal. (Supp. AFPFOF ¶ 196.) A reasonable jury could quickly reject Evers's sworn testimony that the August 6, 2019

7

introduction of the repeal and Evers's ordinance was merely a "coincidence." (Supp. APFOF ¶ 196.)

Wherefore, leave should be granted to allow EHS to supplement the summary judgment record with evidence from the City's August 17 production.

> 2. *Evidence from the City's August 17 production which shows the City's shifting positions, bad faith, and bowing to "public outcry" supports EHS's claim under RLUIPA's "substantial burden" provision.*

Under RLUIPA's "Substantial Burdens" provision, the government cannot impose a land use regulation in a manner that substantially burdens the religious exercise of a religious institution, unless the government can demonstrate that it has a compelling reason for imposing the burden and no less restrictive way of furthering the government's interest. 42 U.S.C. § 2000cc(a)(1). The Seventh Circuit has held that evidence of the government acting arbitrarily, in bad faith, or with shifting positions can buttress a substantial burden claim. *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005); *see also World Outreach Conf. Ctr. v. City of Chicago,* 787 F.3d 839, 843–44 (7th Cir. 2015).

The August 17 production provides further evidence upon which the jury could find that the City kept shifting its position in order to find a way to withhold EHS's light permit after EHS's application had been finally approved on March 1, 2019. (APFOF ¶ 110.) Before March 1, the City had provided EHS written assurance that its lighting application would be reviewed for compliance with M.G.O. § 10.085 and that if it complied then a permit would issue. (APFOF ¶¶ 96-97). The City informed EHS in writing that "[t]he City believes this permit can be issued without requiring amendment of the approved 2014 Master Plan." (APFOF ¶¶ 98). However, after EHS's application was reviewed *and approved* for compliance with M.G.O. Section 10.085, the

City reacted to "public outcry" and withheld the permit as it tried to come up with a reason to do so. (See Supp. APFOF ¶¶ 261-270.)

The City's ever shifting and errant positions taken in reaction to "public outcry" are more than enough evidence upon which a reasonable jury could find a "whiff of bad faith" to support EHS's substantial burden claim. *Sts. Constantine*, 396 F.3d at 901. The August 17 production provides additional evidence upon which a reasonable jury could find the City's decision to withhold EHS's light permit to be pretextual. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir.2003); *see also Lawhead v. Ceridian Corp.*, 463 F. Supp. 2d at 856, 864 (N.D. Ill. 2006).

    3. *Evidence from the City's August 17 production supports EHS's claim under the Free Exercise Clause as it shows the burdens imposed by the City on EHS were not the result of the City applying a general and neutrally applicable law but were rather imposed as a result of the City's individualized, discretionary, and even post-hoc efforts to restrict EHS's use of its only field.*

As argued more fully in EHS's opposition to the City's summary judgment motion, the City's decisions which have denied EHS the ability to use its only field in furtherance of its religious mission and the Sinsinawa Dominican values are subject to strict scrutiny because they were not the result the City's even-handed enforcement of generally applicable laws but rather involved individualized, discretionary, post-hoc and even targeted government actions. The evidence from the August 17 production addressed above bears this out.

    4. *Evidence from the City's August 17 production supports EHS's vested rights claim.*

Evidence from the City's August 17 production serves to confirm EHS's outdoor lighting application had been approved by the City and that its permit application was compliant when submitted. (Supp. APFOF 264, 267.)  This further demonstrates that, as a matter of Wisconsin's bright-line Building Permit Rule, EHS acquired a vested right to the light permit. *McKee Fam. I, LLC v. City of Fitchburg,* 2017 WI 34, 374 Wis. 2d 487, 893 N.W.2d 12; *Golden Sands Dairy*, 2018 WI 61, ¶¶ 1-34. The City's after-the-fact efforts to deny EHS's vested right to the permit also

provides a sufficient basis upon which a reasonable jury could rule in EHS's favor on its RLUIPA substantial burdens claim. (Dkt. 46 at 53-54.)

C. Supplementing the Summary Judgment Record Would Not Prejudice the City.

At this time, the City's motion for summary judgment is still pending. Trial in this matter is not set to commence until December 5, 2022. (Dkt. # 74.) Accordingly, the City cannot claim to be prejudiced by an issue of its own creation. All of the documents put now before the Court were in the City's possession, and were authored by or copied to known key witnesses for the City. Any prejudice to City is only owing to the fact that the City failed to produce the August 17 documents and communications until well after EHS was obligated to respond to the City's motion for summary judgment.

D. Supplementing the Summary Judgment Record Will Not Affect the Pretrial Dates.

EHS believes that the summary judgment record can quickly be supplemented with the evidence from the City's August 17 production without affecting any of the current pretrial and trial dates.

WHEREFORE, EHS respectfully requests:

A.   An order allowing EHS to supplement the summary judgment record with evidence from the City's August 17 production as set forth in Plaintiff's Supplemental Responses to Defendant's Proposed Findings of Fact (dkt. # 80), Plaintiff's Supplemental Additional Proposed Findings of Fact (dkt. # 79), and the legal argument in opposition to summary judgment contained herein; and

B.   Granting such other relief as the Court deems appropriate.

Dated: September 19, 2022

GODFREY & KAHN, S.C.

 s/ Jonathan R. Ingrisano
Mike Wittenwyler (SBN 1025895)
Jonathan Ingrisano (SBN 1033977)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: (414) 273-3500
Fax: (414) 273-5198
mwittenw@gklaw.com
jingrisa@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State St., Suite 509
Rockford, IL 61101
Phone: (815) 986-8050
Fax: (313) 859-8888
nsterett@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

27883797.2