UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

EDGEWOOD HIGH SCHOOL OF THE
SACRED HEART, INC.,

                Plaintiff,                                        Case No. 3:21-cv-00118

      v.

CITY OF MADISON, WISCONSIN, et al.,
                Defendants.

---

**CITY DEFENDANTS' MOTION TO DECLARE DISCOVERY CLOSED
OR, IN THE ALTERNATIVE, TO LIMIT THE SEARCH FOR RECORDS**

---

## INTRODUCTION

Pursuant to its powers under Rule 16 and its inherent powers to control its calendar, Defendants City of Madison, Wisconsin, City of Madison Zoning Board of Appeals, City of Madison Plan Commission, City of Madison Common Council, (collectively "the City") hereby move the Court to revisit its Order from September 2, 2022 (dkt. #72) allowing plaintiff to have the City run one additional targeted search for records and order that discovery is closed.  In the alternative, the City requests that the Court accept its proposed search for records described below.

## BACKGROUND FACTS

On August 25, 2022 – 8 days before the close of discovery – plaintiff Edgewood High School filed a motion to compel, to adjourn trial and to extend discovery.  Dkt. #63.  Edgewood sought to extend discovery by 120 days to allow further discovery by plaintiff, and requested that the City "cooperate with plaintiff to identify reasonable modified search terms, custodians and

protocols for electronic discovery of the City's records during the period October 1, 2018 through December 1, 2019." Dkt. #64 at 9.  Edgewood's justification was the supposed lack of internal emails among City employees and officials during that time frame.  *Id.* at 4-5; *see also* dkt. #65-5 at 2-3; dkt. #65-7 at 2-3.

On September 1, 2022 (the day before the close of discovery), the City Defendants filed a comprehensive response explaining the process by which the parties had agreed to search terms and conducted its search for records back in March.  *See* dkt. #68.  The City argued that Edgewood's motion was too little too late given the lengthy history of discovery in this case and the upcoming pretrial deadlines.

On September 2, 2022, the Court heard the motion.  Unrelated to plaintiff's motion, the Court modified the trial date due to a conflict on the Court's calendar.  Dkt. #71.  With respect to plaintiff's motion, the Court indicated that it was more sympathetic to defendants' position than plaintiff's.  However, given the short delay in the trial date from October 17 to December 5, the parties agreed, and the Court ordered that plaintiff could ask the City to run a single targeted search for records for the City to produce.  (Dkt. 72.)

At the September 2, 2022 hearing, defense counsel raised anticipatory concerns regarding the scope of the search.  As part of the response to the motion, defense counsel had provided a list of the searches that plaintiff had originally wanted defendants to run, and noted that for some of the searches that plaintiff requested in back in March, the resulting number of documents returned exceeded 10,000.  Zylstra Dec., dkt. #69-9, Ex. I.  Defense counsel noted that for two specific searches that plaintiff discussed at the hearing, the result was over 20,000 records.  Defense counsel expressed concern about plaintiff providing a broad search for records.

In response to defendants' concern, the Court stated that if the number of hits returned was 20,000 or even 10,000, the City would not have to comply and produce the records. The Court informed the parties that it should be a ***targeted*** search for records. The Court also indicated that if the parties could not reach agreement on the search, that it would referee the dispute between the parties.

Defense counsel's fears have come to pass. Attached to the Zylstra Declaration as Exhibit A are the email communications between counsel related to the proposed search. On September 7, 2022, plaintiff requested that defendants apply the following search terms to 16 separate custodian's email accounts:

> (Edgewood or EHS) AND (master plan OR permit OR light* OR field OR stadium OR ordinance)

(Zylstra Dec., Ex. A at 10-11.) On September 13, the City responded and indicated that it had run the search across 14 of the email accounts[1] and retrieved over 9,000 records totaling over 23,000 pages. (*Id.* at 9.) The City indicated that the numbers were too high and suggested: (1) an additional limitation to the word "permit" and (2) that the search require an "@cityofmadison.com" domain to be both in the "to" portion of the email and the "from" portion of the email. (*Id.*) The City indicated that these two additional limitations would reduce the amount of documents for review to 2,766 documents and 10,132 pages. The City specifically noted that the word "permit" can be both a noun and a common verb and therefore, it was limiting the reference related to "permit." (*Id.* at 9-10.) The City suggested the following search:

> (Edgewood OR EHS) AND ("master plan" OR "light* permit" OR "electrical permit" OR light* OR ordinance)

---

[1] Two of the 16 email accounts that plaintiff wanted searched were the personal email accounts of two alders. Defense counsel indicated that she would have to have the alders search their personal email accounts as the City does not have access to them, but would not have those alders perform the search until the parties reached agreement on the search terms.

