UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC., | Case No. 3:21-cv-00118-wmc |
| Plaintiff, | |
| v. | |
| CITY OF MADISON, WISCONSIN, *et al.*, | |
| Defendants. | |

---

**PLAINTIFF EDGEWOOD HIGH SCHOOL OF THE SACRED HEART, INC.'S RESPONSE TO DEFENDANT'S REQUEST TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD AND REPLY BRIEF IN SUPPORT OF ITS OWN MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD**

---

The Defendant City of Madison uses its response to Plaintiff EHS's motion to supplement to instead repeat old legal arguments and to present new alleged evidence in its competing makeshift motion to supplement the record—to which this brief serves as a response. However, at the end of the day, the City's brief only serves to confirm the existence of genuine issues of material fact that must be resolved by a jury.

**I.      EHS's Motion is Timely.**

The City continues to blame EHS for the City's document production on August 17, 2022. The record of the motion to compel granted by the Court outlines EHS's diligence and timeliness. (Dkt. 64 at 2-5.) As previously argued, counsel for EHS followed up upon the recognized absence of emails and documents from Assistant City Attorney John Strange just a little over one month after his deposition, where significant waivers of privilege had been made by the City. This motion to supplement was expressly foreshadowed by EHS in its motion to compel (id. at 1) and was filed only after EHS recognized that search term disputes were delaying the City's production of further

potentially relevant documents that could warrant inclusion in the motion to supplement. (Compare Dkt. 77 with Dkt. 82.)

### II. Mr. Harper's Recanting and Rationalizations in Deposition Designed to Undermine the City's Prior Admission are a Matter of Credibility for the Jury to Decide.

Despite being the summary judgment movant, the City spends significant time attempting to explain away the admission in Mr. Harper's March 14 email. (Def.'s Br. at 6-7, Dkt. 92) Mr. Harper was certainly prepared, ready and anxious in deposition to attempt to recant, rationalize, and minimize that otherwise clear statement. (E.g., Harper Dep. at 5-8, Dkt. 91.) Nevertheless, Mr. Harper's email is an admissible statement of (i) an admission by George Hank of Hank's impermissible and inconsistent rationale for withholding EHS's permit and (ii) an admission by a City employee responsible for issuing municipal permits that the EHS lighting application was approved and ready to issue. A witness's post-hoc attempt to dispute the clear content of a prior written communication only underscores that there is an issue of fact for the jury. When subsequent sworn testimony contradicts a prior unsworn admission, a genuine issue of fact exists. *E.g. West v. Valero Renewable Fuels Co., LLC*, No. 19-CV-463, 2021 WL 5113968 at *5 (Nov. 3, 2021 N.D. Ind.)(citing *Davenport v. Potter,* No. 06 C 4614, 2008 WL 4126603 at *2 (Aug. 15, 2008 N.D. Ill.)(collecting cases).)

Mr. Harper's deposition testimony would certainly create an issue of fact if EHS had been the one moving for summary judgment. But it is the City that moved for summary judgment. The evidence, the inferences therefrom, and any purported corrections, recantations and rationalizations are for a jury to weigh, assess credibility and decide in light of the totality of the evidence, which includes the inconsistent statements of the City's shifting and invalid reasons for withholding the approved permit.

**III. The City Merely Rehashes its (Erroneous) Equal Terms and Substantial Burden Arguments from Summary Judgment.**

    A.    <u>The City Misconstrues EHS's Equal-Terms Claim and Rehashes the Same Erroneous Arguments EHS Addressed in Its Opposition Brief.</u>

The City attempts to use its opposition to EHS's motion to supplement to instead rehash the same erroneous arguments EHS responded to at length on summary judgment. For example, the City repeats the same arguments about whether the University of Wisconsin-Madison (UW-Madison) and Madison Memorial High School are sufficiently similar, nonreligious comparators. (Compare Dkt. 92 at 10 to Dkt. 42 at 28.) EHS has already responded to these arguments at length in its brief in opposition to the City's brief. (Dkt. 46 at 35-45.)