(*Id.* at 9.)

On September 14, plaintiff responded with three follow-up questions.  (*Id.* at 9.)  The first question asked whether the number of hits included "families" that is, emails and attachments.  (*Id.*)  The following day, on September 15, the City responded and thanking plaintiff for its questions, and corrected the number of documents and pages.  Including "families," the search hit 11,599 documents and 62,854 pages.  (*Id.* at 8.)  The City also answered two other questions that plaintiff asked.

On September 15 and 16, there were a number of emails back and forth seeking clarification regarding one of the questions, which resulted in plaintiff's request that the City run two other searches in order to isolate and determine the difference in documents resulting from limiting the word "permit" as the City proposed.  (*Id.* at 5-8.)  Plaintiff requested that the City report the difference in hits with families for:

> (Edgewood OR EHS) AND permit

versus

> (Edgewood OR EHS) AND ("light* permit" OR "electrical permit")

On Monday, September 19, the City responded with the results of those two searches. The search, '(Edgewood OR EHS) AND permit', returns 2,599 documents totaling 35,422 pages. The search, '(Edgewood OR EHS) AND ("light* permit" OR "electrical permit")', returns 690 documents totaling 9,234 pages.  (*Id.* at 5.) The City again offered the search it proposed the prior week, which would limit the number of documents to 2,766 documents and just over 10,000 pages to review.

In the evening on September 19, plaintiff responded that it would not agree with the search limitations proposed, arguing that the search as proposed would exclude relevant

documents, citing examples of documents that were already produced in discovery that would not be captured by the search. (*Id.* at 4.) Plaintiff's counsel argued that the goal was only to reduce false hits, not to limit the number of records and that the return of 11,599 documents was "near the presumptive 10,000 hit cutoff identified by Judge Crocker." (*Id.*) Plaintiff suggested no other limit to the search than it originally proposed.

The City responded the following day, addressing plaintiff's arguments and the parties continued to email each other on the 21st and 22nd. (*Id.* at 1-3.) The City pointed out that plaintiff had not offered any other search other than its original search returning over 11,000 documents, which the City maintained is too broad, not proportional and unduly burdensome given this stage of the litigation where discovery is closed, pretrial filing deadlines are approaching, and the City is now also responding to plaintiff's latest motion to supplement its summary judgment filings. (*Id.* at 1-2.) The City indicated that it was going to move the Court for relief. (*Id.* at 2.)

On Friday, September 23, as the City was completing its drafting of this motion, plaintiff's counsel emailed and indicated that plaintiff was exploring some alternative searches and would provide them today. (Zylstra Dec., Ex. B.) Plaintiff asked, as part of preparing those alternatives, for defendants to provide examples of where '(Edgewood OR EHS) AND permit' were overinclusive. (*Id.*) Plaintiff also proposed two new searches. Finally, plaintiff noted that defendants should be able to remove from the search documents that have already been produced in the litigation. (*Id.*)

Defendants responded by providing a few examples of the over inclusiveness of the word, 'permit.' Defendants also noted that they would run the two new searches. However, defendants also noted that while they would continue to work with plaintiff to refine the search, defendants still intended to file its motion today. (*Id.*) Defendants explained that given that there was less

than 30 days before defendants had to produce the records, and that it would likely take at least a week for the motion to be briefed and decided by the Court, the motion could not be delayed any longer.  (*Id.*)  Defendants indicated that they would withdraw the motion if the parties were able to come to resolution on the proposed search.  (*Id.*)

## ARGUMENT

The City now moves the Court to declare discovery is over and not permit plaintiff to engage in any further discovery at all.  Discovery closed in this case on September 2.  The Court allowed Edgewood to propose one more targeted search for records but did so at a time when the parties had about seven extra weeks in the schedule due to the adjustment of the trial date.  By the time this Court hears this motion, however, at least four of those seven weeks will have expired, leaving only about three weeks or less to run a search, review the documents and produce them. The search Edgewood proposes will require ***significant*** time and resources to review. Defendants believe this is well over 80 hours of review work alone.  It is simply an unfair and undue burden at this late stage of the litigation.  Further, plaintiff's refusal to offer any limit to its proposed search is unreasonable and justifies denial of any further discovery.