Most importantly, and again contrary to the prevailing standard by which equal-terms claims in the Seventh Circuit are to be adjudicated, *see River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371-73 (7th Cir. 2010) (en banc), the City continues to rely upon the analytical framework in *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006) and refuses to conduct its analysis at the level of the underlying zoning district common to EHS, UW-Madison, and Madison Memorial. Instead, the City uses the Master Plan to attempt to distract from the appropriate and accepted zoning criterion in this case—which is "campus institutional district"—and supposedly render EHS without any possible comparator; however, the Master Plan is not an accepted or objective zoning criterion governing or limiting the existing uses which were already allowed as of right in the Campus Institutional District. (Dkt. 46 at 39.) As this Court has already held, "a comparator is sufficiently similar if it is the same as the religious institution 'from the standpoint of an accepted zoning criterion, such as 'commercial district,' or 'residential district,' or 'industrial district.'" *Edgewood High Sch. of the Sacred Heart, Inc. v. City of Madison*, No. 21-cv-118, 2022 WL 1316469, at *7 (W.D. Wis. May 3, 2022).

3

Because there is prima facie evidence to support EHS's equal-terms claim, it will be the City's burden to persuade the jury as to why its treatment of EHS should not be deemed unequal given how it treated other institutions in the Campus Institutional District. (Dkt. 46 at 35-46); 42 U.S.C. § 2000cc-2(b). And based on the evidence of record, as well as the evidence the City produced after the summary judgment briefing was complete, a reasonable jury could certainly reject the City's efforts to persuade them that the City's treatment of EHS was anything but equal. For in the end, the City will be unable to show that a lighted, athletic field at a Catholic high school is any different from a lighted athletic field at Madison Memorial or UW-Madison from the standpoint of the Campus Institutional District into which all three schools were rezoned in 2013.

  B. <u>The City Misconstrues Edgewood's Substantial Burden Claim and Rehashes the Same Erroneous Arguments EHS Addressed in Its Opposition Brief.</u>

Likewise, the City uses its opposition to EHS's motion to supplement to repeat the same errant substantial burden arguments it made in its summary judgment reply brief, (Dkt. 61 at 25-29), in a belated effort to distinguish *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005) and the Seventh Circuit's decisions in *World Outreach Conf. Ctr. v. City of Chicago,* 591 F.3d 531, 538 (7th Cir. 2009) and 787 F.3d 839, 843 (7th Cir. 2015). While it may be the City's argument that its inconsistent positions on EHS's light permit application are not persuasive evidence of the City's shifting positions, of pretextual responses to public outcry, or of a "whiff of bad faith," that argument is left to a jury and not something the Court can decide on summary judgment.

As EHS's original summary judgment opposition brief makes clear, the City misreads both *Sts. Constantine* and *World Outreach.* (Dkt. 46 at 51-54.) The former properly focused on the impact of the city's actions and found a substantial burden based on the delay, uncertainty, and expense facing the church. 396 F.3d at 901. The latter cases were likewise concerned with the

4

impact of the city's actions, recognized a substantial burden based on the city's effort to restrict an existing, legally established use, 591 F.3d at 538, and on how the city was preventing the plaintiff "from using its sole facility to serve the religious objectives of the organization." 787 F.3d at 843. In each case, baseless government action buttressed the substantial burden claims, but in both cases the analysis was principally driven by the impact or burden on the claimant's religious exercise-- not upon the government's alleged justification for imposing the burden. Neither case is confined to its facts, and both establish as-applied standards by which EHS can support its claim.

Here, a reasonable jury could find that the City adopted an absurd and highly restrictive interpretation of EHS's Master Plan in an arbitrary or bad-faith effort to stop EHS from using its field like the public high schools. Such a jury could also find that the City changed its position on the relevancy of EHS's Master Plan to the lighting application based on public outcry well after the City's Zoning Administrator and Assistant City Attorney told EHS it was not legally required to amend its Master Plan to obtain lights. (APFOF ¶¶ 98-109, Dkt. 48.)