And it is not just the significant time to review documents that warrants the relief that defendants seek.  The amount of time the City has spent to try to come to resolution over this discovery and the time now spent on having to brief these issues to the Court has detracted from the City's ability to prepare its pretrial submissions.

In addition, in its brief and oral argument to the Court in support of its motion seeking additional discovery, plaintiff's primary claimed justification for additional searching was the lack of internal emails between City employees and officials from October 1, 2018 through November 1, 2019.  For that reason, the City has proposed limiting the search to include

"@cityofmadison.com" in the "to" and "from" fields, focusing the search on internal emails between City officials.  Plaintiff has refused to accept that limitation.

In addition, plaintiff raises the point that the City can remove those records already produced in discovery as a way to narrow the search.  (Zylstra Dec., Ex. B.)  There are two problems with this proposal.  It is only partially true and does not resolve the overbreadth of the search.  A key issue with the search relates to how constituents both supporting and opposing Edgewood sent comments to the City.  (Zylstra Dec., Ex. A at 1.)  Many sent separate emails to different City employees.  Because they sent them to different employees, while the text is primarily the same, the emails are not the same and thus, they are not duplicates.  (*Id.*)  Further, most of those emails from constituents have been produced as part of the Legistar record but because how they were produced in Legistar, they cannot be filtered out of the production as duplicates.  (*Id.*)  The City believes the emails from constituents may exceed 20% of the records. (*Id.*)  These are not false hits per se but simply have little to no probative value given the circumstances.

In addition, the City can only remove the records that it has produced and not records that Edgewood has produced.  Edgewood did not provide load files when it produced records to the City, but instead removed the metadata of all its records before production.  (Zylstra Dec., ¶4.) As a result, any records in Edgewood's production cannot be removed to narrow the search.

The City believes it is able to remove the documents that it has previously produced but does not believe it will narrow the results significantly and estimates that at most, it will remove 300-500 documents.  (Zylstra Dec., ¶5.)

In contrast to defendants' proposed search, which is tailored to address the category of documents that plaintiff asserts is lacking by concentrating on internal City emails, plaintiff's

search requesting every document that mentions Edgewood and either the master plan, lights, permits, stadiums or an ordinance, as written, amounts to a near a do-over of discovery—all packed into one huge search. In its motion to extend discovery for four months, plaintiff essentially asked for just that but the Court denied that portion of the motion.  Further, the Court specifically noted that it would not allow a search returning 10,000 documents and if such were the result, the City was not going to have to comply.  Given that the plaintiff's proposed search returned over 10,000 records and plaintiff has refused to narrow the search, the City is requesting that the Court issue an order that it does not need to comply and that discovery is closed.

In the alternative, the City requests that the Court adopt its proposed search, '(Edgewood OR EHS) AND ("master plan" OR "light* permit" OR "electrical permit" OR light* OR ordinance)' and requiring @cityofmadison.com in the to and from fields.  That search returns 2,766 documents totaling 10,132 pages.  The City maintains that even this search is no longer a fair and reasonable burden given that it will likely have three weeks or less to produce documents.  In addition to the time spent trying to resolve the search dispute, the City must respond to plaintiff's recently filed motion to supplement summary judgment, thus further limiting the time available to review and produce the documents.

## CONCLUSION

In any litigation, discovery must eventually come to an end.  In this case, discovery closed three weeks ago and yet plaintiff seeks to virtually redo document discovery, wanting the City to review nearly 63,000 pages of documents over the span of a few weeks.  Defendants respectfully request that the Court order discovery closed.  In the alternative, the City requests that the Court adopt its proposed search.

Dated September 23, 2022.

BOARDMAN & CLARK LLP

*/s/ Sarah A. Zylstra*
Sarah A. Zylstra, State Bar No. 1033159
Evan B. Tenebruso, State Bar No. 1085063
Tanner G. Jean-Louis, State Bar No. 1122401
P. O. Box 927
1 South Pinckney Street, Suite 410
Madison, WI  53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
szylstra@boardmanclark.com
etenebruso@boardmanclark.com
tjeanlouis@boardmanclark.com
*Attorneys for Defendants*