Contrary to the City's current contention that EHS has failed to dispute the "legal underpinnings" of the City's decisions, the summary judgment record, as well as the evidence City produced after the summary judgment briefing was complete, establishes that the City's own witnesses and admissions reveal the hollowness of those legal underpinnings. By citing the City's own witnesses, documents and admissions, EHS has contested the City's current claim that "the City's reasons are *all* supported by municipal law" (Def.'s Br. at 15, Dkt. 92.) EHS' opposition brief and proposed findings of fact both establish why the City's interpretation of EHS's Master Plan was wrong and why the City's withholding of the light permit was improper.

**IV.     On Vested Rights, There is an Issue of Fact Whether EHS's Late Permit Application was Compliant When Filed and What the Applicable Zoning Regulations were that Governed that Application.**

The City repeats its erroneous arguments on EHS's vested rights claim, but intentionally ignores and misconstrues the conflicting evidence about compliance with applicable zoning regulations. (Def.'s Br. at 18-19, Dkt. 92.) The evidence instead shows that some point after March 1, 2019, the City did an about face and concluded both that the Master Plan was relevant to EHS's lighting permit application and that the application did not comport with the Master Plan, thereby requiring a Master Plan amendment. While any alleged non-compliance does not appear from the terms of the Master Plan or other zoning ordinances, the notion that EHS's lighting application did not comply with the applicable zoning regulations is contradicted by clear evidence in the record, including admissions by City employees, that EHS's application *was* compliant when filed and approved. In this case, a jury could find that the City advised EHS in January 2019 that the outdoor lighting permit could issue without a Master Plan amendment (APFOF ¶¶ 89-94, Dkt. 48); that the February 27, 2019 letter, drafted in consultation with the City Attorney's Office, confirmed a light permit could issue without a Master Plan amendment (APFOF ¶¶ 96-102); that the permit application received all necessary approvals by the City (APFOF ¶¶ 105-110, 116); that City staff recognized the permit as approved and ready to issue (Supp. APFOF ¶ 264); and that the City only withheld the permit because of "continued public outcry" (Supp. APFOF ¶ 269, Dkt. 79) and not because of any the alleged non-compliance asserted only after EHS's application was marked approved and closed.

This is not an equitable estoppel matter like that in Defendant's cited case of *Willow Creek Ranch v. Town of Shelby*, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, where the plaintiff asserted that a town chairperson's misrepresentation estopped enforcement of a local zoning ordinance. Here, EHS is asserting an issue of fact exists where multiple representations of actual

6

compliance by the Zoning Administrator (and as approved by the City Attorney) and actual approvals contradict a subsequent shifting, vague and conclusory determination of non-compliance. Moreover, the same evidence shows the fundamental conflict of what the applicable zoning regulations actually *were* that had to be complied with under Wisconsin's vested rights analysis. Prior to March 1, 2019, the City expressly agreed that EHS's Master Plan was not an applicable zoning regulation (i.e., its amendment was not required to issue the lighting permit), but at some time afterwards, according to the City, it was applicable. Accordingly, there is a genuine dispute of fact about compliance as of February 22, 2019, the applicable zoning regulations at that time, and whether the City simply raised the Master Plan as a post-hoc requirement in a belated and pretextual attempt to withhold the approved light permit.

### V. Attempts to Discredit Sister Phelan are Meritless, and Ultimately are Presumed Jury Issues

While opposing EHS's motion to supplement, the City itself seeks to supplement the record and attacks Sister Kathleen Phelan's credibility as a witness. Its contentions would be unconvincing in closing argument but they are simply silly on summary judgment because a witness's credibility is not for the court to determine on summary judgment but for the jury to decide at trial. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 699–700 (7th Cir. 2003) ("the witness's credibility … cannot be resolved in a summary judgment proceeding.").

Sister Phelan testified in Paragraph 8 of her affidavit based on "reports of many instances" of EHS sports teams engaging in community service around the City. (Phelan Decl. ¶ 8, Dkt. 53.) The City attacks her for confirming in deposition that she learned of these things on the news and from other sources. However, the ultimate point of the affidavit paragraph – her lay opinion about EHS's role of sports for community-building service – can properly be based on her "rational perception." Fed. R. Evid. 701. That she saw news reports of student-athletes' altruistic actions

confirms her testimony on the effect and importance of the community-building aspects of EHS sports and the school's use of sports to further its mission. Moreover, she and others are entitled to testify about EHS's reputation in the community, including the school's sports' teams' reputations for service. Fed. R. Evid. 803(21).

The City goes on to attempt to attack the credibility of Sister Phelan as if she were an expert witness and this was a *Daubert* motion. EHS does not claim she is an expert, and Sister Phelan has offered no expert opinions. Sister Phelan has been in Catholic education for twenty-five years. (Phelan Dep. at 15-16, Dkt. 90). She has been a teacher, school administrator or principal at three Catholic high schools, including EHS. (Id.) She is uniquely positioned to share her personal knowledge, perceptions and opinions on the mission and needs of EHS as a Catholic institution and of the resulting burdens and obstacles to EHS's mission caused by the City's actions. Her testimony should not be somehow excluded or discounted on summary judgment. Instead, the City is free before the jury to attack her credibility and the weight of testimony by this vowed religious sister.

Moreover, whether Sister Phelan and EHS agree that participation in sports is not a central tenet of Catholicism is also not relevant to EHS's claims. The City misstates what is necessary to prove a "religious exercise" under RLUIPA. Under 42 U.S.C. § 2000cc-5(7), "religious exercise" is defined to include "any exercise of religion, *whether or not compelled by, or central to, a system of religious belief*." (emphasis added). The same section also provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." *Id*. Therefore, Edgewood need not show that its use or intended use of its property is for a religious exercise compelled by or central to its system of religious belief or a particular Catholic tenet. In

this case, Edgewood contends that its uses and intended uses of its athletic field are for the purposes of furthering of the Sinsinawa Dominican values of Community and Partnership and the school's primary religious mission. (APFOF ¶¶ 6, 9-10, 13-14, 33-35; Compl. ¶¶ 31-53, Dkt. 1.)

To the extent that the City challenges the sincerity or the religious nature of EHS's use or intended use of its property at trial, the jury's role is limited to deciding whether EHS has shown by the preponderance of the evidence that it actually holds the religious beliefs it claims to hold. *See Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (RLUIPA case involving a dispute over a claimant's sincerity of religious belief); *see also Sterlinski v. Cath. Bishop of Chicago*, 934 F.3d 568, 570 (7th Cir. 2019), as amended on denial of reh'g and reh'g en banc (Oct. 31, 2019); *see also Davila v. Gladden*, 777 F.3d 1198, 1205 (11th Cir. 2015). It is neither for the City, the Court, or the jury to decide whether EHS's religious beliefs are true, valid, or logical. *Id.* Nor is it their role to decide whether EHS correctly understands the commands of Catholic teaching or how it is called to live out the Sinsinawa Dominican values of community and partnership and accomplish its religious mission. *Sterlinski*, 934 F.3d at 570.

Dated: October 14, 2022　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　GODFREY & KAHN, S.C.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Jonathan Ingrisano*
　　　　　　　　　　　　　　　　　　　　　　Mike Wittenwyler (SBN 1025895)
　　　　　　　　　　　　　　　　　　　　　　Jonathan Ingrisano (SBN 1033977)
　　　　　　　　　　　　　　　　　　　　　　833 East Michigan Street, Suite 1800
　　　　　　　　　　　　　　　　　　　　　　Milwaukee, WI 53202
　　　　　　　　　　　　　　　　　　　　　　Phone: (414) 273-3500
　　　　　　　　　　　　　　　　　　　　　　Fax: (414) 273-5198
　　　　　　　　　　　　　　　　　　　　　　mwittenw@gklaw.com
　　　　　　　　　　　　　　　　　　　　　　jingrisa@gklaw.com

DALTON & TOMICH, PLC

*Noel W. Sterett (IL 6292008)
401 W. State St., Suite 509
Rockford, IL 61101
Phone: (815) 986-8050
Fax: (313) 859-8888
nsterett@daltontomich.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

28072263.4